George F. Carpinello, Esq.
Adam R. Shaw, Esq.
BOIES, SCHILLER & FLEXNER LLP
30 South Pearl Street
Albany, NY  12207
(518) 434-0600

Charles Juntikka, Esq.
CHARLES JUNTIKKA & ASSOCIATES LLP
1250 Broadway, 24th Floor
New York, NY  10001
(212) 315-3755

*Attorneys for Plaintiff*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE ORINN S. ANDERSON,<br><br>Debtor, | |
| ORINN S. ANDERSON, A/K/A ORINN ANDERSON,<br>A/K/A ORINN SCOTT ANDERSON,<br><br>Debtor and Plaintiff<br>on behalf of himself<br>and all others similarly<br>situated,<br><br>v.<br><br>CREDIT ONE BANK, N.A. AND<br>CREDIT ONE FINANCIAL<br><br>Defendants. | Chapter 7<br>Case No. 14-22147 (RDD) |

**AMENDED CLASS ACTION ADVERSARY COMPLAINT**

1.      Plaintiff, Orinn S. Anderson, on behalf of himself and all others similarly situated,

brings this Complaint, by and through his attorneys, for declaratory judgment, injunctive relief

and damages arising out of the Defendants' systematic practice of violating the discharge

injunction under Section 524(a)(2) of the Bankruptcy Code, 11 U.S.C. Sections 101 *et seq.* by

acting to collect discharged debts through their failure to update and correct credit information

to credit reporting agencies to show that such debts are no longer due and owing and that they

have been discharged in bankruptcy.

## JURISDICTION AND VENUE

2.      This Court has original jurisdiction pursuant to 28 U.S.C. § 1334 and 28 U.S.C. §

157.  This is a core proceeding as defined in U.S.C. § 157(b)(2)(A) and (O).

3.      Venue is properly in this District pursuant to 28 U.S.C. § 1391(b)(1) and (2), as

Defendants resides in this District within the meaning of § 1391(c)(2), Plaintiff resides in this

district, and a substantial part of the events or omissions giving rise to Plaintiff's claims

occurred here.

## PARTIES

4.      Plaintiff Orinn S. Anderson resides at 215 South 9th Avenue, Mount Vernon,

Westchester County, New York.

5.      Upon information and belief, Credit One Bank, N.A. is a banking association

existing under the laws of the United States with a place of business in Las Vegas, Nevada and

engages in continuous business within the State of New York.

6.      Upon information and belief, Credit One Financial is a banking association

existing under the laws of the United States with a place of business in Las Vegas, Nevada and

engages in continuous business within the State of New York.

7.      Credit One Bank, N.A. and Credit One Financial are collectively referred to

herein as "Defendants."

8.      The debt Plaintiff previously owed to Defendants were reporting to the credit reporting agencies as owed to "Credit One Bank."

## BACKGROUND

9.      This Complaint alleges that Defendants have violated § 524(a)(2) of the Bankruptcy Code because they have willfully attempted to collect on discharged debts. Specifically:  (1) Defendants were aware of Plaintiff's discharge in bankruptcy and the discharge of the debts Plaintiff owed to Defendants; (2) Defendants were aware that they were reporting on the status of Plaintiff's accounts incorrectly; (3) Defendants had the ability to update or correct their reporting on the status of Plaintiff's accounts after Plaintiff received the bankruptcy discharge; and (4) Defendants willfully failed to update or correct Plaintiff's and other Class Members' credit reports because they have adopted a policy of not updating credit information for debts that are discharged in bankruptcy for the purpose of collecting such discharged debt.

10.     Even after Plaintiff contacted Defendants in September 20014, Defendants have not changed their policy and continue to refuse to update tradeline information they know is false and detrimental to the "fresh start" that debtors are entitled to receive from the Bankruptcy Code.  This continued policy of refusing to update the bankruptcy status of discharged accounts constitutes willful acts to collect discharged debts.

