UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X

In re:                                                            Chapter 7

    Orin S. Anderson, aka Orinn Anderson,
    aka Orinn Scott Anderson
                              Case No. 14-22147 (rdd)
         Debtor.                               Hon. Robert D. Drain

-----------------------------------------------------X

In re:

    Orin S. Anderson, aka Orinn Anderson,
    aka Orinn Scott Anderson,                     Adv. Case No. 15-08214 (rdd)
                              Hon. Robert D. Drain
        Debtor and Plaintiff
        on behalf of himself
        and all others similarly
        situated,

v.

CREDIT ONE BANK, N.A. AND
CREDIT ONE FINANCIAL,

        Defendants.

-----------------------------------------------------X

**<u>CREDIT ONE BANK, N.A. AND CREDIT ONE FINANCIAL'S
NOTICE OF MOTIONS
TO COMPEL ARBITRATION,
TO STRIKE CLASS ALLEGATIONS,
TO DISMISS OR STAY</u>**

PLEASE TAKE NOTICE that on March 3, 2015, Credit One Bank, N.A. ("Credit One") and Credit One Financial ("COF") filed their Motions to Compel Arbitration, to strike class allegations, to dismiss or stay (the "Motions") in the above-captioned adversary proceeding.

PLEASE TAKE FURTHER NOTICE that a hearing to consider the Motions will be held before the Honorable Robert D. Drain of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), 300 Quarropas Street, Courtroom 118, White Plains, New York 10601-4140, on May 5, 2015 at 10:00 a.m. EDT.

PLEASE TAKE FURTHER NOTICE that any responses or objections to the Motion(s) must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court for the Southern District of New York, and shall be filed with the Bankruptcy Court electronically by registered users of the Bankruptcy Court's case filing system (the User's Manual for the Electronic Case Filing System can be found at www.nysb.uscourts.gov, the official website for the Bankruptcy Court) and, by all other parties in interest, on a 3.5 inch disk, in text-searchable Portable Document Format (PDF), WordPerfect or any other Windows-based word processing format (in either case, with a hard-copy delivered directly to Chambers), and shall be served upon the undersigned counsel to Credit One: Michael D. Slodov, Sessions, Fishman, Nathan & Israel, LLC., 15 E. Summit Street, Chagrin Falls, Ohio 44022, so as to be actually received at a time to be determined by the Bankruptcy Court. Only those responses that are timely filed, served and received will be considered at the Hearing.

Date: March 3, 2015

Respectfully submitted,


/s/ Michael D. Slodov
Sessions, Fishman, Nathan & Israel, LLC
15 E. Summit Street
Chagrin Falls, OH 44022-2709
(440) 318-1073
(fax) (216) 359-0049
(email) mslodov@sessions-law.biz


Aaron R. Easley, Esq. (ae9922)
SESSIONS, FISHMAN, NATHAN & ISRAEL, LLC
3 Cross Creek Drive
Flemington, NJ  08822
Telephone: (908) 237-1660
Facsimile: (908) 237-1663
Email: aeasley@sessions-law.biz
*Counsel for Defendants,*
*Credit One Bank N.A. and Credit One Financial*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X

In re:

    Orin S. Anderson, aka Orinn Anderson,
    aka Orinn Scott Anderson

              Debtor.

-----------------------------------------------------X

In re:

    Orin S. Anderson, aka Orinn Anderson,
    aka Orinn Scott Anderson,

        Debtor and Plaintiff
        on behalf of himself
        and all others similarly
        situated,

    v.

    CREDIT ONE BANK, N.A. AND
    CREDIT ONE FINANCIAL,

          Defendants.

-----------------------------------------------------X

Chapter 7

Case No. 14-22147 (rdd)
Hon. Robert D. Drain

Adv. Case No. 15-08214 (rdd)
Hon. Robert D. Drain


## CREDIT ONE BANK, N.A. AND CREDIT ONE FINANCIAL'S MOTIONS TO COMPEL ARBITRATION, TO STRIKE CLASS ALLEGATIONS, TO DISMISS OR STAY

## TABLE OF CONTENTS

I.   STATEMENT OF THE CASE ........................................................................ 2

II.  STATEMENT OF FACTS ............................................................................ 3

III. ARGUMENT ............................................................................................. 10

   A.  DEFENDANTS ARE ENTITLED TO AN ORDER COMPELLING ARBITRATION OF
   ALL PLAINTIFF'S CLAIMS AND ENTRY OF DISMISSAL. ............................................. 10

      1.  *The Federal Arbitration Act authorizes the Court to compel arbitration.* ................... 10

         (a)  Agreement to Arbitrate. .................................................................... 13

         (b)  Scope of the Agreement. .................................................................. 14

         (c)  Congressional Intent. ...................................................................... 15

      2.  *Defendants are entitled to dismissal for improper venue under Fed. R.Civ. P. 12(b(3).*
         *19*

         (a)  The clause was reasonably communicated to Plaintiff. ............................... 20

         (b)  The clause creates a mandatory provision requiring arbitration. .............................. 20

         (c)  The claims are subject to the agreement. .................................................. 20

         (d)  Plaintiff cannot show enforcement would be unreasonable or unjust. .................... 20

      3.  *Defendants are entitled to an order striking the class allegations pursuant to*
         *Fed.R.Civ.P. 12(f)* ............................................................................. 21

      4.  *Defendants are entitled to an order dismissing the action pursuant to Fed.R.Civ.P.*
         *12(b)(1) and (12(b)(6).* ...................................................................... 23

         (a)  Plaintiff's claims against Credit One Financial should be dismissed because Plaintiff
         did not obtain leave to join Credit One Financial, and it was improperly joined. ............ 25

         (b)  This Court lacks subject matter jurisdiction to entertain an adversary action for
         violation of the discharge injunction ....................................................... 26

         (c)  This Court lacks subject matter jurisdiction to enter declaratory or injunctive relief
         for an alleged violation of the discharge injunction ....................................... 27

         (d)  Plaintiff fails to state a claim ............................................................. 28

   B.  DEFENDANTS ARE ENTITLED TO THE ENTRY OF A STAY ................................. 29

IV. CONCLUSION ........................................................................................ 32

## <u>TABLE OF AUTHORITIES</u>

**Federal Statutes**

11 U.S.C. § 524 ........................................................................................ 26, 27, 28

11 U.S.C. § 524(a)(2) .................................................................................. 17, 18, 27

15 U.S.C. § 1681s–2(a) ......................................................................................... 18

15 U.S.C. § 1681s–2(a)(1) .................................................................................... 18

15 U.S.C. § 1681s–2(a)(2) .................................................................................... 18

15 U.S.C. § 1681s–2(a)(8) .................................................................................... 18

15 U.S.C. § 1681s–2(c)(1) .................................................................................... 18

15 U.S.C. § 1681s–2(d) ........................................................................................ 18

28 U.S.C. § 1334(b), (e) ....................................................................................... 16

28 U.S.C. § 1409(a) .............................................................................................. 16

28 U.S.C. § 157(b) ................................................................................................ 16

28 U.S.C. § 1658(a) .............................................................................................. 23

9 U.S.C. § 2 .......................................................................................................... 11

9 U.S.C. § 3 .......................................................................................................... 30

9 U.S.C. § 4 .......................................................................................................... 11

**Other Authorities**

1 McLaughlin on Class Actions § 3:4 (8th ed.) ................................................. 22

5 Moore's Federal Practice § 23-145 (3d ed.2007) ........................................... 22

**Rules**

Fed. R. Bankr.P. 7001 .......................................................................................... 27

Fed.R. Bankr.P.  Rule 9014(a) ............................................................................. 26

Fed.R. Bankr.P. 9014(a) ....................................................................................... 27

Fed.R. Bankr.P. Rule 9020 .................................................................................. 26

Fed.R.Civ.P. 12(b)(1) ........................................................................................... 23

Fed.R.Civ.P. 12(b)(6) ........................................................................................... 23

Fed.R.Civ.P. 12(f) ................................................................................................ 21

Fed.R.Civ.P. Rule 12(b)(3) .................................................................................. 19

Fed.R.Civ.P. Rule 12(f) ........................................................................................ 21

Fed.R.Civ.P. Rule 23(c)(1)(A) ............................................................................. 21

Fed.R.Civ.P. Rule 23(d)(1)(D) ............................................................................ 21

Fed.R.Evid. 201(b) ................................................................................................ 25

Under Fed. R. Civ. P. 12(b)(6) ............................................................................... 24

**Federal Cases**

*Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265 (1995) ................................ 11, 30

*American Exp. Co. v. Italian Colors Restaurant*, 133 S.Ct. 2304 (2013) ........................ 12, 15, 23

*Anderson v. Rochester–Genesee Regional Transp. Auth.*, 337 F.3d 201 (2d Cir.2003) .............. 25

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ................................................................. 24

*AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011) ..................................... 12, 13, 15, 23

*ATSI Communications, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87 (2d Cir. 2007) ............................ 24

*Barrientos v. Wells Fargo Bank, N.A.*, 633 F.3d 1186 (9th Cir.2010) ............................ 26, 27, 28

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................. 24

*Brodeur v. City of New York*, No. 04–CV–1859, 2005 WL 1139908(E.D.N.Y. May 13, 2005) . 24

*Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006) ................................ 11

*Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151 (11th Cir.1991) .......................... 29

*Chen–Oster v. Goldman, Sachs & Co.*, 877 F.Supp.2d 113 (S.D.N.Y.2012) ............................ 21

*Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52 (2003) ................................................. 14

*Cohn v. Ritz Transp., Inc.*, No. 2:11–CV–1832, 2014 WL 1577295 (D.Nev. Apr. 17, 2014) ..... 21

*Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42 (2d Cir.1991) ........................................ 24

*Cox v. Zale Delaware, Inc.*, 239 F.3d 910 (7th Cir.2001) ................................................. 26

