USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/14/2016

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

*In re:*

ORRIN S. ANDERSON,

        Debtor.

---

CREDIT ONE FINANCIAL,

        Appellant,

-against-

ORRIN S. ANDERSON, A/K/A ORJNN
ANDERSON, A/K/A ORINN SCOTT ANDERSON

        Appellee, on behalf of
himself and all others
similarly situated.

No. 15-cv-4227 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

    Credit One appeals from an order of the United States Bankruptcy Court for the Southern District of New York (Drain, J.) (the "Bankruptcy Court") dated May 14, 2015 (ECF No. 3, Exhibit A), denying Credit One's motion to compel arbitration under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq. For the following reasons, the Bankruptcy Court's order is AFFIRMED.

## BACKGROUND

    Plaintiff-Appellee Orrin Anderson opened a credit card account with Defendant-Appellant Credit One in 2002. Mr. Anderson's cardholder agreement contained an arbitration agreement, which provided that, "[y]ou and we agree that either you or we may, without the

other's consent, require that any controversy or dispute between you and us (all of which are called "Claims"), be submitted to mandatory, binding arbitration." (Appx. at 203, ECF No. 33:3.) The agreement additionally provided that "[c]laims subject to arbitration include, but are not limited to, disputes relating to the establishment, terms, treatment, operation, handling, limitations on or termination of your account; … credit reporting … or collections matters relating to your account; … and any other matters relating to your account, a prior related account or the resulting relationships between you and us." (*Id*. at 204.)

In 2011, Mr. Anderson defaulted on the account, and the account was closed in December 2011. Mr. Anderson filed a voluntary bankruptcy with the Bankruptcy Court on January 31, 2014. As a result of the bankruptcy proceedings, Mr. Anderson received a discharge of consumer debt, including the Credit One account. Despite the discharge, the debt remained on Mr. Anderson's credit report as "charged off" (i.e., not discharged in bankruptcy). Mr. Anderson subsequently contacted Credit One to notify it that the debt had been discharged in bankruptcy and to request that Credit One update his credit report. According to Mr. Anderson, Credit One took no action and Mr. Anderson's credit report continues to show the debt as charged off rather than discharged in bankruptcy.

On October 17, 2014, Mr. Anderson moved to reopen the bankruptcy proceeding and after a hearing, the Bankruptcy Court reopened the case to "permit the Debtor to commence and pursue an adversary proceeding … against Credit One Bank with respect to alleged violations of the Debtor's discharge injunction." (Bank. Doc. 14-22147-rdd, ECF No. 26.) Thereafter, Mr. Anderson filed an Amended Class Action Complaint (the "Class Action Complaint"), seeking to represent a class of persons having credit reports with remaining entries for discharged debts. In the Class Action Complaint, Mr. Anderson asserts a cause of action pursuant to 11 U.S.C. § 524

2

("§ 524") and 11 U.S.C. § 105 ("§ 105"). Under § 524, a discharge in a bankruptcy action acts as an injunction against all efforts to collect a discharged debt. 11 U.S.C. § 524. Section 105(a) of the Bankruptcy Code empowers a bankruptcy court with authority to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

On March 3, 2015, Credit One filed a combined motion to compel arbitration, among other requests. The Bankruptcy Court held a hearing on May 5, 2015, and on May 14, 2015, the Bankruptcy Court issued an order denying Credit One's motion to compel arbitration, relying principally on the analysis in *In re Belton*, No. 12-23037 (RDD), 2014 WL 5819586 (Bankr. S.D.N.Y. Nov. 10, 2014), *rev'd*, No. 15 CV 1934 VB, 2015 WL 6163083 (S.D.N.Y. Oct. 14, 2015), *motion to certify appeal denied*, No. 15 CV 1934 (VB), 2016 WL 164620 (S.D.N.Y. Jan. 12, 2016) (hereinafter, *Belton I*). Credit One now appeals that denial.

## STANDARD OF REVIEW

A district court "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree." Fed. R. Bankr. P. 8013. A district court reviews a bankruptcy court's conclusions of law *de novo* and its findings of fact under a clearly erroneous standard. *See In re Ames Dep't Stores, Inc.*, 582 F.3d 422, 426 (2d Cir. 2009) (citing *Momentum Mfg. Corp. v. Emp. Creditors Comm.*, 25 F.3d 1132, 1136 (2d Cir. 1994)).

## DISCUSSION

I.  **Applicable Standard of Review**

As an initial matter, the parties dispute the applicable standard of review. More specifically, Mr. Anderson contends that this Court must afford due deference to the Bankruptcy Court's determination, relying on *MBNA America Bank, N.A. v. Hill*, 436 F.3d 104, 107 (2d Cir.

