# Exhibit C

Confidential

Page 1

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE:

ORRIN S. ANDERSON, AKA            CASE NO.
ORRIN ANDERSON, AKA ORRIN         14-22147 (rdd)
SCOTT ANDERSON,
                                  CHAPTER 7
    Debtor.
-------------------------------------------------
IN RE:

ORRIN S. ANDERSON, AKA            ADV. CASE NO.
ORRIN ANDERSON, AKA ORRIN         15-08214 (rdd)
SCOTT ANDERSON

    DEBTOR AND PLAINTIFF,
    ON BEHALF OF HIMSELF
    AND ALL OTHERS
    SIMILARLY SITUATED,
    v.
CREDIT ONE BANK, N.A.,
    DEFENDANT.
-------------------------------------------------

DEPOSITION OF:    MEGHAN EMMERICH

DATE:             June 16, 2016

TIME:             9:28 AM

LOCATION:         Residence Inn - Charleston Airport
                  5035 International Boulevard
                  Charleston, SC

TAKEN BY:         Counsel for the Plaintiff

REPORTED BY:      TERRI L. BRUSSEAU, RPR, CRR



Page 2

```
 1   APPEARANCES OF COUNSEL:
 2      ATTORNEYS FOR THE PLAINTIFF:
 3        BOIES, SCHILLER & FLEXNER, LLP
          BY: JEFFREY S. SHELLY
 4        30 South Pearl Street, 11th Floor
          Albany, NY  12207
 5        (518) 434-0600
          jshelly@bsfllp.com
 6
        ATTORNEYS FOR THE DEFENDANT:
 7
          SESSIONS, FISHMAN, NATHAN & ISRAEL
 8        BY: MICHAEL D. SLODOV
            (BY TELEPHONE)
 9        15 East Summit Street
          Chagrin Falls, OH  44022
10        (440) 318-1073
          mslodov@sessions-law.biz
11
          and
12
          BLANK, ROME, LLP
13        BY: KENNETH L. BRESSLER
          The Chrysler Building
14        405 Lexington Avenue
          New York, NY  10174-0208
15        (212) 885-5203
          kbressler@blankrome.com
16
     ALSO PRESENT:
17
          Michael Bahner
18
19      (INDEX AT REAR OF TRANSCRIPT)
20
21
22
23
24
25
```

Page 3

```
 1              MEGHAN EMMERICH
 2   being first duly sworn, testified as follows:
 3                EXAMINATION
 4   BY MR. SHELLY:
 5       Q.  Good morning.  We met just before the
 6   deposition here.  First question for you is do any
 7   of the entities that you're here to testify for
 8   today extinguish or delete trade lines that have
 9   been discharged in bankruptcy?
10          MR. BRESSLER:  Why don't you just for
11   the sake of clarity identify the entities.
12          MR. SHELLY:  Yeah, I'm going to get
13   into that.  I just -- I -- what I -- that's my
14   first question for her.  I'll do that --
15          MR. BRESSLER:  Well, how can she answer
16   then if you haven't --
17          MR. SHELLY:  Well --
18          MR. BRESSLER:  -- clarified the names
19   of the entities for whom she's here just to make
20   sure there's no --
21          MR. SHELLY:  Okay.
22   BY MR. SHELLY:
23       Q.  The entities that you're here for today
24   are Credit One -- are Sherman Financial Group,
25   Sherman Originator III, FNBM, LLC, MHC Receivables,
```

Page 4

```
 1   LLC, PYOD, LLC, Resurgent Capital Services, LP,
 2   LVNV Funding, LLC and Sherman Capital Markets, LLC.
 3   You understand that you're here today to
 4   testify for those entities?
 5          MR. BRESSLER:  I'll object to the
 6   extent -- did you say Credit One at the beginning
 7   or did you stop saying Credit One?
 8          MR. SHELLY:  I stopped saying Credit
 9   One.
10          MR. BRESSLER:  Okay.  Because it's not
11   included, correct?
12          MR. SHELLY:  Right.
13          (Off-the-record conference.)
14          THE WITNESS:  Yes, I understand that
15   I'm here for those eight entities.
16   BY MR. SHELLY:
17       Q.  Okay.  Okay.  My question is for those
18   entities, do any of them extinguish or delete trade
19   lines discharged in bankruptcy?
20       A.  LVNV Funding, LLC and PYOD, LLC will
21   have their trade lines deleted upon the filing of a
22   bankruptcy.
23       Q.  Okay.  Upon the filing but not -- I'm
24   asking specifically with respect to a bankruptcy
25   discharge.
```

