# Exhibit E



MICHAEL D. SLODOV
mslodov@sessions.legal

July 18, 2016

**VIA ECF**
Chambers of the Honorable
Judge Robert D. Drain
United States Bankruptcy Court
Southern District of New York
300 Quarropas Street, Room 248
White Plains, NY 10601-4140

    In re: *Anderson v. Credit One Bank, N.A., et al.*
    *Bankr.S.D. N.Y. Case No.* 15-ap-08214 (RDD)

Dear Judge Drain:

SESSIONS, FISHMAN, NATHAN & ISRAEL, L.L.C. represents Defendant Credit One Bank, N.A. ("Credit One") in the above-matter.

Credit One responds to Plaintiff's four page discovery dispute letter filed on July 11, 2016 (Doc. No. 73, 74), which the Court has scheduled for an informal telephonic discovery dispute conference on Wednesday July 20, 2016 at 4:00 p.m.

Because there is no merit to any of Plaintiff's baseless mischaracterizations and feigned assertions of noncompliance, Credit One insists that Due Process requires the Court direct Plaintiff to file a motion to compel discovery, so as to allow Credit One to fully brief and provide evidence in response to all the issues raised in Plaintiff's letter, rather than the handful addressed here.

Plaintiff's letter begins with a reference to the Court's direction on December 9, 2015 to Credit One to provide a verification that it had produced all responsive documents to Plaintiff's July 28, 2015 document requests. See Doc. No. 45, pp. 13-20. Credit One produced its verification on January 18, 2016. Credit One 2257-2258. On February 22, the Court addressed the status of discovery in this adversary proceeding, and further directed Credit One to provide a catalog of efforts undertaken to locate responsive documents to Plaintiff's July 28, 2015 document requests. Doc. No. 64, pp. 13-17. Credit One provided the supplemental verification on March 22, 2016. Credit One 9613-9620. See Exhibit 1.

Plaintiff's counsel's letter broadly raises various issues regarding the sufficiency of Credit One's response to Plaintiff's July 28, 2015 first request for production of documents, specifically, request

15-08214-jpm Doc 76 Filed 07/18/16 Entered 07/18/16 15:12:01 Main Document Pg 2 of 11

for production numbers 2, 3, 4, 5, 13, 14, 16, 17, 18, 19, 21, and 25; and the sufficiency of testimony provided by Credit One's designee, Helen Lanham. Doc No. 73, 74.

Each is addressed in turn below.

Credit One begins however, with Plaintiff's repeated baseless suggestion that his discovery requests directed to Credit One, includes all information held by all the Sherman entities, and that Credit One and Sherman entities should be treated as one in the same. To the extent Plaintiff seeks to show that Credit One must produce documents held by third party entities owned or controlled by Sherman, there is absolutely no evidence that Credit One has the right or practical ability to obtain information from any Sherman entity, on demand.

Under the Rules of Civil Procedure, when documents are sought from a party that are not held by the party but by another, "affiliated" or "related" non-party, Courts have established various tests to determine whether the party can be compelled to produce documents held by a non-party. For example, the Second Circuit has observed:

> [A] party is not obliged to produce, at the risk of sanctions, documents that it does not possess or cannot obtain. … See Fed.R.Civ.P. 34(a) ("Any may serve on any other party a request ... to produce ... documents ... which are in the *possession, custody or control* of the party upon whom the request is served ...." (emphasis added)), *E.E.O.C. v. Carrols Corp.*, 215 F.R.D. 46, 52 (N.D.N.Y.2003); see also *Societe Internationale Pour Participations Industrielles Et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 204, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958) (acknowledging that Rule 34 requires inquiry into whether party has control over documents), *Fisher v. U.S. Fidelity & Guar. Co.*, 246 F.2d 344, 350 (7th Cir.1957). We also think it fairly obvious that a party also need not seek such documents from third parties if compulsory process against the third parties is available to the party seeking the documents. However, if a party has access and the practical ability to possess documents not available to the party seeking them, production may be required.

*Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 138 (2d Cir. 2007)(footnote omitted).

