George F. Carpinello, Esq.
Adam R. Shaw, Esq.
Jeffrey S. Shelly, Esq.
BOIES, SCHILLER & FLEXNER LLP
30 South Pearl Street
Albany, New York 12207
(518) 434-0600

Charles Juntikka
CHARLES JUNTIKKA & ASSOCIATES LLP
1250 Broadway, 24th Floor
New York, NY 10001
(212) 315-3755

*Attorneys for Plaintiffs*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE ORRIN S. ANDERSON,<br><br>        Debtor, | |
| ORRIN S. ANDERSON, A/K/A ORRIN ANDERSON,<br>A/K/A ORRIN SCOTT ANDERSON,<br><br>      Debtor and Plaintiff<br>      on behalf of himself<br>      and all others similarly<br>      situated,<br><br>      v.<br><br>CREDIT ONE BANK, N.A.<br><br>        Defendant. | Chapter 7<br><br>Case No. 14-22147 (RDD)<br><br>Adv. Pro. No. 15-08214 (RDD) |

## POST-HEARING MEMORANDUM OF LAW IN SUPPORT OF DEFAULT SANCTIONS

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..............................................................................................ii, iii

PRELIMINARY STATEMENT ...................................................................................... 1

ARGUMENT................................................................................................................... 1

I.     DEFAULT JUDGMENT UNDER RULE 37(b)(2) OF THE FEDERAL RULES
OF CIVIL PROCEDURE. ................................................................................... 1

II.    CREDIT ONE HAS REPEATEDLY LIED TO THIS COURT AND HAS
DELIBERATELY WITHHELD RESPONSIVE DOCUMENTS. .................................. 4

III.   DEFAULT JUDGMENT IS WARRANTED.................................................................. 13

IV.   CREDIT ONE SHOULD BE PRECLUDED FROM OPPOSING CLASS
CERTIFICATION. ........................................................................................... 156

V.    RULE 37 REQUIRES DEFENDANTS TO PAY THE COSTS OF THE
DISCOVERY MOTIONS. ................................................................................. 18

CONCLUSION............................................................................................................... 189

## TABLE OF AUTHORITIES

*Cases*                                                                                    *Page(s)*

*Antonmarchi v. Consolidated Edison Co.*,
   514 F. App'x 33 (2d Cir. 2013) ............................................................................ 14

*Battiste–Downie v. Covenant House*,
   471 F. App'x 78 (2d Cir. 2012) ...................................................................... 14, 15

*Chavez v. ABC Corp.*,
   2016 WL 4076580 (E.D.N.Y. June 1, 2016) ........................................................ 13

*Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp.*,
   602 F.2d 1062 (2d Cir. 1979)................................................................................ 2

*Gaddis v. Abell*,
   2006 WL 4671850 (Bankr. D. Md. 2006) ............................................................ 17

*Guggenheim Capital v. Birnbaum*,
   722 F.3d 444 (2d Cir. 2013)............................................................................ 1, 2

*In re Telxon Secs. Litig.*,
   2004 WL 3192729 (N.D. Ohio 2004)................................................................... 16

*In re Thilman*,
   548 B.R. 1 (Bankr. E.D.N.Y. 2016)............................................................... passim

*Leider v. Ralfe*,
   2003 WL 24571746 (S.D.N.Y. March 4, 2003) *aff'd in part and rev'd in part*,
   2003 WL 22339305 (S.D.N.Y. Oct. 10, 2003) ............................................... 16, 17

*Local Union No. 40 of the Intern. Assn. of Bridge v. Car-Win Constr. Inc.*,
   88 F. Supp. 3d 250 (S.D.N.Y. 2015)..................................................................... 2

*Metro Foundation Contractors, Inc. v. Arch Ins. Co.*,
   551 F. App'x 607 (2d Cir. 2014) ................................................................... 13-14

*Nat'l Hockey League v. Metropolitan Hockey Club, Inc.*,
   427 U.S. 639 (1976)............................................................................................. 3

*Phelan v. Cambell*,
   507 F. App'x 14 (2d Cir. 2013) ........................................................................... 15

*Roberts v. Bennaceur*,
  2016 WL 4155021 (2d Cir. Aug. 5, 2016)............................................................ 2, 13

*S. New England Tel. Co. v. Global NAPs Inc.*,
  624 F.3d 123 (2d Cir. 2010)...................................................................... 2, 3, 14

*Shcherbakovskiy v. Seitz*,
  450 F. App'x 87 (2d Cir. 2011) ...................................................................... 14

*Sieck v. Russo*,
  869 F.2d 131 (2d Cir. 1989)............................................................................ 3

*Skeway v. China Natural Gas, Inc.*,
  304 F.R.D. 467 (D. Del. 2014) ........................................................... 16, 17, 18

