WHITE & CASE LLP
J. Christopher Shore
Andrew E. Tomback
Colin T. West
1155 Avenue of the Americas
New York, NY 10036
Phone: 212.819.8200
Fax: 212.354.8113

*Counsel to Credit One Bank, N.A.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------X

In re:                                                        Chapter 7

    Orrin S. Anderson, aka Orinn Anderson,
    aka Orinn Scott Anderson

                    Debtor.          Case No. 14-22147 (rdd)
                               Hon. Robert D. Drain

-----------------------------------------------------X

In re:                                                        Adv. Case No. 15-08214 (rdd)
                               Hon. Robert D. Drain
    Orrin S. Anderson, aka Orinn Anderson,
    aka Orinn Scott Anderson,

        Debtor and Plaintiff, on behalf of
        himself and all others similarly
        situated,

v.

    CREDIT ONE BANK, N.A.

        Defendant.

-----------------------------------------------------X

### DEFENDANT CREDIT ONE BANK N.A.'S
### <u>POST-HEARING BRIEF</u>

# TABLE OF CONTENTS

Table of Authorities ............................................................................................................... ii

Preliminary Statement ............................................................................................................ 1

Background ............................................................................................................................. 5

Argument ................................................................................................................................ 7

    I.    General Purposes of Discovery Sanctions ..................................................... 7

    II.   A Default Judgment Is Not Warranted ......................................................... 8

       A.   A Default Judgment Would Be Excessively Severe ................................... 8

       B.   Credit One Has Not Violated A Court Order ............................................. 12

       C.   A Default Judgment At This Stage Would Unnecessarily Raise Procedural and Jurisdictional Concerns ............................................................................... 13

    III.   An Adverse Inference Sanction Is Not Warranted ...................................... 15

Conclusion ............................................................................................................................ 18

Certificate of Service ........................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

Chen v. Port Auth. of N.Y. & N.J., 685 F.3d 135 (2d Cir. 2012) ……………...........................18

Congregation Rabbinical College of Tartikov, Inc. v. Vill. of Pomona, 138 F.
   Supp. 3d 352, 2015 U.S. Dist. LEXIS 132714 (S.D.N.Y. 2015)............................................16

Daval Steel Prod. v. M/V Fakredine, 951 F.2d 1357 (2d Cir. 1991)............................................12

Doe Run Peru S.R.L. v. Trafigura AG, 2011 U.S. Dist. LEXIS 154559 (D. Conn.
   Aug. 23, 2011) .....................................................................................................................10

Farmer v. Hyde Your Eyes Optical, Inc., 2015 U.S. Dist. LEXIS 62904 (S.D.N.Y.
   May 13, 2015).........................................................................................................................9

FDIC v. Horn, 2015 U.S. Dist. LEXIS 44226 (E.D.N.Y. Mar. 31, 2015)....................................17

Gen. Tele. Co. of the S.W. v. Falcon, 457 U.S. 147 (1982) ..........................................................14

Hamilton v. City of Peekskill Police Dep't, 2015 U.S. Dist. LEXIS 101903
   (S.D.N.Y. Aug. 3, 2015) .........................................................................................................8

Hawley v. Mphasis Corp., 302 F.R.D. 37 (S.D.N.Y. 2014) ...........................................................7

Henry v. Miller 2016 U.S. Dist. LEXIS 115974 (S.D.N.Y. Aug. 26, 2016) ..................................8

In re Belton, Adv. Proc. No. 14-08233 (RDD), Dkt. No. 98 ..........................................................4

Klipsch Group, Inc. v. Big Box Store Ltd., 2014 U.S. Dist. LEXIS 31509
   (S.D.N.Y. 2014) ………………………………………………………….........................18

Melgadejo v. S&D Fruits & Vegetables Inc., 2013 U.S. Dist. LEXIS 172405
   (S.D.N.Y. Nov. 7, 2013)........................................................................................................14

Mihelis v. Network Commer. Serv., 2014 U.S. Dist. LEXIS 141180 (E.D.N.Y.
   Aug. 8, 2014) ........................................................................................................................15

Negron v. Woodhull Hosp., 173 Fed. Appx. 77 (2d Cir. 2006) .....................................................8

Nieves v. City of N.Y., 208 F.R.D. 531 (S.D.N.Y. 2002) ...............................................................7

Ocello v. White Marine, Inc., 347 F.App'x 639 (2d Cir. 2009) ..................................................8, 9

Pension Comm. of the Univ. of Montreal Pension Plan v. Bank of Am. Sec., 685
F. Supp. 2d 456 (S.D.N.Y. 2010).........................................................................18

Reg. Fundamentals Grp. v. Governance Risk Mgmt. Compliance, 2014 U.S. Dist.
LEXIS 107616 (S.D.N.Y. Aug. 5, 2014)................................................................7

Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99 (2d Cir. 2002) ..................18, 19

Shcherbakovskiy v. Da Capo Al Fine, Ltd., 490 F. 3d 130 (2d Cir. 007) ................................7, 10

Stinson v. City of N.Y., No. 10 CIV. 4228 RWS, 2015 WL 4610422 (S.D.N.Y.
July 18, 2015)........................................................................................................11

Telford v. Ideal Mortg. Bankers, Ltd., 2010 U.S. Dist. LEXIS 110540 (E.D.N.Y.
Aug. 17, 2010) ................................................................................................14, 17

