

June 15, 2022

**VIA ECF AND EMAIL**
Hon. Robert D. Drain
United States Bankruptcy Court
Southern District of New York
300 Quarropas Street
White Plains, NY 10601-4140
judge_drain@nysb.uscourts.gov

      Re:    *Anderson v. Credit One Bank, N.A., et al.*
              Adv. Proc. No. 15-08214 (RDD); 14-bk-22147

Dear Judge Drain:

      We write in response to Defendants' counsel's letter of June 14, 2022 with regard to the proposed order and notice in the above-entitled matter:

      Defendants object to this order in several respects. We respond to those objections as follows:

      *First*, Defendants object that we submitted a proposed order and notice without first having a hearing. Whether or not a hearing should take place is obviously at the discretion of the Court. We have no objections to a conference or a hearing to address both the notice and the order.

      *Second*, Defendants object that the proposed order references tradelines that not only refer to a "charge-off" or "$0 balance" but also "or other similar derogatory information." As we previously explained to the Court, the reason for this additional information is that not all derogatory tradelines use the terms "charge-off" or "$0 balance" but also terms such as "past due." When other derogatory terms are used, instead of "included in bankruptcy," we believe Defendants have violated Section 524. Defendants complain that this term introduces "ambiguity" but Defendants know what terms they used. They are the ones that submitted information to the credit reporting agencies in connection with every tradeline. Theoretically, Defendants could report to the Court every term they used in connection with the controverted tradelines and the terms could be listed in the order, but that obviously makes no sense. Any term that suggests the amount is still due and owing rather than "included in bankruptcy," is clearly derogatory.



*Third*, Defendants insists that the order should specifically reference the persons whose debts were $99 or less; we did not include this group in the class definition because if, in fact, Credit One deleted those tradelines, they would not be in the class as defined. Further it is possible that some individuals whose debts were $99 or less may or may not have had their tradelines deleted. Nonetheless, we have no objection to specifically excluding those whose balance were $99 or less and whose tradelines "were deleted by Credit One promptly as they filed for bankruptcy" as provided in your decision.

*Finally*, Defendants apparently contend that the class cannot be ascertained until there is extensive discovery of credit reporting agencies to determine which credit reports of the 288,000 class members were distributed to a third party by the credit reporting agencies. This makes no sense for several reasons. First, the Defendants already identified the debtors with offending tradelines when they entered into the Agreed Order in this case. They had to identify the offending tradelines in order to delete them. Those same tradelines are consonant with the class definition. Second, we believe that the Defendants' contention misconstrues the definition of the class. When we initially defined the class to include individuals who "have had a consumer credit-report relating to them prepared by any of the credit-reporting agencies," we were not referring to credit reports being delivered to third parties doing credit checks. If we had intended that, we would have so stated. Rather, the definition refers to reports of tradelines in the credit reporting agencies' records. This Court expressly so held when it stated that the class can be ascertained "'from Credit One's own tradeline records, [and] the three main credit reporting agencies' credit reports on the people that appear on Credit One's tradeline records….Credit One was able to use such criteria to 'scrub' the applicable tradelines as required by the parties' Stipulation and Order.'" 2022 WL 1926608 at *38. Credit One may argue, however, that if no reports were sent to third parties, those individuals would not have suffered harm. With regard to that argument, we believe that it is foreclosed by the default judgment herein in which this Court already found that each member of the class had been harmed:

> The congressionally proscribed harm is the act to pressure debtors to pay, not causing them to pay, and it is unavailing in this context that there may be no real difference between an accurate and an inaccurate report's effect on one's credit score.

2022 WL 1926608 at *31.

Nowhere in the Court's decision is it contemplated that the class would be defined by a whole new round of discovery of credit reporting agencies to determine which reports were actually provided to third parties. Statistically of course, it is virtually impossible that any of the derogatory tradelines would not have been reported over a



seven year history to some third party.  In any event, that fact has been determined against Credit One.

 

Respectfully Submitted

/s/ *George F. Carpinello*
George F. Carpinello

cc via ECF:  Counsel of Record