11.     Defendants have a deliberate policy of refusing all debtor requests to update credit reports with regard to debts discharged in bankruptcy for accounts sold prior to the filing of the bankruptcy.  This refusal policy applies to all accounts sold prior to the filing of bankruptcy.

12.     Upon information and belief, Defendants' refusal policy also applies to accounts that Defendants have not sold prior to filing of the bankruptcy.

3

13.     Defendants' failure to update credit reports is not a matter of inadvertence; it is a willful policy of attempting to lay a trap for Plaintiff and other Class Members until the point that they need an accurate credit report, and they cannot obtain such a credit report without paying on a discharged debt.

14.     By refusing to correct former debtors' credit information to reflect that their debts have been discharged in bankruptcy, Defendants enhance the value of the debt they sell to third parties because third parties will pay Defendants more for delinquent debts if the third party knows that Defendants will not update the debtors' credit reports to list the debt as discharged in bankruptcy.  Furthermore, since Defendants and their debt purchasers understand that they are prohibited by the Bankruptcy Code from contacting the discharged debtors, they know that their sole method of debt collection is the coercive effect of the negative credit reporting that will pressure the discharged debtors to pay the debt and / or pressure the discharged debtors to contact Defendants or the debt purchasers who can then exert further pressure to pay the debt.

15.     Upon information and belief, Defendants have a direct financial interest in the collection of discharged debts, including Plaintiff's debts, because they retain a percentage interest in amounts paid by the discharged debtors directly to Defendants.

16.     Defendants also act as agents for the third-party debt purchasers after the sale by forwarding to the debt purchasers amounts paid by the discharged debtors directly to Defendants.

## **PLAINTIFF ORINN ANDERSON**

17.     Plaintiff Anderson repeats and realleges the allegations in Paragraphs 1 - 16 as if fully set forth herein.

18.     Plaintiff Anderson is among many thousands of persons in the United States who

have filed bankruptcies pursuant to Chapter 7 of the U.S. Bankruptcy Code and who have been

granted orders of discharge by a U.S. Bankruptcy Court.  Under federal bankruptcy laws, such

an order fully and completely discharges all statutorily dischargeable debts incurred prior to the

filing of bankruptcies, except for those that have been: (1) reaffirmed by the debtor in a

reaffirmation agreement; or (2) successfully challenged as non-dischargeable by one of the

creditors in a related adversary proceeding.  Plaintiff Anderson and the Class Members are

persons for whom the debts at issue herein have been discharged through bankruptcy.

19.     Prior to July 2011, Plaintiff Anderson incurred a debt with Defendants.

20.     Sometime after July, 2011, the debt became delinquent and in May, 2012 "Credit

One Bank," with the address of P.O. Box 98872, Las Vegas, Nevada 89193-8872, filed credit

information with the credit reporting companies noting that the debt was delinquent.

21.     Thereafter, Defendants reported the debt as "charged off."

22.     On January 31, 2014, Plaintiff Anderson filed a voluntary petition for relief under

Chapter 7 of Title 11 of the U.S. Code.

23.     On or about May 6, 2014, this Court entered an Order discharging Plaintiff's

debts including the debts owed to Defendants.

24.     On May 8, 2014, this Court notified Defendants of the discharge of Plaintiff's

debt to Defendants.

25.     On or about August 23, 2014, Plaintiff Anderson obtained his Trans Union and

Equifax credit reports, which showed the words "charged off" next to the discharged account at

issue in the current status of the credit reports.  The credit reports showed no indication that the

account had been "included in bankruptcy." The account in question was not subject to a

reaffirmation agreement with Defendants or an adversary proceeding brought by Defendants.

26.    From September 22, 2014 until today, Defendants have rejected Plaintiff

Anderson's demand that his credit report be updated to remove the erroneous "charge off" on

his discharged debt.

27.    Defendants were placed on notice of the inaccuracy of the credit report and of

Plaintiff Anderson's demand that Defendants delete the erroneous "charge off" on the

discharged debt on his credit report when Plaintiff called Defendants and requested that they

remove the "charge off" on September 22, 2014. Even after the notice, Defendants took no

action to correct Plaintiff Anderson's credit information.