*Davis v. Wells Fargo Advisors LLC*, 2014 WL 1370278 (D.Ariz. 2014) ................................... 21

*EEOC v. Waffle House, Inc.*, 534 U.S. 279 (2002) ........................................................ 13

*Europcar Italia, S.p.A. v. Maiellano Tours, Inc.,* 156 F.3d 310 (2d Cir.1998) .......................... 30

*Evancho v. Sanofi-Aventis U.S. Inc.,* No. 07-2266, 2007 WL 4546100 (D.N.J. Dec. 19, 2007).. 22

*Executive Benefits Ins. Agency v. Arkison,* 134 S.Ct. 2165 (2014) ............................... 16

*Fullwood v. Wolfgang's Steakhouse, Inc.*, No. 13 Civ. 7174(KPF), 2014 WL 6076733 (S.D.N.Y. Nov. 14, 2014) ...................................................................................... 21

*Gates v. Rohm and Haas Co.,* No. 06-1743, 2007 WL 1366883 (E.D.Pa. May 3, 2007) ........... 22

*Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150 (2d Cir.2006) .................... 24

*Guadagno v. Wallack Ader Levithan Assoc.*, 932 F.Supp. 94 (S.D.N.Y.1996) .................... 23, 24

*In re Belton*, Adv. P. No. 14–08223, 2014 WL 5819586 (Bankr. S.D.N.Y.Nov. 10. 2014).. 17, 31

*In re Cline*, 282 B.R. 686 (W.D. Wash. 2002) ........................................................ 16

*In re Fisher*, 151 B.R. 895 (Bankr. N.D. Ill. 1993) ................................................. 16

*In re Haynes*, 2014 WL 3608891 (Bankr. S.D.N.Y. 2014) ................................... 16, 28, 31

*In re Lenior,* 231 B.R. 662 (Bankr.N.D.Ill.1999) ........................................................ 16

*In re Nassoko,* 405 B.R. 515 (Bankr. S.D.N.Y. 2009) ................................................. 26

*In re Online Travel Co.,* 953 F.Supp.2d 713 (N.D.Tex. 2013) .................................... 21

*In re Torres,* 367 B.R. 478 (Bankr.S.D.N.Y.2007) ...................................................... 28

*In re Winimo Realty Corp.,* 270 B.R. 99 (S.D.N.Y. 2001) ................................... 30, 31

*In re Worthing,* 24 B.R. 774 (Bankr.D.Conn. 1982) ................................................... 26

*Ins. Co. of N. Am. v. NGC Settlement Trustee & Asbestos Claims Mgmt. Corp. (In re Nat'l Gympsum Co.),* 118 F.3d 1056 (5th Cir. 1997) ....................................................... 17

*Iqbal v. Hasty,* 490 F.3d 143 (2d Cir. 2007) .............................................................. 24

*Jaffe v. Capital One Bank,* No. 09 Civ. 4106, 2010 WL 691639 (S.D.N.Y. Mar. 1, 2010) ......... 22

*JLM Industries, Inc. v. Stolt–Nielsen SA,* 387 F.3d 163 (2d Cir.2004)........................ 13

*Joubert v. ABN AMRO Mortgage Group, Inc. (In re Joubert),* 411 F.3d 452 (3rd Cir.2005)...... 26

*Kawasaki Kisen Kaisha Ltd. v. Regal–Beloit Corp.,* 561 U.S. 89 (2010) .................... 19

*Landis v. North Am. Co.,* 299 U.S. 248 (1936).............................................................. 30

*Longman v. Wachovia Bank, N.A.,* 702 F.3d 148 (2d Cir. 2012) ................................. 18

*M/S Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1 (1972).............................................. 19

*Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52 (1995) .......................... 12

*MBNA Am. Bank, N.A. v. Hill,* 436 F.3d 104 (2d Cir.2006) ....................... 15, 16, 17, 19

*Mehler v. Ther Terminix Int'l Co., L.P.,* 205 F.3d 44 (2d Cir.2000) ............................ 13

*Mendy v. JP Morgan Chase & Co.,* No. 12 CIV. 8252 PGG, 2014 WL 1224549 (S.D.N.Y. Mar. 24, 2014) ...................................................................................................................... 18

*Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614 (1985) ............... 15, 19

*Morales v. Trans World Airlines, Inc.,* 504 U.S. 374 (1992) ...................................... 18

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1 (1983)................ 12

*Nelson v. Providian Nat'l Bank (In re Nelson),* 234 B.R. 528 (Bankr.M.D.Fla.1999)................ 16

*New Moon Shipping Co., Ltd. v. MAN B & W Diesel AG,* 121 F.3d 24 (2d Cir.1997) ............... 20

*Orlander v. Staples, Inc.,* No. 13 CIV. 703 NRB, 2014 WL 2933152 (S.D.N.Y. June 30, 2014) 19

*Perry v. Thomas,* 482 U.S. 483 (1987) ...................................................................... 12

*Pertuso v. Ford Motor Credit Co.,* 233 F.3d 417 (6th Cir.2000) ................................. 26

*Phillips v. Audio Active, Ltd.,* 494 F.3d 378 (2d Cir.2007) ........................................ 19

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395 (1967)....................... 12

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank,* 132 S. Ct. 2065 (2012)............ 18

*Robinson v. Gov't of Malay.,* 269 F.3d 133 (2d Cir.2001)........................................... 24

*Roby v. Corp. of Lloyd's*, 996 F.2d 1353 (2d Cir.1993) ................................................................ 19

*Rothman v. Gregor*, 220 F.3d 81 (2d Cir.2000) .......................................................................... 25

*Samuels v. Air Transp. Local 504*, 992 F.2d 12 (2d Cir.1993) ..................................................... 24

*Sanders v. Apple Inc.,* 672 F.Supp.2d 978 (N.D.Cal.2009) ......................................................... 21

*Schenk v. Citibank/Citigroup/Citicorp*, No. 10–CV–5056, 2010 WL 5094360 (S.D.N.Y. Dec. 9, 2010) .............................................................................................................................. 25

*Sea Spray Holdings, Ltd. v. Pali Financial Group, Inc.*,  269 F.Supp.2d 356 (S.D.N.Y. 2003).. 30

*Solow v. Kalikow ( In re Kalikow)*, 602 F.3d 82 (2d Cir.2010) .............................................. 27, 28

*Southland Corp. v. Keating*, 465 U.S. 1 (1984) .......................................................................... 11

*Stern v. Marshall*, 131 S.Ct. 2594 (2011) ................................................................................. 16

*Stolt-Nielsen S.A. v. Animalfeeds Int'l Corp.*, 559 U.S.C. 662, 130 S. Ct. 1758 (2010) ........ 12, 13

*TradeComet.com LLC v. Google, Inc.*, 647 F.3d 472 (2d Cir.2011) ............................................. 19

*Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp .*, 109 F.3d 105 (2d Cir.1997) 24

*Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468 (1989) .......... 12

*Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502 (9th Cir.2002) ................................................... 26

*Wells Fargo Bank, N.A. v. Singleton (In re Singleton)*, 284 B.R. 322 (D.R.I.2002) .................... 16

NOW COME Credit One Bank, N.A. ("Credit One") and Credit One Financial ("COF") (collectively "Defendants"), by and through the undersigned counsel, who pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 2-4, Fed.R. Bankr. P. 7012(b), 12(b)(3) of the Federal Rules of Civil Procedure, hereby move the Court for an Order compelling arbitration. As set forth below, Defendants respectfully move the Court to compel Plaintiff to arbitrate all claims asserted against Defendants in the Complaint, as the parties to this action entered into an agreement that claims related to collection or credit reporting would be resolved in binding arbitration on an individual basis. Because this action is not properly venued pursuant to the parties' forum selection clause, dismissal is required.

Further, pursuant to Fed.R. Bankr. P. 7012(b), and Fed. R.Civ. P. 12(f), along with Fed.R.Bankr. P. 7023, and Fed.R.Civ.P. 23(c)(1)(A) and 23(d)(1)(D), and the FAA, Defendants hereby move this honorable Court to strike the class allegations from Plaintiff's complaint. An order striking the class allegations is required because it is apparent that Plaintiff waived the right to proceed with any claims against Defendants on other than an individual basis; and because the claims are time barred pursuant to 28 U.S.C. § 1658(a).

In addition, pursuant to Fed.R. Bankr. P. 7012, 7021, and Fed.R.Civ.P.12(b)(1) and 12(b)(6) and 21, Defendants pray for dismissal of Plaintiff's claims because: (a) Plaintiff did not seek or obtain leave to file an action against any other entity other than Credit One Bank, N.A., and Credit One Financial, by whom Credit One Bank, N.A. is wholly owned, was improperly joined; (b) 28 U.S.C. § 1334(c) prohibits any court other than the district court in which the case under Title 11 is commenced or pending for that matter—from exercising jurisdiction over property of the estate, and the claims raised by plaintiff on behalf of the putative members of the debtor class are "property" of each individual debtor's bankruptcy estate; (c) this court lacks

1

subject matter jurisdiction to entertain non-core class action claims involving the bankrupt estates of other debtors and debtor estates beyond the territorial boundaries of the Southern District of New York; (d) there is no private right of action for an alleged violation of the discharge injunction, and (e) the relief sought in this action in the form of declaratory and injunctive relief is not available.

Finally, pursuant to 9 U.S.C. § 3, Defendants having elected to compel arbitration of Plaintiff's claims, are entitled to entry of a stay of these proceedings pending completion of the arbitration. Further, recognizing that the Court has addressed and rejected many of these arguments in *In re Belton* [1] and *In re Bruce*,[2] and both of those cases are presently pending on appeal before the Second Circuit, Defendants also respectfully request the Court exercise its inherent authority to control its docket, and enter a stay of these adversary and 2004 proceedings, pending the outcome of the two direct appeals pending before the Second Circuit. Because a decision by the Second Circuit in those appeals is likely to be dispositive of most of the issues raised by these motions, and to conserve judicial resources, Defendants request a stay the instant proceedings pending the outcome of the appeals in *In re Belton* and *In re Bruce*.