3

2006) (hereinafter, *Hill*). *Hill* states that "[i]f the bankruptcy court 'has properly considered the conflicting policies in accordance with law, we acknowledge its exercise of discretion and show due deference to its determination that arbitration will seriously jeopardize a particular core bankruptcy proceeding.'" *Id*. (quoting *U.S. Lines, Inc. v. Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc. (In re U.S. Lines, Inc.),* 197 F.3d 631, 641 (2d Cir. 1999)). However, due deference is only afforded to a bankruptcy court's *exercise of discretion*. But a bankruptcy court will not *always* have this discretion; only where "it finds that the [core] proceedings are based on provisions of the Bankruptcy Code that inherently conflict with the [FAA] or that arbitration of the claim would necessarily jeopardize the objectives of the Bankruptcy Code" will the bankruptcy court have discretion to override the arbitration agreement. *In re Salander-O'Reilly Galleries*, LLC, 475 B.R. 9, 25-26 (S.D.N.Y. 2012) (citing *Hill*, 436 F.3d at 108). The determination of whether a bankruptcy court has this discretion is "a matter of law that must be reviewed *de novo*." *In re Lehman Bros. Holdings, Inc.,* No. 14 CIV. 7643 ER, 2015 WL 5729645, at *4 (S.D.N.Y. Sept. 30, 2015) (citing *In re Winimo Realty Corp.,* 270 B.R. 108, 117 (S.D.N.Y. 2001) (internal citations omitted)). Accordingly, this Court is required to review *de novo* the Bankruptcy Court's determination of whether the proceedings for violations of discharge injunctions inherently conflict with the FAA. If, and only if, there is an inherent conflict, the Bankruptcy Court is afforded discretion to override the arbitration agreement, an exercise of which is then entitled to due deference.

## II.    Arbitrability of Violation of Discharge Injunction Claims

The issue before the Court, therefore, is whether the Bankruptcy Court had discretion to override the arbitration agreement.[1] A bankruptcy court has discretion to refuse arbitration where

---

[1] Although Mr. Anderson raises arguments regarding the validity and scope of the arbitration agreements, (Brief of Plaintiff-Appellee Orrin S. Anderson, ECF No. 34, at 21-23), these issues are raised for the first time on

4

it finds that "Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue." *Shearson/Am. Express Inc. v. McMahon,* 482 U.S. 220, 227 (1987).[2] Proof of such congressional intent could "be discoverable in the text of the [statute], its legislative history, or *an inherent conflict between arbitration and the [statute's] underlying purposes*," *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991) (internal quotation marks omitted) (emphasis added).[3] Mr. Anderson contends—and the Bankruptcy Court agreed—that congressional intent to preclude arbitration is evident due to an inherent conflict between arbitration and the purposes of the Bankruptcy Code. On appeal, Credit One urges the Court to find that no such conflict exists.[4] Accordingly, the Court must determine if Congress demonstrated an intent to preclude a waiver of judicial remedies by asking whether or not an inherent conflict exists between arbitration and the underlying purposes of the Bankruptcy Code.

In addressing inherent conflicts between the Bankruptcy Code and the FAA, the Second Circuit has drawn a distinction between core and non-core proceedings. *See In re U.S. Lines,*

---

appeal and therefore will not be considered. *In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 132 (2d Cir. 2008) ("it is a well-established general rule that an appellate court will not consider an issue raised for the first time on appeal.") (internal citations omitted). (*See also* Hearing Transcript, ECF No. 3, Exhibit B, at 38: 12-15 ("I don't believe that the plaintiff disputes that there is, in fact, a valid agreement to arbitrate or that the scope of the agreement covers the claims that are being made here."))

[2] The FAA establishes a "federal policy favoring arbitration agreements," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983), and provides that written agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. A court has a duty to stay proceedings and refer the matter to arbitration if it is satisfied that the issue before it is arbitrable, and "[t]his duty to enforce arbitration agreements is not diminished when a party bound by an agreement raises a claim founded on statutory rights." *McMahon,* 482 U.S. at 226. However, where a court finds that "Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue," the issue is not arbitrable and no stay should be granted. *Id*. at 227

[3] *Gilmer*'s discussion of congressional intent makes clear that intent may be established any one of those three ways (i.e. text, legislative history, **or** inherent conflict). 500 U.S. at 26. *See also In re U.S. Lines, Inc*., 197 F.3d at 640 (finding congressional intent to prohibit arbitration through an inherent conflict, when no conflict was apparent in the text or legislative history of the statute). The parties in the instant case do not assert that any such intent is present in the statute's text or history. Therefore, the Court confines it focus to whether there is an inherent conflict between arbitration and the Bankruptcy Code.