Page 5

```
 1       A.  There would be no trade lines to delete
 2   since the trade lines were already deleted upon the
 3   filing of a -- of a BK.
 4       Q.  Okay.  But none of the others ever
 5   extinguish or delete their trade lines when a --
 6   when a -- there's been a discharge of bankruptcy?
 7          MR. BRESSLER:  Objection to form.
 8          THE WITNESS:  The only -- out of the
 9   eight entities that we named, the only two entities
10   that own debt would be LVNV Funding and PYOD that
11   collect on the debt.
12   BY MR. SHELLY:
13       Q.  Okay.  They're the ones that own but if
14   any -- any of the others that do any servicing of
15   debt, do any of those actually extinguish or delete
16   trade lines that have been discharged in
17   bankruptcy?
18       A.  Resurgent Capital Services, services
19   for LVNV Funding and PYOD so therefore Resurgent
20   would delete LVNV Funding's trade line or P --
21   PYOD's trade line upon the filing of a bankruptcy
22   but Resurgent does not have its own trade line.
23       Q.  Okay.  And why does PYOD and LVNV --
24   why do they actually delete the trade line at the
25   filing of a bankruptcy?
```



Page 6

1    A.    It has always been that way as far as I
2  know, not quite -- I'm not sure what the
3  determination was.
4    Q.    Okay.  You don't know who made that
5  policy decision?
6    A.    No.  I've been with Resurgent since
7  2004 and it's always been that way.
8    Q.    Okay.  And as far as you know even
9  before 2004 that was the practice?
10    A.    As far as I know.
11    Q.    Okay.  Let's just go back and get a
12  little bit of background.  We went through those
13  entities that I was going to go through so you are
14  here to testify for those three entities today.
15  You understand that you're not here testifying on
16  your own behalf as an employee but actually as a
17  representative of those entities, correct?
18    A.    Correct.
19    Q.    Okay.  All right.  Where -- where are
20  you currently employed?
21    A.    Resurgent Capital Services, LP.
22    Q.    Okay.  And what do you do there?
23    A.    I'm a senior managing paralegal.
24    Q.    Okay.  Just to be clear since we
25  didn't -- we went through those eight entities

Page 7

1  right up front there as opposed -- now, I may refer
2  to Sherman Originator III as just Sherman
3  Originator and I take it you refer to it that way
4  at times at work, correct?
5    A.    We typically refer to it as Sherman III
6  because there is a Sherman Originator, a wholly
7  different entity.
8    Q.    Oh, okay.
9    A.    So we usually refer to it as Sherman
10  III.
11    Q.    Okay.  What -- what's the Sherman
12  Originator that's separate from Sherman Originator
13  III?
14    A.    It's just another entity that has in
15  the past purchased debt and transferred it to
16  another internal entity.
17    Q.    That other Sherman Originator, who did
18  it purchase debt from?
19    A.    It can purchase debt from Sherman
20  Originator III and in the past, not any longer, it
21  would purchase debt from outside third parties such
22  as banks.
23    Q.    Okay.  Nothing else sort of internal to
24  Sherman that it purchased from other than Sherman
25  Originator III?

Page 8

1    A.    Not that I'm aware of.
2    Q.    Okay.  And it's still in existence?
3    A.    It is.
4    Q.    Do you know when it stopped purchasing
5  debt from Sherman Originator III?
6    A.    It still does.
7    Q.    Okay.  And do you know where the debt
8  that it purchases from Sherman Originator III
9  originated from?
10        MR. BRESSLER:  I'm just going to object
11  to the scope.  It's beyond the scope of the topics
12  that this witness is being designated to testify
13  about.
14        MR. SHELLY:  Okay.
15        THE WITNESS:  It -- it varies on --
16  depending on where Sherman Originator III purchased
17  the debt from.  It could be any of the sellers that
18  we currently purchase from.
19  BY MR. SHELLY:
20    Q.    Okay.  But it's always external
21  sellers, not internal?
22        MR. BRESSLER:  Objection, form.
23        THE WITNESS:  Typically Sherman -- yes,
24  Sherman Originator III will purchase debt from
25  third parties.