When the question arises, the party seeking to obtain documents held by the non-party has the burden of proof to establish control, the right, authority, or practical ability to obtain the documents sought on request in the ordinary course of business. *S.E.C. v. Gibraltar Global Sec., Inc.*, No. 13 CIV. 2575 GBD JCF, 2015 WL 1514746, at *1-2 (S.D.N.Y. Apr. 1, 2015); *Gross v. Lunduski*, 304 F.R.D. 136, 142 (W.D.N.Y. 2014); *United States v. Novartis Pharm. Corp.*, No. 11 CIV. 8196 CM JCF, 2014 WL 6655703, at *3 (S.D.N.Y. Nov. 24, 2014); *S.E.C. v. Credit Bancorp, Ltd.*, 194 F.R.D. 469, 472 (S.D.N.Y. 2000); 8B Charles A. Wright, et al., Federal Practice & Procedure § 2210 (3d ed.).

Credit One points out that Credit One is a wholly owned subsidiary of Credit One Financial, and it is not owned or controlled by any Sherman entity. Hughes Dep. pp. 159:21-167:6. See Exhibit 2.

**SESSIONS FISHMAN NATHAN & ISRAEL** LLC
ATTORNEYS AT LAW

Page | 3

Credit One's representative, Ms. Lanham, Credit One Financial's representative, Mr. Hughes, Ms. Scott, Mr. Mazzoli and Ms. Emmerich, as representatives of third-party designees for Sherman Financial Group, FNBM, MHC, PYOD, LVNV, Resurgent, Sherman Capital Markets, and Sherman Originator III, all testified that Credit One sells all of its receivables under a structured financing arrangement to MHC Receivables after origination; MHC, in turn transfers the receivables to FNBM; that Credit One continues to service the receivables and it retains title to the account until charge off, at which point title to the accounts and receivables are assigned to MHC for sale to Sherman Originator III. Credit One is not involved in the negotiations or the sale of any of these receivables or accounts after Credit One's charged off accounts are sold and assigned to MHC. Hughes Dep. pp. 109:11-111:24. The contract for sale of Credit One accounts to MHC Receivables, and from MHC to FNBM were produced August 31, 2015. Credit One 79-101; 102-146.

Because there is no evidence and Plaintiff cannot show here, that Credit One has the right, authority, or practical ability to obtain the documents sought on request, from any Sherman entity, Credit One cannot be held to account for not producing documents held by any Sherman entity.

### A. DOCUMENT REQUESTS

The second paragraph of Plaintiff's letter begins with an additional document produced the night before the deposition of Vicki Scott on June 3. Doc. No. 73. The circumstances surrounding the document's location and production on June 2 was addressed during the Scott deposition. Ms. Scott testified that Credit One previously hired an outside contractor to map its various processes with flowcharts, dismissed the contractor, abandoned the flow-charting process, never used the flowcharts, and its personnel forgot the charts she had created even existed. Scott Dep., pp. 173:22-181:14. Ms. Scott also testified that the information appearing in the flow chart was duplicative of Credit One's Recovery Manual, produced March 10, 2016. Scott Dep., pp. 244:9-247:9. Mr. Shelly elected not to ask Ms. Scott a single question about Credit One's Recovery Manuals. Scott Dep., p. 254; Credit One 2278-2343.

Plaintiff repeatedly mischaracterizes the nature of the document requests he actually issued. Plaintiff's counsel acknowledged the document requests served in July 2015 were narrowed on September 23, 2015 during the parties meet and confer. See Doc. No. 45, Transcript of 12-9-15 hearing, pp. 15-16.

Requests for Production Nos. 2, 3, 4, 5, 13, 14, 16, 17, 18, 19, 21, and 25, as narrowed by the parties meet and confer, appear in the record at Doc. No. 41, pp. 5-9, as follows:

> \* \* \*
> 2. Documents concerning the sale of consumer debts to third parties, including contracts for the sale of consumer debts.

**SESSIONS FISHMAN NATHAN & ISRAEL** LLC
ATTORNEYS AT LAW

P a g e | 4

      a.    If any documentation exists to substantiate the transfer of accounts from Credit One to FNBM, MHC or SO3 such as data files, provide the data files for Anderson's account.[1]

3.    Documents concerning the collection or receipt of money paid on consumer debts that have been sold.
      a.    Plaintiff is not looking for specific account records, but any documents internal to the bank concerning handling of payments on debts that are sold - what is done with payments on accounts that have been sold, and any written instructions to staff, emails, memos, etc. that reflect the routing or redirecting of payments.[2]

4.    Documents concerning the relationship with buyers of consumer debt after the sale occurs.
      a.    Again, Plaintiff wanted any internal documentation (emails, memos, meeting minutes), that concern the relationship between Credit One and FNBM, MHC or SO3.[3]

---

[1] Ms. Scott testified that there are no additional documents, beyond Credit One's "Collection Department Portfolio Services Recovery Procedures 2012" and "Collection Department Portfolio Services Recovery Training Manual" (hereinafter "Recovery Manuals") produced on March 10, 2016, to document or otherwise substantiate the transfer of accounts from Credit One to MHC. See deposition of Scott, pp. 159:11-160:16. Mr. Shelly did not ask a single question about the Recovery Manuals. Scott Dep. p. 254:13-16.