*Small v. University Med. Ctr.*,
  2014 WL 4079507 (D. Nev. 2014) .................................................................. 17

*Telford v. Ideal Mortg. Bankers, Ltd.*,
  2010 WL 3924790 (E.D.N.Y.)........................................................................ 17

*Toler v. Global College of Natural Med., Inc.*,
  2016 WL 67529 (E.D. Mich. 2016) ................................................................. 17

*World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.*,
  694 F.3d 155 (2d Cir. 2012)........................................................................ 1, 3

**Rules**

Fed. R. Civ. P. 37(b)(2)(A) (2016) .................................................................. 1

Plaintiff, Orrin S. Anderson ("Plaintiff" or "Anderson"), respectfully submits this Memorandum of Law regarding the propriety of entering a default judgment against Credit One Bank, N.A. ("Credit One" or "Defendant") as a sanction.

## PRELIMINARY STATEMENT

The Court requested post-hearing briefing on the legal standard for a default judgment under Rule 37 of the Federal Rules of Civil Procedure and whether the existing facts before the Court warrant the issuance of such a default judgment. Because of Credit One's deliberate and repeated violations of the Federal Rules of Civil Procedure and this Court's orders and its numerous misrepresentations to the Court—even after being put on notice that "if you do this one more time, if you pick and choose what you are free to respond to on discovery…I will rule against your company" Dkt. No. 45 ("Dec. 9, 2015 Hearing Tr.") at 17:2-5—the Court should issue a default judgment, preclude Credit One from opposing class certification and require Credit One to pay costs.

## ARGUMENT

**I.     DEFAULT JUDGMENT UNDER RULE 37(b)(2) OF THE FEDERAL RULES OF CIVIL PROCEDURE.**

Under Rule 37(b)(2)(A), if a party "fails to obey an order to provide or permit discovery, . . . the court where the action is pending may issue further just orders, including "striking pleadings in whole or in part" or "rendering a default judgment against the disobedient party." Fed. R. Civ. P. 37(b)(2)(A) (2016); *see also Guggenheim Capital v. Birnbaum*, 722 F.3d 444, 450 (2d Cir. 2013); *World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.*, 694 F.3d 155, 158-59 (2d Cir. 2012).

Rule 37 remedies, such as dismissing a complaint or entering a judgment against a defendant, are appropriate when a court finds willfulness, bad faith or any fault on the part of the non-complaint party. *Guggenheim Capital*, 722 F.3d at 450-51; *S. New England Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 143-44 (2d Cir. 2010). That is because, according to the Second Circuit, "discovery orders are meant to be followed." *S. New England Tel.*, 624 F.3d at 144.

Discovery sanctions serve three purposes. First, they ensure that a party will not benefit from its own failure to comply. Second, they are specific deterrents and seek to obtain compliance with the particular order issued. Third, they are intended to have a general deterrent effect in the case at hand and in other litigation, provided that the party against whom they are imposed was in some sense at fault. *Roberts v. Bennaceur*, 2016 WL 4155021, at *2 (2d Cir. Aug. 5, 2016) (summary order) (quoting *S. New England Tel*., 624 F.3d at 149).

Accordingly, entering a default judgment as a discovery sanction due to such "willfulness, bad faith or any fault" of a party serves as a deterrent in not only the case at hand but in other litigation as well. *Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1067 (2d Cir. 1979). And while prejudice to the other party "may serve as a compelling consideration in support of dispositive relief, the Second Circuit has recently emphasized that a lack of prejudice should not be given significant weight in the overall analysis." *Local Union No. 40 of the Intern. Assn. of Bridge v. Car-Win Constr. Inc.*, 88 F. Supp. 3d 250, 263 (S.D.N.Y. 2015) (citing *S. New England Tel.*, 624 F.3d at 148-49). Rather, it is the integrity of the judicial system itself that depends upon proper adherence to the discovery rules. Indeed, the Second Circuit, "along with the Supreme Court, have consistently rejected the 'no harm, no foul' standard for evaluating discovery sanctions … Rule 37 sanctions serve other

2

functions unrelated to the prejudice suffered by individual litigants." *S. New England Tel.*, 624 F.3d at 148-49 (citations omitted).  By assuring honest and forthright discovery, such sanctions preserve our civil justice system.  As in this case, the sanction of default or dismissal must be available "not merely to penalize those whose conduct may be deemed to a warrant a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *Sieck v. Russo*, 869 F.2d 131, 134 (2d Cir. 1989) (quoting *Nat'l Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643 (1976)).