Treppel v. Biovail Corp., 249 F.R.D. 111 (S.D.N.Y. 2008) .................................................16

Trull v. Plaza Assocs., 1998 U.S. Dist. LEXIS 14195 (N.D. Ill. Sept. 1. 1998) ..........................14

U.S. v. Norris, 753 F. Supp. 2d 492 (E.D. Pa. 2010), aff'd, 419 Fed. Appx. 190
(U.S. App. 2011)....................................................................................................11

William A. Gross Const. Assoc., Inc. v. Am. Mfrs. Mut. Ins. Co., 256 F.R.D. 134
(S.D.N.Y. 2009)....................................................................................................11

Young v. Premier Recovery Grp. Inc., 2016 U.S. Dist. LEXIS 2394 (W.D.N.Y.
Jan. 6, 2016)...........................................................................................................9

Zubulake v. UBS Warburg LLC, 220 F.R.D. 212 (S.D.N.Y. 2003)...........................................16

## STATUTES AND RULES

Rule 23 ......................................................................................................................14, 15

Rule 37 ...................................................................................................................7, 12, 18

Defendant Credit One Bank, N.A. ("Credit One") by and through its undersigned counsel, and pursuant to the Court's direction on the record at the September 22, 2016 hearing, hereby submits this Post-Hearing Brief in further support of Credit One's Opposition to Plaintiff's August 8, 2016 Motion to Compel and for Sanctions (the "Motion").

## PRELIMINARY STATEMENT

At the September 22, 2016 hearing, the Court directed Credit One's counsel to provide the transcript of that hearing to Credit One's new general counsel. He did. To the extent the Court had a belief that there was a disconnect between counsel and the client with respect to both the substantive positions being taken in Court[1] and the handling of Credit One's discovery obligations, the Court was correct. Upon reviewing the transcript, Credit One's general counsel, David Bouc, came to understand the Court's concerns and frustration with respect to discovery matters and immediately took steps to remedy the situation. First, going forward, Mr. Bouc has personally taken over the day-to-day oversight of all legal matters related to both the discovery process and the substantive legal issues framed by the Adversary Proceeding. Second, Mr. Bouc immediately sought to retain substitute counsel in this proceeding and in the bankruptcy case, and has now retained White & Case LLP for its extensive experience in complex bankruptcy matters and ability to complete large-scale discovery on an expedited basis. Third, in coordination with White & Case, Credit One seeks to correct the mistakes that have been made and to ensure full compliance with the Court's prior instructions and to attempt to craft, to the fullest extent possible, interim solutions that address the Court's substantive concerns regarding credit reporting practices.

---

[1] Indeed, Mr. Bouc also recently retained separate counsel, Wilmer Cutler Pickering Hale and Dorr LLP, to represent Credit One in the appeal of this Court's denial of Credit One's motion to compel arbitration.

Indeed, Credit One certainly understands now that it should have been more responsive to the Court's prior orders and guidance. As the Court may have surmised, a disconnect in communications between counsel and the client resulted in Credit One's failure to conduct appropriate discovery procedures to locate documents responsive to Plaintiff's requests for production. While Credit One believed in good faith that it had no additional documents related to the alleged "policy and decision-making to *not* report the discharge of debts that have been sold to third-parties," and that a search of its servers would prove futile, that belief plainly did not excuse Credit One from its obligations to conduct appropriate searches of its email servers for any such documents. (Pl. Br. 2)[2] (emphasis in original).

As to the Sherman Entities, Credit One believed, and continues to believe, that it does not have the legal or practical ability to require the Sherman Entities to produce responsive documents. Nevertheless, White & Case has discussed the issue with counsel for those entities—Blank Rome LLP—which provided assurances that they would continue to comply with the third-party subpoenas they have received from the Plaintiff. As Credit One now understands it, Plaintiff has not raised any issues with the Sherman Entities concerning their document production in response to the subpoenas and agreed in March 2016 that a search of electronically stored files was not required by the Sherman Entities. Nevertheless, counsel to the Sherman Entities has assured Credit One that those entities are willing to cooperate to ensure that Plaintiff receives the documents he is seeking, whether they exist in the files of Credit One or the Sherman Entities.

Given the transcripts of prior proceedings before the Court, Credit One can certainly appreciate the Court's frustration and indication that it is considering resolving the Motion either through entry of a default judgment or an order imposing an adverse inference. Credit One

---

[2] As used herein, "Pl. Br." refers to Plaintiff's August 8, 2016 Memorandum of Law (Dkt. No. 78).

2

respectfully asks the Court, however, to take another path that it believes will be more effective – a path that both corrects past shortcomings and allows for prospective substantive relief. As set forth below, remedies of a default judgment or adverse inference create a number of thorny issues relating both to the permissible sequencing of relief for discovery abuses in this Circuit as well as the certification of any class in this adversary proceeding. Indeed, the retrospective nature of the proposed sanctions will likely only defer resolution of the substantive and procedural issues as the Court is called upon to define the scope and composition of any class, while at the same time deferring prospective relief of the issues upon which this Court is understandably focused.