28.    The erroneous "charge off" remains on the Plaintiff Anderson's credit reports.

29.    At some point in time, currently unknown, Defendants assigned Plaintiff

Anderson's debt to a third party.

30.    Upon information and belief, Defendants agree to act as agent for the third party

in the collection of such debt. As agent, Defendants forward to the third party all amounts

collected by Defendants on debts sold to the third party.

31.    Defendants also have a direct financial interest in the collection of Plaintiff

Anderson's discharged debt. Upon information and belief, Defendants keep a percentage of all

the amounts collected by Defendants on debts sold to the third party that are collected by

Defendants.

32.    In addition, Defendants have another direct financial interest in the collection of

Plaintiff Anderson's discharged debt because third party purchasers are willing to pay more for

Defendants' discharged debt portfolio because they know they can collect on discharged debts.

33.     Plaintiff Anderson's credit reports list the subject debt only in the name of "Credit One Bank," not in the name of any third party. No third party debt buyer is listed anywhere on Plaintiff Anderson's credit reports.

34.     Upon information and belief, the credit reporting agencies will not permit the third parties to make any change in a tradeline listing Defendants as the creditor.

35.     Thus, Defendants are aware that only they can effect a change in Plaintiff Anderson's tradeline to correctly reflect that the debt has been discharged in bankruptcy. Yet, they continue their policy of not updating credit reports and have refused Plaintiff Anderson's request to do so.

36.     Defendants' refusal to correct the tradeline referring to this discharged debt has an adverse effect on Plaintiff Anderson because he is being denied his fresh start provided by the bankruptcy discharge and he is aware that his ability to obtain credit, housing, students loans or employment is adversely affected by the erroneous credit information.

## THE CLASS INCLUDING THE PLAINTIFF

37.     Plaintiff repeats and realleges the allegations in Paragraphs 1 - 36 as if fully set forth herein.

38.     Defendants are creditors regularly engaged in the business of extending credit to Plaintiff and other members of the Class.

39.     In the ordinary course of business, Defendants' debtors who are enduring financial hardship fall behind on their payments on Defendants' credit accounts. Prior to the filing of any personal bankruptcies, Defendants, their collection agencies or delinquent debt companies that purchase Defendants' debt, act to collect these past due debts by threatening in dunning letters to place a "charge off" or other similar "past due" notations on the debtors' credit

reports.  Said letters threaten to ruin the debtors' credit unless they pay the past due debt.

Defendants, their debt collectors and delinquent debt companies that purchase Defendants' debt

also act to collect these past due debts by promising in dunning letters to remove the "charge off"

or other "past due" notations on the debtors' credit reports to show that the past due debts have

been paid if the debts are paid.

40.    In the ordinary course of business, Defendants issue reports to credit reporting

agencies as to the current status of debts incurred by individuals whom Defendants have

extended credit.  They are also entities which regularly and, in the ordinary course of business,

furnish information to one or more credit reporting agencies about their transactions and

experiences with consumers.

### DEFENDANTS HAVE KNOWLEDGE OF THE DISCHARGE OF PLAINTIFF'S DEBT AND THAT OF OTHER CLASS MEMBERS

41.    Defendants have knowledge of when their past due debts and delinquent accounts

are discharged because they receive a discharge notice from the U.S. Bankruptcy Court.

Defendants received such notice of the discharge of Plaintiff's debts to Defendants.

42.    Since 2004, upon information and belief, Defendants have had knowledge of the

fact that a very large number of discharged debtors have notified them of legal claims including

lawsuits alleging that the Defendants have a willful policy of not updating sold accounts and

certain other accounts to remove the charge off or other negative information from their credit

reports in violation of the discharge injunction.

43.    Upon information and belief, Defendants, and the responsible individuals who

were or are in authority to change the Defendants' policy for credit reporting policies, were (1)

aware of the knowledge alleged in the foregoing paragraphs and in the other paragraphs of this

complaint; and (2) willfully decided to not update the credit reports of the Plaintiff and the other

class members for the purpose of obtaining a monetary benefit for Defendants or Defendants

third party purchasers of delinquent debt.