## I.    STATEMENT OF THE CASE

Debtor Orin S. Anderson filed a voluntary chapter 7 case with this court on January 31, 2014, Case No. 14-22147. Bankr. Doc. No. 1. On May 6, 2014, the Debtor received a discharge and the case was closed on May 9, 2014. See Bankr. Doc. Nos. 9, 10. On October 17, 2014, Debtor moved to reopen the case, and filed an amended motion on October 20, 2014. See

---

[1] *Nyree Belton v. GE Capital Consumer Lending A/K/A GE Money Bank*, Adv. Proc. No. 14-82232d Cir. Case No. 15-75. The Court's *In re Haynes* decision, while not directly appealed, was relied on by the Court in deciding both *In re Belton* and *In re Bruce*. *Haynes v. Chase Bank USA, N.A. (In re Haynes)*, Adv. Proc. No. 13-8370.
[2] *Bruce v. Citigroup, Inc.*, Adv. Proc. No. 14-8224 (Bankr. S.D.N.Y.), 2d Cir. No. 15-19.

Bankr.Doc. Nos. 12, 13. The motion to reopen specifically alleged that reopening was sought to pursue an adversary complaint against Credit One Bank, N.A. only. Bankr. Doc. No. 13, passim. After hearing, on December 12, 2014, the Court granted the Debtor's motion. Bankr.Doc. No. 26.  The Court's order specified that the bankruptcy case was reopened to "permit the Debtor to commence and pursue an adversary proceeding... against Credit One Bank with respect to alleged violations of the Debtor's discharge injunction." *Id.*

On January 30, 2015, Debtor filed an adversary complaint denominated as an Amended Class Action Adversary Complaint, wherein Debtor named as Defendants Credit One Bank, N.A., and Credit One Financial. Adv. Case No. 15-08214, Doc. No. 1. The complaint alleges that Credit One violated the discharge injunction, 11 U.S.C. § 524. Adv. Case No. 15-08214, Doc. No. 1 ¶¶ 1, 80-81. This motion followed.

## II.    STATEMENT OF FACTS

Debtor opened a credit card account in 2002, defaulted in repayment in 2011, the account was closed December 22, 2011, and the account was charged off and sold in May of 2012. Bankr. Doc. No. 1, Schedule F, p. 2; Bankr. Doc. No. 13-1, p. 2; Doc. No. 13-2, p. 3, 4, 6, 7; Adv. Doc. No. 1, ¶¶ 19-30; Declaration of Scott ¶¶ 8-12, 25. As reflected in the documents annexed to the Debtor's motion to reopen, excerpted credit reports from Transunion and Equifax, Credit One last reported any information regarding the debt to the credit reporting agencies **May 11, 2012**, when it sold the account. Bankr. Doc. No. 13-2, p. 3, 4, 7; Declaration of Scott ¶¶ 25-26. The last reported information from May of 2012 reflected on those documents indicated the debt was charged off, sold to another lender, and had a zero balance. Bankr. Doc. No. 13-2, p. 3, 4, 7.

3

Aside from identifying Credit One Financial as a party Defendant, and collective references throughout the Complaint to "Defendants," the complaint contains no facts of substance specific to Credit One Financial. Adv. Doc. No. 1 ¶¶ 6-7.

The complaint alleges that Plaintiff incurred a debt to "Defendants," Adv. Doc. No. 1 ¶ 19; that in May of 2012, Credit One Bank filed credit information with credit reporting agencies noting a delinquency, *id*. at ¶ 20; Plaintiff filed for bankruptcy and obtained a discharge May 8, 2014, *id*. at ¶¶ 23-24; in August, 2014, upon obtaining his credit report, Plaintiff observed "the words 'charged off' next to the discharged account at issue," without an "included in bankruptcy" notation, *id*. at ¶ 25; Defendants refused to correct the "error," *id*. at ¶¶ 26-28. Beyond these credit report allegations, the complaint goes on to allege, that Defendants "assigned" the debt to a third party, but "act as an agent" for the assignee, and forward "all amounts collected by Defendants on debts sold to the third party," have "a direct financial interest in the collection of Plaintiff Anderson's discharged debt," and "keep a percentage of all the amounts collected by Defendants on debts sold to the third party that are collected by Defendants." *Id*. at ¶¶ 29-31. Finally, the complaint alleges Defendants have a financial interest in collection of the Plaintiff's account because third party debt buyers are willing to pay more for "discharged" debts "because they know they can collect on discharged debts." *Id*. at ¶ 32.

Plaintiff opened his credit card account with First National Bank of Marin, on October 17, 2002. Declaration of Scott, ¶ 9. First National Bank of Marin changed its name to Credit One Bank, N.A., in 2005. Declaration of Scott, ¶ 4. At the time the account was opened in 2002, the parties entered into a binding contract setting forth their respective rights, duties and responsibilities. Declaration of Scott, ¶¶ 8-12, Declaration Exhibit A, B.  Plaintiff used the account from October 17, 2002 until July, 2011, subject to the terms of the parties' agreement,

4

after which Plaintiff defaulted in repayment. Declaration of Scott, ¶ 14-20. The agreement[3]

provided in pertinent part:

### FIRST NATIONAL BANK *of Marin*
### PARTIALLY SECURED
### VISA/MASTERCARD CARDHOLDER
### AGREEMENT, DISCLOSURE STATEMENT
### AND ARBITRATION AGREEMENT

This Agreement, together with the application you previously signed, governs the use of your VISA® or Mastercard® Account issued by First National Bank of Marin (the "Account," "Card" or "Card Account"). The words "you," "your" and "Cardholder(s)" refer to all persons, jointly and severally, authorized to use the Card Account; and "we," "us," "our," and "FNBM" **refer to First National Bank of Marin, its successors or assigns**. By requesting and receiving, signing or using your Card, you agree as follows: **IMPORTANT NOTICE:** Please read the Arbitration Agreement portion of this document for important information about your and our legal rights under this Agreement.
\*      \*      \*

**11. MINIMUM PAYMENTS:** ... **You are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.[4]**
\*      \*      \*

**17. DEFAULT:** You will be in default under this Agreement if any of the following events occur: ...(2) you fail to make any required payment when due [....] [omit - ;  (3) you die, become insolvent, file a petition in bankruptcy or similar proceeding, or are adjudged bankrupt; (4) you provide any false or misleading financial or biographical information to FNBM; (5) any representation or warranty you make to FNBM is false or breached; (6) a guardian, conservator, receiver, custodian or trustee is appointed for you; (7) you are generally not paying your debts as they become due; (8) the Bank reasonably believes there has been a material adverse change in your financial condition; (9) you violate any term of this Agreement; or ( 0) any other creditor tries to take the assets in the collateral Savings Account (including a garnishment attempt). Upon your default, FNBM can close or refuse to renew your Account, demand the return of your card(s), declare your entire balance immediately due and payable, and initiate collection activity, all without prior notice or demand. You promise to pay any collection costs and attorneys' fees, including our inhouse attorneys' costs, that FNBM incurs as a result of your default.]
\*      \*      \*

---

[3] During the account term from 2002 to 2011, various paragraphs of the cardholder agreement were amended. Declaration of Scott, ¶ 15-19, Exhibits D-G.  Each applicable change in terms from the 2002 original terms is noted in the footnotes below. Where applicable, the language of the amended provision is substituted for the original text, and denoted by quotation marks.
[4] Paragraph 11 was amended in 2003, 2005, Declaration of Scott, ¶ 15-16, Declaration Exhibit D & E, but the language quoted above was not changed.

"**23. CHANGES IN AGREEMENT TERMS:** We can change any term of this Agreement, including the rate of the finance charge or the manner in which the finance charges are calculated, or add new terms to this Agreement, at any time upon such notice to you as is required by law."[5]

\*        \*        \*

**27. GOVERNING LAW:**[6] "This Agreement is governed by and interpreted in accordance with the laws applicable to national banks, and, where no such laws apply, by the laws of the State of Nevada, excluding the conflicts of law provisions thereof, regardless of your state of residence."

**28. ARBITRATION AGREEMENT:** The Arbitration Agreement provided to you with this Agreement governs the enforcement by you and us of your and our legal rights under this Agreement.

\*        \*        \*

## ARBITRATION

**PLEASE READ THIS PROVISION OF YOUR CARD AGREEMENT CAREFULLY. IT PROVIDES THAT EITHER YOU OR WE CAN REQUIRE THAT ANY CONTROVERSY OR DISPUTE BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY AND THE RIGHT TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING. IN ARBITRATION, A DISPUTE IS RESOLVED BY A NEUTRAL ARBITRATOR INSTEAD OF A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN RULES APPLICABLE IN COURT. IN ARBITRATION, YOU MAY CHOOSE TO HAVE A HEARING AND BE REPRESENTED BY COUNSEL**

*Agreement to Arbitrate:*

You and we agree that either you or we may, without the other's consent, **require** that **any controversy or dispute between you and us** (all of which are called "Claims"), be submitted to mandatory, binding arbitration. This arbitration provision is made pursuant

---

[5] Paragraph 23 was amended in 2005, Declaration of Scott, ¶ 16, Declaration Exhibit E. Original paragraph 23 provided:

> **23. CHANGES IN AGREEMENT TERMS:** We can change any term of this Agreement, including the rate of the finance charge or the manner in which the finance charges are calculated, at any time upon such notice to you as is required by law. At our option, any change will apply both to your new activity and to your outstanding balance when the change is effective. If you do not wish to be subject to the change, you must notify FNBM in writing prior to the effective date of the change, pay your Account balance in full, and close your Account. To do so, you can write us at Bank Card Center, P.O. Box 90189, Henderson, NV 89009-0189.

Declaration Exhibit B.