[4] In Reply, Credit One argues, by analogy to the FCRA, that a pre-discharge credit reporting of accurate information does not violate the discharge injunction. (Reply Brief of Defendant-Appellant Credit One Bank, N.A., ECF No. 36, at 3-5.) This argument goes to the substance of the proceeding before the Bankruptcy Court and is irrelevant for purposes of determining this appeal.

5

*Inc.*, 197 F.3d at 640. "[B]ankruptcy courts generally *do not* have discretion to *decline* to stay *non-core* proceedings in favor of arbitration," because in non-core proceedings, the interest of the Bankruptcy Court is not as great. *See In re Crysen/Montenay Energy Co.*, 226 F.3d 160, 166 (2d Cir. 2000). Core proceedings, on the other hand, implicate more pressing bankruptcy concerns and thus are more likely to "present a conflict sufficient to override by implication the presumption in favor of arbitration." *Id.* Nevertheless, the bankruptcy court does not always have the discretion to override an arbitration agreement in core proceedings. Only proceedings that "are premised on provisions of the Code that 'inherently conflict' with the [FAA]" and proceedings where "arbitration [would] necessarily jeopardize the objectives of the Bankruptcy Code" present the type of severe conflict necessary to demonstrate congressional intent to preclude a waiver of judicial remedies. *Insurance Co. of N. Am. v. NGC Settlement Trust & Asbestos Claims Mgmt Corp. (In re Nat'l Gypsum Co.)*, 118 F.3d 1056, 1067 (5th Cir. 1997).

Therefore, to determine that the Bankruptcy Court had discretion to override the arbitration agreement, the Court must find an inherent conflict. Because only core issues present an inherent conflict, the Court must first determine if the issues are core or non-core to the Bankruptcy Code. If the issues are core, the Court must then decide whether arbitration would present a severe, inherent conflict with or necessarily jeopardize the objectives of the Bankruptcy Code.

    *A. Core versus non-core*

In this case, Mr. Anderson's claim pursuant to § 524 of the Bankruptcy Code is properly characterized as a core issue. *See Haynes v. Chase Bank USA, N.A. (In re Haynes)*, Adv. Pro. No. 13–08370–rdd, 2014 WL 3608891, at *7 (Bankr. S.D.N.Y. Jul. 22, 2014) ("A 'core proceeding' includes enforcement of the discharge, there being few matters as 'core' to the basic function of

6

the bankruptcy courts as the enforcement of the discharge under Sections 524 and 727 of the Bankruptcy Code."); *In re Torres*, 367 B.R. 478, 481 (Bankr. S.D.N.Y. 2007) ("There is no question that the plaintiffs' claims to enforce Bankruptcy Code section 524(a)(2)'s discharge injunction are core proceedings…."); *In re Texaco Inc.*, 182 B.R. 937, 945 (Bankr. S.D.N.Y. 1995) (citing *In re Kiker*, 98 B.R. 103, 103-04 (Bankr. N.D. Ga. 1988) for the proposition that a debtor's motion to reopen a Chapter 13 case to enjoin an alleged violation of the discharge provision of 11 U.S.C. § 524 is a core proceeding); *In re Russell*, 378 B.R. 735, 738 (Bankr. E.D.N.Y. 2007) (holding that a "claim brought under 11 U.S.C. § 524(a)(2) [] constitutes a core proceeding.").

Credit One acknowledges that Mr. Anderson's individual claim to enforce the discharge injunction is a "core" claim under the Bankruptcy Code, but it contends that the class claims are "non-core" claims that should be arbitrated because (1) the Bankruptcy Court lacks jurisdiction over the putative class's claims because they do not relate to Mr. Anderson's bankruptcy, and (2) the Bankruptcy Court does not have subject matter jurisdiction to enforce discharge injunctions entered in other districts. (Credit One Memo at 17-22.)

The Bankruptcy Court previously heard and disposed of the core/non-core issue:

> [The putative class members] are debtors, too. They also got a discharge. They got a discharge under the Bankruptcy Code, specific provisions of the Bankruptcy Code, 11 U.S.C. 524 and 727. Consequently, I believe under 28 U.S.C. Sections 157(a) through (b) and 1334, those claims which arise under the Bankruptcy Code, those rights to enforce the discharge which arise under the Bankruptcy Code, i.e. 524 and 727, Congress specifically provided that the bankruptcy court has core jurisdiction. … This is like fundamentally core. There's nothing more fundamental than the discharge, as every court that has considered this issue has ruled.