Page 9

1  BY MR. SHELLY:
2    Q.    Okay.  But it's my understanding that
3  Sherman Originator III also buys debt and keeps
4  debt that originated with Credit One Bank.  Does
5  any of that debt end up in Sherman Originator as
6  opposed to being sold from Sherman Originator III
7  to Sherman Originator?
8        MR. BRESSLER:  Objection, form.
9        THE WITNESS:  It can.  It would pass
10  through Sherman Originator into LVNV Funding.
11  BY MR. SHELLY:
12    Q.    Okay.  Is there a particular sort of
13  debt that passes through Sherman Originator to LVNV
14  Funding?
15    A.    If LVNV Funding is going to be the
16  ultimate owner of the debt, then it has to pass
17  through Sherman Originator, LLC first.
18    Q.    Okay.  But what -- is it a particular
19  sort of debt?  In other words, is it -- is it
20  bankrupt debt, is it -- is it deceased debt, what
21  kind of debt is it?  Is it a particular category?
22  That's my question.
23    A.    It's as broad as just charged-off debt.
24  It can be lots of different types.
25    Q.    Okay.  And does that Sherman Originator



Page 14

1  and 2008 with the exception of seven months when I
2  did not work for Resurgent, I worked in their
3  bankruptcy department.
4      Q.  Okay.  And what did you do within the
5  bankruptcy department?
6      A.  I worked in secured bankruptcy so I
7  would have a list of accounts.  If a claim needed
8  to be filed, I would file the claim.  If I needed
9  to discuss -- talk to a trustee, I would do that, a
10 plaintiff's attorney, whatever really was needed to
11 monitor the account through the bankruptcy.
12     Q.  Okay.  And you said there were seven
13 months when you didn't work for Resurgent.  What
14 were you doing during those seven months?
15     A.  I moved to Rock Hill, South Carolina
16 just to see what was up in Charlotte.
17     Q.  Okay.
18     A.  Didn't like it, came back.
19     Q.  Okay.  Great.  Okay, with respect to
20 those eight entities, what -- what are the
21 responsible -- responsibilities of each one of them
22 concerning reporting information to credit
23 reporting agencies?
24     A.  I'll just take them one at a time.
25     Q.  Sure, that'd be great.

Page 15

1      A.  MHC does not report to the credit
2  bureau entities, FNBM does not report to the credit
3  bureau, Sherman III does not report, Sherman
4  Capital Markets does not report.  How many is
5  that --
6          MR. BRESSLER:  Do you want a list?
7          THE WITNESS:  -- four?
8          MR. BRESSLER:  Do you want a list to
9  make -- why don't you write down for yourself --
10 BY MR. SHELLY:
11     Q.  Sure.
12         MR. BRESSLER:  -- to make it a little
13 easier --
14 BY MR. SHELLY:
15     Q.  I -- actually, I can give you a list.
16     A.  I'm trying to think in my head.
17     Q.  I have a list here.  There you go.
18     A.  Okay.
19     Q.  I'm going to make it an exhibit --
20     A.  Because I'm trying to think how many I
21 got.
22     Q.  -- but there's a list for you.
23     A.  Okay.
24         MR. BRESSLER:  No, but let's cross
25 off --

Page 16

1          THE WITNESS:  Yep.  I don't need to
2  worry about those two guys.
3          MR. BRESSLER:  All right.
4          THE WITNESS:  Okay.
5          MR. BRESSLER:  And then --
6          THE WITNESS:  Yep.  Okay.  So I did
7  MHC, FNBM, I did III, Sherman Capital Markets.
8  Sherman Financial Group also does not report.
9  PYOD, LLC, we'll have their trade line reported to
10 the credit bureaus by Resurgent Capital Services.
11 LVNV Funding is the same, they will have their
12 trade line reported on behalf of -- well, Resurgent
13 will do it on behalf of LVNV Funding and Resurgent
14 is the master servicer for PYOD and LVNV so they
15 will actually do the operations of having the trade
16 lines reported.
17 BY MR. SHELLY:
18     Q.  Do you know if the ones that you
19 mentioned, the five that -- that do not report, do
20 you know if they have any duty to report with
21 respect to any of the receivables or debt that they
22 may own at any point in time?
23         MR. BRESSLER:  Objection to form.
24         THE WITNESS:  It is my understanding
25 they do not have any duty.  Sherman Capital Markets