Ms. Scott testified that the transfer process is automatic and appears in the system of record. Scott Dep. pp. 73:14-19; 76:6-24. Mr. Hughes confirmed this as well. Hughes Dep. pp. 116:9-21.

[2] Credit One provided its Recovery Manuals on March 10, 2016. The Recovery Manuals contained detailed explanations and instructions for the handling of post-charge off payments. See Credit One 02325-26. Plaintiff did not ask a single question about either of the manuals at the depositions of Scott, Hughes, Cooper-Tippett, Emmerich or Mazzoli. Ms. Lanham testified that Credit One uses the system of record to identify the owner of the account and to remit payments to the buyer. Lanham Dep. pp. 100:2-104:8. Mr. Hughes testified to the same effect and testified that the bank retains no portion of the payment and receives no fees for this activity. Hughes Dep. pp. 134:19-136:11.

[3] Mr. Hughes testified that Credit One has only one contractual relationship, with MHC Receivables. Hughes Dep. pp. 27:15-31:24. Credit One produced its agreement that relates to the sale of **all** of its accounts on August 31, 2015. Credit One 079-101. All Credit One's debts are sold through MHC Receivables to Sherman Originator III and Sherman Originator III disposes of a portion of the Credit One accounts it acquires to other downstream buyer entities. Hughes Dep. pp. 127:6-129:17; 152:9-153:11. Scott testified that third party buyers contract with Sherman

**SESSIONS FISHMAN NATHAN & ISRAEL** LLC
ATTORNEYS AT LAW

P a g e | 5

5.  Documents concerning the identification of consumer debts that are subject to pending bankruptcy proceedings or have been discharged in bankruptcy, including for those consumer debts sold to third parties.

   a.  Here, Plaintiff wants to know how bankruptcy filing notices and discharge notices are handled by the bank once received, what instructions exist and any documents discussing what the instructions should be or became.[4]

\*       \*       \*

13.  Documents concerning updating or changing the status of consumer debts reported to credit reporting agencies.

   a.  Emails, memos, meeting minutes, ACDVs, concerning any requests to change how a debt is being reported to the CRAs. This includes consumer requests to update the credit reporting status, and as above, with No. 10, a quantification of how many such requests are dealt with daily or annually would help to quantify the burdensome nature of the request.[5]

---

entities to buy Credit One debt, Scott Dep. p. 57:2-3, that all Credit One debt is sold through Sherman, and there are currently no other down-stream buyers other than Midland. Scott Dep. p. 82:4, 83:19-22; 84:7-86:7.

Credit One's historical list of all third party buyers was produced March 11, 2016. Credit One 09346. Counsel for Plaintiff did not ask a single question about the list of buyers.

[4] Credit One produced its Back Office Manuals on December 11, 2015 and January 13, 2016, which contained a thorough explanation of how Credit One handles and documents bankruptcy notices, bankruptcy sales, and identifying instructions for handling such notices. See Credit One 1786-2124; 2177-2256. Ms. Scott testified that Credit One does not receive bankruptcy discharge notices and does not process credit report updates on bankruptcy discharges because it no longer owns the account. Scott Dep. 4:13-7:8; 49:2-14; 99:16-100:12; 100:20-102:12; 107:25-109:19; 118:24-119:23; 121:7-121:16; 122:5-12; 240:1-25; 244:9-246:14.