Whether to enter a default judgment as a discovery sanction is in the Court's discretion. *World Wide Polymers*, 694 F.3d at 159.  When exercising that discretion, the Court should consider the following factors: "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the non-compliant party has been warned of the consequences of … noncompliance." *Id.*  No one factor controls.  "Because the text of the rule requires only that the district court's orders be 'just,' however, and because the district court has 'wide discretion in imposing sanctions under Rule 37,' these [four] factors are not exclusive, and they need not each be resolved against the party challenging the … sanctions for [the Second Circuit] to conclude that those sanctions were within the Court's discretion." *Id.*  Indeed, in making this determination, the "court is free to consider 'the full record in the case in order to select the appropriate sanction.'" *Id.* (citations omitted).

In cases "when the court's orders have been clear, when the party has understood them, and when the party's noncompliance is not due to factors beyond the party's control"—as is the case here—the noncompliance is undeniably willful.  *In re Thilman*, 548 B.R. 1, 9 (Bankr. E.D.N.Y. 2016) (citations omitted).

3

As set forth below, the existing record shows that Credit One's willful refusal to produce responsive documents has been perpetuated in bad faith for more than one year.  Despite numerous warnings that any further discovery abuse would result in an adverse ruling against it, Credit One steadfastly maintained its falsehoods and refused to produce discovery.  Under these circumstances, significant sanctions are warranted.

## II.    CREDIT ONE HAS REPEATEDLY LIED TO THIS COURT AND HAS DELIBERATELY WITHHELD RESPONSIVE DOCUMENTS.

More than a year and a half ago Credit One began lying about discovery.  In May 29, 2015, Credit One, Credit One's in-house and outside counsel, and officers of the Related Entities,[1] started lying that they would provide responsive emails to the U.S. Trustee.  In a revealing email, defense counsel acknowledged that "we promised" to provide "our" responsive emails to the U.S. Trustee "within two weeks of May 20, 2015."  *See* Declaration of Adam R. Shaw, Ex. 1 ("Credit One 09763-65").  At that time, no email—other than three email chains— had been searched.  And since then, no other emails have been searched.  Not a single employee of Credit One or the Related Entities has had their email searched throughout the discovery in this case.  *See* Dkt. No. 89 ("Sept. 22, 2016 Hearing Tr.") at 53:11 (Credit One admitting that "Credit One did not do any email searches."); *see also* Dkt. No. 81-29 ("Scott Deposition Transcript") (hereinafter "Scott Tr.") at 169:08-170:19.

Credit One knows that no email search has ever been performed, yet has steadfastly and falsely maintained until now that the only responsive emails in its possession were the three email chains Credit One produced in May 2015.  That lie persisted for well over a year, and was dissembled and left uncorrected in two sworn court-ordered Verifications executed by Credit

---

[1] The "Related Entities" include Sherman Financial Group, LLC, Sherman Originator III, Sherman Originator, Resurgent Capital Services, LP, Sherman Capital Markets, LLC, FNBM, LLC, MHC Receivables, LLC, PYOD, LLC, LVNV-Funding, LLC, and Credit One Financial.

One.  Indeed, as Credit One admitted at the September 22 Hearing, the Amended Verification

"refers to [emails], but it doesn't say it was searched."  Sept. 22, 2016 Hearing Tr. at 53:16-19.

In June 2015, well over a year ago, in the context of a hearing concerning a stay and a

protective order, this Court put Credit One on notice that it must produce all of its documents

concerning the practices and policies of Credit One concerning credit reporting and the sale of

debt that is subsequently discharged.  Dkt. No. 31 ("June 15, 2015 Hearing Tr.") at 46:10-15.

The Court clearly told Credit One that it must produce such documents related to

"communications with buyers of consumer debt" and Credit One's practices relating to the

"reporting of bankruptcy discharges to credit reporting agencies" and that it must identify people

with knowledge on those "front and center" topics.  *Id.* at 46:21-47:7.  To ensure compliance, the

Court warned that:

> There will be no – no, let me be absolutely clear on this… in capital
> letter[s], N-O, withholding of documents on the basis of a position
> that's contrary to any ruling I have given in this case…you are on
> notice right now that, you'll be subject to Rule 11.  The arrogance is
> outrageous...          And if I hear that you're not producing
> documents...it will not be pleasant.

*Id.* at 45:24-46:5; 47:5-8.

In response to that warning, Credit One assured the Court that "we will not withhold

anything if you order us to produce it."  *Id.* at 45:4-5.  That was, and is, a lie.  At the time that

statement was made to the Court, Credit One already knew that no email search had been

performed.

On July 28, 2015, Plaintiff served his First Request for Production of Documents.  On

August 31, 2015, Credit One answered with boilerplate responses and produced 62 documents.

Ostensibly, these were the same documents Credit One had previously provided to the U.S.

Trustee.  After a lengthy meet and confer, the parties could not resolve their differences

concerning the scope of discovery and Plaintiff asked the Court to intervene.