In light of these realities, to the extent Plaintiff is willing to participate in the process,[3] Credit One makes the following specific commitments with respect to Credit One and, having consulted with Blank Rome, on behalf of Sherman Originator III, FNBM, LLC, MHC Receivables, LLC, PYOD, LLC, Resurgent Capital Services, LP, and LVNV Funding, LLC, (the "Sherman Entities")[4]:

- Credit One will immediately take all appropriate steps to search for all of its responsive electronically stored information ("ESI"), cooperating in good faith with Plaintiff's counsel to agree immediately on a set of search terms and custodians.

- Credit One will make an initial production of such responsive ESI with a goal of producing no later than two weeks following such meet and confer.

- Credit One will complete its production of ESI by no later than six weeks following the meet and confer.

- Credit One will redouble its efforts to search for non-ESI responsive materials and ensure that any such materials are also produced by no later than six weeks following the meet and confer.

---

[3] In the context of seeking a consensual adjournment to the deadline for filing this brief, we raised the issue of resolving any discovery deficiencies, but Plaintiff's counsel was at that time disinclined to address any issues relating to document production pending resolution of the motion for sanctions.

[4] As defined in Plaintiff's Brief at p.3 the Sherman Entities are owned by Sherman Financial Group. They do not include Credit One.

- Credit One agrees to produce an associated privilege log by no later than eight weeks following the meet and confer.

- Credit One agrees to a deposition to respond to any newly produced documents as well as any open questions still pending from the prior depositions.

- Following the production, Credit One, and if necessary, the Sherman Entities, will meet and confer with Plaintiff's counsel to discuss any and all remaining discovery issues and make best efforts to resolve such issues.

- Although Credit One does not control the Sherman Entities or their documents, the Sherman Entities will produce documents responsive to the subpoenas addressed to them on the same timeline set forth above.

Moreover, to the extent that the Court were to choose not to impose a default or adverse inference, in order to assuage any concerns that Credit One might benefit from extending discovery as set forth above, during the pendency of this Adversary Proceeding, Credit One would take the following steps:

- Immediately commence the process of (A) determining those Credit One accounts for which (1) Credit One has received notice of a chapter 7 bankruptcy discharge and (2) Credit One has previously furnished information to one or more credit reporting agencies regarding the account at issue; and (B) furnishing coding in the current status field of identified accounts' tradelines with those credit reporting agencies as "included in bankruptcy" and delete any negative notation in the current status field such as "charge off" or "past due" or "paid in settlement" or any other negative notation suggesting that the discharged debt at issue remains due and owing.[5]

- Take steps to ensure that Credit One's reports are updated to reflect any future discharges in bankruptcy, including as to accounts that are sold.[6]

As set forth in more detail herein, Credit One respectfully submits that these remedies, as embodied more fully in the attached proposed order, will provide Plaintiff, as well as the

---

[5] This is the same general approach outlined in the GE Consent Order. See In re Belton, Adv. Proc. No. 14-08233 (RDD), Dkt. No. 98, filed on December 15, 2014. The credit reporting agencies may have further defined the process of remediating the tradelines and, therefore, how this remediation is achieved may differ from what is proposed here, but the end result will be the same.

[6] With respect to future discharges, Credit One understands that the three major credit reporting agencies have now changed procedures for tradelines for debt sold prior to the bankruptcy and that the tradeline of the seller is now notated as "included in bankruptcy." However, to the extent that Credit One determines that the reporting agency's policy changes are insufficient to ensure that the bankruptcy discharge is reflected, Credit One will, to the fullest extent practicable, take appropriate steps to reflect such changes.

uncertified class, with the discovery they seek without prejudice and will allow the parties to move forward without delay and, in accordance with the strong preference articulated by the Second Circuit, will allow this proceeding to be decided on the merits.

## BACKGROUND[7]

Plaintiff in this adversary proceeding served his requests for production on July 28, 2015. The requests for production contained requests for Credit One's policies concerning the issues raised in this case (e.g., Dkt. No. 81-13, Requests 1, 6 and 7), as well as requests concerning data relating to the individual members of the putative class (e.g., Dkt. No. 81-13, Requests 11, 15, 22, 23 and 24). Credit One served its Responses and Objections on August 31, 2015, raising general and specific objections, including objections that the requests were unduly burdensome. (See Dkt. No. 78-16). Credit One also objected to the extent the requests sought documents that were not within Credit One's possession, custody or control. On the same date, Credit One produced 1,784 pages of documents to Plaintiff, as later supplemented by an additional approximately 419 pages, which included requested policy manuals and sales contracts.[8]

The parties met and conferred to discuss the responses and objections on September 23, 2015. In that discussion and in the correspondence that immediately followed, Plaintiff's counsel asserted that they needed an immediate answer to the question of whether the Sherman Entities' documents were within Credit One's possession, custody or control in order to determine whether to serve such entities with subpoenas. (See Dkt. No. 41-3). Credit One responded that such documents were not within Credit One's possession, custody or control. (See Dkt. No. 41-4). Plaintiff thereafter issued three subpoenas requesting the same documents

---

[7] Mr. Bouc and White & Case are still in the process of reviewing the record and other relevant materials. This background section reflects our current understanding of what has transpired with respect to discovery in this proceeding.

[8] Credit One's production is described more fully in its Opposition (Dkt. No. 85) at 46.

to the Sherman Entities in October 2015, and Plaintiff issued an additional four subpoenas to such entities in February 2016.   Credit One understands that, in compliance with the subpoenas, the Sherman Entities produced documents and witnesses for depositions, and that the Plaintiff never complained to the Sherman Entities that they had not fully complied with the subpoenas.