**DEFENDANTS KNOW THAT REPORTING ON PLAINTIFF'S DEBT
AND THAT OF OTHER CLASS MEMBERS IS ERRONEOUS**

44.     Defendants know that credit reporting agencies continue to report Plaintiff's

discharged debt and those of other Class Members as "charged off."  Defendants are aware of

this fact because they regularly report to the credit reporting agencies and have access to this

data, and can learn at any time the status of a tradeline that reports one or more of the Defendants

as the creditor.  They also know because Plaintiff Anderson told Defendants that his report was

erroneous.

45.     Defendants also know that, without correction by Defendants, the tradeline will

not be changed because it is not the practice of credit reporting agencies to make such changes if

the debt has been transferred by the original creditor.

46.     Further, upon information and belief, Defendants have specific knowledge that

the information in the credit reports will not be changed unless they do so because they have

agreements with the purchasers of delinquent debt that the purchasers of such debt will not

change credit lines that list any of Defendants as the creditor.

47.     Defendants also continue to engage in regular transactions with debtors whose

debt has been sold to third-party purchasers because Defendants forward to such purchasers

payments they received on sold debts.  Defendants know that a significant amount of payments

will be made to them, rather than the third-party purchasers, because the tradelines remain in the

name of "Credit One Bank".  The name of the third party debt purchasers generally does not

even appear on the credit reports just as no debt purchaser appears on the Plaintiff's credit

reports in this case.

9

48.     Upon information and belief, the credit reporting agencies will not permit third party debt purchasers to make any change in any tradelines for accounts listed by the original creditors.  In this case, the original creditor on the tradeline is "Credit One Bank."  Thus, Defendants have knowledge that the credit information that they have placed on Plaintiff's and other Class Members' credit reports is and continues to be inaccurate.

### DEFENDANTS HAVE THE ABILITY TO CORRECT THEIR REPORTING ON THE STATUS OF PLAINTIFF'S ACCOUNT AFTER THEY RECEIVED NOTICE OF A BANKRUPTCY DISCHARGE

49.     Defendants have the ability to correct or delete the credit information that indicates that Plaintiff's subject debt is still "charged off."  Banks and other lending institutions such as Defendants have the ability to delete or correct erroneous tradelines, even when those debts have been transferred to third parties.

50.     Many banks and other creditors routinely delete or correct tradelines to reflect discharges in bankruptcy, even when those debts have been transferred.  Defendants know they have the ability to correct these tradelines but have continued to not update their credit reports and refused the requests of the Plaintiff and all other Class Members who have asked them to do so.

### DEFENDANTS' CONDUCT IS WILLFUL

51.     Despite the fact that Defendants have received notice of the discharge of Plaintiff's and each Class Member's debt to Defendants, Defendants have a deliberate policy of not notifying credit reporting agencies that debts formerly owing to Defendants are no longer "charged off" or currently still due and owing because they have been discharged in bankruptcy. As result of Defendants' policy of not updating the accounts at issue with the credit reporting agencies, debts that have been discharged in bankruptcy are listed on Class Members' credit

reports as "past due" and/or "charged off."  These notations clearly indicate to potential

creditors, employers, or other third parties that a Class Member still owes a debt and that debt

may be subject to collection.  These notations adversely affect Plaintiff's and every Class

Member's ability to obtain credit or employment and have the inherent coercive effect of

inducing Plaintiff and all other Class Members to make payment on the debt.

52.     Defendants have willfully continued the policy of not updating the Plaintiff's

credit reports and the credit reports for all members of the prospective class until the present day.

53.     On information and belief, other large credit card issuers update their sold

accounts to reflect that the credit account was discharged in virtually every case.

54.     Many debtors whose debts have been discharged in bankruptcy have advised

Defendants of their failure to update the information on their credit reports to show that their

debts have been discharged to bankruptcy.  These debtors have requested that Defendants

remove the past due notations from their credit reports.  Defendants have refused to do so.