[6] Paragraph 27 was amended in July and December 2009, and effective January 2010. Declaration of Scott, ¶ 18-19, Exhibits F &G. Original paragraph 27 provided: "This Agreement is governed by and interpreted in accordance with the laws of the State of Nevada, regardless of your state of residence." Declaration Exhibit B.

to a transaction involving interstate commerce, and shall be governed by, and enforceable under, the Federal Arbitration Act (the "FAA"), 9 U.S.C. §1 et seq., and (to the extent State law is applicable), the State law governing this Agreement.

***Claims Covered:***

Claims subject to arbitration include, but are not limited to, disputes relating to the establishment, terms, treatment, operation, handling, limitations on or termination of your account; any disclosures or other documents or communications relating to your account; any transactions or attempted transactions involving your account, whether authorized or not; billing, billing errors, **credit reporting**, the posting of transactions, payment or credits, **or collections matters relating to your account**; services or benefits programs relating to your account, whether or not they are offered, introduced, sold or provided by us; advertisements, promotions, or oral or written statements related to (or preceding the opening of) your account, goods or services financed under your account, or the terms of financing; the application, enforceability or interpretation of this Agreement, including this arbitration provision; and any other matters relating to your account, a prior related account or the resulting relationships between you and us. Any questions about what Claims are subject to arbitration shall be resolved by interpreting this arbitration provision in the broadest way the law will allow it to be enforced. Claims subject to arbitration include not only Claims made directly by you, but also Claims made by anyone connected with you or claiming through you, such as a co-applicant or authorized user of your account, your agent, representative or heirs, ***or a trustee in bankruptcy***.

Similarly, **Claims subject to arbitration include not only Claims that relate directly to us, a parent company, affiliated company, and any predecessors and successors** (and the employees, officers and directors of all of these entities), but also Claims for which we may be directly or indirectly liable, even if we are not properly named at the time the Claim is made. **Claims subject to arbitration include Claims based on any theory of law**, any contract, **statute**, regulation, ordinance, tort (including fraud or any intentional tort), common law, constitutional provision, respondeat superior, agency or other doctrine concerning liability for other persons, custom or course of dealing or any **other legal or equitable ground (including any claim for injunctive or declaratory relief)**. Claims subject to arbitration include Claims based on any allegations of fact, including an alleged act, inaction, omission, suppression, representation, statement, obligation, duty, right, condition, status or relationship. Claims subject to arbitration include Claims that arose in the past, or arise in the present or future. Claims are subject to arbitration whether they are made independently or with other claims in proceedings involving you, us or others. Claims subject to arbitration include Claims that are made as counterclaims, crossclaims, third-party claims, interpleaders or otherwise, and a party who initiates a proceeding in court may elect arbitration with respect to any Claim(s) advanced in the lawsuit by any other party or parties. **Claims subject to arbitration include Claims made as part of a class action or other representative action, and the arbitration of such Claims must proceed on an individual basis**. If you or we require arbitration of a particular Claim, neither you, we, nor any other person may pursue the Claim in any litigation, whether as a class action, private attorney general action, other representative action or otherwise. Claims are not subject to arbitration if they are filed

7

by you or us in a small claims court, so long as the matter remains in such court and advances only an individual claim for relief.

*Initiation of Arbitration:*[7] "The party filing an arbitration must choose an arbitration administrator. Arbitration administrators are independent from us, and you must follow their rules and procedures for initiating and pursuing an arbitration. If you initiate the arbitration, you must also notify us in writing at Credit One Bank, P.O. Box 95516, Las Vegas, NV 89193-5516. If we initiate the arbitration, we will notify you in writing at your then current billing address or (if your account is closed) the last address we have on file for you. Any arbitration hearing that you attend will be held at a place chosen by the arbitrator or arbitration administrator in the same city as the U.S. District Court closest to your billing address, or at some other place to which you and we agree in writing. You may obtain copies of the current rules of the arbitration administrators, and other related

---

[7] This paragraph was amended in 2009, effective January, 2010, Declaration of Scott, ¶ 19, Declaration Exhibit G. It originally provided:

> Initiation of Arbitration: The party filing an arbitration must choose one of the following three arbitration administrators: National Arbitration Forum; American Arbitration Association; or JAMS. These administrators are independent from us, and you must follow their rules and procedures for initiating and pursuing an arbitration. If you initiate the arbitration, you must also notify us in writing at Post Office Box 90249, Henderson, Nevada 89009-0249.[7] If we initiate the arbitration, we will notify you in writing at your then current billing address or (if your account is closed) the last address we have on file for you. Any arbitration hearing that you attend will be held at a place chosen by the arbitrator or arbitration administrator in the same city as the U.S. District Court closest to your billing address, or at some other place to which you and we agree in writing. You may obtain copies of the current rules of each of the three arbitration administrators named above, and other related materials, including forms and instructions for initiating an arbitration, by contacting the arbitration administrators as follows:
>
> National Arbitration Forum
> P.O. Box 50191
> Minneapolis, MN 55405
> Web Site: www.arbitration-forum.com
>
> American Arbitration Association
> 335 Madison Avenue, Floor 10
> New York, NY 1 0017-4605
> Web Site: www.adr.org
>
> JAMS
> 1920 Main Street, Suite 300
> Irvine, CA 92610
> Web Site: www.jamsadr.com

materials, including forms and instructions for initiating an arbitration, by contacting the arbitration administrators as follows:

| **American Arbitration Association** | **JAMS** |
|---|---|
| 335 Madison Avenue, Floor 10 | 1920 Main Street, Suite 300 |
| New York, NY 10017-4605 | Irvine, CA 92614-7279 |
| Web Site: www.adr.org | Web Site: www.jamsadr.com" |

***Procedures and Law Applicable in Arbitration:*** A single arbitrator will resolve Claims. The arbitrator will either be a lawyer with at least ten years experience or a retired or former judge. The arbitrator will be selected in accordance with the rules of the arbitration administrator and will be neutral. The arbitration will be conducted under the applicable procedures and rules of the arbitration administrator that are in effect on the date the arbitration is filed unless this arbitration provision is inconsistent with those procedures and rules, in which case this Agreement will prevail. These procedures and rules may limit the amount of discovery available to you or us. The arbitrator will apply applicable substantive law consistent with the FAA and applicable statutes of limitations, and will honor claims of privilege recognized at law. The arbitrator will take reasonable steps to protect customer account information and other confidential information, including the use of protective orders to prohibit disclosure outside the arbitration, if requested to do so by you or us. The arbitrator will have the power to award to a party any damages or other relief provided for under applicable law, and will not have the power to award relief to, against, or for the benefit of, any person who is not a party to the proceeding. The arbitrator will make any award in writing but need not provide a statement of reasons unless requested by a party. Upon a request by you or us, the arbitrator will provide a brief statement of the reasons for the award.

***Costs:*** It we file the arbitration, we will pay the initial filing fee. If you file the arbitration, you will pay the initial filing fee, unless you seek and qualify for a fee waiver under the applicable rules of the arbitration administrator. We will reimburse you for the initial filing fee if you paid it and you prevail. If there is a hearing, we will pay any fees of the arbitrator and arbitration administrator for the first day of that hearing. All other fees will be allocated in keeping with the rules of the arbitration administrator and applicable law. However, we will advance or reimburse filing fees and other fees if the arbitration administrator or arbitrator determines there is other good reason for requiring us to do so, or we determine there is good cause for doing so. Each party will bear the expense of that party's attorneys, experts, and witnesses, and other expenses, regardless of which party prevails, except that the arbitrator shall apply any applicable law in determining whether a party should recover any or all expenses from another party.

***No Consolidation or Joinder of Parties:*** <u>**All parties to the arbitration must be individually named. Claims by persons other than individually named parties shall not be raised or determined. Notwithstanding anything else that may be in this arbitration provision or Agreement, no class action, private attorney general action or other representative action may be pursued in arbitration, nor may such action be pursued in court if any party has elected arbitration**</u>. Unless consented to by all parties to the arbitration, Claims of two or more persons may not be joined, consolidated

9

or otherwise brought together in the same arbitration (unless those persons are applicants, co-applicants or authorized users on a single account and/or related accounts or parties to a single transaction or related transactions); this is so whether or not the Claims (or any interest in the Claims) may have been assigned.

***Enforcement, Finality, Appeals:*** You or we may bring an action, including a summary or expedited motion, to compel arbitration of Claims subject to arbitration, or to stay the litigation of any Claims pending arbitration, in any court having jurisdiction. Such action may be brought at any time, even if any such Claims are part of a lawsuit, unless a trial has begun or a final judgment has been entered. Failure or forbearance to enforce this arbitration provision at any particular time, or in connection with any particular Claims, will not constitute a waiver of any rights to require arbitration at a later time or in connection with any other Claims. Any additional or different agreement between you and us regarding arbitration must be in writing. Within fifteen days after an award by the single arbitrator, any party may appeal the award by requesting in writing a new arbitration before a panel of three neutral arbitrators designated by the same arbitration administrator. The panel will consider all factual and legal issues anew, follow the same rules that apply to a proceeding using a single arbitrator, and make decisions based on the vote of the majority. Costs will be allocated in the same way they are allocated for arbitration before a single arbitrator. An award by a panel, or an award by a single arbitrator after fifteen days has passed, shall be final and binding on the parties, subject to judicial review that may be permitted under the FAA. An award in arbitration will be enforceable as provided by the FAA or other applicable law by any court having jurisdiction. An award in arbitration shall determine the rights and obligations between the named parties only, and only in respect of the Claims in arbitration, and shall not have any bearing on the rights and obligations of any other person, nor on the resolution of any other dispute or controversy.

***Severability, Survival:*** **This arbitration provision shall survive**: (i) termination or changes in the Agreement, the account and the relationship between you and us concerning the account; (ii) **the bankruptcy of any party**; and (iii) **any transfer or assignment of your account, or any amounts owed on your account, to any other person**. If any portion of this arbitration provision is deemed invalid or unenforceable, the remaining portions shall nevertheless remain in force.