(Hearing Transcript at 48: 10-22.) Moreover, the arguments regarding jurisdiction were made in and rejected by the Bankruptcy Court, and this Court refused to grant Credit One leave to appeal

7

those determinations. *See Anderson v. Credit One Bank. N.A. (In re Anderson),* No. 15–cv–4227(NSR), 2016 WL 787481 (S.D.N.Y. Feb. 22, 2016) (declining to hear an appeal of (1) whether the Bankruptcy Court has subject matter jurisdiction to entertain a putative nationwide class action over non-core claims for alleged violations of the discharge orders of other bankruptcy courts, and (2) whether the Bankruptcy Court has subject matter jurisdiction to award declaratory or injunctive relief or punitive damages for an alleged violation of the discharge injunction). Thus, those matters are not currently before the Court.

In any event, the determination of whether a matter is core or non-core depends on the nature of the proceeding. *See In re Best Products Co.,* 68 F.3d 26, 31 (2d Cir. 1995). Specifically:

> [c]ore proceedings are those that are found to be arising under the Bankruptcy Code or arising in a bankruptcy case. Proceedings arising under the Bankruptcy Code are those that clearly invoke substantive rights created by federal bankruptcy law. Proceedings arising in a bankruptcy case are those claims that are not based on any right expressly created by the Bankruptcy Code, but nevertheless, would have no existence outside of the bankruptcy.

*In re Robert Plan Corp.*, 777 F.3d 594, 596-97 (2d Cir.), *cert. denied sub nom. Kirschenbaum v. Dep't of Labor*, 136 S. Ct. 317, 193 L. Ed. 2d 227 (2015) (internal citations, quotation marks, and alterations omitted). The discharge is clearly a right created by federal bankruptcy law, and an enforcement proceeding concerning that discharge therefore arises under the Bankruptcy Code. *See In re Nat'l Gypsum Co*., 118 F.3d at 1064 ("[A] proceeding to enforce or construe a bankruptcy court's section 524(a) discharge injunction … necessarily arises under title 11"). Thus, a proceeding concerning a violation of a discharge injunction is a core proceeding. *See, e.g.*, *In re Torres*, 367 B.R. at 481 ("There is no question that the plaintiffs' claims to enforce Bankruptcy Code section 524(a)(2)'s discharge injunction are core proceedings"). Therefore,

8

given that the issues are core, the Court must proceed to the second inquiry and determine whether enforcement of the discharge injunction by arbitration inherently conflicts with or necessarily jeopardizes the objectives of the Bankruptcy Code.

> B.  *Inherent Conflict or Necessarily Jeopardized Objectives*

To make a determination that an inherent conflict exists, a court must engage in "a particularized inquiry into the nature of the claim and the facts of the specific bankruptcy."[5] *Hill*, 436 F.3d at 108. A court may find that an "inherent conflict" exists where arbitration of a claim would "necessarily jeopardize" the objectives of the Bankruptcy Code, which include "the goal of centralized resolution of purely bankruptcy issues, the need to protect creditors and reorganizing debtors from piecemeal litigation, and the undisputed power of a bankruptcy court to enforce its own orders." *Hill*, 436 F.3d at 108 (citing *In re Nat'l Gypsum Co.,* 118 F.3d at 1069). Such a severe conflict exists "where arbitration is inadequate to protect the substantive rights at issue." *McMahon*, 482 U.S. at 226. "If a severe conflict is found, then the court can properly conclude that, with respect to the particular Code provision involved, Congress intended to override the [FAA's] general policy favoring the enforcement of arbitration agreements." *Hill*, 436 F.3d at 108.

Here, the Bankruptcy Court refused to stay the proceedings and compel arbitration on the grounds that the discharge is the fundamental right of the debtor obtained in bankruptcy, as it guarantees a debtor's fresh start, which is a central purpose of the Bankruptcy Code, and that purpose should not be jeopardized by decentralized resolution of claims through arbitration.  (*See*

---

[5] "Disputes that involve both the Bankruptcy Code and the [FAA] often present conflicts of 'near polar extremes: bankruptcy policy exerts an inexorable pull towards centralization while arbitration policy advocates a decentralized approach toward dispute resolution.'" *Hill*, 436 F.3d at 108 (citing *In re U.S. Lines, Inc.*, 197 F.3d at 640 (quoting *Societe Nationale Algerienne Pour La Recherche, La Production, Le Transport, La Transformation et La Commercialisation des Hydrocarbures v. Distrigas Corp*., 80 B.R. 606, 610 (D. Mass. 1987)).