Page 17

1  and Sherman Financial Group never own any debt so
2  they would -- there would nothing -- there'd be
3  nothing to report so there's no duty.  Sherman
4  Originator III may only own debt for a few days,
5  that's the longest.  They don't actively do
6  anything with the inventory so they do not have any
7  trade lines to report so there would be no duty.
8  Same with MHC, they would only own the account
9  briefly before being sold so they would not have a
10 trade line to report.  FNBM only holds the
11 receivables for our Credit One accounts so they do
12 not report so only LVNV and PYOD have a duty to
13 report.
14 BY MR. SHELLY:
15     Q.  All right.
16         MR. BRESSLER:  And also object as
17 beyond the scope.
18 BY MR. SHELLY:
19     Q.  Do you know if Resurgent reports for
20 anyone other than PYOD and LVNV?
21     A.  Resurgent will report if they are asked
22 to for any of their clients.  Resurgent is a
23 servicer for other companies other than PYOD and
24 LVNV.
25     Q.  Okay.  Any within the Sherman umbrella



Page 18

1  of companies?
2      MR. BRESSLER: Objection, form.
3      THE WITNESS: Anson Street is another
4  entity that is under the Sherman umbrella.
5  BY MR. SHELLY:
6      Q. Okay. Any others?
7      A. East Bay Funding is another one. I
8  think that would be all the ones that would have --
9  need active servicing.
10     Q. Okay. Were there -- are there inactive
11 businesses within that umbrella that used to use
12 Resurgent for such reporting?
13     A. I'm not sure. I don't know if any of
14 the inactive entities reported or not.
15     Q. Okay. Does Resurgent report for anyone
16 outside of the Sherman umbrella?
17     MR. BRESSLER: Objection to form.
18     THE WITNESS: I don't know.
19 BY MR. SHELLY:
20     Q. Okay. Do you know why the decision was
21 made to have Resurgent do the reporting for PYOD
22 and LVNV rather than having them report themselves?
23     A. Resurgent is the master servicer for
24 LVNV and Resurgent (sic) so Resurgent is in charge
25 of managing the inventory owned by LVNV and PYOD,

Page 19

1  therefore they are in charge of all operations and
2  that would include reporting their -- reporting
3  LVNV or PYOD's trade line to the credit bureaus.
4      Q. What sort of reporting, if any, does
5  Resurgent do for Capital One Bank?
6      A. None.
7      Q. What sort of work does it do for
8  Capital One Bank?
9      MR. BRESSLER: Objection, form.
10     THE WITNESS: I'm not aware of any work
11 Resurgent does for Capital One Bank (sic).
12 BY MR. SHELLY:
13     Q. Okay. And you're testifying today as
14 Resurgent's representative, correct?
15     A. Correct.
16     Q. Okay. And you're not aware of any work
17 that they do with respect to the processing of
18 information that may relate to bankruptcy vis-à-vis
19 Credit One accounts?
20     A. A second ago you asked I believe about
21 Capital One Bank.
22     Q. I'm sorry, Credit One. And I
23 apologize. If I do that, let me know. That's
24 going to -- that happens a lot.
25     A. Okay.

Page 20

1      Q. And I'm sure it happens -- I know it
2  happens in these Credit One depositions and I
3  apologize, I meant Credit One.
4      A. Ah, okay. I do believe that Resurgent
5  does very limited scrubbing for Credit One Bank to
6  determine if accounts are in bankruptcy but that's
7  as far as I know that Resurgent does for Credit
8  One.
9      Q. Okay. That's the only work that you're
10 aware of that Resurgent does for Credit One?
11     MR. BRESSLER: Objection, asked and
12 answered.
13     MR. SHELLY: No, I think I asked her
14 Capital One. That's why I'm -- I think that's
15 what -- why I'm asking her now.
16     THE WITNESS: If Resurgent -- I mean,
17 Resurgent is also a servicer for Sherman Originator
18 III.
19 BY MR. SHELLY:
20     Q. Okay.
21     A. So in that regard Resurgent will -- if
22 Sherman Originator III purchased debt from Credit
23 One and then sold it to an outside third party,
24 Resurgent would hold the media and transfer the
25 media to the third party on behalf of Sherman