[5] Credit One's Back Office Manuals produced on December 11, 2015 and January 13, 2016 detail Credit One's procedures for responding to consumers, updating or changing tradeline information. Credit One 1906-07; 2025-2096. Plaintiff introduced these documents as Exhibits during the Credit One deposition, as Exhibits 8 and 9. Lanham Dep. pp. 183, 203. Credit One produced all available prior versions of these manuals March 11, 2016. Credit One 2468-9345, 9347-9583. Ms. Cooper-Tippett testified that she does no work for Credit One relative to credit reporting debts that were discharged in bankruptcy. Cooper-Tippett Dep., p. 21:12-25. Ms. Cooper-Tippett testified that the quarterly reports she reviews tracks credit report disputes, but does not categorize the volume of credit report disputes by whether or not the dispute pertains to charge off references or

15-08214-jpm    Doc 78-6    Filed 08/08/16    Entered 08/08/16 23:50:33    Exhibit E
Pg 7 of 12

15-08214-jpm    Doc 76    Filed 07/18/16    Entered 07/18/16 15:12:01    Main Document
Pg 76 of 121

SESSIONS FISHMAN NATHAN & ISRAEL LLC
ATTORNEYS AT LAW

Page | 6

14. Policies for updating or changing the status of consumer debts in response to customer inquiries or inquiries received from credit reporting agencies.
   a. Same as 13, but involving any internal documentation (emails, memos, meeting minutes) re same.[6]

\*   \*   \*

16. Documents concerning consumer debts that have been discharged in bankruptcy and have been reported to credit reporting agencies as "charged off" or "past due" or with a similar delinquent notation
   a. Any documents that explain when to report a charge off or past due to the CRAs, or relate to the bank's policies.[7]

---

bankruptcy. Cooper-Tippett Dep., p. 86:16-89:19; 96:16-23. At the conclusion of questioning, Mr. Shelly made an oral request for a copy of the reports, and counsel for Credit One directed Mr. Shelly to make a written request for production of documents. Cooper-Tippett Dep., p. 97:18-98:14. To date, Plaintiff has made no such request. Following the deposition of Cooper-Tippett, counsel for Credit One requested a sample report Ms. Cooper-Tippett referred to during her deposition. The six page report reviewed by the undersigned counsel for Credit One indicates these reports concern the quarterly trend in numbers of CFPB and OCC complaints; it does not contain any responsive information to this document request, only identifies the raw number of "credit reporting complaints" and indicates only that such "complaints were addressed and resolved satisfactorily." Credit One is prepared to demonstrate, in response to any motion to compel Plaintiff actually files in this case (as opposed to a pre-motion letter), that it would amount to an undue burden to require Credit One to review each individual "credit reporting" complaint identified in the subject reports to determine whether any of these complaints by current or former cardholders concerned a request to update a credit report or concerned a post-discharge request to delete a tradeline. Moreover, Credit One has no credit reporting dispute files predating February of 2012.

[6] See supra, note 5.

[7] A charge off is automatically documented in Credit One's system of record after 180 days of nonpayment. Scott Dep. p. 73:14-19. As noted above, Credit One does not receive bankruptcy discharge notices and does not process credit report updates on bankruptcy discharges because it no longer owns the account. See supra, note 4. Ms. Scott testified that Credit One does not have occasion to handle bankruptcy discharge notices at all, and Credit One does not have or maintain any information related to bankruptcy discharge information. Scott Dep. pp. 6:6-7:8; 244:9-246:14.

**SESSIONS FISHMAN NATHAN & ISRAEL** LLC
ATTORNEYS AT LAW

Page | 7

17. Documents concerning the valuation of consumer debts sold to third parties
   a. In terms of valuation, they wanted to know what Credit One gets for the receivables, and what it gets for the accounts, and how the values are set. The contract apparently refers to par value; how is that set or determined and are there any documents reflecting this valuation.[8]

18. Documents concerning the deletion of consumer debts from credit reports
   a. Under what circumstances are debts deleted from credit reports, and are there any documents reflecting this practice? Memos, emails?[9]

19. Documents concerning the policy for selling debts that are discharged in bankruptcy.
   a. Per the contract, the bankruptcy filing results in selling off the accounts. How are these bankrupt account sales documented, and does the bank communicate with FNBM, MHC or SO3 re accounts that have been bankrupted? If so, documents?[10]

\*     \*     \*

21. Documents concerning the terms which You sell consumer debts to third parties, including but not limited to consumer debts that have been discharged in bankruptcy.
   a. Again, not limited to contracts; any documents concerning such sales.[11]

\*     \*     \*

---

[8] See Hughes Dep. pp. 61:13-62:9; 76:3-77:21.

[9] The Back Office and Recovery Manuals outline the process for updating and deleting tradelines. See supra, notes 4, 5.