The Court held a discovery hearing on December 9, 2015.  Credit One lied both in

advance of and at the hearing.  Just prior to that December 9th Hearing, Credit One filed a 20-

page letter saying "[i]n short, Credit One has fully responded to Plaintiff's document production

request … and there are no 'withheld' documents or other documents the Court could order

Credit One to produce."  Dkt. No. 41 at 2-3.  When asked by the Court at that hearing if there

were any responsive documents that had not been produced, Credit One replied: "There's [sic]

no other documents."  Dec. 9, 2015 Hearing Tr. at 13:17-20.  These statements were false

because Credit One knew (at minimum) that no email search had been performed, and they were

clearly made in bad faith.

When it became clear at the hearing that Credit One was still withholding documents, the

Court warned Credit One again:

> If you do this one more time, if you pick and choose what you are
> free to respond to on discovery based on your sense of what the
> merits are, *I will rule against your company.  I will draw an adverse
> interest right then*.

Dec. 9, 2015 Hearing Tr. at 17:2-5 (emphasis added).

The Court reiterated:

> So get your act together, check the documents, make sure you
> haven't given your clients a free pass on what they can produce and
> not produce, and *produce it or risk sanctions or provide the
> declaration under oath*.

*Id*. at 18:6-9 (emphasis added).

Because Credit One's lack of documents was not credible, the Court ordered Credit One to provide a sworn verification that it had conducted a comprehensive search for all relevant documents.

On January 18, 2016, Credit One filed that Verification.  Dkt. No. 78-12, Ex. K ("Lanham Verification").  Despite Credit One's clear knowledge at that time that it had not even begun to meet its discovery obligations, Credit One's affiant, Helen Lanham, swore that "I am not aware of any other responsive documents in possession, custody, or control of Credit One Bank, N.A. which have not been produced."  *Id.*  That was, at best, false, and more likely was a perjured statement.  In any event, Credit One's counsel knew it was false.

On January 27, 2016, Credit One's 30(b)(6) designee, also Ms. Lanham, testified to facts that proved her Verification false.  She testified to the existence of numerous responsive documents that had not been produced by Credit One.  Moreover, Ms. Lanham testified that, as far as she knew, the only documents that anyone at Credit One looked at to determine that Credit One had produced all of its responsive documents were the few documents already produced to Plaintiff, and nothing else.  She gave no indication that a thorough search was performed by Credit One to locate documents.  In fact, her testimony demonstrated that she had no idea if any documents other than the few produced to Plaintiff were identified or reviewed for responsiveness.  *See* Dkt. No. 81-15 ("Lanham Deposition Transcript) (hereinafter "Lanham Tr.") at 141:19-142:9; 145:8-12; 144:5-14; 146:11-25; 150:5-9 ("other than what was produced, you didn't look at a single document Credit One has, did you?...THE WITNESS: No I did not.").

In fact, when asked "how Credit One sought to locate responsive documents" (Dkt. No. 81-15, Lanham Tr. at 143:3-4), Ms. Lanham, the only person who signed Credit One's

7

Verification, said "I don't have specific knowledge of this particular case, what the—what they did to find documents." *Id.* at 144:5-8.

She did not even look or ask for documents that she knew were relevant. For example, when asked if she had checked to see if contracts and names of every third party buyer of Credit One's debt had been produced, she testified: "No, I did not." *Id.* at 198:5-18. And when asked if the information stored at Credit One concerning third party buyers of debt was sought by Credit One to produce to Plaintiff, Ms. Lanham replied: "I do not know that." *Id.* at 197:14-198:3.

Credit One then sought to capitalize on its lies. Two weeks after filing its false Verification, Credit One twice sought leave to file a motion for summary judgment, despite knowing that it had willfully withheld documents from Plaintiff. Dkt. Nos. 53, 54. This effort to short-circuit this case on a false record was clearly done in bad faith. Indeed, at that time, Credit One told the Court that "Plaintiff has no evidentiary support and cannot show by clear and convincing evidence that Credit One Bank instituted or continued any action, employed any process or engaged in any act to collect such debt as personal liabilities of the Debtor [or the Class]." Dkt. No. 53 at 1. Credit One had the audacity to make that statement knowing full well that it had not even looked for such evidence to produce in discovery.

Credit One continued its efforts to forestall discovery by asking that the discovery deadlines be extended only 30 more days.