Additionally, in the September-October 2015 meet-and-confer and correspondence, the Plaintiff did not propose, and the parties did not agree to, protocols for searching emails or other electronic databases (e.g., search terms or custodians).   At a December 2015 discovery conference, the Court admonished Credit One's counsel that Credit One could not limit the scope of its search based on his view of the merits.  (Dec. 9, 2015 Hr'g Tr. at 17:1-5).   The Court also directed Credit One to provide a certification to address its document production.[9]   In response, on January 18, 2016, Credit One provided the first certification, attached to the Motion as Exhibit K.   That certification stated that, to the affiant's knowledge, all responsive documents located had been produced and that the affiant was unaware of any additional responsive documents.  (Dkt. No. 78-12 at 3).   At the February 22, 2016 hearing, the Court ordered Credit One to provide a supplemental certification and do a "better job" explaining the search for documents.[10]   In response, on March 22, 2016, Credit One submitted the second certification, attached to the Motion as Exhibit M.   Although the second certification was more detailed than the first, as Plaintiff points out in the Motion, the second certification contained "no search terms, no topics, no parameters at all" with respect to the searches described.[11]

---

[9] "THE COURT:  I want it under oath that I have diligently pursued with my client and they are prepared and they will state under oath they have no responsive documents.  MR. SLODOV: You want me to sign a declaration -- THE COURT: No, no, no. I want you to go get that from them." (Id. at 14: 8-13).

[10] "Credit One does need to do a better job of explaining what it did to instruct those working for it to locate the responsive documents beyond the verification from Ms. Lanham."  (Feb 22. Hr. tr. at 19:3-5).

[11] Plaintiff proceeded to depositions, however, without inquiring at the time what search terms or parameters Credit One used, and Plaintiff has never proposed its own set of search terms that it believes would be adequate to locate responsive emails and other ESI.

Plaintiff filed this Motion on August 8, 2016. The Motion seeks sanctions pursuant to Rule 37(b), but it does not request a default judgment. Plaintiff's allegations in the Motion regarding Credit One's alleged production failures fall into the following three categories: <u>First</u>, and as the focus of the Motion, Plaintiff alleged that Credit One failed to produce documents from the Sherman Entities that were requested in the seven separate subpoenas discussed above. (Pl. Br. 2-9). <u>Second</u>, Plaintiff alleged that Credit One failed to produce, or timely produce, certain enumerated documents. (Pl. Br. 13, 17). <u>Third</u>, Plaintiff alleged that Credit One failed to run adequate electronic searches over all identified document repositories in order to provide documents responsive to Plaintiff's discovery requests generally. (Pl. Br. 10).

## ARGUMENT

### I.    General Purposes of Discovery Sanctions

There are three primary purposes of Rule 37 sanctions: (1) obtaining compliance with the Court's orders; (2) ensuring that the disobedient party does not benefit from non-compliance; and (3) providing a general deterrent in the particular case and litigation in general. <u>See</u> <u>Nieves</u> v. <u>City of N.Y.</u>, 208 F.R.D. 531, 535 (S.D.N.Y. 2002) (citing <u>National Hockey League</u> v. <u>Metro. Hockey Club, Inc.</u>, 427 U.S. 639, 643 (1976)).

"Rule 37 permits the imposition of 'just' sanctions," and thus "the severity of sanctions must be commensurate with the non-compliance." <u>Shcherbakovskiy</u> v. <u>Da Capo Al Fine, Ltd.</u>, 490 F. 3d 130, 140 (2d Cir. 007), <u>aff'd</u>, <u>sub nom</u>. <u>Shcherbakovskiy v. Seitz</u>, 450 Fed. Appx. 87 (U.S. App. 2011). As a general matter, "a court should impose the least harsh sanction that can provide an adequate remedy." <u>Hawley</u> v. <u>Mphasis Corp.</u>, 302 F.R.D. 37, 46 (S.D.N.Y. 2014) (internal quotation marks omitted); <u>see also</u> <u>Reg. Fundamentals Grp.</u> v. <u>Governance Risk Mgmt. Compliance</u>, 2014 U.S. Dist. LEXIS 107616, *15 (S.D.N.Y. Aug. 5, 2014) (same).

## II.   A Default Judgment Is Not Warranted

With respect to the first potential sanction identified by the Court, the Court should not enter a default judgment for at least three reasons.   First, a default judgment would be disproportionately severe relative to the conduct at issue.   Second, Credit One has not knowingly violated any explicit "order" within the meaning of Rule 37(b).   Third, a default judgment here, where no class has been certified, could unnecessarily raise jurisdictional and procedural concerns concerning the applicability of the judgment to the putative class members and not serve the fundamental purposes of a Rule 37 sanction.