55.     Defendants have a deliberate policy of refusing the debtors' requests to remove

"charge offs" and other similar "past due" notations from Defendants' debts that were sold prior

to the filing of the bankruptcy from the debtors' credit reports.  As a result, the credit reports of

these individuals and of all Class Members incorrectly show their indebtedness to Defendants to

be collectible.

56.     Even in response to notices from Class Members that information contained in

their credit reports was inaccurate, Defendants have refused to correct erroneous credit

information.  In fact, Defendants have advised former debtors that, unless they pay the

discharged debt, the credit reports must reflect that the debt was "charged off" or similar

language for seven (7) years.  This policy of refusing all requests by discharged debtors who ask

that that Defendants remove charge offs from their credit reports independently establishes that

Defendants are willfully acting to collect discharged debts by not updating credit reports.

57. Upon information and belief, Defendants have also received requests from time to

time from the credit reporting agencies that Defendants verify that the debt owed by Plaintiff and

Class Members were discharged in bankruptcy to which Defendants have responded that the

debts were still due and owing, despite Defendants' knowledge that such debts have in fact been

discharged in bankruptcy.

58. Defendants know that the existence of such inaccurate information in the Class

Members' credit reports would damage the Class Members' credit ratings, including that of

Plaintiff, and their ability to obtain new credit, a lease, a mortgage or employment, all of which

may be essential to reestablishing their life after going through bankruptcy.

59. Defendants have chosen not to advise the credit reporting agencies of the fact that

Plaintiff's and other Class Members' debts have been discharged because Defendants continue to

receive payment or a monetary benefit either directly or indirectly on discharged debts. This

policy has been applied to Plaintiff, even though Defendants know that only they can correct the

erroneous credit information relating to Plaintiff. This results from the fact that Class Members,

including Plaintiff, in order to obtain favorable credit or credit at all, often feel it necessary to

pay off the debt despite its discharge in order to remove the inaccurate information from their

credit reports.

60. This belief is intentionally reinforced by Defendants themselves when Class

Members contact Defendants asking them to correct the erroneous credit information. Thus,

upon information and belief, when a Class Member needs to rent a car, obtain employment or

rent an apartment, or other similar transactions, and they are advised by Defendants that

Defendants will not remove the erroneous information unless they pay the debt, Class Members

often pay that debt despite the fact that it has been discharged in bankruptcy.  Thus, Defendants

know that they are obtaining repayment on debts that have been discharged in bankruptcy.

61.     Class Members often believe that they must pay the debt in order to remove it

from the credit reports because they are often advised prior to bankruptcy by Defendants and

collection agencies that, if their debt is marked as charged off, it will dramatically affect their

credit rating and will severely impact their ability to receive credit in the future.

62.     The Plaintiff is in possession of collection letters mailed by Defendants to class

members – prior to the bankruptcy filing – stating that "charge offs" will ruin their ability to

obtain credit and conversely promising to remove the "charge off" if they pay the delinquent debt

in full.  Consequently, Defendants are fully aware that their deliberate failure to update a

discharged debtor's discharged account coerces the debtor to pay said account.

63.     Defendants have adopted a pattern and practice of failing and refusing to update

credit information with regard to debts discharged in bankruptcy because they sell those debts

and profit by the sale.  Defendants know that if the credit information is not updated many Class

Members will feel compelled to pay off the debt even though it is discharged in bankruptcy.  The

purchasers of Defendants' delinquent debt are aware of the foregoing facts.  Thus, purchasers of

Defendants' debt know, and are willing to pay more for the fact that, purchasers will be able to

collect portions of Defendants' sold debt despite the discharge of that debt in bankruptcy.

64.     Acting as agent for the third-party purchasers to whom Defendants have sold the

debts, Defendants forward to such purchasers payments received from former debtors who feel

compelled to pay off discharged debts as the only means of correcting the erroneous credit

information that Defendants refuse to correct and upon information and belief, Defendants keep a percentage of amounts received on discharged debts.