Declaration of Scott, ¶¶ 10-24, Declaration Exhibits B-G (emphasis added).

## III.   ARGUMENT

### A.   DEFENDANTS ARE ENTITLED TO AN ORDER COMPELLING ARBITRATION OF ALL PLAINTIFF'S CLAIMS AND ENTRY OF DISMISSAL.

#### 1.   The Federal Arbitration Act authorizes the Court to compel arbitration.

10

Section 2 of the Federal Arbitration Act ("FAA") mandates that binding arbitration agreements in contracts "evidencing a transaction involving [interstate] commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006) ("Section 2 [of the FAA] embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts.").

Section 4 of the FAA provides that where a party to an arbitration agreement has failed, neglected or refused to proceed to arbitration, the court, on petition of the party aggrieved by that failure, "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4; *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 277 (1995) ("§ 4 holds the defendants to their promise to submit to arbitration rather than making the other party sue them.")

In enacting the FAA, "Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration. ... We discern only two limitations on the enforceability of arbitration provisions governed by the [FAA]: they must be part of a written maritime contract or a contract 'evidencing a transaction involving commerce' ... and such clauses may be revoked upon 'grounds as exist at law or in equity for the revocation of any contract.'" *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984).

The United States Supreme Court has made clear that the FAA is extremely broad and applies to any transaction directly or indirectly affecting interstate commerce. See, e.g., *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 277 (1995); *Prima Paint Corp. v. Flood &*

*Conklin Mfg. Co.*, 388 U.S. 395, 401(1967).    The FAA promotes a "liberal federal policy favoring arbitration agreements," and "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration."    *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); see also *Perry v. Thomas*, 482 U.S. 483, 490-91(1987) (stating that arbitration agreements falling within the scope of the FAA "must be 'rigorously enforce[d]'" (citations omitted)).   "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."    *Moses H. Cone Mem'l Hosp.*,460 U.S. at 24-25; see also  *Perry*, 482 U.S. at 490 (stating that arbitration agreements falling within the scope of the FAA "must be 'rigorously enforce[d]'") (citations omitted).

As recently confirmed by the Supreme Court, the "'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'"*AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1748 (2011); accord *American Exp. Co. v. Italian Colors Restaurant*, 133 S.Ct. 2304, 2309 (2013); *Stolt-Nielsen S.A. v. Animalfeeds Int'l Corp.*, 559 U.S.C. 662, 130 S. Ct. 1758, 1773 (2010);  *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989);  *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 53-54 (1995).

Quite simply, the "overarching purpose of the FAA, evident in the text of §§ 2, 3 and 4, is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings."   *AT&T Mobility*, 131 S. Ct. at 1748. By consenting to bilateral arbitration, the "parties forgo the procedural rigor and appellate review of the courts in order to realize the benefits of private dispute resolution:  lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes." *Stolt-Nielsen*, 130 S.Ct. at 1775 (citations omitted). "Underscoring the consensual nature of private dispute resolution . . .

12

parties are 'generally free to structure their arbitration agreements as they see fit.'"*Stolt-Nielsen*, 130 S. Ct. at 1774 (citations omitted).  Thus, "parties may agree to limit the issues subject to arbitration [citation], to arbitrate according to specific rules [citation], and to limit with whom a party will arbitrate its disputes [citation]." *AT&T Mobility*, 131 S. Ct. at 1748-49 (citations omitted).  Indeed, the "point of affording parties discretion in designing arbitration processes is to allow for efficient, streamlined procedures tailored to the type of dispute . . . .  And the informality of arbitral proceedings is itself desirable, reducing the cost and increasing the speed of dispute resolution."  *Id.* at 1749.  Ultimately, "[i]t falls to courts and arbitrators to give effect to these contractual limitations, and when doing so, courts and arbitrators must not lose sight of the purpose of the exercise:  to give effect to the intent of the parties."  *Stolt-Nielsen*, 130 S. Ct. at 1774-75;  *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002).

In assessing whether to grant a stay and to compel arbitration Courts must consider two issues: (1) whether the parties agreed to arbitrate; and (2) whether the scope of the arbitration clause covers the plaintiff's claims. *Mehler v. Ther Terminix Int'l Co., L.P.*, 205 F.3d 44, 47 (2d Cir.2000). If both issues are resolved in the affirmative, if federal statutory claims are involved, the Court must also assess whether Congress intended those claims to be nonarbitrable; and if only some of the claims are subject to arbitration, determine whether the remaining claims should be stayed. *JLM Industries, Inc. v. Stolt–Nielsen SA*, 387 F.3d 163, 169 (2d Cir.2004).

### (a)    Agreement to Arbitrate.

When Plaintiff opened the consumer credit card account with Credit One, the Plaintiff executed the Agreement and agreed to submit all disputes arising thereunder to arbitration.  *See* Declaration of Scott, ¶¶ 8-12; Declaration Exhibit B.  The Agreement creates a binding contract

13

requiring Plaintiff to arbitrate. *Id.* Further, the agreement expressly provides that the arbitration agreement survives the Plaintiff's bankruptcy.[8]

As to Plaintiff's claims against Credit One Financial, because it wholly owns Credit One Bank, N.A., Plaintiff has also agreed to arbitrate any claims against it as well.[9]

There can be no question that the FAA applies to this agreement "evidencing a transaction involving [interstate] commerce," 9 U.S.C. § 2,  because the credit card transactions giving rise to the subject debt at issue were made between Plaintiff, who resides in New York, and Credit One, a national banking association located in Nevada, and the claims made question the propriety of a national bank's credit reporting practices with regard to credit card lending, alleged collection, and selling of defaulted accounts to third party debt buyers. Adv. Doc. No. 1. See *Citizens Bank v. Alafabco, Inc*., 539 U.S. 52, 56-58 (2003)(the FAA's "involving commerce" test is satisfied where bank lends to borrower in another state)("No elaborate explanation is needed to make evident the broad impact of commercial lending on the national economy or Congress' power to regulate that activity pursuant to the Commerce Clause.").

Accordingly, a valid agreement to arbitrate exists between the parties and the first element of Defendant's motion to compel is satisfied.

      **(b)**      **Scope of the Agreement.**

---

[8] See Declaration Exhibit B, arbitration agreement, quoted *supra*. (***Severability, Survival:* This arbitration provision shall survive**... (ii) **the bankruptcy of any party**; (iii) **any transfer or assignment of your account, or any amounts owed on your account, to any other person**.")(emphasis added).

[9] See Declaration Exhibit B, arbitration agreement, quoted *supra*. ("Similarly, **Claims subject to arbitration include not only Claims that relate directly to us, a parent company, affiliated company, and any predecessors and successors** (and the employees, officers and directors of all of these entities), but also Claims for which we may be directly or indirectly liable, even if we are not properly named at the time the Claim is made.") (emphasis added).

14

The cause of action set forth in the complaint clearly falls within the scope of the Claims subject to arbitration under the Agreement.   Plaintiff has asserted claims against Defendants arising out of the credit reporting information and alleged attempt to collect a debt against the Plaintiff, in violation of the discharge injunction.   Adv. Doc. No. 1, ¶¶ 1, 9-11, 13-15, 26-81. Clearly, this implicates the "operating" and "handling" of the Account and involves "**credit reporting**" or "**collections matters relating to**" the account. Declaration Exhibit B.

As such, there can be little doubt then that the claims set forth in the Complaint fall within the substantive scope of the arbitration provisions of the Agreement.   Accordingly, the dispute falls within the scope of that Agreement and the second element of Defendant's motion to compel is satisfied.

(c)      <strong>Congressional Intent.</strong>

The Supreme Court has explained that, "[h]aving made the bargain to arbitrate, [a] party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 628 (1985); *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1748 (2011); accord *American Exp. Co. v. Italian Colors Restaurant*, 133 S.Ct. 2304, 2309 (2013).

Bankruptcy judges do not have discretion to refuse to compel arbitration of non-core matters because they are generally only tangentially related to a bankruptcy case. *MBNA Am. Bank, N.A. v. Hill*, 436 F.3d 104, 108 (2d Cir.2006).

Any claim asserted by Plaintiff related to absent putative class members is a non-core matter vis-à-vis Plaintiff and his estate, because such claims neither relate to the estate of the plaintiff/debtor, nor do such claims have any effect on the administration of the plaintiff/debtor's

15

estate. *In re Lenior,* 231 B.R. 662, 667-668 (Bankr.N.D.Ill.1999); *In re Fisher*, 151 B.R. 895, 898 (Bankr. N.D. Ill. 1993); *In re Cline,* 282 B.R. 686, 694 (W.D. Wash. 2002); *Wells Fargo Bank, N.A. v. Singleton (In re Singleton)*, 284 B.R. 322, 325 (D.R.I.2002) and *Nelson v. Providian Nat'l Bank (In re Nelson)*, 234 B.R. 528, 534 (Bankr.M.D.Fla.1999).[10]

Consequently, the Court lacks discretion to refuse to compel arbitration of Plaintiff's class claims.

As to core claims, Bankruptcy courts may exercise discretion to refuse to compel arbitration of core bankruptcy matters, which implicate "more pressing bankruptcy concerns." *MBNA Am. Bank*, 436 F.3d at 108. Yet, even as to core proceedings, "the bankruptcy court will not have discretion to override an arbitration agreement unless it finds that the proceedings are based on provisions of the Bankruptcy Code that 'inherently conflict' with the Arbitration Act or that arbitration of the claim would 'necessarily jeopardize' the objectives of the Bankruptcy Code." *Id.*

> This determination requires a particularized inquiry into the nature of the claim and the facts of the specific bankruptcy. The objectives of the Bankruptcy Code relevant to this inquiry include "the goal of centralized resolution of purely bankruptcy issues, the need to protect creditors and reorganizing debtors from piecemeal litigation, and the undisputed power of a bankruptcy court to enforce its own orders." *Ins. Co. of N. Am. v. NGC Settlement Trust & Asbestos Claims Mgmt. Corp. (In re Nat'l Gypsum Co.),* 118 F.3d 1056, 1069 (5th Cir.1997). If a severe conflict is found, then the court can properly conclude that, with respect to the particular Code provision involved, Congress intended to override the Arbitration Act's general policy favoring the enforcement of arbitration agreements.