Hearing Transcript at 45-50.) In so holding, the court relied primarily on its analysis in *Belton I* and Second Circuit precedent in *MBNA America Bank, N.A. v. Hill*.

The Court agrees that arbitrating Plaintiffs-Appellees' § 524 claims would necessarily jeopardize the objectives of the Bankruptcy Code.

In coming to this conclusion, the Court considers and applies the analysis from the seminal case on point, *MBNA America Bank, N.A. v. Hill*, where the Second Circuit enumerated three justifications for not finding an inherent conflict. 436 F.3d at 109. In addition, the Court takes into account an additional consideration—uniform application of the bankruptcy law.

> *i.*     *Hill* Analysis

In *Hill*, the Second Circuit ruled that arbitration of the claim would not seriously jeopardize the objectives of the Bankruptcy Code because "(1) Hill's estate has now been fully administered and her debts have been discharged, so she no longer requires protection of the automatic stay and resolution of the claim would have no effect on her bankruptcy estate; (2) as a purported class action, Hill's claims lack the direct connection to her own bankruptcy case that would weigh in favor of refusing to compel arbitration; and (3) a stay is not so closely related to an injunction that the bankruptcy court is uniquely able to interpret and enforce its provisions." *Id.* Applying each of these justifications to the instant case, the Court finds that the weight of authority compels the opposite conclusion.

In *Hill,* the court noted that, first and most importantly, arbitration of Hill's § 362(h) claim would not jeopardize the important purposes that the automatic stay serves, including "providing debtors with a fresh start, protecting the assets of the estate, and allowing the bankruptcy court to centralize disputes concerning the estate." *Hill*, 436 F.3d at 109. The court explained that, because the bankruptcy case had closed, the automatic stay (which operates

10

during the adjudication of the bankruptcy) was no longer necessary, so arbitration would not conflict with the objectives of the automatic stay. This distinguished Hill's case from the cases in which "resolution of the arbitrable claims directly implicated matters central to the purposes and policies of the Bankruptcy Code." *Id.* (citing *In re U.S. Lines, Inc.*, 197 F.3d at 641 (core insurance claims were integral to bankruptcy court's ability to preserve and equitably distribute assets of the estate where debtor faced mass tort actions); *In re Gandy*, 299 F.3d 489, 495-99 (5th Cir. 2002) (core claims represented almost entirety of the debtor's estate, the claims concerned the equitable distribution of the assets among creditors, and one of the remedies sought was not available in arbitration); *Phillips v. Congelton, L.L.C. (In re White Mountain Mining Co., L.L.C.),* 403 F.3d 164, 170 (4th Cir. 2005) (bankruptcy court's conclusion that arbitration of the claims would "substantially interfere with [the debtor's] efforts to reorganize" not clearly erroneous)).

In the instant case, the Court must instead examine the purposes and objectives of the *discharge* (rather than the automatic stay) and whether Mr. Anderson still requires protection of the discharge.

The Bankruptcy Code stems from "Congress's determination, rooted in Article 1, Section 8 of the Constitution, that debtors should be able to discharge their debts and creditors should have the benefit of uniform bankruptcy laws premised on that ultimate quid pro quo." *Belton I*, 2014 WL 5819586, at *8. Accordingly, "Congress made it a central purpose of the [B]ankruptcy [C]ode to give debtors a fresh start in life and a clear field for future effort unburdened by the existence of old debts." *In re Bogdanovich*, 292 F.3d 104, 107 (2d Cir. 2002). The effectiveness of a bankruptcy proceeding therefore relies exclusively on a functioning discharge.[6] In other

---

[6] For this reason, the Bankruptcy Court ruled that "[t]here's nothing more fundamental than the discharge." (Hearing Transcript at 48.)

11

words, only through enforcement of the discharge order can the discharge provided by the Bankruptcy Court provide the debtor with a "fresh start," a central objective to the bankruptcy laws. *In re DeTrano*, 326 F.3d 319, 322 (2d Cir. 2003) (citing *Cohen v. de la Cruz*, 523 U.S. 213, 217 (1998)) ("Bankruptcy allows 'honest but unfortunate' debtors an opportunity to reorder their financial affairs and get a fresh start. This is accomplished through the statutory discharge of preexisting debts."); *In re Nassoko*, 405 B.R. 515, 522 (Bankr. S.D.N.Y. 2009) (citing *Green v. Welsh*, 956 F.2d 30, 33 (2d Cir. 1992)).