Page 21

1  Originator III so stuff more along the lines of
2  really doing the work for their clients, which
3  would be Sherman III on behalf -- when they buy it
4  from Credit One.
5      Q. Okay. Earlier we were talking about in
6  this reporting you said that Sherman Capital
7  Markets and Sherman Financial Group never owned any
8  of the debt, is that correct?
9      A. That is correct. Sherman Financial
10 Group many years ago would purchase debt from GE
11 but that practice stopped maybe in 2009, 2010 but
12 they would immediately transfer it to a debt-owning
13 entity but they had not done that in many years and
14 Sherman Capital Markets to my knowledge had never
15 owned it.
16     Q. Okay. Has Sherman -- did the Sherman
17 Financial Group ever own any debt that originated
18 with Credit One Bank?
19     MR. BRESSLER: Objection, beyond the
20 scope of the whole area.
21     THE WITNESS: Not that I'm aware of.
22 BY MR. SHELLY:
23     Q. Okay. What do the entities do with
24 respect to any of these that are holding debt at
25 any point in time if they get a request from a



Page 22

```
 1   debtor to notify the credit reporting agencies that
 2   the debt that is listed on their credit report has
 3   been discharged in bankruptcy?
 4           MR. BRESSLER: Objection to form.
 5           THE WITNESS: So I'll speak about PYOD
 6   and LVNV since out of the eight entities they are
 7   the two with -- that could possibly have a trade
 8   line on a consumer's credit report. If the
 9   consumer contacts Resurgent Capital Services on --
10   for PYOD or LVNV Funding regarding a trade line
11   that was discharged in bankruptcy, there would be
12   nothing for Resurgent to do on behalf of LVNV or
13   PYOD because the trade line would have already been
14   deleted.
15   BY MR. SHELLY:
16       Q. Okay. And the -- MHC, FNBM and III,
17   they hold -- hold some of the receivables -- in the
18   case of Sherman III -- Originator -- well, Sherman
19   III is the way you referred to it -- they hold some
20   of that debt for possibly days. Who's doing the --
21   the servicing of that -- those receivables and that
22   debt if anything needs to be reported to the credit
23   reporting agencies?
24       A. For Sherman III the day -- the few days
25   that they are holding the debt they do not report
```

Page 23

```
 1   to the credit bureaus so there would be no need for
 2   Resurgent to do anything on behalf of Sherman III.
 3       Q. Okay. Why don't they report during
 4   those days that they hold it? If that occurs
 5   during those days, aren't they -- they liable to
 6   report that to the credit reporting agencies?
 7           MR. BRESSLER: Objection, beyond the
 8   scope.
 9           THE WITNESS: It is -- it's my
10   understanding that it is up to each individual
11   company on whether or not they wish to report debt
12   or accounts to a credit bureau agency. Sherman III
13   does not wish to do that. Typically if they hold
14   debt for a few days, it is just to logistically get
15   the accounts together to be sold to a third party.
16   BY MR. SHELLY:
17       Q. Okay. You said they -- they don't wish
18   to do that. Do you know who made that decision not
19   to report?
20       A. I don't but it's my understanding that
21   any of the entities that do not actively hold owned
22   debt, where they just purchase it and hold it for a
23   few days, they will -- they never report to the
24   credit bureaus.
25       Q. Okay. Do you know when that policy was
```

Page 24

```
 1   established?
 2       A. I don't.
 3       Q. Do you know why it was established?
 4       A. No, I don't.
 5       Q. Okay. And MHC and FNBM, do they have
 6   similar policies to Sherman III with respect to not
 7   reporting during the time that they hold
 8   receivables and/or debt?
 9       A. FNBM and MHC are not serviced by
10   Resurgent Capital Services so I don't know.
11       Q. Okay. But you're here testifying on
12   their behalf as well today. I mean, do they -- you
13   said they don't report. Do you know why they don't
14   report during the time period that they -- they
15   hold such debt or receivables?
16       A. It is my understanding that Credit One
17   would be the trade line that would be reported, not
18   F -- FNBM or MHC.
19       Q. Okay. So they would rely -- is it your
20   understanding that they rely on Credit One to do
21   such reporting for them?
22       A. That is my understanding.
23       Q. Okay. Do you know who at MHC or FNBM
24   made that decision?
25       A. I do not.
```

Page 25

```
 1       Q. Okay. Are there individuals at FNBM or
 2   MHC to make such decisions?
 3       A. It's my understanding that they do not
 4   have any employees.
 5       Q. Okay. Do you know why the policy of
 6   MHC and FNBM is to allow Credit One Bank to do such
 7   reporting for them?
 8           MR. BRESSLER: Objection, form.
 9           THE WITNESS: It's my understanding
10   that Credit One Bank is the servicer.
11   BY MR. SHELLY:
12       Q. And that's -- that's true -- they're
13   the servicer even after the -- the debt and the
14   receivable have come together at MHC for sale to
15   Sherman Originator III?
16       A. The debt and the account and the
17   receivable come together at Sherman III, not at
18   MHC. Once the receivable and account come together
19   at Sherman III, Resurgent Capital Services would
20   take over servicing.
21       Q. I know we're going to get into this
22   later on with them but you just said -- with the
23   second deponent but you said that the debt and the
24   receivable come together at Sherman Originator III.
25   Where -- where does each one of them come from?
```