[10] See supra, notes 4, 5, 7.

[11] See supra, note 3.

**SESSIONS FISHMAN NATHAN & ISRAEL** LLC
ATTORNEYS AT LAW

Page | 8

25. Documents regarding Your responses to consumers' inquiries regarding delinquent debt appearing on the customers' credit reports including, but not limited to, any writings setting forth Your policies on how You reply to consumers requesting that charge offs or other delinquent notations be removed from their credit reports because the debt was listed on their bankruptcy petition, and including any "scripts" or other written instructions identifying the answers that customer service representatives should give consumers making the requests

    a. Plaintiff wants the actual responses, phone scripts, policies, and the actual inquiries and responses received, albeit redacted to omit the personal identifying information.[12]

26. Documents relating to Orinn S. Anderson.
    a. If there was a data file sent to FNBM, MHC, or SO3, the data file.
    b. For FNBM, MHC SO3, any additional account level data.[13]

    \*    \*    \*

Doc. No. 41, pp. 5-9.

In light of the foregoing, there can be no argument or motion to compel premised on any alleged failure to search for, produce or respond to the document requests made by Plaintiff in this proceeding, as Credit One has produced all documents responsive to Plaintiff's July 2015 document requests.

Finally, as to Plaintiff's assertion that Credit One Financial was not aware that a subpoena to produce documents was served, and never looked for any documents, Credit One notes that Plaintiff issued three subpoenas to Credit One Financial – a subpoena duces tecum issued on February 29, 2016 (exhibit 5), a subpoena to testify in Albany issued on March 2, 2016 (exhibit 6) and a subpoena issued on May 13, 2016 (for testimony only). Credit One Financial served its combined objections to the two initial subpoenas on March 18, 2016. See Exhibits 5 (Feb. 29, 2016 subpoena duces tecum), Exhibit 6 (March 2, 2016 subpoena to testify) and 7 (Credit One Financial's combined objections). Plaintiff's counsel never conferred with counsel regarding the objections to either the document request or subpoena to testify, and instead, proceeded to issue a second subpoena to Credit One Financial, changing the location for the deposition to Las Vegas. See Exhibit 4. See also Doc. No. 74, p. 14/21 Hughes Dep. p. 151.

---

[12] See supra, note 5.

[13] See supra, pp. 2-3.

**SESSIONS FISHMAN NATHAN & ISRAEL**LLC
ATTORNEYS AT LAW

P a g e | 9

Equally important, Mr. Hughes testified that Credit One has no access to Sherman documents, and has very limited documents of its own. *Id*. at Hughes Dep. p. 150. See also Exhibit 2, Hughes Dep. 155:18-158:6. The documents sought of Credit One Financial are cumulative and duplicative of the document requests directed to Credit One, which have all been produced. See Exhibit 7.

### B. DEPOSITION TESTIMONY

The topics for examination in the notice of deposition served on Credit One are not the same as the topics for examination in the notice of deposition served on Credit One Financial. See Exhibit 3 and 4.

As such, any comparison between the information obtained (or lack thereof) during the deposition of Credit One's designee and Credit One Financial's designee, is patently fallacious.

Plaintiff's letter blatantly mischaracterizes the testimony as well. The Plaintiff's letter asserts:

> 1. "Yet, Vicki Scott testified on June 3, 2016, to the existence of Credit One monthly spreadsheets listing third party buyers, none of which have been produced to Plaintiff."

Ms. Scott testified that the list of historical downstream purchasers amounted to a "handful" (p. 27), and that Credit One Bank sells all its accounts held by MHC to Sherman Originator III (Scott Dep. pp. 25, 77, 79, 80, 81). Plaintiff was provided with the entire list of historical purchasers on March 11, 2016, and elected not to ask any questions about it. Credit One 9346.

> 2. "She also identified third party buyers (such as "Razor" and "MSW") for whom Credit One has never produced any documents."

Again, Plaintiff was provided with the entire list of historical purchasers on March 11, 2016. Credit One 9346. Ms. Scott further explained in unambiguous terms that all Credit One accounts held by MHC are sold to Sherman Originator III (SO3), SO3 keeps some, and sells part of the pool to Midland, and no others. Scott Dep. pp. 80-82. She did testify that historically, SO3 had sold Credit One bank debts to other buyers, but ceased doing so prior to her tenure in 2013. Scott Dep. pp. 57, 84, 158. Plaintiff was provided with the contracts detailing the sales process on August 31, 2015. Credit One 79-101, 102-146; Scott Dep. pp. 9-49, 52-78.