When it became clear that the Verification was false, Plaintiffs again moved to compel discovery. The Court held a hearing on Credit One's failure to produce documents on February 22, 2016. Again dissatisfied with Credit One's discovery responses, the Court ordered Credit One to provide another verification describing the steps it had taken to produce responsive documents in the case. At the Hearing, Credit One stated unequivocally that it had produced all

the documents that it had and would catalog the extensive efforts that it had undertaken to locate

the documents:

> And I think it's disingenuous for the plaintiff's counsel to say that they've gotten next to nothing from Credit One. *Credit One has produced what it has*. We had this discussion the last time we were before the Court in December. The Court directed us to provide a declaration stating that they had no further responsive documents. We did that. They're not satisfied that the declaration we provided satisfied the requirements of the Court, and we've asked them to advise us in what respect it's insufficient.
>
> If they want us to go ahead and catalog the efforts that were undertaken, to identify responsive documents that were in the request for production of documents, if that's what the Court wants us to do, we can go ahead and do that. We can go through that exercise and provide them with a step-by-step, you know, accounting of where documents were looked for and what documents were looked for. *But the end result is, you know, that Credit One doesn't have any further document to provide*. And that's ultimately what we've tried to impress on plaintiff's counsel and the Court, that they simply don't have any further responsive documents.

Dkt. No. 64 ("Feb. 22, 2016 Hearing Tr.") at 16:14-17:8 (emphasis added).

That statement was another lie to the Court. Credit One knew it could not honestly tell

the Court that it had no further documents because it knew that it had never performed a proper

search of its documents.

The Court ordered Credit One to provide a second verification and told Credit One that it

"need[s] to do a better job of explaining what it did to instruct those working for it to locate the

responsive documents." *Id.* at 19:2-5.

Credit One filed an Amended Verification, dated March 21, 2016, that was knowingly

deceptive and false, and was provided in bad faith. Dkt. No. 78-14 ("Amended Verification").

Indeed, it is now clear that responsive documents exist at Credit One which were never

produced, and that no one searched many of Credit One's document repositories, and certainly

not its emails.  *See, e.g.*, Dkt. No. 81-29, Scott Tr. at 170:10-19; 175:25-176:15; 177:1-4; 177:21-25.  The Amended Verification served no purpose other than to dissemble and deceive the Court.  It was written to give the illusion that Credit One had performed a thorough and comprehensive search for responsive documents, despite the fact that it had not.  Nowhere within the 24 paragraphs of the Amended Verification does Credit One state that it never searched for responsive emails.  *See* Amended Verification.  In fact, it suggests the exact opposite.

For example, the Amended Verification contains this false statement:  "Upon information, responsive documents were provided to in-house counsel by these staff after performing a search of the CAS system, the SharePoint Workspace program, R1 system, *and the email server system to locate responsive documents*."  Amended Verification ¶ 17 (emphasis added).  That sworn statement was false and constitutes perjured testimony that was suborned by defense counsel.

As recently as August 31, 2016, Credit One continued to claim the Amended Verification was true, stating that it has "complied with the Court's directive to provide an Amended Verification as to basically what was actually—what were the instructions to Credit One to locate."  *See* Dkt. No. 85 ("Defendant's Aug. 31, 2016 Opposition Brief") at 59 (quoting Feb. 22 Hearing Tr. at 17:17-8).  Like so many of its prior statements, the statement contained in the Amended Verification is patently false.

The Amended Verification was also shown to be false at the June 3, 2016 deposition of Ms. Vicki Scott when she testified to "newly discovered" documents and the fact that her emails, personal files, and "the recovery drive" had never been searched.  Dkt. No. 81-29, Scott Tr. at 175:25-176:15; 177:21.

10

Credit One's discovery abuses also extend to the Related Entities.  Credit One has
continually claimed that Plaintiff should seek any additional documents from its Related
Entities—and not Credit One—even though Credit One clearly has access to such documents.
However, Credit One's counsel has admitted that he has already personally sought and received
documents from the Related Entities, and that Credit One then produced those documents to
Plaintiff. Dkt. No. 78-6 at 9 ("Further, as we have previously informed Plaintiff, the undersigned
personally requested Sherman provide its contract with Midland and that information Credit One
produced did not come from Credit One.").  He also stated that all of the emails produced by
Credit One were obtained by defense counsel from one of the Related Entities.  Dkt. No. 81-15,
Lanham Tr. at 220:17-222:10.  This game of hide-and-seek had but one wrongful purpose: to
deliberately withhold responsive documents available to Credit One from its self-acknowledged
"Affiliates."  *See* Dkt. No. 78-1 (https://www.creditonebank.com/privacy-policy.aspx).