### A.   A Default Judgment Would Be Excessively Severe

A default judgment should not be entered here because such a sanction would be disproportionate and unnecessarily severe, even given the conduct here.   A case dispositive sanction should "only be utilized in circumstances in which it is clear that lesser sanctions would not be sufficient" to address prejudice suffered or deter future misconduct.   Ocello v. White Marine, Inc., 347 Fed. Appx. 639 (2d Cir. 2009), appeal denied, 2012 U.S. Dist. LEXIS 4546 (E.D.N.Y. Sept. 28, 2012) (reversing dismissal of cross-claims); see also Hamilton v. City of Peekskill Police Dep't, 2015 U.S. Dist. LEXIS 101903, *14 (S.D.N.Y. Aug. 3, 2015) (denying motion for a severe sanction where a trial was not imminent, such that lesser sanctions including defendant's offer of deposition and to pay other party's costs would cure any potential prejudice).   Before granting a case-dispositive sanction, courts should consider "the strong policy in this Circuit of resolving disputes on the merits."   See Henry v. Miller 2016 U.S. Dist. LEXIS 115974, at *13 (S.D.N.Y. Aug. 26, 2016) (quoting Am. Alliance Ins. Co. v. Eagle Ins. Co., 92 F.3d 57, 61 (2d Cir. 1996)).   Indeed, the Second Circuit has explained that:

> The grant of judgment as a sanction is a harsh remedy to be utilized only in extreme situations…. Otherwise, litigated disputes should be resolved on the merits. A default may be appropriate where (1) the party has demonstrated

8

willfulness, bad faith or fault, (2) less drastic sanctions will not work, **and** (3) the party has been warned of the risk of dismissal for failure to comply with court orders.

Negron v. Woodhull Hosp., 173 Fed. Appx. 77, 78 (2d Cir. 2006) (emphasis added) (internal citations and quotations marks omitted).

Here, Plaintiff has never sought a default judgment as a sanction, and, as we understand it, the first time default judgment was raised as a potential sanction was at the September 22 hearing.  Given those facts, entry of a default judgment would be excessively severe.  See id.; see also Henry v. Miller 2016 U.S. Dist. LEXIS 115974 (S.D.N.Y. Aug. 26, 2016) ("I am not aware of any case in which a case dispositive sanction was the initial sanction imposed.")

Moreover, a default judgment is not necessary to achieve any non-punitive goal.  Credit One will not only provide all the discovery being sought on an expedited basis, but, in lieu of the sanctions contemplated, and as the Court suggested, *will take immediate steps to change the credit reporting on an interim basis*.  (Sept. 22, 2016 Hr'g Tr. at 62:11-14)  This commitment effectively amounts to a preliminary injunction in favor of the Plaintiff and the uncertified class.  Moreover, in assessing the credibility of Credit One's current commitment to participate in expedited discovery in good faith going forward, the Court should give weight to the fact that Credit One has engaged new counsel for precisely that purpose.  See Ocello v. White Marine, Inc., 347 F. App'x 639, 642 (2d Cir. 2009) (in reversing dismissal sanction, noting that "there is no evidence that appellants -- who at this point had already replaced the lawyers responsible for the discovery abuses -- would not participate in the discovery process in good faith and provide their new counsel with the information necessary in order to comply with discovery orders."); see also Young v. Premier Recovery Grp. Inc., 2016 U.S. Dist. LEXIS 2394,*4 (W.D.N.Y. Jan. 6, 2016) (where the court was aware of problems caused by previous defense counsel, a

monetary sanction was unwarranted where discovery had been served and was progressing in a

satisfactory manner with substitute counsel); see also Farmer v. Hyde Your Eyes Optical, Inc.,

2015 U.S. Dist. LEXIS 62904, *38-39 (S.D.N.Y. May 13, 2015) (granting motion for monetary

sanctions but denying motion for dismissal for noncompliance with discovery orders because

"posture of case had changed" where party had secured new representation, responded to

outstanding motions, complied with outstanding orders belatedly, and agreed to be deposed).

Moreover, in assessing the proportionality of any sanction relative to the conduct at issue,

the Court should consider that Plaintiff's principal complaint is about the non-production of the

Sherman Entities' documents, as demonstrated by the fact that the first seven pages of the

argument section of Plaintiff's Motion addressed Plaintiff's request for such documents.  (Pl. Br.

2-9).  As set forth above, Credit One objected from the outset that such documents were not

within its possession, custody or control.[12]  Plaintiff thereafter issued seven subpoenas to the

Sherman Entities seeking such documents directly from the Sherman Entities.  In response, the

Sherman Entities produced documents and made witnesses available for deposition.  Credit One

understands that Plaintiff never asserted to the Sherman Entities that they had not fully complied

with the subpoenas.  Indeed, Plaintiff's counsel expressly informed counsel for the Sherman

Entities in March 2016 that no electronic searches of the Sherman Entities' files were necessary

at that time.  To date, the Court has not ruled that the Sherman Entities' documents are within

---

[12] Although the Sherman Entities are Credit One's affiliates, Credit One does not control such entities or have the ability to force them to produce documents, much less the ability to search their email servers and other electronic databases, which are separate from Credit One's systems. [drop cases in FN] See Doe Run Peru S.R.L. v. Trafigura AG, 2011 U.S. Dist. LEXIS 154559, at *2-3 (D. Conn. Aug. 23, 2011)(rejecting assertion that a party's "ability to obtain from an affiliate some documents in the ordinary course of business" means that all requested documents are in the possession, custody or control of the party for purposes of document production (emphasis added)). Further, a party to litigation is not required to attempt to persuade a third-party to voluntarily cooperate with a document request directed to the party.  See Shcherbakovskiy v. Da Capo al Fine, 490 F.3d 130, 138 (2d Cir. 2007) ("We also think it is fairly obvious that a party also need not seek such documents from third parties if compulsory process against the third parties is available to the party seeking the documents."). Thus, this objection was asserted in good faith.