65.     Defendants therefore have a clear economic incentive to violate the discharge injunction of § 524(a)(2).

66.     In addition, Defendants are on notice that this Court and others have found that Defendants' conduct is likely in violation of § 524(a)(2).  *See McKenzie-Gilyard v. HSBC Bank Nevada, N.A.,* 388 B.R. 474 (Bankr. E.D.N.Y. 2007); *Torres v. Chase Bank USA, N.A.*, 367 B.R. 478 (Bankr. S.D.N.Y. 2007); *In Re Russell*, 378 B.R. 735 (Bankr. E.D.N.Y. 2007).  Despite this notice, Defendants have willfully, recklessly or negligently failed to correct their practice of failing to update credit information of Class Members including Plaintiff to show that debts have been discharged in bankruptcy.

67.     Defendants' actions constitute a violation of 11 U.S.C. § 524(a)(2), which provides that a discharge in bankruptcy operates as an injunction against the commencement or continuation of an action, the employment or process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor.

68.     Defendants' conduct is in bad faith, is vexatious and oppressive and is done with full knowledge that it is in violation of the law.

69.     Defendants' persistent refusal to provide updated credit information to the credit reporting agencies that Plaintiff's and Class Members' past due debts to Defendants are no longer "charged off" or "past due" because they have been discharged in bankruptcy is knowing and willful and constitutes a contempt of the statutory injunction of § 524(a)(2).

## THIS ACTION SHOULD BE MAINTAINED AS A CLASS ACTION

70.    Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 - 69 as if

fully set forth herein.

71.    Plaintiff seeks to maintain this action as a class action representing a class

consisting of the following:

> All individuals who, after May 3, 2007, have had a consumer credit report
> relating to them prepared by any of the credit reporting agencies in which one
> or more of their Tradeline accounts or debts with Defendants was not
> reported as discharged despite the fact that such debts had been discharged as
> a result of their bankruptcy under Chapter 7 of the Bankruptcy Code.

72.    Assertainability / Numerosity:  This Class is ascertainable in that it is comprised

of individuals who can be identified by reference to purely objective criteria contained in the

records of Defendants and the various credit reporting agencies.  On information and belief, there

are many thousands of members of the Class, and therefore would be impractical to bring all or

even a substantial portion of such persons before this Court as individual plaintiff.

73.    Typicality:  The claims of the named Plaintiff is typical of the claims of each

member of the Class they seek to represent because:  (1) they all had debts owed to Defendants

that were discharged in Chapter 7 bankruptcy; (2) they have all been injured by Defendants'

refusal to remove the notation "charged off" or "past due/charged off" or similar notations

despite the fact that the debts have been discharged in bankruptcy; and (3) each of their claims is

based upon the same legal theory, *i.e*., that Defendants have violated the injunction contained in

§ 524(a)(2).

74.    Adequacy of Representation:  Plaintiff is an adequate representative of the Class

he seeks to represent because:  (a) they are willing and able to represent the proposed class and

have every incentive to pursue this action to a successful conclusion; (b) their interests are not in

any way antagonistic to those of the other Class Members; and (c) they are represented by

counsel experienced in litigating significant bankruptcy issues, including the issues specifically

raised in this action, and who has represented literally hundreds of individuals who have

experienced similar failures by Defendants and other institutions to comply with the injunction

of § 524(a)(2).

76.    Commonality:  There are several questions of law and fact common to all

members of the Class.  The primary question of law and fact that is common to all members of

the class is whether Defendants, in failing and/or refusing to update and correct the credit reports

of Class Members, have acted  knowingly and willfully in violation of  § 524(a)(2).

76.    Propriety of Class Certification Under Fed. R. Civ. P. 23(b)(2) and Bankruptcy

Rule 7023:  Class certification of all of Plaintiff's claims is appropriate under Fed. R. Civ. P.