---

[10] This Court's construction of the statutory grant of authority to Bankruptcy Courts under 28 U.S.C. §§ 157(b), 1334(b), (e), and 1409(a) extending beyond the administration of the estate before the Court, and extending beyond this Court's venue in *In re Haynes*, 2014 WL 3608891, *9 (Bankr. S.D.N.Y. 2014), violates Art. III of the Constitution because this expansive construction of the Congressional grant of bankruptcy Court jurisdiction involves an exercise of the "judicial Power of the United States," over non-core matters. *Stern v. Marshall*, 131 S.Ct. 2594, 2611(2011); *Executive Benefits Ins. Agency v. Arkison,* 134 S.Ct. 2165, 2174 (2014).

16

*MBNA America Bank, N.A. v. Hill,*436 F.3d 104, 108.

In this case, after the estate was fully administered, the debtor has received a discharge, and the discharge injunction violation claim that there was an attempt "to collect, recover or offset any such debt as a personal liability of the debtor" under 11 U.S.C. § 524(a)(2) entirely premised on a failure to update historically accurate pre-bankruptcy credit reporting to reflect post-bankruptcy filing events occurring two years after the creditor sold the debt by not stating "included in bankruptcy," the adversary claims at issue have no effect on the estate, there is no conflict between the FAA and Bankruptcy Code justifying denial of a motion to compel arbitration, as these "claims lack the direct connection to ...[his] own bankruptcy case that would weigh in favor of refusing to compel arbitration;" bankruptcy courts do not have exclusive jurisdiction over such claims, and while undoubtedly important, "there is no indication from the statute that any dispute relating to an automatic stay [or discharge injunction] should categorically be exempt from resolution by arbitration." *MBNA America Bank, N.A. v. Hill*, 436 F.3d at 110.[11]

---

[11] This Court took the opposite view in *In re Belton*, Adv. P. No. 14–08223, 2014 WL 5819586 (Bankr. S.D.N.Y.Nov. 10. 2014) where this Court relying heavily on the Fifth Circuit decision in *Ins. Co. of N. Am. v. NGC Settlement Trustee & Asbestos Claims Mgmt. Corp. (In re Nat'l Gympsum Co.)*, 118 F.3d 1056, 1069 (5th Cir. 1997), in assessing whether the proceeding derives exclusively from the provisions of the Bankruptcy Code and, if so, whether arbitration of the proceeding would conflict with the purposes of the Code. As this Court recognized in *In re Belton*, "the discharge issue is not a multi-party dispute, [and] the Bankruptcy Code's centralization policy does not apply in favor of maintaining the bankruptcy court's jurisdiction…." Contrary to the Court's conclusion in *In re Belton*, Congressional intent, evident from the Bankruptcy Code, does not support the conclusion that Bankruptcy Courts were created to police post-closure violations of the discharge injunction, because Congress did not create a cause of action for violating the discharge injunction under the Bankruptcy Code in the first place, nor invest Bankruptcy Courts with exclusive jurisdiction to entertain claims premised on alleged violations of the discharge injunction. *See infra, § 4(B)*.

Further, as a matter of statutory construction, a federal law on a specific subject typically supplants an earlier enacted general law that could be applicable to the same subject matter. "[I]t is a commonplace of statutory construction that the specific governs the general." *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 132 S. Ct. 2065, 2071 (2012)(quoting *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 384 (1992)).

The Second Circuit held that Congress has clearly indicated that the Fair Credit Reporting Act, as provided in 15 U.S.C. §§ 1681s–2(c)(1) and 1681s–2(d), provides no private right of action to a consumer relating to "knowingly disclosing false [credit] information, …[15 U.S.C.] § 1681s–2(a)(1), failing to correct false [credit] information, …[15 U.S.C.] § 1681s–2(a)(2), and failing to investigate a dispute filed directly with a furnisher of information, …[15 U.S.C.] § 1681s–2(a)(8)…." *Longman v. Wachovia Bank, N.A.*, 702 F.3d 148, 151 (2d Cir. 2012). See also *Mendy v. JP Morgan Chase & Co.*, No. 12 CIV. 8252 PGG, 2014 WL 1224549, at *3-4 (S.D.N.Y. Mar. 24, 2014). Because Plaintiff has not alleged that he disputed the credit information appearing on his credit report with any credit reporting agencies, he has no private right of action under the FCRA, and he cannot use the general language of the Bankruptcy Code as a bootstrap enforcement mechanism to bring a claim for which Congress has made clear he has no private right of action.

Because Plaintiff's claim are derived from § 1681s–2(a) of the FCRA and Congress has not seen fit to provide a consumer with a judicial remedy for the statutory right at issue; because Congress has also not seen fit to provide a consumer with a private right of action for a violation of the discharge injunction under § 524(a)(2), and because the claims are not based on provisions of the Bankruptcy Code that are remotely in conflict with the Arbitration Act,  it cannot be said that arbitration of the Plaintiff's claim would "necessarily jeopardize" the objectives of the

18

Bankruptcy Code. *MBNA America Bank, N.A. v. Hill*, *supra*; *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, *supra*.

> **2.      Defendants are entitled to dismissal for improper venue under Fed. R.Civ. P. 12(b)(3).**

An arbitration agreement is a form of forum selection clause. See *Orlander v. Staples, Inc.*, No. 13 CIV. 703 NRB, 2014 WL 2933152, at *3 (S.D.N.Y. June 30, 2014) (considering motion to dismiss pursuant to a binding arbitration clause under Rule 12(b)(3) because "'[a]n arbitration clause is merely a specialized type of forum selection clause'") (quoting *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1363 n. 2 (2d Cir.1993)); *TradeComet.com LLC v. Google, Inc.*, 647 F.3d 472, 478 (2d Cir.2011) (A motion to dismiss pursuant to a forum selection clause is appropriately considered under, inter alia, Rule 12(b)(3)).   Determining whether to dismiss an action under Rule 12(b)(3) based on a forum selection clause requires a four-step analysis:

> The first inquiry is whether the clause was reasonably communicated to the party resisting enforcement. The second step requires us to classify the clause as mandatory or permissive, i.e., to decide whether the parties are required to bring any dispute to the designated forum or simply permitted to do so. Part three asks whether the claims and parties involved in the suit are subject to the forum selection clause.... The fourth, and final, step is to ascertain whether the resisting party has rebutted the presumption of enforceability by making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.

*Phillips v. Audio Active, Ltd.*, 494 F.3d 378, 384 (2d Cir.2007). A forum selection clause "is enforced unless it imposes a venue so gravely difficult and inconvenient that the plaintiff will for all practical purposes be deprived of his day in court". *Kawasaki Kisen Kaisha Ltd. v. Regal–Beloit Corp.*, 561 U.S. 89, 109-110 (2010). "Such clauses are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 10 (1972). "The party claiming unreasonableness of a forum selection clause bears a heavy burden; in order to escape

19

the contractual clause, he must show that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court." *New Moon Shipping Co., Ltd. v. MAN B & W Diesel AG*, 121 F.3d 24, 32 (2d Cir.1997).

(a)      **The clause was reasonably communicated to Plaintiff.**

As set forth in Declaration Exhibit B, the existence and scope of the Arbitration Agreement was communicated to Plaintiff at the time the account was opened. Declaration Exhibit B, p. 1. Further, throughout the period of time Plaintiff used the Card, various terms and conditions were amended, and in 2005 and 2009, portions of the Arbitration Agreement were amended. Plaintiff was given the opportunity to opt out and cease using the card, but he did not opt out and nonetheless continued to use the card. Declaration Exhibits C-G.

(b)      **The clause creates a mandatory provision requiring arbitration.**

The language of the arbitration is not discretionary. It provides that: "You and we agree that either you or we may, without the other's consent, **require** that **any controversy or dispute between you and us** (all of which are called "Claims"), be submitted to mandatory, binding arbitration. Declaration Exhibit B, quoted *supra*.

(c)      **The claims are subject to the agreement.**

As set forth above in section III(A)(1)(b), Plaintiff's claims here are clearly within the scope of the agreement to arbitrate.

(d)      **Plaintiff cannot show enforcement would be unreasonable or unjust.**

The agreement provides for fair administration of arbitration proceedings by either JAMS or by AAA, to be administered by a qualified arbitrator in accordance with the established rules of the forum selected, and allows for the party seeking arbitration of a dispute to pay the costs of invoking arbitration, subject to Plaintiff's right to seek a waiver of those fees, "under the

20

applicable rules of the arbitration administrator," and subject to recovery of his fees "if you paid
it and you prevail." Declaration Exhibit B, quoted *supra*.

Consequently, because Plaintiff has commenced these proceedings in an improper venue,
dismissal is required.

### 3. Defendants are entitled to an order striking the class allegations pursuant to Fed.R.Civ.P. 12(f)

Under Rule 12(f), "[t]he court may strike from a pleading an insufficient defense or any
redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). Further, Rule
23(d)(1)(D) of the Federal Rules of Civil Procedure provides that a court may order a party to
amend its pleadings "to eliminate allegations about the representation of absent persons." And,
Rule 23(c)(1)(A) provides that "[a]t an early practicable time after a person sues or is sued as a
class representative, the court must determine by order whether to certify the action as a class
action."