Moreover, the discharge is the mechanism through which debtors are protected *after* the resolution of their bankruptcy proceedings and distribution of their estates. Thus, whereas Hill "no longer require[d] the protection of the stay to ensure her fresh start," the discharge is essential in the post-bankruptcy context, and its objective is still—if not primarily—implicated after the estate is fully administered. In other words, in *Hill*, the automatic stay was at issue, and the automatic stay by definition operates during the debtor's bankruptcy, which explains the *Hill* court's reluctance to hold that an inherent conflict exists where the bankruptcy proceeding had concluded and the estate had been administered. In contrast, the discharge operates post-bankruptcy to ensure the objectives of the bankruptcy are carried out. Therefore, a central purpose of the Bankruptcy Code is implicated by the discharge even after the conclusion of bankruptcy proceedings, and arbitration of a discharge violation would jeopardize this central objective.[7]

---

[7] This conclusion is reinforced by the Fifth Circuit's decision in *In re Nat'l Gypsum Co.*, 118 F.3d at 1056. In *Nat'l Gypsum,* the debtors alleged that the creditor's collection efforts—preconfirmation claims that the creditor was attempting to enforce in a series of demand letters—violated their discharge obtained in bankruptcy. *Id.* at 1059-60. After recognizing that "not all core bankruptcy proceedings are premised on provisions of the Code that 'inherently conflict' with the [FAA]," the court went on to hold that, nevertheless, "arbitration of a core bankruptcy adversary proceeding brought to determine whether [the creditor's] collection efforts were barred by the section 524(a) discharge injunction … would be inconsistent with the Bankruptcy Code." *Id.* at 1067, 1071. Because the dispute involved "adjudication of federal bankruptcy rights wholly divorced from inherited contractual claims," the court found that "importance of the federal bankruptcy forum provided by the Code is at its zenith." *Id.* at 1068.

12

Accordingly, the Court does not read *Hill* to imply that arbitration is inappropriate only if it would substantially interfere with equitable distribution of the estate assets or debtors' efforts to reorganize.[8] Indeed, as the Second Circuit stated, "[f]irst, and most importantly, arbitration of Hill's § 362(h) claim would not jeopardize the important purposes that the automatic stay serves: providing debtors with a fresh start. …" 436 F.3d at 109. Clearly, then, *Hill* confirmed an additional, central objective of the Bankruptcy Code–providing debtors with a fresh start–which also has been recognized consistently by Second Circuit courts. *See In re Bogdanovich,* 292 F.3d at 107 ("Congress made it a central purpose of the [B]ankruptcy [C]ode to give debtors a fresh start in life and a clear field for future effort unburdened by the existence of old debts."); *In re Stoltz*, 315 F.3d 80, 94 (2d Cir. 2002) (same); *In re Hayes*, 183 F.3d 162, 167 (2d Cir. 1999) (quoting *Local Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934)) ("one of the primary purposes of the bankruptcy act is to ... permit [the honest debtor] to start afresh") (alteration in original). *See also Schwab v. Reilly*, 560 U.S. 770, 791 (2010) (holding that the fresh start is a fundamental bankruptcy concept); *United States v. Johns,* No. 11–3299, 2012 WL 2899060, at *11 (7th Cir. July 17, 2012) ("one of the central purposes of the Bankruptcy Code ... is to give debtors a fresh start.") (citations omitted). This objective is predominantly achieved through the discharge, and, therefore, the question of whether a discharge injunction has been violated is essential to proper functioning of the Bankruptcy Code, and arbitration is inadequate to protect such core, substantive rights granted by the Code.[9] *See, e.g.*, *In re Norman*, No. 04-11682, 2006 WL

---

[8] On this point, the Court notes that it is in disagreement with *In re Belton*, No. 15 CV 1934 VB, 2015 WL 6163083, at *7 (S.D.N.Y. Oct. 14, 2015), *motion to certify appeal denied*, No. 15 CV 1934 (VB), 2016 WL 164620 (S.D.N.Y. Jan. 12, 2016) (hereinafter, *Belton II*). In *Belton II,* the court held that "*Hill* stands for the more modest proposition that claims alleging violations of the Bankruptcy Code should not be arbitrated if those claims are 'integral to [the] bankruptcy court's ability to preserve and equitably distribute assets of the estate' or if arbitration would 'substantially interfere with [the debtor's] efforts to reorganize.'" *Id.* (citing *Hill,* 436 F.3d at 110 (internal quotation marks omitted)). For the reasons above, this Court respectfully disagrees with this conclusion.