### Page 26

```
 1      A.  The receivable is sold by FNBM and the
 2  account is sold by MHC.
 3      Q.  So FNBM sells the receivable directly
 4  to III?
 5      A.  That is my understanding.
 6          MR. BRESSLER:  It's beyond the scope.
 7  BY MR. SHELLY:
 8      Q.  Okay.  All right.  And MHC sells the
 9  debt to Sherman Originator III?
10          MR. BRESSLER:  Objection, form.
11  BY MR. SHELLY:
12      Q.  Is that what you said?
13      A.  I refer to it as the account.
14      Q.  Okay.  And within -- other people have
15  referred to it debt and account.  Is that fairly
16  common within the Sherman group to refer to the
17  account at Credit One and the debt as being one and
18  the same?
19          MR. BRESSLER:  Objection, form.
20          THE WITNESS:  I can see how that would
21  happen, yes.
22  BY MR. SHELLY:
23      Q.  Okay.  You're familiar with that
24  practice?
25      A.  I am.
```

### Page 27

```
 1      Q.  Okay.  Do you know what documents were
 2  searched at each -- for at each and every one of
 3  these entities we've talked about?
 4      A.  I do.  Is there a certain document --
 5      Q.  No.  I'm just wondering what -- what
 6  instructions were -- were made to each one of the
 7  entities and what files were searched and what
 8  was -- what was sought.
 9      A.  When the subpoenas came in, they
10  were -- the subpoenas for whichever entity were
11  sent to either myself and my team and we did some
12  investigating for the clients that Resurgent
13  Capital Services services for or they're sent to
14  general counsel so he could determine what accounts
15  might be produced in regards to the subpoenas.
16      Q.  Okay.  Who -- and who was asked to go
17  out and actually look for -- for those documents,
18  was that -- were you and your team tasked with
19  that?
20      A.  I looked for documents for PYOD,
21  Resurgent Capital Services, Sherman III and LVNV
22  Funding.  I was told that Sherman Financial Group,
23  FNBM, MHC and Sherman Capital Markets did not have
24  responsive documents.
25      Q.  Who told you that?
```

### Page 28

```
 1      A.  General counsel.
 2      Q.  Okay.  Do you know if -- and which
 3  entities were they again?
 4      A.  Sherman Financial Group.
 5      Q.  Yep.
 6      A.  FNBM, MHC and Sherman Capital Markets.
 7      Q.  And did anyone search within those --
 8  those four entities for responsive documents?
 9      A.  I don't know.  I trusted what I was
10  told by general counsel.
11      Q.  Okay.  Well, you're telling me general
12  counsel told you that they didn't have responsive
13  documents but you don't know if anyone actually
14  went in and looked for -- for documents?
15      A.  I don't know.
16      Q.  Okay.  Do you generally -- you said
17  you -- you're a paralegal there.  Do you generally
18  look for documents in other cases for those four
19  entities?
20          MR. BRESSLER:  Objection, form.
21          THE WITNESS:  Yes.  My -- in my job I
22  typically respond to discovery requests or
23  subpoenas such as the ones we received in this case
24  for Sherman III or Resurgent, PYOD or LVNV.
25  BY MR. SHELLY:
```

### Page 29

```
 1      Q.  Okay.  What about Sherman Capital -- or
 2  Sherman Financial Group, FNBM, MHC and Sherman
 3  Capital Markets?
 4      A.  Typically for those four I would speak
 5  to my boss, Michael Bahner, and general counsel and
 6  they would give me any responsive documents if
 7  there were any.
 8      Q.  Okay.  Are there paralegals tasked with
 9  looking for documents for those groups?
10      A.  I don't know.
11      Q.  So other than -- than your conversation
12  with in-house counsel, you don't know what was
13  done, if anything, to search for documents from
14  those four entities?
15      A.  I don't.
16      Q.  Okay.  Do you know if any of these
17  entities, the eight entities we've talked about
18  here, ever get calls from customers saying that a
19  debt that is showing up on their credit report as
20  being charged off has been discharged from
21  bankruptcy and should be removed from their credit
22  report?
23      A.  It's possible that Resurgent would get
24  a call regarding PYOD or LVNV's trade line.  If
25  Resurgent received a call that a -- an account has
```