> 3. "Indeed, other than the purchase and sale agreement with Midland Funding, Credit One has produced no agreements with any other third party."

Plaintiff did not establish during the Lanham, Scott, Hughes or Cooper-Tippett depositions that Credit One has or ever had any other sale contracts or agreements between Credit One Bank and any other entity. Credit One provided Plaintiff with a copy of the Credit One- MHC, MHC-FNBM and Sherman Originator III-Midland contracts on August 31, 2015. Further, as we have previously informed Plaintiff, the undersigned personally requested Sherman provide its contract with Midland and that information Credit One produced did not come from Credit One. Lanham Dep.

15-08214-jpm Doc 78-6 Filed 08/08/16 Entered 08/08/16 23:50:33 Exhibit E
Pg 11 of 12

15-08214-rdd Doc 76 Filed 07/18/16 Entered 07/18/16 15:12:01 Main Document
Pg 11 of 21

SESSIONS FISHMAN NATHAN & ISRAEL LLC
ATTORNEYS AT LAW

Page | 10

p. 304. To the extent that Sherman Originator III sold Credit One accounts to any other buyer other than Midland, Credit One directed Plaintiff to make that request to Sherman's counsel.

> 4. "Ms. Scott also explained how the servicing performed by Credit One for MHC Receiveables, LLC, FNBM, LLC, and others, allows for the transfer and sale of consumer debt to third parties and the related entity Sherman Originator III. Those servicing contracts, however, have never been produced."

Credit One produced the contract between itself and MHC on August 31, 2015. Credit One 102-146. That contract details the servicing duties of the bank. *Id*. at p. 091 ¶ 4.7. The referenced servicing guidelines are set forth in the back office manuals produced in January and March, 2016. Credit One 2177-2256, 2278-2343, 2468-9583.

> 5. "Despite these requests, Lisa Cooper-Tippett testified to the existence of quarterly reports of disputes made by consumers, including disputes concerning credit reporting as it relates to bankruptcy discharges, which have never been produced by Credit One."

Ms. Cooper-Tippett explained that, as to the reports, "there is no individual category that would relate specifically to the bankruptcy and how an account is reported in bankruptcy, no." Cooper-Tippett Dep., p. 82.

> 6. "[T]he June 2, 2016 deposition of George Hughes, the 30(b)(6) designee for Credit One Financial, highlights the inadequate testimony previously provided by Credit One Bank's 30(b)(6) designee."

Plaintiff's letter fails to identify a specific topic for examination included in Credit One notice of deposition to Credit One Bank that Credit One Bank's designee was unfamiliar with. Credit One Bank's 30(b)(6) notice of deposition failed to identify with reasonable particularity the same subject matter of examination listed in Credit One Financial's 30(b)(6) schedule A. Moreover, Credit One Financial was able to testify to Topic 1 in Plaintiff's schedule A notice of deposition to Credit One and Credit One Financial only.

Because there is no merit to Plaintiff's request, Credit One respectfully requests that either the Court summarily reject Plaintiff's request, or in the alternative, allow the parties to brief the issues raised by Plaintiff's letter.

Respectfully Submitted,

/s/ Michael D. Slodov
Sessions, Fishman, Nathan & Israel, LLC
15 E. Summit Street
Chagrin Falls, OH 44022-2709

15-08214-jpm Doc 78-6 Filed 08/08/16 Entered 08/08/16 23:50:33 Exhibit E Pg 12 of 12
15-08214-rdd Doc 76 Filed 07/18/16 Entered 07/18/16 15:12:01 Main Document Pg 11 of 11

**SESSIONS FISHMAN NATHAN & ISRAEL**LLC
ATTORNEYS AT LAW

P a g e | **11**

(440) 318-1073
(fax) (216) 359-0049
(email) mslodov@sessions.legal
*Counsel for Credit One Bank, N.A.*

cc: **VIA ECF**
George F. Carpinello, Esq. gcarpinello@bsfllp.com
Adam R. Shaw, Esq. ashaw@bsfllp.com
Jeff Shelly, Esq. jshelly@BSFLLP.com
Charles Juntikka, Esq. charles@cjalaw.com