Credit One has also blatantly lied that it does not receive notices of bankruptcy
discharges that are at issue in this case.  At her June 3, 2016 deposition, Ms. Scott was asked:
"Are you telling me that the bank—after the bank sells a debt, it never knows whether or not the
debt has been discharged in bankruptcy?"  And she answered: "we are not notified, that is
correct."  Dkt. No. 81-29, Scott Tr. at 7:3-8.  Incredibly, however, Ms. Scott changed her answer
(for "clarification" purposes) in a sworn June 27, 2016 errata sheet to: "we are notified but our
system is not built to change the dispositions of the account as we no longer own the debt."  Dkt.
No. 81-29 at 61-63 ("Scott Errata Sheet").  Despite that sworn errata statement, Credit One told
this Court on July 18, 2016—three weeks *after* the above "clarification"—that "Credit One does
not receive bankruptcy discharge notices" (Dkt. No. 76, "M. Slodov Letter to Court, dated July
18, 2016" p.5 n.4) and "[a]s noted above, Credit One does not receive bankruptcy discharge

11

notices." *Id*. at p.6, n.7 (emphasis added).  Based upon Ms. Scott's sworn errata, however, Credit

One's July 18th statement was patently false, and known by Credit One to be false.  Credit One

made the same false representation in its 138-page Memorandum of Law in response to

Plaintiff's Motion to Compel and for Sanctions.  Dkt. No. 85 at 93, 96 & 101.

Finally, even at the recent September 22, 2016 hearing concerning sanctions, it was clear

that Credit One's counsel was hoping to get through the hearing without disclosing that his client

had not done a search of any emails.  Only in response to a direct question from the Court, two

hours into the hearing, did Credit One's counsel finally admit that Credit One had not searched

for emails and then he lamely handed up to the Court an email exchange with an officer of one of

the Related Entities in which that officer flatly declined to do a search for emails.  Apparently,

Credit One's counsel believed that this individual's refusal to search for his emails constituted

some excuse for Credit One's failure to insist that his client do a comprehensive search for

emails.

Credit One's intentional lies and hiding of documents is not without consequence.  Credit

One's deliberate decision to forego the discovery requirements of the Federal Rules of Civil

Procedure and this Court's orders in an effort to stymie the prosecution of this case has severely

prejudiced Plaintiff and the Class.  For more than a year, Credit One has withheld the very

documents behind its actions to collect discharged debts which are at the heart of this case.  As a

result, Credit One has continued its illegal practices unabated, and has continued to report

discharged debts as due and owing in an effort to collect discharged debts to the detriment of the

class. It is also creating new members of that Class by continuing that practice today.  In addition

to denying Plaintiff the evidence necessary to reach a resolution of this matter, Credit One has

also delayed this Court's certification of the Class.

As of today, neither the Court nor Plaintiff know what documents were looked for by

Credit One.  As a result of the September 22, 2016 Hearing, we now know for sure that there was

no search for emails, but we still do not know whether there were any other actual searches for

responsive documents that are not emails.  Thus, through its lies and false verifications, Credit

One has unduly prolonged the prosecution of this case.  Such flagrant and callous disregard of

both the truth and its duties constitutes the very sort of bad faith that warrants default judgment

against Credit One.

## III.    **DEFAULT JUDGMENT IS WARRANTED.**

Under the standards set by the Second Circuit, default judgment is clearly warranted here.

First, the actions of Credit One and its counsel were willful and undertaken in bad faith.

"A failure to comply with a discovery order is considered willful 'when the court's orders have

been clear, when the party has understood them, and when the party's non-compliance is not due

to factors beyond the party's control.'"  *Chavez v. ABC Corp.*, 2016 WL 4076580, at *3

(E.D.N.Y. June 1, 2016) (citations omitted).  Here, Credit One and its counsel consistently lied to

the Court in sworn verifications and express representations to the Court.  Counsel and Credit

One intentionally withheld documents from production with the intent to deceive Plaintiff's

counsel and the Court into believing that they had produced all relevant documents.  Those

actions were willful.  *See*, *e.g.*, *Roberts*, 2016 WL 4155021, at *2-3 (finding that defendants'

numerous "misrepresentations" and "inadequate explanations on numerous occasions . . .

demonstrated[ed] their bad faith throughout those proceedings"); *Metro Foundation Contractors,

Inc. v. Arch Ins. Co.*, 551 F. App'x 607 (2d Cir. 2014) (summary order) ("considering

[defendant's] dilatory behavior and continual disrespect for district court orders, the court was

within its discretion in dismissing [defendant's] claims against [plaintiff]); *Antonmarchi v.

Consolidated Edison Co.*, 514 F. App'x 33, 35 (2d Cir. 2013) (summary order) (finding that

party was willful when he "represented to district court that he possessed relevant evidence, brandishing several documents during a court conference, which he later claimed were not in fact relevant.  He then defied two court orders to produce documents immediately, waiting more than six weeks to produce any materials.").