Credit One's possession, custody and control.  In any event, counsel for the Sherman Entities have assured Credit One that, to the extent Plaintiff now wishes to raise issues with respect to the Sherman Entities' production in response to the subpoenas, those entities will cooperate to ensure that Plaintiff promptly receives the documents he is seeking.

With respect to documents that are in the possession, custody or control of Credit One, as we understand, there were no randomized searches of Credit One's email servers using agreed search terms and custodians.  As we understand it, neither party proposed, and the parties did not agree to, any ESI search protocols.  It would be extremely rare, in a case of this scale, for a producing party to run unilateral email searches without a prior agreement between the parties as to search protocols. See, e.g. William A. Gross Const. Assoc., Inc. v. Am. Mfrs. Mut. Ins. Co., 256 F.R.D. 134, 136 (S.D.N.Y. 2009) ("Electronic discovery requires cooperation between opposing counsel and transparency in all aspects of preservation and production of ESI."); Stinson v. City of N.Y., No. 10 CIV. 4228 RWS, 2015 WL 4610422, at *5 (S.D.N.Y. July 18, 2015) (directing "the parties to meet and confer in order to develop a narrowly tailored search protocol for each custodian or set of custodians whose ESI is to be searched.")  Credit One should have taken a more active role in initiating communications and discussions to reach agreement on ESI protocols and to confirm that the 2,200 documents that Credit One produced represented the appropriate universe of documents responsive to Plaintiff's document requests. Indeed, as set forth above, Credit One's counsel recently sought to confer with the Plaintiff's counsel to discuss such protocols.

Under these circumstances, entry of a default judgment, in Credit One's view, would not be a proportionate remedy for Credit One's deficiencies concerning document production.

11

### B.  **Credit One Has Not Knowingly Violated A Clearly Articulated Order**

Plaintiff seeks sanctions pursuant to Fed. R. Civ. P. 37(b)(2)(A).  (Pl. Br. 22).  Under that rule, sanctions may be granted "[i]f a party…fails to obey an order to provide or permit discovery."  Sanctions under Rule 37(b) may only be imposed for non-compliance with "a clearly articulated order of the court requiring specified discovery."  Daval Steel Prod. v. M/V Fakredine, 951 F.2d 1357, 1364 (2d Cir. 1991) (emphasis added).

Here, Plaintiff contended in the Motion that Credit One violated the Court's oral directions to Credit One to provide certifications of discovery completion.  Specifically, the following colloquy occurred at the December 9, 2015 hearing:

> THE COURT:  I want it under oath that I have diligently pursued with my client and they are prepared and they will state under oath they have no responsive documents.
>
> MR. SLODOV: You want me to sign a declaration --
>
> THE COURT: No, no, no. I want you to go get that from them.

(Dec. 9, 2015 Hr'g Tr. at 14: 8-13).

 In response, on January 18, 2016, Credit One provided the first certification, attached to the Motion as Exhibit K.  That certification stated that, to the affiant's knowledge, all responsive documents located had been produced and that the affiant was unaware of any additional responsive documents.  (Dkt. No. 78-12 at 3).  At the February 22, 2016 hearing, the Court stated:

> Credit One does need to do a better job of explaining what it did to instruct those working for it to locate the responsive documents beyond the verification from Ms. Lanham.

(Feb. 22, 2016 Hr'g Tr. at 19:3-5)

In response, on March 22, 2016, Credit One submitted the second certification, attached to the Motion as Exhibit M.  Upon review of the September 22, 2016 transcript, Credit One and

undersigned counsel now recognize that the Court and the Plaintiffs understandably take issue with the second certification and the apparent failure to search Credit One's emails. Credit One acknowledges that it failed to meet the Court's reasonable expectations concerning discovery conduct or to heed the Court's warnings.

In the Motion, Plaintiff did not identify any clearly articulated prior order with respect to any of Plaintiff's specific document requests or Credit One's objections thereto, including its objections as to undue burden. Credit One is unaware of any cases in which a court entered a default judgment as a sanction without first issuing an order overruling a party's formal discovery objections and permitting time for compliance. While Credit One does not contend that parties can or should await a specific court order before complying with discovery obligations under the relevant rules, the severe sanctions contemplated here are unwarranted absent a clearly articulated prior order.

## C.    A Default Judgment At This Stage Could Unnecessarily Raise Procedural and Jurisdictional Concerns

The Court should refrain from entering a default judgment for the additional and independent reason that such a sanction could unnecessarily raise procedural and jurisdictional issues relating to the applicability of such a judgment to the as-yet-uncertified class. When the damages sought include class relief, a court's decision to enter a default judgment does not eliminate the separate and independent duty to determine that the requirements of Rule 23 are met. Telford v. Ideal Mortg. Bankers, Ltd., 2010 U.S. Dist. LEXIS 110540, *10 (E.D.N.Y. Aug. 17, 2010) ("Where class relief is sought after default 'a more fundamental problem' arises because no class was certified as required by Rule 23(c)(1)."). Actual and not just presumed compliance with Rule 23(a) is required. Gen. Tele. Co. of the S.W. v. Falcon, 457 U.S. 147, 160-61 (1982), aff'd, sub nom. Falcon v. Gen. Tel. Co., 815 F.2d 317 (5th Cir. 1987). It is well-

13

established that the party requesting class certification has the burden of showing that the prerequisites of certification within Rule 23(a) are satisfied. Id. at 155.