23(b)(2) and Bankruptcy Rule 7023 because Defendants have acted and/or refused to act on

grounds generally applicable to the entire class, thereby making declaratory and final injunctive

relief appropriate.  Such generally applicable grounds consist of Defendants' conduct in failing

and refusing to update and correct the current reports of Class Members to properly designate

that the Class Members' debts have been discharged in bankruptcy pursuant to the order of this

and similar courts.

77.    Propriety of Class Certification Under Fed. R. Civ. P. 23(b)(3) and Rule 7023:

Class certification of the Plaintiff's claims for willful failure to update or correct the credit

reports of Class Members in violation of § 524(a)(2), is appropriate under Fed. R. Civ. P.

23(b)(3) and Bankruptcy Rule 7023.  The common question of law and fact relating to Plaintiff's

claims predominate over any questions affecting only individual Members of the Class.

Moreover, the class action vehicle is superior to other available methods for the fair and efficient

adjudication of these claims.  For the overwhelming majority of Members of the Class, the

amount of any potential recovery is too small to justify the cost of prosecuting each claim

individually.

78.     Moreover, Defendants' violation of the injunction of § 524(a)(2) is widespread

and literally nationwide.  Further, requiring each Class Member to pursue his or her claim

individually would entail needless duplication of effort, would waste the resources of both the

parties and the Court, and would risk inconsistent adjudications.

## FIRST CAUSE OF ACTION

### Failure to Abide By the Injunction Contained In § 524(a)(2)
### (On Behalf of Plaintiff and All Class Members)

79.     Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 - 78 as if

fully set forth herein.

80.     By knowingly and willfully failing to update the credit reports of Class Members

to signify the debts owing to Defendants have been discharged in bankruptcy Defendants have

violated § 524(a)(2) and are in contempt of this Court.

81.     Both pursuant to its inherent authority and pursuant to § 105 of the Bankruptcy

Code, this Court may award appropriate declaratory and injunctive relief and award

compensatory and punitive damages, attorney's fees and costs for Defendants' violation of §

524(a)(2).

**WHEREFORE**, Plaintiff respectfully prays:

1.     That the practices of Defendants be declared to be in violation of the rights of

Plaintiff and Class Members under the Bankruptcy Code and a contempt of the statutory

injunction set forth in § 524(a)(2).

2.       That a permanent injunction be entered requiring Defendants to immediately correct and update the credit reporting records of all Class Members by removing any negative notations such as "charge off", "past due", "late" or any other notations that indicate that the discharged accounts have a current status of being still due and owing and update all such records on a permanent basis.

3.       That the Court enter an Order certifying all the claims of the Class alleged herein pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) and Bankruptcy Rule 7023 for willful violation of the injunction set forth in § 524(a)(2).

4.       That this Court order that Defendants be held in contempt of court for their willful violation of the injunction set forth in § 524(a)(2), and that they be assessed damages, fines, penalties and punitive damages in amounts to be determined by the Court.

5.       That Defendants be ordered to disgorge and pay to the individual Class Members all funds received by Defendants or by any purchasers of Defendants' debt on debts that were discharged in bankruptcy or were the subject of a bankruptcy proceeding before such payment was made by the Class Members.

6.       That this Court award Plaintiff and the Class the costs of this action together with reasonable attorney's fees as the Court may determine.

7.       That the Plaintiff and Class Members be awarded such other and further relief as may be found appropriate and as the Court may deem just and equitable.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 28, Plaintiff hereby demand a trial by jury on all issues so triable if this Court determines that any issue in this matter is appropriate for a jury trial.

Date:  January 30, 2015                    By:    /s/ *Adam R. Shaw*

**BOIES, SCHILLER & FLEXNER LLP**
George F. Carpinello
Adam R. Shaw
30 South Pearl St., 11th Floor
Albany, NY 12207
(518) 434-0600

**CHARLES JUNTIKKA & ASSOCIATES LLP**
Charles Juntikka
1250 Broadway, 24th Floor
New York, NY  10001
(212) 315-3755

*Attorneys for Plaintiff Orinn S. Anderson*