While motions to strike class allegations are not favored, "a motion to strike that
addresses issues separate and apart from the issues that will be decided on a class certification
motion is not procedurally premature." *Chen–Oster v. Goldman, Sachs & Co.*, 877 F.Supp.2d
113, 117 (S.D.N.Y.2012). Class claims subject to a class-action waiver are properly stricken,
C*ohn v. Ritz Transp., Inc.*, No. 2:11–CV–1832, 2014 WL 1577295, *4 (D.Nev. Apr. 17, 2014),
as are class claims that are time-barred. *Fullwood v. Wolfgang's Steakhouse, Inc*., No. 13 Civ.
7174(KPF), 2014 WL 6076733, *8 (S.D.N.Y. Nov. 14, 2014). See also *Sanders v. Apple Inc.,*
672 F.Supp.2d 978, 989–90 (N.D.Cal.2009)("a defendant may move to strike class allegations
prior to discovery.");  *Davis v. Wells Fargo Advisors LLC*, 2014 WL 1370278, *5 (D.Ariz.
2014); *In re Online Travel Co*., 953 F.Supp.2d 713, 725 (N.D.Tex. 2013)("Any claims by absent
class members bound by the User Agreement would be impertinent, as those class members

would be bound to individually arbitrate their claims.").See also 1 MCLAUGHLIN ON CLASS ACTIONS § 3:4 (8th ed.)(class allegations may be stricken when it appears that a plaintiff cannot meet the requirements for a class action or "where the unsuitability of class treatment is evident on the face of the complaint and incontrovertible facts.").

Where the basis for the motion to strike is distinct from those factors considered in connection with a motion for class certification, "[a] court may order deletion of portions of a complaint's class claims once it becomes clear that the plaintiffs cannot possibly prove the deleted portion of those claims." *Jaffe v. Capital One Bank*, No. 09 Civ. 4106, 2010 WL 691639, *10 (S.D.N.Y. Mar. 1, 2010)(quoting 5 MOORE'S FEDERAL PRACTICE § 23-145 (3d ed.2007)); *see also Evancho v. Sanofi-Aventis U.S. Inc.,* No. 07-2266, 2007 WL 4546100, at *5 (D.N.J. Dec. 19, 2007) (striking untenable class allegations relating to untenable state law claims); *Gates v. Rohm and Haas Co.,* No. 06-1743, 2007 WL 1366883, at *3 (E.D.Pa. May 3, 2007) (discussing without deciding possibility of striking class allegations).

Here, Plaintiff has alleged that he seeks class relief and an order certifying a class comprised of:

> All individuals who, after May 3, 2007, have had a consumer credit report relating to them prepared by any of the credit reporting agencies in which one or more of their Tradeline accounts or debts with Defendants was not reported as discharged despite the fact that such debts had been discharged as a result of their bankruptcy under Chapter 7 of the Bankruptcy Code.

Adv. Doc. No. 1, ¶¶ 71, 70-78.

It is undeniable that in agreeing to arbitrate his claims against Credit One, Plaintiff expressly waived the right to proceed on behalf of a class, and agreed that "**no class action, private attorney general action or other representative action may be pursued in arbitration, nor may such action be pursued in court if any party has elected arbitration**."

Declaration Exhibit B, quoted *supra*. Such agreements are enforceable according to their terms.

*American Exp. Co. v. Italian Colors Restaurant*, 133 S.Ct. 2304, 2309 ; *AT&T Mobility LLC v.*

*Concepcion*, 131 S. Ct. 1740, 1748.

    As such, the class allegations are impertinent and ought to be stricken.

    Further, although Defendants maintain their view that there is no private right of action

for an alleged violation of the discharge injunction, because the discharge injunction arises under

an Act of Congress, and Plaintiff here seeks to prove a violation of an Act of Congress, 28

U.S.C. § 1658(a) provides that any claim premised on an Act of Congress not expressly

providing a limitation is time barred four years after the cause of action accrued. 28 U.S.C. §

1658(a).

    Thus, to the extent Plaintiff seeks to certify a class related to acts taking place more than

four years prior to the filing of this adversary proceeding on January 30, 2015, and any claim

premised on credit reporting concerning a bankrupt debtor's credit report taking place before

January 30, 2011 would be time barred, it is clear that Plaintiff could not possibly prove this

portion of his claims, the class allegations ought to be stricken.

    **4.**    **Defendants are entitled to an order dismissing the action pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6).[12]**

    Under the Federal Rules of Civil Procedure, an attack on subject matter jurisdiction

pursuant to Rule 12(b)(1) may "raise a facial challenge based on the pleadings, or a factual

challenge based on extrinsic evidence." *Guadagno v. Wallack Ader Levithan Assoc.*, 932 F.Supp.

94, 95 (S.D.N.Y.1996). Where the defendant challenges the legal sufficiency of a complaint's

allegations, the court must treat all factual allegations as true and draw reasonable inferences in

---

[12]  Aware that the Court has already rejected these arguments, Defendants make these arguments
here based on a good faith argument for reversal of existing law, and for purposes of preserving
these issues for appeal.

favor of the complaining party. *Robinson v. Gov't of Malay.*, 269 F.3d 133, 140 (2d Cir.2001). However, where the jurisdictional challenge is fact-based, "no presumptive truthfulness attaches to the complaint's jurisdictional allegations," and "the burden is on the plaintiff to satisfy the Court, as fact-finder, of the jurisdictional facts." *Guadagno*, 932 F.Supp. at 95; *see Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp* ., 109 F.3d 105, 108 (2d Cir.1997).

Under Fed. R. Civ. P. 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)( quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In order "[t]o survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'"  *ATSI Communications, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir. 2007)  (*quoting Twombly*) (footnote omitted); *Iqbal v. Hasty,* 490 F.3d 143 (2d Cir. 2007) (stating that *Twombly* adopted "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible[,]" as opposed to merely conceivable).

In passing on a motion to dismiss, the Court may consider the complaint, documents attached to the complaint, documents referenced in the complaint, and matters which may be judicially noticed, including court dockets and filings. *Samuels v. Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir.1993); *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir.2006); *Brodeur v. City of New York*, No. 04–CV–1859, 2005 WL 1139908, at *3 (E.D.N.Y. May 13, 2005) (citing *Cortec Indus., Inc. v. Sum Holding L.P*., 949 F.2d 42, 47–48 (2d Cir.1991)). Rule 201(b) provides that "[a] judicially noticed fact must be one not subject to

reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b). "Judicial notice may encompass the status of other lawsuits in other courts and the substance of papers filed in those actions." *Schenk v. Citibank/Citigroup/Citicorp*, No. 10–CV–5056, 2010 WL 5094360, at *2 (S.D.N.Y. Dec. 9, 2010); *Anderson v. Rochester–Genesee Regional Transp. Auth.*, 337 F.3d 201, 205 (2d Cir.2003) (taking judicial notice of a district court opinion that was not submitted as part of the record on appeal); *Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir.2000) (taking judicial notice of a complaint filed in another action).

      **(a)**      **Plaintiff's claims against Credit One Financial should be dismissed because Plaintiff did not obtain leave to join Credit One Financial, and it was improperly joined.**

At no time prior to the filing of Plaintiff's complaint, did Plaintiff suggest that there would be more than one party to this action. Plaintiff's motion to reopen as well as the Court's order granting leave to file an adversary complaint made no mention of Plaintiff's claim against COF. Indeed, aside from being named as a Defendant in this action, there is no apparent rationale for including COF in this action. The basis for this action is credit reporting undertaken by Credit One Bank, not COF. The credit report excerpts that Plaintiff annexed to his motion to reopen refer to an obligation Plaintiff owed to Credit One Bank, not COF. The adversary complaint, while phrased in terms of the conduct of Defendants, certainly cannot be understood to refer to the conduct of two entities, because Plaintiff's obligation was not owed to COF, the trade line referred to an obligation owed to Credit One Bank, not COF, and there is no reference to COF in Plaintiff's credit report. Moreover, COF was not among the entities which received

25

notice on Plaintiff's bankruptcy discharge, and was never requested to update (non-existent) credit reporting prior to commencing this action.

Because Plaintiff did not obtain leave to join Credit One Financial, and because it was not properly joined to this action, Credit One Financial should be dropped as a party Defendant.

### (b)   This Court lacks subject matter jurisdiction to entertain an adversary action for violation of the discharge injunction

Courts have consistently held that there is no private right of action for violation of the discharge injunction. *See Barrientos v. Wells Fargo Bank, N.A.*, 633 F.3d 1186 (9th Cir.2010); *Joubert v. ABN AMRO Mortgage Group, Inc. (In re Joubert)*, 411 F.3d 452 (3rd Cir.2005); *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 510 (9th Cir.2002)("For these reasons we cannot say that Congress intended to create a private right of action under § 524, and we shall not imply one."); *Cox v. Zale Delaware, Inc.,* 239 F.3d 910 (7th Cir.2001); *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 422–23 (6th Cir.2000) ("Under the law as it now stands, however, we have no hesitancy in joining those courts (a clear majority) that have held § 524 does not impliedly create a private right of action."); *In re Nassoko*, 405 B.R. 515, 526 (Bankr. S.D.N.Y. 2009).

This makes abundant sense given that (a) 11 U.S.C. § 524 does not expressly or implicitly provide a right of action, and (b) the ordinary remedy for violation of a court order is by way of contempt proceedings. *Barrientos*, *supra*; *In re Worthing*, 24 B.R. 774, 777-78 (Bankr.D.Conn. 1982).