[9] Although it is true that "by agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum,"

13

2818814, at *2 (Bankr. M.D. Ala. Sept. 29, 2006) ("The question of whether a discharge injunction issued by the Federal Bankruptcy Court has been violated ought to be decided by a bankruptcy judge and not by an arbitrator."). *See also In re Haemmerle*, 529 B.R. 17, 25 (Bankr. E.D.N.Y. 2015) ("The discharge injunction is intended to further one of the primary purposes of the Bankruptcy Code: giving the debtor an opportunity to make a financial fresh start, unburdened by efforts to collect debts she no longer owes.") (collecting cases). This is not to say that whenever the debtor's fresh start is at issue, arbitration is unavailable; however, in the instant case, where the discharge is so fundamentally related to a debtor's fresh start, this conclusion is warranted.

The Court now turns to *Hill's* other two bases for holding that arbitration of the plaintiff's automatic stay claim would not seriously jeopardize the objectives of the Bankruptcy Code—the facts that the proceeding was a class action and that a bankruptcy court is not uniquely able to interpret an automatic stay.

The *Hill* court noted, secondly, that the fact that Hill filed her claim as a class action tended to show that the claim is not integral to her individual bankruptcy proceedings, and that lack of direct connection weighed in favor of arbitration. *Hill*, 436 F.3d at 110. "By tying her claim to a class of allegedly similarly situated individuals, many of whom are no longer in bankruptcy proceedings, she demonstrates the lack of close connection between the claim and her own underlying bankruptcy case." *Id.* Here too, the class action nature of the action weighs in favor of arbitration.

---

Congress may evince an intent to preclude waiver of judicial remedies where statutory rights are not appropriate for arbitration. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991) (internal quotation marks omitted). In the instant case, given the high barriers individual debtors would face if arbitrating on an individual basis—specifically, cost and efficient resolution of claims—arbitration is inadequate to protect the debtors' rights to a discharge. *See Belton I*, 2014 WL 5819586, at *9.

14

Third and finally, *Hill* explained that because an arbitrator would be asked to interpret and enforce a statute, rather than an affirmative order of the bankruptcy court, arbitration is an appropriate and competent forum for the § 362 claim. *Hill*, 436 F.3d at 110. In contrast, the claims here arise from a discharge injunction, which is an affirmative order of the bankruptcy court. As noted in *Hill,* a main objective of the Bankruptcy Code is the "undisputed power of a bankruptcy court to enforce its own orders." *Hill*, 436 F.3d at 108-09. Additionally, courts in the Second Circuit consistently recognize the unique power of a bankruptcy court to interpret its own orders. *See Deep v. Copyright Creditors,* 122 F. App'x 530, 533 (2d Cir. 2004) (citing *In re Casse*, 198 F.3d 327, 333 (2d Cir. 1999) ("The bankruptcy court [is] in the best position to interpret its own orders."); *In re Texaco Inc.,* 182 B.R. 937, 947 (Bankr. S.D.N.Y. 1995) ("A bankruptcy court is undoubtedly the best qualified to interpret and enforce its own orders including those providing for discharge and injunction"). *See also PRL USA Holdings, Inc. v. United States Polo Ass'n, Inc*., No. 14-CV-764 RJS, 2015 WL 1442487, at \*6 (S.D.N.Y. Mar. 27, 2015) ("Federal courts, and federal courts alone, possess 'the inherent authority to enforce their judgments,' and the FAA may not be construed to divest courts of their traditional powers to police their own orders.") (citing *Cardell Fin. Corp. v. Suchodolski Assoc., Inc.,* 896 F. Supp. 2d 320, 328 (S.D.N.Y. 2012); *Emilio v. Sprint Spectrum L. P.,* No. 08–cv–7147 (BSJ), 2008 WL 4865050, at \*2 (S.D.N.Y. Nov. 6, 2008), *rev'd on other grounds,* No. 08 CV 7147(BSJ), 2008 WL 4865050, at \*1 (S.D.N.Y. Nov. 6, 2008), *order vacated in part,* No. 08 CV 7147(BSJ), 2008 WL 4865182 (S.D.N.Y. Nov. 6, 2008), and *aff'd,* 315 F. App'x 322 (2d Cir. 2009)). This consideration, therefore, weighs in favor of refusing to compel arbitration, as the Bankruptcy Court is uniquely suited to interpret its discharge order.