8 (Pages 26 to 29)

Page 30

1   been discharged in bankruptcy and is still
2   reporting, Resurgent would immediately investigate
3   that account to determine the validity of that
4   dispute and if that is true, if there is somehow a
5   trade line still reporting after a discharge in
6   bankruptcy, it would be removed immediately.
7       Q.  Do you know who made that decision?
8           MR. BRESSLER:  Objection, what
9   decision?
10  BY MR. SHELLY:
11      Q.  To follow that policy.
12      A.  That decision just steps in line with
13  Resurgent's other policy removing LVNV and PYOD's
14  trade lines upon the filing of a bankruptcy.  Since
15  there should not be a trade line being reported, at
16  discharge if there happens to be one, it would be
17  removed immediately.
18      Q.  Okay.  Do you know who made that policy
19  decision?
20      A.  I don't.  It's always been that way.
21      Q.  Okay.  Since 2004?
22      A.  At least.
23      Q.  Okay.  So you're not aware of anything
24  that would stop Resurgent from informing the credit
25  reporting agencies that sole consumer debt that

Page 31

1   originated with Credit One Bank had been discharged
2   in bankruptcy?
3           MR. BRESSLER:  Objection, form.
4           THE WITNESS:  I'm sorry, can you -- can
5   you reword that?  I kind of lost you halfway
6   through.
7           MR. SHELLY:  Sure.  Read -- read that
8   back to me if you would.
9           (The Court Reporter read the question
10  commencing on Page 30, Line 16.)
11          THE WITNESS:  If Resurgent was
12  servicing the account for one of their clients and
13  it's a Credit One account and it was discharged in
14  bankruptcy, Resurgent would immediately remove that
15  trade line.  There would be nothing to prevent it.
16  BY MR. SHELLY:
17      Q.  Okay.  So there's nothing stopping
18  Resurgent from doing that?
19      A.  For one of their clients, that's
20  correct.
21      Q.  Okay.  Why do you posit it that way,
22  for one of their clients?
23      A.  Well, because Resurgent is the servicer
24  for PYOD and LVNV Funding.
25      Q.  Okay.  Okay.  They don't own debt,

Page 32

1   that's what you mean, in other words, it's not
2   their debt, it's the debt of one of their clients?
3       A.  Correct.
4       Q.  Or one of their servicing entity -- one
5   of the entities they're servicing for?
6       A.  Right.
7       Q.  You said that Resurgent does scrubbing
8   for Credit One Bank.  Can you tell me what that is
9   and how they do that?
10      A.  What I know is Resurgent has in the
11  past and may continue to do so to scrub Credit One
12  accounts to determine if any of them have been in
13  or are in or have filed bankruptcy.  Resurgent uses
14  various methods to scrub all accounts for -- to see
15  if there's a bankruptcy filing.
16      Q.  Can you expand upon that?
17      A.  Resurgent uses a third-party vendor
18  called Phin Solutions and I believe that's spelled
19  P-H-I-N.
20      Q.  Okay.
21      A.  And Resurgent also uses the E-filing
22  system from the bankruptcy so they would get
23  notification immediately for any accounts that they
24  are servicing.  The scrub is daily.  Phin Solutions
25  will pick up on even any changes in a bankruptcy,

Page 33

1   for instance, if the chapter happens to change.
2       Q.  Okay.  How long has Resurgent been
3   using Phin Solutions?
4       A.  I want to say within the last two
5   years.  Before that the vendor was AIS.  I don't
6   know exactly when Resurgent switched vendors.
7       Q.  Do you know why they switched vendors?
8       A.  I don't.
9       Q.  Okay.  Do you know what -- what
10  specifically AIS and now Phin do for Resurgent,
11  what actually they -- what -- what service they
12  perform?
13          MR. BRESSLER:  I'm going to object to
14  the whole line as beyond the scope.
15          THE WITNESS:  It's my understanding
16  that Phin Solutions now just scrubs all accounts
17  that Resurgent is servicing to see if there's a new
18  bankruptcy filing, to see if something has changed
19  in the bankruptcy, if it's discharged or dismissed,
20  if the chapter has changed.  It's a 24-hour scrub
21  of the bankruptcy system.
22  BY MR. SHELLY:
23      Q.  Okay.  You said they do it for -- for
24  the accounts that Resurgent is servicing.  Do they
25  also do it for Credit One's bank accounts?