Second, a lesser sanction would clearly be inappropriate here.  A "court is 'not required to exhaust possible lesser sanctions before imposing dismissal or default if such a sanction is appropriate on the overall record.'"  *Shcherbakovskiy v. Seitz*, 450 F. App'x 87, 88 (2d Cir. 2011) (summary order) (citing *S. New England Tel.*, 624 F.3d at 148 ); *see also Metro Foundation*, 551 F. App'x at 610 (finding that district court properly exercised its discretion dismissing an action and not just excluding evidence where "such exclusion would only serve to benefit [defendant]" and where "the record establishes that the documents that [plaintiff] sought in discovery from [defendant] were central to the [plaintiff's] ability to challenge [defendant's] claims."); *Battiste– Downie v. Covenant House,* 471 F. App'x at 78, 79 (2d Cir. 2012) ("[T]he efficacy of lesser sanctions to correct such behavior is doubtful, given that Battiste–Downie refused to respond to the discovery demands even after being ordered repeatedly by the District Court to do so.").

Here, Credit One has been given numerous chances to comply and participate within the rules of discovery.  It has continued to thumb its nose at the Court and flout the rules.  Any lesser sanction than default would reward Credit One for its willful conduct.  *Antonmarchi*, 514 F. App'x at 35 ("[T]he efficacy of lesser sanctions to correct [party's] noncompliance is doubtful, given that the court gave him two opportunities to comply with its orders, neither of which he took."); *In re Thilman*, 548 B.R. at 10 ("no lesser sanction than a default judgment will suffice where [d]espite being afforded ample opportunity to comply with his discovery obligations, and despite the warning that a failure to comply may result in the harsh sanction of a default

14

judgment . . . defendant failed to comply with the Court's Orders and has not provided any explanation for his failure to do so."); *id.* (finding that a lesser sanction would be ineffectual given defendant's persistent disregard of his discovery obligations and repeated violation of the Court's Orders).

Third, the duration of Credit One's misconduct was in excess of a year and clearly delayed both the prosecution of this Action and any remedy to the Class. Courts have found non-compliance for more than several months sufficient to call for default or dismissal sanctions. *See, e.g.*, *Phelan v. Cambell*, 507 F. App'x 14, 16 (2d Cir. 2013) (granting dismissal after seven months of non-compliance); *Battiste–Downie*, 471 F. App'x at 79 (granting dismissal after one year of non-compliance); *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 303 (2d Cir. 2009) (granting dismissal after six months of non-compliance); *Embuscado v. DC Comics*, 347 F. App'x 700, 701 (2d Cir. 2009) (granting dismissal after three months of non-compliance); *Ruzsa v. Rubenstein & Sendy Attorneys at Law*, 520 F.3d 176, 177 (2d Cir. 2008) (granting dismissal after seven months of non-compliance); *In re Thilman*, 548 B.R. at 11 (finding ten month period of non-compliance warrants "severe sanction").

Finally, Credit One was consistently warned of the consequences of non-compliance with both its obligations under Rule 37 and the directives of the Court. For over a year, the Court warned Credit One and its counsel that Credit One was expected to do a thorough search for documents and to produce all relevant documents requested by Plaintiff or suffer the consequences of sanctions and an adverse ruling against it. The Court's numerous directives and warnings could not have been clearer. *In re Thilman*, 548 B.R. at 11-12 (finding dismissal or default warranted where defendant ignored several court warnings) (collecting cases).

## IV.    CREDIT ONE SHOULD BE PRECLUDED FROM OPPOSING CLASS CERTIFICATION.

15

As a result of Credit One's deliberate and admitted failure to conduct a proper search for responsive documents, its repeated false statements concerning its search for responsive documents, and its bad faith and prolonged concealment of the truth from Plaintiff and the Court, Plaintiff respectfully requests that the Court preclude Credit One from opposing class certification.

There is no doubt that, in an individual case, the court is empowered to enter a default judgment against a party. Similarly, the court is empowered to enter a default judgment in a class action case. *Skeway v. China Natural Gas, Inc.*, 304 F.R.D. 467, 472 (D. Del. 2014) ("As a threshold matter, the entry of default by the Clerk of the Court against [defendant] does not alter the Court's analysis for class certification."). A defendant's default has not prevented district courts from considering whether to certify a class prior to the entry of a default judgment against a defendant. *Id.* "Indeed, any other conclusion might give Defendants an incentive to default in situations where class certification seems likely." *Leider v. Ralfe*, 2003 WL 24571746, at *8 (S.D.N.Y. March 4, 2003), *aff'd in part and rev'd in part*, 2003 WL 22339305 (S.D.N.Y. Oct. 10, 2003); *see also In re Telxon Secs. Litig.*, 2004 WL 3192729, at *33-34 (N.D. Ohio 2004) (entering default judgment on liability proper discovery sanctions against class action defendant).