Accordingly, courts considering the impact a default judgment for sanctions or for non-appearance have consistently held that a default judgment may not automatically be applied to award relief to a class that has not yet been certified. Trull v. Plaza Assocs., 1998 U.S. Dist. LEXIS 14195, *3 (N.D. Ill. Sept. 1. 1998) (denying motion for class certification without prejudice) ("The few cases addressing this issue have rejected the argument that the existence of a default judgment, by itself, requires a court to certify the class."); Telford v. Ideal Mortg. Bankers, Ltd., 2010 U.S. Dist. LEXIS 110540, *10 (E.D.N.Y. Aug. 17, 2010) (holding that the court cannot permit certification by default); Melgadejo v. S&D Fruits & Vegetables Inc., 2013 U.S. Dist. LEXIS 172405, *5 (S.D.N.Y. Nov. 7, 2013) (recommending the denial of a motion for class certification after a default judgment where plaintiff did not affirmatively establish the requirements of Rule 23 in its supporting brief and affidavits).

Where a default judgment is made prior to a motion for class certification, as is the case here, the problems presented can be even more acute. In Mihelis v. Network Commer. Serv., 2014 U.S. Dist. LEXIS 141180 (E.D.N.Y. Aug. 8, 2014), the district court entered a default judgment against a defendant who failed to appear or otherwise defend the action. Id. at *1-2. The court, however, rejected the named plaintiff's argument that damages should be awarded for the class, finding that because the plaintiff's complaint merely restated the language of Rule 23(a), plaintiff had failed to provide a basis for class certification and "with no class certification… no class damages can be awarded." Id. at *11.

Here, in the first instance, a default judgment would apply only to the named Plaintiff. Even if a default judgment could ever be awarded to absent class members, the Court would still

have a duty to determine independently that the requirements of Rule 23 have been met[13] and, if

they are, to hold a trial on class damages.   In sum, entry of a default judgment might not

conclude this litigation, or even materially expedite it.   The procedural and jurisdictional issues

associated with applying a default judgment to individuals who are not currently parties to this

litigation can be avoided by entering less severe sanctions that are proportional to the conduct in

question.

### III.    An Adverse Inference Sanction Is Not Warranted

Although Plaintiff did not request a default judgment, Plaintiff did request in the Motion

that this Court "find a negative inference against Credit One that, for the purposes of illegally

collecting discharged debt, it has intentionally decided not to correct credit reports of tradelines

that originated with Credit One that have been subsequently discharged in bankruptcy."  (Pl. Br.

25).   An adverse inference should not be awarded here because such a sanction would also be

unnecessarily severe given the conduct at issue.

Courts, both those finding an adverse inference is appropriate and those finding it

inappropriate, agree that an adverse inference is "an extreme sanction and should not be imposed

lightly."  See Treppel v. Biovail Corp., 249 F.R.D. 111, 120 (S.D.N.Y. 2008) (denying motion

for adverse inference instruction); Zubulake v. UBS Warburg LLC, 220 F.R.D. 212, 219

(S.D.N.Y. 2003) ("In practice, an adverse inference instruction often ends litigation—it is too

difficult a hurdle for the spoliator to overcome") (denying motion for adverse inference

---

[13] Here, the complaint and the evidence adduced to date raise serious questions about the typicality and adequacy of representation prongs of Rule 23(a)(3) and (4). For example, the complaint seeks class relief by the disgorgement of all funds Credit One or its third-party debt purchasers have received after class members were the subject of a bankruptcy proceeding.  The named Plaintiff, however, has not made any allegations that he made any payments during or after his bankruptcy proceeding was initiated.  Indeed, the evidence suggests that Plaintiff made no such payment. Mr. Anderson readily admitted that he was never asked, directly or indirectly, to repay his former Credit One debt after he filed for bankruptcy in January of 2014 – by Credit One or anyone else – by email or otherwise. Dkt. No. 81-16, pp. 178, 182-83.  Furthermore, he knows he has no obligation to repay the Credit One debt and has no intention to do so. Id. at 33, 45-46, 91-92, 113-118.

instruction).  "In determining whether to impose severe sanctions, such as the entry of a default judgment or an adverse inference instruction, the Court must assess whether the requesting party suffered prejudice as a result of the loss or withholding of evidence." Congregation Rabbinical College of Tartikov, Inc. v. Vill. of Pomona, 138 F. Supp. 3d 352, 391, 2015 U.S. Dist. LEXIS 132714, *59-61 (S.D.N.Y. 2015) (internal citations omitted).

As an initial matter, an adverse inference under Rule 37(b) would be inappropriate for the same reasons discussed above in Section II.B.  Credit One did not violate any clearly articulated order of the Court requiring specified discovery.  More importantly, Credit One believes that alternate remedies would more appropriately address the Court's concerns.  As set forth above, Credit One is now prepared to make all relevant discovery available to Plaintiff on an expedited basis, together with the continued cooperation of the Sherman Entities, to ensure that Plaintiff receives the requested documents.  Moreover, Credit One is also prepared to institute processes to make the changes Plaintiff seeks to the credit reports as to any relevant historical accounts it can identify to reflect the bankruptcy discharge, and similarly to update accounts as requested on a going forward basis (to the extent not already updated by the credit reporting agencies), at least in the interim pending resolution of this action through judgment or a settlement.  Credit One is prepared to make the changes to the credit reports not because it admits to any wrongdoing, but to put the putative class in a better position than if the Court orders the adverse inference sanction.  Thus, an adverse inference sanction should not be entered because Plaintiff (and the putative class) will not have suffered any substantial prejudice as a result of the discovery conduct at issue.  See FDIC v. Horn, 2015 U.S. Dist. LEXIS 44226, *45-47 (E.D.N.Y. Mar. 31, 2015) (denying sanction of adverse inference where discovery failure did not result in prejudice to the plaintiff where plaintiff received some spoliated discovery from third-parties).