While Plaintiff may pursue a motion for contempt, contempt proceedings are brought by motion. Bankruptcy Rule 9020 provides that Bankruptcy Rule 9014 governs contempt proceedings in bankruptcy. Fed.R. Bankr.P. Rule 9020 ("Rule 9014 governs a motion for an order of contempt made by the United States trustee or a party in interest."). Further, Bankruptcy Rule 9014 governs *contested matters*. See Fed.R. Bankr.P. Rule 9014(a) ("In a contested matter

26

*not otherwise governed by these rules*, relief shall be requested by motion, and reasonable notice

and opportunity for hearing shall be afforded the party against whom relief is sought. No

response is required under this rule unless the court directs otherwise.")(emphasis added). "A

matter qualifies as an 'adversary proceeding,' as opposed to a 'contested matter,' if it is included

in the list given in Bankruptcy Rule 7001. ... Otherwise, it is a 'contested matter.' See Fed.R.

Bankr.P. 9014(a). Contempt proceedings are not listed under Bankruptcy Rule 7001, see Fed. R.

Bankr.P. 7001,[13] and are therefore contested matters not qualifying as adversary proceedings."

*Barrientos v. Wells Fargo Bank, N.A.*, 633 F.3d 1186, 1189-1190 (emphasis added); *Solow v.*

*Kalikow ( In re Kalikow)*, 602 F.3d 82, 93–94 (2d Cir.2010).

      **(c)**     **This Court lacks subject matter jurisdiction to enter declaratory or injunctive relief for an alleged violation of the discharge injunction**

11 U.S.C. § 524 "operates as an injunction against the commencement or continuation of

an action, the employment of process, or an act, to collect, recover or offset any such debt as a

personal liability of the debtor, whether or not discharge of such debt is waived." 11 U.S.C. §

524(a)(2). "An injunction against violating an existing injunction would be superfluous, adding

---

[13] "An adversary proceeding is governed by the rules of this Part VII. The following are adversary proceedings: (1) a proceeding to recover money or property, other than a proceeding to compel the debtor to deliver property to the trustee, or a proceeding under § 554(b) or § 725 of the Code, Rule 2017, or Rule 6002; (2) a proceeding to determine the validity, priority, or extent of a lien or other interest in property, other than a proceeding under Rule 4003(d); (3) a proceeding to obtain approval under § 363(h) for the sale of both the interest of the estate and of a co-owner in property; (4) a proceeding to object to or revoke a discharge, other than an objection to discharge under §§ 727(a)(8), (a)(9), or 1328(f);(5) a proceeding to revoke an order of confirmation of a chapter 11, chapter 12, or chapter 13 plan; (6) a proceeding to determine the dischargeability of a debt; (7) a proceeding to obtain an injunction or other equitable relief, except when a chapter 9, chapter 11, chapter 12, or chapter 13 plan provides for the relief; (8) a proceeding to subordinate any allowed claim or interest, except when a chapter 9, chapter 11, chapter 12, or chapter 13 plan provides for subordination; (9) a proceeding to obtain a declaratory judgment relating to any of the foregoing; or (10) a proceeding to determine a claim or cause of action removed under 28 U.S.C. § 1452."

no judicial action and providing no additional relief." *Barrientos v. Wells Fargo Bank, N.A.*, 633 F.3d 1186, 1190-91; *Solow v. Kalikow ( In re Kalikow)*, 602 F.3d 82, 93–94.

As such, Debtor cannot seek to secure an additional injunction in these proceedings because the only operative question presented by Debtor's motion is whether the conduct outlined in his motion amounts to a violation of the discharge injunction under 11 U.S.C. § 524, which is remediable by contempt proceedings.

    **(d)**    **Plaintiff fails to state a claim**

As noted above, 11 U.S.C. § 524 "operates as an injunction against the commencement or *continuation of... an act, to collect, recover or offset* any such debt ___as a personal liability of the___ ___debtor___,...." 11 U.S.C. § 524 (emphasis added). As reflected in the documents annexed to the Debtor's motion to reopen, excerpted credit reports from Transunion and Equifax, Credit One last reported any information regarding the debt to the credit reporting agencies **May 11, 2012**. Doc. No. 13-2, p. 3, 4, 7. See also Declaration of Scott ¶¶ 25-27. The last reported information from May of 2012 reflected on those documents indicated the debt was charged off, sold to another lender, and had a zero balance. *Id*. A full two years later, after the Debtor obtained a discharge in May, 2014, Debtor claims that "Credit One willfully violated the discharge injunction under Section 524 of the Bankruptcy Code...," because the *May 2012* credit reporting information appearing on his credit report from *August 2014* does not state "included in bankruptcy" and indicates the debt was charged off in 2012. Adv. Doc. No. 1, ¶¶ 25.

As this Court recently noted in *In re Haynes*,  Adv. No. 13–08370–rdd, 2014 WL 3608891 (Bankr.S.D.N.Y. Jul. 22, 2014), post-discharge credit reporting may amount to collection activity, if it amounts to "false or outdated *reporting*." *In re Haynes*, 2014 WL 3608891, *2-3; *In re Torres*, 367 B.R. 478, 486 (Bankr.S.D.N.Y.2007).

28

But, the reported information about which Plaintiff complains here, is neither "false or outdated reporting;" it was not false when reported, and it cannot be said to be outdated either, since it refers only to historical information that was on Plaintiff's credit report for two years before he obtained a discharge. *Cf.*, *Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151, 1156-59 (11th Cir.1991). If Congress had intended creditors to update *previously* reported accurate historical information affected by a *subsequent* bankruptcy to state "included in bankruptcy," one would expect that Congressional intent would appear in the express language of the Bankruptcy Code or the Fair Credit Reporting Act. Pointedly, it does not.  Consequently, the Court cannot engraft such a statutory mandate by judicial fiat.

Further, one cannot have a personal liability of zero, and at the same time, claim to have been the object of collection activity by the very same entity reporting the balance as zero. Stating the balance on the account is zero is synonymous with stating the debtor owes nothing on the account, which is the penultimate effect of the discharge. While there might be circumstances where a creditor reports a debt as having a zero balance to facilitate further collection, there are no facts alleged or identified that suggest Credit One made any effort to collect a debt as a personal liability of the debtor. The only apparent intent for reporting a zero balance owed was to reflect that Credit One had no intent to attempt further collection.

Because the information appearing on the subject credit reports was accurate when reported, and no subsequent report was made to make it false or outdated, and the report truthfully reflected the balance owed on the account as zero, Debtor could not show that the information appearing on his credit report amounted to an effort to collect "a personal liability of the debtor."

**B.      DEFENDANTS ARE ENTITLED TO THE ENTRY OF A STAY.**

Section 3 of the FAA provides for a stay of judicial proceedings regarding "any issue referable to arbitration under an agreement in writing for such arbitration," and requires that "on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement…." 9 U.S.C. § 3. *Allied-Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265, 293-294 ("[9 U.S.C.] § 3 holds the plaintiffs to their promise not to take their claims straight to court.... Upon proper motion, the court would have been obliged to grant a stay pending arbitration, unless the contract between the parties did not 'evidenc[e] a transaction involving [interstate] commerce.'").

Because, as outlined above, the issues raised in the adversary complaint are referable to arbitration, as provided in 9 U.S.C. § 3, the court must stay these proceedings until the arbitration has been concluded. *Allied-Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265, 293-294.

Further**,** Bankruptcy Courts, like federal courts, have inherent authority to control their dockets, and may enter a stay of litigation when an issue is presented in the litigation that is also pending on appeal, to avoid confusion and waste of time and judicial resources. *Sea Spray Holdings, Ltd. v. Pali Financial Group, Inc.*, 269 F.Supp.2d 356, 364 (S.D.N.Y. 2003)(citing *Landis v. North Am. Co.,* 299 U.S. 248, 254–55 (1936); *Europcar Italia, S.p.A. v. Maiellano Tours, Inc.,* 156 F.3d 310, 316 (2d Cir.1998)); *In re Winimo Realty Corp.*, 270 B.R. 99, 105 (S.D.N.Y. 2001)(discussing divestiture rule). The efficient management of scarce judicial resources and judicial parsimony warrant entry of a stay when an outcome determinative issue is pending before an appellate tribunal and the court, because the issue would only have to be addressed once after the law on the issue or subject becomes settled by the appellate tribunal, thereby prevent[ing] inconsistent rulings and ensure that judicial resources are not wasted on useless litigation." *In re Winimo Realty Corp.*, 270 B.R. 99, 108.

This Court's decisions in *In re Belton* and *In re Bruce,* and indirectly*, In re Haynes,* are currently pending on appeal in the Second Circuit. *Supra* n. 1. A decision by the Second Circuit in these cases will determine whether the Court was correct in holding that the bankruptcy court has jurisdiction and may exercise discretion to deny entry of an order compelling arbitration of nearly identical class action adversary claims against other banks, "will prevent inconsistent rulings and ensure that judicial resources are not wasted on useless litigation." *In re Winimo Realty Corp*., 270 B.R. 99, 108.

## IV.    CONCLUSION

For all the foregoing reasons, Defendants pray for an order:

(A)    compelling arbitration of all Plaintiff's claims;

(B)    dismissal for improper venue;

(C)    striking the class allegations from Plaintiff's complaint;

(D)    dismissing Plaintiff's claims  against Credit One Financial;

(E)    dismissing Plaintiff's claims for lack of subject matter jurisdiction;

(F)    dismissing Plaintiff's claims for failure to state a claim; and

(G)    entering a stay pending completion of arbitration, or in the alternative pending

the outcome of the appeals in *In re Belton* and *In re Bruce*.

Date: March 3, 2015

Respectfully submitted,


/s/ Michael D. Slodov
Sessions, Fishman, Nathan & Israel, LLC
15 E. Summit Street
Chagrin Falls, OH 44022-2709
(440) 318-1073
(fax) (216) 359-0049
(email) mslodov@sessions-law.biz


Aaron R. Easley, Esq. (ae9922)
SESSIONS, FISHMAN, NATHAN & ISRAEL, LLC
3 Cross Creek Drive
Flemington, NJ  08822
Telephone: (908) 237-1660
Facsimile: (908) 237-1663
Email: aeasley@sessions-law.biz
*Counsel for Defendants,*
*Credit One Bank N.A. and Credit One Financial*

32