15

In sum, the considerations outlined in *Hill*, as applied to the instant case, weigh against arbitration.

    *ii.*    *Additional Consideration – Uniformity*

In addition to the three considerations in *Hill*, the court in *Belton I*—relied on by the Bankruptcy Court in the instant case—addressed an additional justification for arbitration that this Court finds compelling. Specifically, *Belton I* emphasized the importance of the uniform application of bankruptcy law, which has been recognized consistently in courts throughout this district. *Belton I*, 2014 WL 5819586, at *10; *Lehman Bros. Holdings Inc. v. Wellmont Health Sys.*, No. 14 CIV. 01083 LGS, 2014 WL 3583089, at *1 (S.D.N.Y. July 18, 2014) (finding that uniformity in the administration of bankruptcy laws weighs in favor of leaving the case in bankruptcy court, noting that although the claims are principally private and contractual in nature, "they are brought within the context of similar disputes arising out of various [] agreements"); *In re Lehman Bros. Holdings Inc.*, 480 B.R. 179, 196 (S.D.N.Y. 2012) (recognizing the important policy promoting uniform application of the bankruptcy law); *In re Extended Stay, Inc.,* 466 B.R. 188, 207 (S.D.N.Y. 2011) (same). Accordingly, *Belton I* emphasized the need for "complete and consistent relief," which "is more likely to occur if [the disputes are] determined by … a bankruptcy court [rather] than on an arbitration-by-arbitration basis of separate alleged violations of the discharge." *Belton I*, 2014 WL 5819586, at *10. *See also In re Nat'l Gypsum*, 118 F.3d at 1070 n. 21 ("Efficient resolution of claims [is an] integral purpos[e] of the Bankruptcy Code."). In other words, uniform application of the Bankruptcy Code is furthered by federal, class action litigation:

> Uniformity in application of the law to the facts in these federal statutory claims is furthered by federal court litigation and not arbitration. … The result is, that certain fact situations may be expected to bring about fairly consistent results, wherever they are

16

> tried. To subject these matters to arbitration, before individuals or tribunals with little or no experience in bankruptcy law or practice, and with little or no concern for the rights and interests of the body of creditors, of which the particular defendant is only one, would introduce variables into the equation which could potentially bring about totally inconsistent results.[10]

*In re Bethlehem Steel Corp.,* 390 B.R. 784, 794-95 (Bankr. S.D.N.Y. 2008). Here, a number of debtors assert claims under virtually identical agreements with one creditor—Credit One. Given that each individual claim would be subject to separate arbitration, this could create wildly inconsistent results. This is especially true in light of the broad discretion arbitrators have in deciding whether or not to apply collateral estoppel offensively. *Bear, Stearns & Co., Bear, Stearns Sec. Corp. v. 1109580 Ontario, Inc.*, 409 F.3d 87, 92 (2d Cir. 2005) ("In view of differing results reached by different panels, the arbitrators had discretion to apply collateral estoppel or not."). In *Bear Stearns,* the Second Circuit upheld an arbitration decision where the arbitrator refused to apply collateral estoppel where differing results had been reached in separate, related arbitrations. *Id.* It is certainly plausible, if not probable, that the same result (i.e., inconsistent decisions) would manifest in the instant case if the disputes were to be sent to separate arbitrations. Thus, multiple violations of a discharge injunction by one creditor are more efficiently and uniformly decided by federal litigation.

In light of the two *Hill* factors weighing against arbitration and the additional consideration of uniform application of the discharge injunction, the Court finds that the Bankruptcy Court had discretion to refuse to compel arbitration and agrees with the Bankruptcy Court's determination. As stated previously, when the Bankruptcy Court exercises its discretion

---

[10] The Court recognizes that the instant case presents the inverse scenario; namely, a number of debtors and one particular creditor. However, the policy of uniform application of the Bankruptcy Code, as well as concerns about the introduction of numerous variables into the equation, apply in both scenarios equally.

17

to override an arbitration agreement, this Court must afford that determination due deference, and the Court finds no clear error in that aspect of the Bankruptcy Court's decision.

## CONCLUSION

For the foregoing reasons, the Court AFFIRMS the Bankruptcy Court's order denying Credit One's motion to compel arbitration. Accordingly, Credit One's motion to expedite the appeal and motion to stay the Bankruptcy Court proceedings are mooted. The Clerk of the Court is respectfully requested to terminate the motions at ECF Nos. 22 and 40 and close this case.

Dated:  June 14, 2016  
        White Plains, New York

SO ORDERED

_____  
NELSON S. ROMÁN  
United States District Judge