9 (Pages 30 to 33)

Page 34

1     A.  It is my understanding that Resurgent
2  does the scrubbing upon movement into MHC, when the
3  account moves to MHC --
4     Q.  Okay.
5     A.  -- prior to purchase.
6     Q.  By -- purchase by whom?
7     A.  Sherman Originator III.
8     Q.  Okay.  Before it gets to MHC who's
9  doing the scrubbing, is Resurgent doing the
10 scrubbing of Credit One's bank accounts then?
11    A.  I don't know.
12    Q.  Okay.  So it's your understanding that
13 the only time that -- that Resurgent does the
14 scrubbing of Credit One Bank's accounts is when the
15 ownership of that account is with MHC --
16        MR. BRESSLER:  Objection, form.
17 BY MR. SHELLY:
18    Q.  -- is that correct?
19    A.  That is my understanding.
20    Q.  Okay.  And your understanding is the
21 understanding of Resurgent today?
22        MR. BRESSLER:  No, objection beyond the
23 scope.  If you want to point to anything within the
24 topics that talks about scrubbing, I'm happy to
25 withdraw, but otherwise it's not a topic that she's

Page 35

1  been designated to testify in.
2         THE WITNESS:  I -- I don't know the
3  answer.
4  BY MR. SHELLY:
5     Q.  Okay.  Okay.  All right.
6         MR. SHELLY:  Let's take a five-minute
7  break, okay?
8         MR. BRESSLER:  Sure.
9         MR. SHELLY:  Great.
10        (A recess transpired.)
11 BY MR. SHELLY:
12    Q.  Okay, we were talking about these
13 various entities and you said that MHC and FNBM
14 don't have individuals to set any policies
15 regarding whether or not they need to report to
16 credit reporting agencies.  Of the other entities
17 that you're here for today, which of those actually
18 have individuals within their structure that could
19 make policy decisions on that?
20        MR. BRESSLER:  Objection, form.
21        THE WITNESS:  The only entities that
22 have employees is Resurgent Capital Services, LP
23 and Sherman Capital Markets, LLC.
24 BY MR. SHELLY:
25    Q.  Not -- not Resurgent -- or Sherman

Page 36

1  Financial?
2     A.  They do not.  They do not have
3  employees.
4     Q.  Well, what -- there are no people
5  located at Sherman Financial at all?
6         MR. BRESSLER:  Objection, form.
7  BY MR. SHELLY:
8     Q.  I mean, is there -- is there a board,
9  is there -- are there officers?
10        MR. BRESSLER:  Beyond the scope.
11        THE WITNESS:  There -- I would -- I
12 don't know if there are officers.  I just know that
13 Sherman Financial Group does not have employees.
14 BY MR. SHELLY:
15    Q.  Okay.  Now, we talked -- you talked
16 about the deletion of bankrupt accounts by PYOD
17 and -- and LVNV once they become aware of the
18 filing of a bankruptcy.  Why was the decision to do
19 that made?
20        MR. BRESSLER:  Objection, asked and
21 answered.
22        THE WITNESS:  I don't know, it's always
23 been that way.
24 BY MR. SHELLY:
25    Q.  Okay.  And the only entities that have

Page 37

1  any responsibility to report to credit reporting
2  agencies are PYOD, LVNV and because it services
3  their accounts Resurgent, is that correct?
4         MR. BRESSLER:  Objection to form.
5         THE WITNESS:  Resurgent Capital
6  Services has the contracts with the three credit
7  reporting agencies that they report to on behalf of
8  their clients which would be PYOD and LVNV.
9  BY MR. SHELLY:
10    Q.  Okay.  And the other five entities that
11 you're here for today, they have no responsibility
12 to report to the credit reporting agencies?
13        MR. BRESSLER:  Objection, form.
14        THE WITNESS:  It's my understanding
15 that yes, they do not have any duty to report to
16 the credit bureau agencies.
17 BY MR. SHELLY:
18    Q.  Okay.  Do you -- other than LVNV --
19 well, strike that.
20        Which entities of these eight actually
21 get requests from consumers to correct their credit
22 reports?
23        MR. BRESSLER:  Objection, form.
24        THE WITNESS:  Well, Resurgent Capital
25 Services would get the requests on behalf of PYOD