Awarding default judgment only in favor of Orrin Anderson would be so minimal as to constitute a mere token penalty. This case has been prosecuted as a class action; Credit One was on notice that Anderson brought his case as a class action; and only class-wide relief is an appropriate remedy for Credit One's contumacious conduct. Moreover, the entire class has suffered harm from the delay caused by Credit One's blatant refusal to comply with its basic discovery obligations. By intentionally delaying resolution of this case, Credit One has enabled itself to continue the very policy that is at issue in this case—all to the detriment of this Class.

16

Not only is a default judgment appropriate in a class action, but disallowing Credit One from opposing certification of the class prior to the issuance of a default judgment is an appropriate sanction for the discovery abuse that occurred here. *See Skeway*, 304 F.R.D. at 472 (determining certification based on no evidence from defaulting defendant); *Telford v. Ideal Mortg. Bankers, Ltd.*, 2010 WL 3924790, at *4 (E.D.N.Y.) (report and recommendation), *aff'd*, 2010 WL 3909313, at *1 (E.D.N.Y. 2010) (granting default and providing for discovery and hearing on class certification, damages and attorney's fees); *Leider,* 2003 WL 24571746, at *2 (determining class certification based on no evidence from defaulting defendant). *See also Toler v. Global College of Natural Med., Inc.*, 2016 WL 67529, at *1-5 (E.D. Mich. 2016) (certifying a class and entering default judgment and disallowing defendant's evidence on default); *Small v. University Med. Ctr.*, 2014 WL 4079507, at *36 (D. Nev. 2014) (granting certification and precluding defendant from entering evidence against certification as a discovery sanction); *Gaddis v. Abell*, 2006 WL 4671850, at *2 (Bankr. D. Md. 2006) (finding that granting class certification and precluding defendant from opposing certification in light of defendant's failure to comply with discovery was not an abuse of discretion).

Here, there is no question that the prerequisites of Rule 23, are clearly established.  There are questions of law and fact common to the entire class; the claims raised by class representative Orrin Anderson are typical of the claims raised by the class; and it is clear that Orrin Anderson and his counsel can fairly and adequately protect the interests of the class.  There is no question that Credit One has a policy of refusing to update credit reports to reflect discharge in bankruptcy and that the policy applies across the board to virtually all of Credit One's sold accounts.  Indeed, Credit One's representative testified that Credit One does not even review discharge

notices but forwards them to a Related Entity and that it is Credit One's policy not to update Credit One tradelines to reflect such discharge.  Dkt. No. 81-29 at 61-63 ("Scott Errata Sheet").

There are also enough class members to satisfy numerosity.  Determinations of numerosity should be based on common sense and the court can consider the transactions at issue and how many people are likely involved and affected as a measure of numerosity.  *Skeway*, 304 F.R.D. at 473.  Here there are thousands of tradelines and accounts at issue that have been affected by Credit One's conduct.  On this issue, Plaintiff specifically requested information which, of course, Credit One has refused to provide.  *See* Dkt. No. 78-16 ("Credit One Bank, N.A.'s Responses to Plaintiff's First Requests for Production of Documents at 26 ("Request No. 22").  Knowing such documents would be necessary for Plaintiff's motion for class certification, Credit One sought to benefit by withholding this relevant evidence.  Thus, a ruling against Credit One that the Class is sufficiently numerous is entirely appropriate.

Alternatively, should the Court determine that a hearing concerning class certification needs to be held, Plaintiff requests that it be allowed to obtain specific discovery concerning class certification from Credit One.

## V.    RULE 37 REQUIRES DEFENDANTS TO PAY THE COSTS OF THE DISCOVERY MOTIONS.

Under Rule 37(b)(2)(c), in addition to imposing sanctions, a court "must order the disobedient party…to pay the reasonable expenses, including attorney's fees caused by the failure, unless the failure was substantially justified or other circumstances make the award of expenses unjust."

Here, Plaintiff requests that the Court order Credit One to pay the costs and fees of the underlying motion and all prior motions to compel discovery.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully submits that significant sanctions are warranted and that the Court:

1. Find Credit One in default based on its willful discovery abuse;

2. Grant class certification and preclude Credit One from opposing class certification;

3. Order Credit One to pay the costs and fees of all discovery motions; and

4. Enter a default judgment and set the matter down for a hearing on damages.


DATED: October 16, 2016                     **BOIES, SCHILLER & FLEXNER LLP**

                                 By:    /s/ George F. Carpinello
                                        George F. Carpinello
                                        Adam R. Shaw
                                        Jeffrey S. Shelly
                                        30 South Pearl Street
                                        Albany, NY  12207
                                        (518) 434-0600

                                        **CHARLES JUNTIKKA & ASSOCIATES LLP**
                                        Charles Juntikka
                                        1250 Broadway, 24th Floor
                                        New York, NY  10001
                                        (212) 315-3755

                                        *Counsel for Plaintiff Orrin Anderson*

19