16

Moreover, like a default judgment, an adverse inference might not materially advance this litigation, let alone conclude it. Nor would it materially reduce the discovery that would still need to be taken in this case. Even if the Court grants the sanction, it would only apply to the named Plaintiff in the first instance. Notably, Credit One has not located any cases where an adverse inference sanction, granted before a class certification was even filed, was then applied to a class after it was certified. And, as set forth above, the sanction cannot apply for purposes of class certification itself because the court has an independent duty to conduct an analysis to determine that class certification requirements are met, even in situations where the class allegations are deemed admitted. See Telford v. Ideal Mortg. Bankers, Ltd., 2010 U.S. Dist. LEXIS 110540, *10 (E.D.N.Y. Aug. 17, 2010). Finally, even if the proposed adverse inference in favor of the named Plaintiff could ever apply to a class certified in the future, it would still not eliminate the need for much of the discovery Plaintiff is now seeking. For example, even if the Court grants the inference as to Credit One's policy, the absent Plaintiffs will still at some point need to obtain much of the discovery they have requested to show that (1) they actually belong in the class – i.e., that they actually had an account that Credit One erroneously failed to update, and (2) for purposes of the disgorgement remedy, that they paid down their discharged debt as a result of Credit One's alleged failure. (See, e.g., Dkt. No. 81-13, Requests 3, 5, 11, 13, 15, 16, 17, 18, 21, 22, 23, 24, and 25 in Plaintiff's Request for Production). Thus, granting an adverse inference would not significantly alleviate Plaintiffs' need to take discovery in this case in the event a class is ultimately certified.

Finally, if the Court is going to enter an adverse inference, it should be permissive, not mandatory. A "mandatory" adverse inference, involving an instruction to the jury that it should draw an adverse inference based on the conduct at issue, is "ordinarily not appropriate unless the

17

court determines that the offending party acted in bad faith or at least with gross negligence, and even if the court finds such gross negligence, the instruction should not be given without weighing all pertinent factors, including the degree of prejudice to the discovering party." Klipsch Group, Inc. v. Big Box Store Ltd., 2014 U.S. Dist. LEXIS 31509, at *10 (S.D.N.Y. 2014) (citing Chen v. Port Auth. of N.Y. & N.J., 685 F.3d 135, 162 (2d Cir. 2012). In contrast, a permissive adverse instruction "permits (but does not require) a jury to presume that the lost evidence is both relevant and favorable to the innocent party." Pension Comm. of the Univ. of Montreal Pension Plan v. Bank of Am. Sec., 685 F. Supp. 2d 456, 470 (S.D.N.Y. 2010), amended by 2010 U.S. Dist. LEXIS 4546. This type of permissive adverse inference will still benefit the non-sanctioned party "in that it allows the jury to consider both the misconduct of the spoliating party as well as proof of prejudice" to the non-sanctioned party. Id.

Here, Credit One has hired new counsel specifically to take all appropriate steps to ensure that all responsive documents are produced on an expedited basis. Accordingly, Plaintiff will ultimately receive the discovery to which it is entitled, and, in lieu of an adverse inference sanction, Credit One is prepared to institute processes to make the changes Plaintiff seeks to the credit reports. Because Plaintiff will therefore not have suffered any substantial prejudice, a "mandatory" adverse inference is unwarranted. See Klipsch Group, 2014 U.S. Dist. LEXIS 31509, at *10.

## **CONCLUSION**

For the reasons stated herein, Credit One respectfully requests that the Court decline to grant a sanction of default judgment or adverse inference, and instead grant the relief proposed by Credit One herein and in the Proposed Order submitted herewith.

18

Date:  October 16, 2016

Respectfully submitted,

/s/ *J. Christopher Shore*
J. Christopher Shore
Andrew E. Tomback
Colin T. West
WHITE & CASE LLP
1155 Avenue of the Americas
New York, NY 10036
Phone: 212.819.8200
Fax: 212.354.8113
Email: cshore@whitecase.com
Email: atomback@whitecase.com
Email: cwest@whitecase.com

*Counsel to Credit One Bank, N.A.*

## CERTIFICATE OF SERVICE

I certify that on October 16, 2016, I caused the foregoing document(s) (<u>Credit One Bank, N.A.'s post-hearing brief</u>) to be filed electronically with the Clerk of the Court using the CM/ECF System. Notice of this filing will be sent to the parties of record by operation of the Court's electronic filing system, including plaintiff's counsel as described below.  Parties may access this filing through the Court's system.

Charles W. Juntikka
Charles Juntikka & Assoc., LLP
30 Vesey Street, Suite 100
New York, New York 10007

George F. Carpinello
Adam R. Shaw
Boies, Schiller & Flexner LLP
30 South Pearl Street
Albany, NY 12207

Date: October 16, 2016

/s/ *Colin T. West*