**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------X
In re:

                                                    Chapter 7

    Orrin S. Anderson, aka Orinn Anderson,
    aka Orinn Scott Anderson

                                                    Case No. 14-22147 (rdd)

             Debtor.

--------------------------------------------------X
In re:

                                                    Adv. Case No. 15-08214 (rdd)
    Orrin S. Anderson, aka Orinn Anderson,    Hon. Robert D. Drain
    aka Orinn Scott Anderson,

    Debtor and Plaintiff, on behalf of himself
    and all others similarly situated,

v.

CREDIT ONE BANK, N.A.

        Defendant.

--------------------------------------------------X

**MOTION TO INTERVENE FOR LIMITED PURPOSE AND**
**MOTION FOR LEAVE TO**
**SUBMIT EVIDENCE FOR IN CAMERA INSPECTION ONLY OR IN THE**
**ALTERNATIVE, FOR LEAVE TO FILE UNDER SEAL**

Michael D. Slodov (Intervenor), formerly of the law firm of Sessions, Fishman,

Nathan and Israel, LLC (now known as Sessions, Israel and Shartle, LLC), and

formerly one of the attorneys for Credit One in this matter, hereby moves this

honorable court upon the memorandum of law and supporting declaration of the

undersigned, pursuant to Fed.R.Bankr.P. 7024 to intervene in the above captioned

action for the limited purposes of: (a) submitting evidence relating to apportionment

1

of monetary sanctions to be awarded in connection with Plaintiff's motion to compel

discovery and for sanctions (Doc. No. 176); (b) to demonstrate that the undersigned

did not advise Credit One to take any of the actions resulting in sanctions; and (c) it

would be unjust to award sanctions against the undersigned personally and in that

regard, and  that the court take into consideration the undersigned's ability to pay.

Fed.R.Civ.P. 37(b)(2)(C).

In addition, the undersigned moves this honorable court for leave to submit

the attached declaration for in camera inspection by the Court only, or alternatively,

for leave that the same be filed under seal, pursuant to Rule 9018 of the Federal Rules

of Bankruptcy Procedure Doc. No. 30. Good cause exists for this application.

Paragraphs 2 and 5 of the Stipulated Protective Order entered in this case on June

17, 2015 (Dkt. # 30) provide that any materials to be filed with the Court that includes

"Confidential Information" shall be filed under Seal. The aforementioned declaration

has been marked Confidential.

Date: June 21, 2022

Respectfully submitted,


/s/ Michael D. Slodov
Michael D. Slodov, Esq.
Javitch Block LLC
1100 Superior Ave., 19th Floor
Cleveland, Ohio 44114
(direct)440-318-1073
mdslodov@pm.me

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------X
In re:

                                           Chapter 7

    Orrin S. Anderson, aka Orinn Anderson,
    aka Orinn Scott Anderson

                                  Case No. 14-22147 (rdd)

                 Debtor.

--------------------------------------------------X
In re:

                               Adv. Case No. 15-08214 (rdd)

    Orrin S. Anderson, aka Orinn Anderson,       Hon. Robert D. Drain
    aka Orinn Scott Anderson,

    Debtor and Plaintiff, on behalf of himself
    and all others similarly situated,

v.

CREDIT ONE BANK, N.A.

                 Defendant.

--------------------------------------------------X

## MEMORANDUM IN SUPPORT OF
## MOTION TO INTERVENE FOR LIMITED PURPOSE AND
## MOTION FOR LEAVE TO
## SUBMIT EVIDENCE FOR IN CAMERA INSPECTION OR IN THE
## ALTERNATIVE, FOR LEAVE TO FILE UNDER SEAL

The undersigned, Michael D. Slodov, seeks to intervene in this matter under

Rule 7024, which adopts Rule 24 of the Rules of Civil Procedure in adversary

proceedings, for the limited purposes of submitting evidence so as to permit the court

to address and resolve the dispute between Credit One, Credit One's prior law firm

and the undersigned regarding the proper apportionment of the reasonable attorney's

3

fees monetary sanctions to be awarded in connection with Plaintiff's motion to compel discovery and for sanctions (Doc. No. 176). The undersigned also requests an opportunity to demonstrate that he did not advise Credit One to engage in the conduct at issue, that the undersigned acted in good faith in an effort to comply with the court's orders, and that it would be unjust to award sanctions against the undersigned personally and in that regard, that the court take into consideration the undersigned's ability to pay.

In addition, the undersigned moves this honorable court for leave to submit the attached declaration for in camera inspection by the Court only, or alternatively, for leave that the same be filed under seal, pursuant to Rule 9018 of the Federal Rules of Bankruptcy Procedure Doc. No. 30. Good cause exists for this application. Paragraphs 2 and 5 of the Stipulated Protective Order entered in this case on June 17, 2015 (Dkt. # 30) provide that any materials to be filed with the Court that includes "Confidential Information" shall be filed under Seal. The aforementioned declaration has been marked Confidential.

### 1.  <u>Background Facts</u>

By way of background, the undersigned <u>was</u> <u>*an associate*</u> in the law firm of Sessions, Fishman, Nathan & Israel, LLC (now known as Sessions, Israel and Shartle, LLC)(hereinafter Sessions) from April 2012 to November 2017. After leaving Sessions, the undersigned was unemployed for a time, worked as a sole practitioner and then joined Javitch Block LLC as an associate in November, 2018. I have not

participated in any proceedings in the US Bankruptcy Court for the Southern District of New York since withdrawing from this case in 2016.

The undersigned was directed by the managing partners at Sessions to defend Credit One in this adversary proceeding from its inception in early 2015 through early October, 2016, when the undersigned was authorized to and filed a motion to substitute and motion to withdraw as counsel. Adv. Doc. No. 90, 95.

Throughout that time, the undersigned worked under the supervision and direction of partners in charge of litigation, James Schultz, David Israel and Bryan Shartle. On several occasions during that time, the undersigned expressed growing concern about the risk of sanctions, including the risk of being jailed for contempt, and recommended my supervisor consider withdrawing from the representation on several occasions.

Because the undersigned withdrew from this case after the September 22, 2016 hearing, has no ongoing relationship with Credit One nor Sessions, has no relationship with Credit One and none with Sessions, I have been constrained by privilege not to respond and the Court has not provided the undersigned an opportunity to make out a defense against the Court's repeated lament about my handling of this case.

Giving due regard to the fact that such communications are protected by attorney client or work product privilege, but may be disclosed where reasonably necessary "to defend the lawyer … against an accusation of wrongful conduct," NY RPC Rule 1.6(b)(5)(i), and then, only after first attempting to obviate the need for

disclosure and then taking steps to guard against unnecessary disclosure, I first notified Credit One's counsel and Sessions that I disagreed with the Court's allocation of "equal" joint and several culpability for the misconduct of Credit One, of my intention to ask the court to intercede and resolve this dispute before filing this motion, including sending a sampling of the email communications related to my defense, to no avail. NY RPC Rule 1.6 cmt. 10,[1] 14[2].

Counsel for Credit One and Sessions apparently maintain or allege the wrongful conduct identified in the Court's June 3 memorandum decision is attributed to me alone; I strongly disagree with that characterization, or that I advised Credit One to engage in any wrongful conduct or knowingly lied to the Court, and the undersigned reasonably believes this course of action is necessary to defend myself.

---

[1] "Where a claim or charge alleges misconduct of the lawyer related to the representation of a current or former client, the lawyer may respond to the extent the lawyer reasonably believes necessary to establish a defense. Such a claim can arise in a civil, criminal, disciplinary or other proceeding and can be based on a wrong allegedly committed by the lawyer against the client or on a wrong alleged by a third person…."

[2] "Paragraph (b) permits disclosure only to the extent the lawyer reasonably believes the disclosure is necessary to accomplish one of the purposes specified in paragraphs (b)(1) through (b)(6). Before making a disclosure, the lawyer should, where practicable, first seek to persuade the client to take suitable action to obviate the need for disclosure. In any case, a disclosure adverse to the client's interest should be no greater than the lawyer reasonably believes necessary to accomplish the purpose, particularly when accusations of wrongdoing in the representation of a client have been made by a third party rather than by the client. If the disclosure will be made in connection with an adjudicative proceeding, the disclosure should be made in a manner that limits access to the information to the tribunal or other persons having a need to know the information, and appropriate protective orders or other arrangements should be sought by the lawyer to the fullest extent practicable."

I do not dispute that through the lens of hindsight, the positions I took and statements I made on Credit One's behalf during this litigation turned out to be false. I did zealously defend Credit One advancing some positions I knew the Court would reject, but I did not ever advise Credit One to withhold documents, nor did I knowingly make any statement that I believed to be false at the time, I proceeded in good faith in attempting to conform my conduct to the court's directives and if I did make any statement that the court believes was knowingly false, it was not owing to any bad faith or willfulness on my part.

Due to the nature of the evidence I have, I request that the materials I wish the Court consider either be produced for in camera inspection only, or filed under seal. RPC Rule 1.6 cmt. 14.  I intend to submit email communications relevant to the issues of apportionment, good or bad faith, fault, and relating to the characterization that I made numerous misrepresentations to the court knowing they were false. I am prepared to address any other specific issues the Court directs me to address I writing.

## 2. <u>Apportionment of Reasonable Attorney's Fees between Credit One and "counsel"</u>

This Court's memorandum decision signaled the Court's intent to enter "[a]n award of Plaintiff's reasonable attorneys fees and expenses related to enforcing Credit One's discovery obligations, …[as] a proper sanction under Rule 37 itself…" and "Credit One itself, in addition to its counsel, was equally in bad faith and at fault. Not only is it a sophisticated financial institution with experience in conducting discovery, its Rule 30(b)(6) witness signed two false verifications, was unprepared

and unresponsive in her Rule 30(b)(6) deposition, and, as represented by both that witness and Mr. Slodov, Credit One's woefully inadequate response to Plaintiff's discovery requests was led by its in-house counsel.[44] [fn44 - This is no excuse, however, for the failures by its outside counsel to supervise Credit One's discovery responses and his misrepresentations to the Court.] The Court therefore apportions responsibility jointly and severally between client and counsel." Doc No. 176, p.44.

Notably, the Court's memorandum decision did not indicate whether the Court intends to impose responsibility for the sanctions on the undersigned, his prior law firm or both the undersigned and his prior law firm.

The court's decision went on to cite *Joint Stock Co. Channel One Russ. Worldwide v. Infomir LLC*, and *Merck Eprova AG v. Gnosis S.P.A* which both support the proposition that where the party and here former counsel "are unable to agree on apportionment of these sanctions, they may ask the Court to intercede." *Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, No. 16CV1318GBDBCM, 2019 WL 4727537, at *30, n. 37 (S.D.N.Y. Sept. 26, 2019); *Merck Eprova AG v. Gnosis S.P.A.*, No. 07 CIV. 5898(RJS), 2010 WL 1631519, at *6 (S.D.N.Y. Apr. 20, 2010).

A noted in Moore's Federal Practice, under Rule 37, "an attorney may only be sanctioned for *personally* violating a discovery order or <u>for advising a client to do so</u>." 7 Moore's Federal Practice - Civil § 37.23[4][a]. (emphasis added). *See also Apex Oil Co. v. Belcher Co. of New York*, 855 F.2d 1009, 1014 (2d Cir. 1988); *Markus v. Rozhkov,* 615 B.R. 679, 701 (S.D.N.Y. 2020); *Naviant Mktg. Sols., Inc. v. Larry Tucker, Inc.*, 339 F.3d 180, 185 (3d Cir. 2003). See Fed.R.Civ.P. 37(b)(2)(C):

> Instead of or in addition to the orders above, the court must order the disobedient party, *the attorney advising that party*, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

(emphasis added).

The undersigned did not personally violate any discovery orders, made diligent, good faith efforts to comply with the court's orders, and did not advise Credit One to engage in the conduct which resulted in the imposition of sanctions. If given an opportunity, the facts show these assertions to be true. See Declaration of Slodov, attached.

In addition, the facts would show apportioning any part of Plaintiff's reasonable attorney's fees caused by the failure onto the undersigned personally would be unjust under the circumstances.

Finally, because the responsibility for the conduct about which the Court has complained was undertaken while under the supervision of partners at the Sessions law firm who knew from the outset of the representation that the position they were taking in the case was an assault to the court's *In Re Torres* decision, and the facts would show the undersigned repeatedly expressed concern about the risk of sanctions, contempt, being misled by Credit One and recommended withdrawing from the representation, the law firm should be held to account for its role in the misconduct outlined in the court's decision. *See Enmon v. Prospect Capital Corp.*, 675 F.3d 138, 147 (2d Cir. 2012); *Pesaplastic, C.A. v. Cincinnati Milacron Co.,* 799 F.2d 1510, 1520 (11th Cir. 1986).

2.    <u>Grounds for Intervention</u>

Intervention under Rule 24, as made applicable to adversary proceedings by Rule 7024, provides for mandatory and permissive intervention. Intervention as of right under Fed.R.Civ.P. 24(a)(2) requires (1) a timely application, (2) asserting an interest relating to the property or transaction which is the subject of the action (3) where the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, and (4) the applicant's interest is not adequately represented by existing parties. *Sackman v. Liggett Grp., Inc.*, 167 F.R.D. 6, 20 (E.D.N.Y. 1996). Permissive intervention is warranted where the intervenor "has a claim or defense that shares with the main action a common question of law or fact," taking into consideration whether intervention would unduly delay or prejudice the adjudication. Fed.R.Civ.P. 24(b)(1)(B), (b)(3). The requirement under Rule 24(c) to include a pleading with the motion is relaxed in the context of permissive intervention, and may be satisfied where the court is adequately apprised of the grounds for the motion. 6 Moore's Federal Practice § 24.20. *See also Penn Lyon Homes, Inc. v. Liberty Mut. Ins. Co.*, No. 00-CV-01808 (RNC), 2001 WL 789200, at *1 (D. Conn. May 14, 2001); *Werbungs & Commerz Union Austalt v. Collectors' Guild, Ltd.*, 782 F. Supp. 870, 874 (S.D.N.Y. 1991); *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 872 F.3d 57, 65 (1st Cir. 2017).

A.    <u>This motion is timely</u>

The Court's memorandum decision was first issued on June 2, 2022, and this motion was filed shortly thereafter. The Court's decision contained the first indication that the court would award monetary sanctions jointly and severally against Credit One and its counsel. After the Court's memorandum decision was released on June 3, I asked both counsel for Credit One Bank, N.A., and the managing partners at Sessions, to address the apportionment of responsibility for the monetary sanctions to be awarded in this case, in light of the language on pages 44-45 and in note 48, doc. No. 176.

I specifically requested that they independently or collectively agree to hold me harmless from any sanction award imposed by this court, but to date, neither has agreed to my request.

I have also made them each aware I do not have the ability to pay a sanctions award, and that I would seek to show the Court that a monetary sanction against me would be unjust.

Plaintiff's counsel has not yet filed their motion for attorney's fees, and the court has not yet entered an order awarding fees for bringing the motion. Doc. No. 176, p. 49, n. 48.

Thus, this motion is timely and granting this motion will not result in any undue delay nor prejudice the rights of parties.

B.    <u>Intervention is sought for the limited purposes of allocating the monetary sanctions which is a common issue with the action</u>

The narrow interests the intervenor seeks to address on intervention is the proper allocation of sanctions, over which the intervenor and Credit One do not agree,

11

and which the court intends to impose for Credit One's discovery misconduct. The Court specifically noted that if Credit One and its counsel could not agree on a proper allocation of the sanctions, the court would intercede. Counsel is entitled to a meaningful opportunity to explain past conduct before sanctions are awarded, generally but not necessarily at a "show cause" hearing. 9 Norton Bankr. L. & Prac. 3d § 172:28; *Meyerhofer v. Empire Fire & Marine Ins. Co.*, 497 F.2d 1190, 1195 (2d Cir. 1974); *Schlaifer Nance & Co. v. Est. of Warhol*, 194 F.3d 323, 335 (2d Cir. 1999); *Qualcomm Inc. v. Broadcom Corp.*, No. 05CV1958-RMB (BLM), 2008 WL 638108, at *3 (S.D. Cal. Mar. 5, 2008)("The attorneys have a due process right to defend themselves under the totality of circumstances presented in this sanctions hearing where their alleged conduct regarding discovery is in conflict with that alleged by Qualcomm concerning performance of discovery responsibilities.").

While the undersigned does not dispute that statements were made regarding the production of responsive documents during the course of the litigation that turned out not to be true, the statements were made in good faith and were not made knowing they were false. Sanctions should not be imposed by hindsight. *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 948 F.2d 1338, 1344 (2d Cir. 1991); *Oliveri v. Thompson*, 803 F.2d 1265, 1275 (2d Cir. 1986).

Because of the sensitive nature of the communications at issue and the need to protect those communications, a formal application to intervene was chosen to allow the court to consider the question.

C.    <u>The intervenor's interests are not adequately protected by the parties and as a practical matter my absence would impair or impede my ability to protect that interest</u>

First, Credit One's counsel stated during a call on June 8 that it has not waived privilege and has not consented to production of any communications I had with it during my representation of the Bank. At the same time, Credit One has never produced any documentation suggesting the undersigned *directed* Credit One not to respond to discovery or was a "ring leader" in the obstructionist discovery tactics Credit One employed in these proceedings.  In order to invoke my right to self-defense and to properly address the allocation of sanctions, I am requesting that the Court to authorize me to produce the relevant communications in a manner that minimizes the risk of disclosures to third parties, by in camera inspection or under seal.

Second, Credit One was on notice that a default judgment based on discovery abuses could be entered against it since November 2016, that an opinion laying out Credit One's misconduct would be issued and only a settlement would prevent that result. Doc. No. 101, p. 6.[3] It chose not to settle.

---

[3] You may be wondering why I haven't written an opinion yet on this. It's partly because I, you know, I'd like to see the parties see if they couldn't resolve these issues, but it's also partly because I am not a big judge on -- I'm not a judge who favors sanctions, and frankly, the only time I've written an opinion sanctioning an attorney, although I didn't know this would happen to him, he eventually got disbarred for the very conduct that he engaged in. It wasn't discovery abuse. He was letting a convicted felon run the case and putting his name on the pleadings for him. But if I do write something on this, I want to be very careful on how I do it, mostly because of that issue as opposed to anything else that would create any more care than I normally do with an opinion. But I think it also may be worthwhile to see if the parties can resolve it, in which case maybe I just send something to the Bar Association as opposed to laying out all the facts elsewhere.

Third, it has been very clear that Credit One did not represent my interests regarding the allocation of sanctions from the time I withdrew from the action. In the post-hearing brief filed by successor counsel to Credit One on October 16, 2016, White and Case attorneys Christopher Shore, Andrew Tomback and Colin West, Credit One made the baseless assertion that:

> To the extent the Court had a belief that there was <u>a disconnect between counsel and the client with respect to both the substantive positions being taken in Court</u> …<u>and the handling of Credit One's discovery obligations, the Court was correct</u>.

Doc 93, p. 5 (footnote 1 omitted)(emphasis added).[4] Mr. Carpinello responded to the assertion about a claimed "disconnect" in a letter he filed with the Court on October 25, 2016, requesting limited discovery on whether there was in fact a "disconnect" between me and Credit One, where he said:

> The suggestion that Credit One was oblivious to the actions of its counsel prior to receiving the transcript of the September 22, 2016 hearing <u>is not credible</u>. Moreover, no declaration was submitted by anyone at Credit One to substantiate this unsworn assertion. We note, for example, that <u>Exhibit U, the email that Mr. Slodov handed up to the Court, in which Jon Mazzoli essentially refused to produce his emails, was copied to Scott Silver, a member of the board of Credit One Financial, Credit One Bank's parent company, Allan Shutt, the then-General Counsel of Credit One and Narine Yenovkian, the then-Associate General Counsel, and later, General Counsel of Credit One. These individuals were fully aware of the fact that Mr. Mazzoli was refusing to produce emails in response to the Trustee's request</u>. That email is attached hereto as Exhibit A. In addition, <u>it was Credit One, not Mr. Slodov that provided the two false certifications</u>. We believe <u>additional documentation will demonstrate that counsel and senior executives of Credit One were fully aware of its own counsel's conduct</u>.

---

[4] Credit One's attorneys did not disagree with the court's statements on the record on June 21, 2019, and indeed, agreed with the court. Doc. No. 168, p. 15. (the Court: "I have never had counsel lie to me as many times as Credit One's counsel did…") (Mr. West: "I'm certainly not going to contest that at all.").

Credit One's above-referenced statement to this Court constitutes a waiver of the attorney/client privilege because Credit One is seeking relief from the Court on the representation that it was unaware of actions its own attorney was taking. We therefore respectfully request that the Court order Credit One and its former counsel Michael Slodov, to produce all communications between Mr. Slodov and his firm, and Credit One concerning this litigation up to the date that Mr. Slodov withdrew as counsel in this case. **<u>We believe that this evidence will show that Credit One was fully aware of, and directed, Slodov's actions throughout the entire duration of this litigation</u>**.

Doc. No. 96 (emphasis added).

I believe the evidence I am submitting will show Mr. Carpinello was and is correct. During the November 10, 2016 hearing, the Court stated additional discovery as to what Credit One knew or when was not necessary at that time.

> 16 ......I didn't
> 17 really contemplate further oral argument, having received the
> 18 briefs which made their points, and in particular, in light of
> 19 corroboration of how I was looking at Mr. Carpinello's request
> 20 for additional discovery and the response, which corroborated
> 21 my views on it, from White & Case, which is that the issue of
> 22 what Credit One knew or didn't know or the extent of what it
> 23 didn't know about what was going on with regard to the document
> 24 response wasn't really why the point was raised in the post-
> 25 hearing briefing. So I don't think that discovery is necessary
> 1 or really warranted. I think it's kind of a blind alley.

Doc. No. 101, 11-10-16 hearing transcript, pp. 4-5. Yet, the court's June 3, 2022 corrected memorandum decision found "Credit One itself, in addition to its counsel, was equally in bad faith and at fault... [and the] Court therefore apportions responsibility jointly and severally between client and counsel." Doc. No. 176, p. 44.[5]

---

[5] Some cases suggest that in the absence of evidence on the issue of apportionment, and equal apportionment between attorney and client is permitted. Cf. *Mugavero v. Arms Acres, Inc.*, 680 F. Supp. 2d 544, 575 (S.D.N.Y. 2010) ("Given that the relative culpability of Plaintiff and her counsel in perpetrating these discovery abuses is not clear, Plaintiff and Plaintiff's counsel will be held equally liable for the attorneys' fee

This conclusion cannot be squared with the court's decision not to take into consideration any evidence. The movant's evidence, if the court will consider it, would tend to show that the undersigned was *not equally* in bad faith and at fault, but as surmised by Mr. Carpinello, the "**evidence will show that Credit One was fully aware of, and directed, Slodov's actions throughout the entire duration of this litigation**." Doc. No. 96 (emphasis added).

Fourth, while Sessions is only mentioned once in the Court's decision, the undersigned believes the evidence shows that Sessions to be at least as culpable if not entirely culpable for taking on the defense of the Anderson case to challenge the Court's *In re Torres* decision; its partners turning a blind eye to Credit One's misconduct in discovery, and not heeding the undersigned's recommendation to withdraw from the representation in March, 2016.

I reiterate, *I was an associate with the Sessions firm* and did not have authority to decide on a course or action without partner approval. I made the supervising partner aware of Credit One's misconduct in discovery in March 2016 and copied my supervisor on nearly every communication I had with Credit One. I recommended Sessions consider withdrawing from the representation <u>twice</u> before I was allowed to file the motion to withdraw.

---

award ultimately imposed"); *New York v. Grand River Enterprises Six Nations, Ltd.*, No. 14-CV-910A(F), 2021 WL 4958653, at *6 (W.D.N.Y. Oct. 26, 2021)(same). Granting the movant an opportunity to present evidence going to the relative culpability of client and counsel would serve the interests of justice and be consistent with due process.

In addition, after it became apparent that Credit One engaged in misconduct by withholding documents and the partner in charge of litigation at Sessions confirmed he knew Credit One would be sanctioned, I was assured on March 10, 2016 that the Sessions firm was "not going to have [me] pay for the sins of Credit One."

Yet, now comfortably claiming they are not at risk because their conduct was not mentioned by the court, Sessions will not agree to assume any liability for the sanctions to be awarded against "counsel."

     1.    <u>Inability to pay a monetary sanction</u>

Above and beyond all else, as to the circumstances pointing to whether an award of expenses would be unjust, the court must take into consideration my ability to pay. Fed.R.Civ.P. 37(b)(2)(C).  *See Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 179 (2d Cir. 2012); *Oliveri v. Thompson*, 803 F.2d 1265, 1281 (2d Cir.1986), cert. denied, 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987).

On this point, the undersigned currently makes approximately $█████/hr. as an associate for an Ohio law firm, is over 60 years old, and has assets that have an aggregate value of approximately $██████ See Slodov Declaration. The undersigned asks that the Court take these facts into consideration when making its award.

    **D.**    <u>**Request for permission to make in camera submission, or pursuant to the protective order under seal**</u>

As provided in the comments to RPC 1.6, because this matter is being adjudicated in the public realm, I am required to make "the disclosure … [and do so] in a manner that limits access to the information to the tribunal or other persons

having a need to know the information, and appropriate protective orders or other arrangements should be sought by the lawyer to the fullest extent practicable." RPC 1.6, cmt. 14.

As such, I request permission to submit my evidence for in camera inspection only, or in the alternative, under seal pursuant to the protective order. Good cause exists to grant this request, as the communications are otherwise protected from disclosure by attorney client privilege or work product privilege and the materials have been designated as confidential.

An unredacted copy of the declaration and its exhibits was emailed to counsel and the court at the time of filing, and only a list of the contents of the declaration attachments filed in the public record.

Date: June 21, 2022

Respectfully submitted,

/s/ Michael D. Slodov
Michael D. Slodov, Esq.
Javitch Block LLC
1100 Superior Ave., 19th Floor
Cleveland, Ohio 44114
(direct) 440-318-1073
mdslodov@pm.me

### CERTIFICATE OF SERVICE

I certify that on June 21, 2022, I caused the foregoing document(s) (MOTION TO INTERVENE FOR LIMITED PURPOSE AND MOTION FOR LEAVE TO SUBMIT EVIDENCE FOR IN CAMERA INSPECTION OR IN THE ALTERNATIVE, UNDER SEAL) to be filed electronically with the Clerk of the Court using the CM/ECF System. Notice of this filing will be sent to the parties of record by operation of the Court's electronic filing system, including plaintiff's counsel as described below.  Parties may access this filing through the Court's system.

Charles W. Juntikka
Charles Juntikka & Assoc., LLP
30 Vesey Street, Suite 100
New York, New York 10007

George F. Carpinello
Adam R. Shaw
Jeff Shelly
Boies, Schiller & Flexner LLP
30 South Pearl Street
Albany, NY 12207

Andrew Tomback
Chester R. Ostrowski
McLaughlin & Stern, LLP
260 Madison Avenue
New York, NY 10016
Email: ATomback@mclaughlinstern.com
Email: costrowski@mclaughlinstern.com

J. Christopher Shore
Colin West
White & Case LLP
1221 Avenue of the Americas
New York, NY 10020
Email: cshore@whitecase.com
Email: cwest@whitecase.com

In addition, an unredacted copy of the motion and declaration was sent by email to David Israel, Bryan Shartle and James K Schultz on June 21, 2022.

Date: June 21, 2022

/s/ Michael D. Slodov

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X
In re:

                                                    Chapter 7

    Orrin S. Anderson, aka Orinn Anderson,
    aka Orinn Scott Anderson

                                                    Case No. 14-22147 (rdd)
                              Debtor.                Hon. Robert D. Drain


-----------------------------------------------------X
In re:

                                                    Adv. Case No. 15-08214 (rdd)
    Orrin S. Anderson, aka Orinn Anderson,              Hon. Robert D. Drain
    aka Orinn Scott Anderson,

    Debtor and Plaintiff, on behalf of himself
    and all others similarly situated,

    v.

    CREDIT ONE BANK, N.A. AND
    CREDIT ONE FINANCIAL,

      Defendants.

-----------------------------------------------------X

### DECLARATION OF MICHAEL D. SLODOV

Now comes Michael D. Slodov, who declares and states as follows:

1.    I am an attorney licensed to practice law in the states of Ohio, New York and

Florida; I am also admitted to practice in numerous federal district and appellate

courts including the United States District Court for the Southern District of New

York and this Court, and am currently in good standing in all such courts.

2.    I make the statements herein based on personal knowledge and review of my

records identified herein all of which were kept in the ordinary course of business

during the course of the work I performed in connection with the above captioned

1

matter. All such records were created at or near the time of the events describing the same, by a person with knowledge. The records are offered here for the purposes of: (a) defending the undersigned against an accusation of wrongful conduct; (b) supporting the undersigned's motion to intervene for the limited purpose of permitting the court to address and resolve the dispute between Credit One Bank, N.A. (COB), COB's prior law firm in this matter Sessions, Fishman, Nathan & Israel, LLC, (now known as Sessions, Israel and Shartle, LLC)(hereinafter Sessions), and the undersigned regarding the apportionment of responsibility for reasonably attorney's fees as part of the sanction to be awarded in connection with Plaintiff's motion to compel discovery and for sanctions (Doc. No. 176); (c) to demonstrate that the undersigned did not direct or advise COB to engage in the conduct at resulting in sanctions and that it would be unjust to award sanctions against the undersigned personally and in that regard, that the court take into consideration the undersigned's ability to pay.

3.    Concurrently with the filing of the motion and this declaration I also filed a motion for leave to submit this evidence for in camera inspection by the court subject to review by counsel for COB only, or alternatively, for leave file the same under seal, or designated as confidential.

4.    The emails identified below and attached hereto, comprising 538 pages, are representative of the assertions made herein and are not a complete record of every communication sent or received. The PDF copy of the 538 pages attached to this declaration does not contain the native version of the emails with embedded

attachments, but is "flat" in that it merely depicts the attachments; the native version is 261,345 kb, while the flat file is only 4,759 kb. A copy of the native version of the PDF is available in the event the Court or counsel requires it to be sent.

### A. Status as associate in the Sessions firm

5.    Throughout the time I represented COB in this matter, I was an associate in the Sessions firm from April 2012 to November 3, 2017. I was hired in April, 2012 as "an associate in (Sessions) Commercial/Consumer Defense Litigation Section." Intervenor-MDS 0001.

6.    As noted below, my role in the Anderson v COB matter began on October 28, 2014, when Sessions assigned the file to me, and ended when COB's David Bouc █████████████████████████████████████████████████████

7.    I was authorized by Sessions to file and filed a motion to withdraw and for substitution of counsel on October 12, 2016, and the Court granted permission to withdraw/substitution of counsel on October 18, 2016.

8.    Throughout the time I represented COB in this matter, I worked under the supervision and direction of partner in charge of litigation at Sessions, James Schultz, and also at times David Israel and Bryan Shartle.

9.    When I departed the Sessions firm in November 2017, I retained an electronic copy of my Anderson case files, including electronic copies of emails sent and received related to this matter.

10.    Sessions confirmed in a recent phone conversation during the week of June 6, 2022, that it also has a complete electronic copy of my Anderson case files and emails as well.

## B. PRE-MOTION EFFORTS TO RESOLVE THIS DISPUTE AND TO AVOID THE NEED FOR DISCLOSING CONFIDENTIAL ATTORNEY-CLIENT COMMUNICATIONS

11. The documents attached to this declaration and many of the statements below concern or relate to the giving of legal advice for representation of COB in the Anderson matter, or intra-firm communications relating to that representation, and are under normal circumstances protected by attorney client privilege or work attorney work product privilege and prohibited from disclosure.

12. Because such communications are protected by attorney client or work product privilege, I understand that any disclosure of these communications is authorized in narrow circumstances, such as where reasonably necessary "to defend the lawyer … against an accusation of wrongful conduct," NY RPC Rule 1.6(b)(5)(i), and then, only after first attempting to obviate the need for disclosure and then taking steps to guard against unnecessary disclosure, NY RPC Rule 1.6 cmt. 10, 14.  I construe the Court's memorandum decision (doc No. 176) as an accusation of wrongful conduct against me personally and have attempted to carefully limit the scope of information disclosed herein to the conduct which the Court characterized as wrongful.

13. I took the following steps to avoid the need to make this disclosure before filing this declaration.

14. I first requested permission to submit a declaration to the Court on October 17, 2016 by email to Mr. Israel, Shartle and Schultz, where I stated "Let me know if I can submit a declaration for filing in the case under Rule 1.6(b)(5), concerning

my communications with Credit One to counter the assertions of misconduct on my/the firm's part." MDS 0516.

15. I did not receive authorization from the firm to do so but the Sessions firm did authorize me to retain Ronald Minkoff at Frankfurt, Kurnit, Klein & Selz on October 20, 2016 to secure the advice of ethics counsel.

16. I took no action relative to the Anderson case after I departed the Sessions firm in 2017 out of deference to Mr. Minkoff's advice and the possibility that COB would choose to settle the litigation as nearly all other national banks have done.

17. After the Court's memorandum decision was released, on June 3, 2022, I sent an email to Bryan Shartle, David Israel and James Schultz, that requested the firm advise whether the Sessions firm would retain ethics counsel for me, as I had arranged to secure ethics counsel (Ronald Minkoff) for the firm and me before I departed; that Sessions advise if it will be assuming liability for any fee awarded jointly and severally against counsel for COB and agree to indemnify me or hold me harmless if the award were entered against me personally; whether Sessions would retain counsel for me once a final order was entered to allow for protecting my interests including prosecuting an appeal, and whether Sessions put its carrier on notice of the potential for a malpractice claim.

18. Later that day I sent Mr. Israel and Mr. Shartle relevant emails from my Anderson file.

19. I spoke with Mr. Shartle and Mr. Israel by phone on June 6. No resolution of any of the issues I identified occurred during that call. I did receive confirmation

that Sessions did put its carrier on notice of a claim for malpractice and that its

coverage generally does not cover sanctions awards. I was told Sessions had a

continuing business relationship with COB and they requested I take baby steps

with regard to the remaining issues.

20. I sent an email to current counsel for COB on June 6 regarding the court's

decision, requesting an opportunity to discuss the apportionment of responsibility

for the fees to be awarded as a sanction.

21. When no one from COB responded and after I read an article about the Court's

decision in Law360 the morning of June 7, 2022 which I felt damaged my

reputation, I sent a follow up email to COB's current attorneys of record on June

7, and sent a connected copy to Sessions advising that I intended to make this

disclosure and ask the court to address the apportionment issue unless COB

agreed to indemnify me and hold me harmless from any monetary sanction

awarded by the court, because I reasonably believe that the communications

outlined herein demonstrate that it would be inequitable and unjust to impose

joint and several liability on me for the misconduct of COB addressed in the

Court's opinion. MDS-0526-MDS-0528.

22. I had another call with Sessions on June 7, and a subsequent call with Andy

Tomback and Colin West on June 8, and then sent them a draft letter to the court

with approximately 40 relevant emails from my Anderson files that I proposed to

send to the court to illustrate the facts I believe were relevant to the

apportionment issue, and another draft of the letter on June 9 including a draft

privilege log. I was told during that call that Credit One did not and was not waiving attorney client privilege.

23. My draft letter included a representation that my current rate of pay is approximately ███████ per hour relative to whether I have the means to pay a monetary sanction award in this case. A copy of my most recent pay stub corroborating my rate of pay is attached. MDS-0532.

24. I told both Sessions and COB's counsel I disagreed with the Court's allocation of "equal" fault and joint and several culpability for the misconduct of COB, asserted that Sessions and not me should bear the weight of any sanction imposed on counsel and of my intention to ask the court to intercede and resolve this dispute before filing this declaration and motion in the event the parties could not agree.

25. I reminded Sessions that after I recommended the firm consider withdrawing from the representation of COB in the Anderson case in March, 2016, that I was told that the firm was not going to "pay for the sins of Credit One." See Intervenor 0297, and below.

26. On June 7, Mr. Israel offered to pay for counsel on my behalf up to $25,000, split 505/50 with me. I responded on June 8 that I'd be willing to agree if they agreed to pay up to 100% of $50,000, and on June 9, 2022, Mr. Israel and Mr. Schultz agreed to my request by phone and directed me to have the attorney send a retention letter to them. As a consequence, I reached out to and retained Catherine Foti, a partner at Morvillo Abramowitz Grand Iason & Anello PC, with

7

the understanding that Sessions was going to pay 100% of her fees up to $50,000. On June 14, Ms. Foti sent the retention letter to Sessions. On June 15, Ms. Foti was informed that Sessions would not agree to sign her retention letter unless I agreed not to implicate or disparage Sessions in any communication I had with the Court about the allocation of any sanction awarded. MDS-0533.

27. As a result, on June 17, 2022 I directed Ms. Foti to terminate her work on my behalf and to send me a final bill for services rendered. Ms. Foti made one additional effort to secure an agreement from COB's counsel to hold me harmless for any monetary sanction award but I was advised that effort failed on June 20.

28. To further minimize the disclosure, at the time of filing, I included a redacted copy of this declaration in my filing, send the unredacted copy directly to the Court and counsel for COB and Plaintiff's counsel, and I requested the court allow this evidence to either be submitted for in camera review only, or submitted and filed under seal under the terms of the protective order in place in this case.

29. This motion and declaration followed.

### C. Sessions was retained to handle the Credit One Bank N.A. defense to challenge repeated claims based on *In re Torres*, billed COB over 1,000 for my time and ratified my work

30. On October 28, 2014, the Anderson matter was assigned to me for handling by James Schultz. MDS-0010.

31. The email assigning the matter to me included an earlier email chain between Randy Guthrie, another former Sessions attorney Michael Del Valle, Narine Yenovkian and Allan Shutt dated August 25, 2014, MDS-0011, that stated:

8

Good Afternoon Mike [Del Valle],



32. I received a further email of a discussion between Mr. Israel and Mr. Schultz on October 28, 2014 (MDS-0003) that Mr. Schultz explained:



33. On October 29, 2014 Mr. Schultz sent Allan Shutt and Narine Yenovkian, in house counsel at Credit One, a copy of the Court's decision in *In re Torres*, MDS-0013, and stated, "

34. On November 2, 2014, Mr. Schultz responded to an email from Mr. Israel, directed to Mr. Del Valle, Mr. Shartle, Ms. Van Hoose (also a Sessions partner) and me (MDS-0016) that read:



Mr. Schultz responded:

35. Based on records I kept contemporaneously during my work on the Anderson

matter, I spent over 1,000 hours working on COB's behalf on the Anderson matter

which were billed in the ordinary course by Sessions.

**D. Sessions partners were aware the Court threatened to impose sanctions and disregarded my recommendations to withdraw from the representation**

36. On June 15, 2015, I sent a draft email to Mr. Schultz before sending to COB,

to get his input on the communication. MDS-0045. My draft informed Mr. Schultz

that the court threatened sanctions, took issue with my citations, let Mr. Schultz

know the Court would no longer allow me to appear by phone and concluded by

noting that "I think that if we have another hearing in this case, and I have to

attend, it will not go well." MDS-0048.

10

37. On June 22, 2015 I sent a copy of the transcript of the June 15, 2015 hearing to Mr. Schultz. MDS-0049. After reading it his response he stated:

> I don't think this judge likes you. He seems pretty hostile every time you try to speak.

38. Sessions standard operating procedures required associates including me, to send the partner in charge of litigation copies of motions, memos and briefs for review before filing, as well as a review of key client communications before sending.

39. With regard to the Anderson COB matter, most of my work product that I drafted, and most of my recommendations were vetted, reviewed and edited by Mr. Schultz and on occasion, Mr. Israel, before submitting to clients or filed with the Court, or sending to COB.

40. On several later occasions during the time I worked on the Anderson matter, the undersigned expressed growing concern about the risk of sanctions to Mr. Schultz, Mr. Israel and Mr. Shartle and recommended my supervisor consider withdrawing from the representation.

   a. On November 19, 2015, I sent an email to James Schultz that stated in part "I want someone from the firm to come along [to White Plains] just in case I need to be bailed out, and we should also have a Credit One Bank representative attend." He responded, "Any chance we can work this out in advance? If this letter is accurate, we are going to get killed." MDS-0147.
   b. On December 6, 2015, I sent an email to Bryan Shartle, David Israel and James Schultz that stated in part "…since I only get one call from jail, who do I call if I get held in direct contempt of court by this judge, since I am heading off to White Plains tomorrow for a hearing and another on Wednesday afternoon." Intervenor-MDS 0155A

11

    c. On September 22, 2016, after I informed Mr. Schultz that "I had to disclose that Credit One did not search emails for responsive documents half way through the hearing. Needless to say, the judge wasn't pleased to hear it. He wants briefing on whether to enter a default judgment in two weeks." Mr. Schultz responded:  "That seems like an excessive sanction. Has the search now been done, and all responsive docs produced? At least you got away without going to jail." MDS 0470.

41.    The first occasion where I suggested Sessions consider withdrawing from the representation was on March 10, 2016, after receiving a series of 15 emails with additional documents and a copy of the COB Recovery Manual that was not previously produced on March 9, 2016. MDS-0297.

42.    I sent an email to Mr. Schultz stating:

> From: Michael D. Slodov
> Sent: Thursday, March 10, 2016 5:55 AM
> To: James K. Schultz <jschultz@sessions.legal>
> Cc: Erika L. Vap <evap@sessions.legal>
> Subject: Anderson v Credit One
>
> Jim –
>
> Among the materials Narine sent yesterday, see the materials attached [Recovery 1 Procedure (April 2012) and Recovery 1 Training Manual (current version)].
>
> Having taken the position on the record that Credit One had already produced all responsive documents, being pressed by Plaintiff's counsel daily for additional documents and a supplemental declaration, and the court asking for a step by step description of what was done to locate responsive documents, I don't see a way to get around the fact that Credit One has not been forthright as to what records it has available that it could have produced.
>
> As per my earlier email to Narine[1], **the manuals suggest a large quantity of data on all the topics of interest to Plaintiff exists that Credit One has not yet produced concerning account sales, bankruptcy charge offs, credit reporting on charged off accounts, and post-sale payment records**.

---

[1] Discussed below.

Aside from stonewalling and ending up before the Judge for another tongue lashing or worse, I wanted to know if you have any thoughts on how to approach this late production.

MDS-0298. Mr. Schultz responded:

> From: James K. Schultz
> Sent: Thursday, March 10, 2016 10:51 AM
> To: Michael D. Slodov
> Cc: Erika L. Vap
> Subject: RE: Anderson v Credit One
>
> This is, obviously, not good.
>
> The only thing we can do is produce the materials right away and explain why they were not originally identified. There is going to be, at a minimum, a second deposition, **This judge will probably also sanction Credit One.** Stonewalling is not an option.
>
> I hope that this is an oversight, and not a lack of being forthright as you suggest.
> We will need an explanation from Credit One.

MDS-0301. I responded:

> From: Michael D. Slodov
> Sent: Thursday, March 10, 2016 8:02 AM
> To: James K. Schultz
> Cc: Erika L. Vap
> Subject: RE: Anderson v Credit One
>
> Yeah, I hope to have a tentative call with Narine later today, hoping to get an explanation why this wasn't produced earlier and if there are other earlier versions of the manual that she has not yet sent.
>
> My sense is that Alan Shutt is behind all this, and that Narine inherited this matter and looked into the requests further than he did.
>
> **If I don't get a satisfactory explanation, I think this would be a good reason to withdraw, but I know that isn't an outcome you'd agree with.**

MDS-0297. Mr. Schultz responded (MDS-0297):

James K. Schultz
Sent: Thursday, March 10, 2016 11:10 AM
To: Michael D. Slodov <mslodov@sessions.legal>
Cc: Erika L. Vap <evap@sessions.legal>
Subject: RE: Anderson v Credit One

Regardless of my personal wishes on the outcome, **I am not going to have you pay for the sins of Credit One**. Obviously we like the Credit One work, but I agree we may need to withdraw if there is some type of cover up or improper withholding here. Again, I am banking on stupidity, not malice.

43.    After sending copies of the manual I received on March 9, to opposing counsel,

and after speaking with Narine Yenovkian on March 10, I reported back to Mr.

Schultz (MDS-0299):


From: James K. Schultz
Sent: Thursday, March 10, 2016 2:54 PM
To: Michael D. Slodov
Subject: RE: Anderson v Credit One

Did you talk to Narine yet?


From: Michael D. Slodov
Sent: Thursday, March 10, 2016 2:57 PM
To: James K. Schultz <jschultz@sessions.legal>
Subject: RE: Anderson v Credit One

Yes;.

44.    With the understanding that the Sessions partner in charge of litigation knew

that COB's conduct would result in sanctions for misconduct in discovery and the

assurance that I was not going to be made to "pay for the sins" of COB, I carried on

with my work in the Anderson matter.

45.    With regard to Plaintiff's motion for sanctions filed on August 8, 2016, I

provided a copy to Mr. Schultz and asked for his thoughts. He responded on August

9, 2016 (MDS-0454):

> My initial thoughts:
>
> 1. this motion simply assumes that the entities are really just one form, and
> ignores the entire concept of corporate structure;
> 2. COB should have done what we told them years ago, and simply deleted
> the trade liens when the accounts were sold;
> 3. we are going to lost [sic]- <u>the question will be how bad are the sanctions</u>.
> And I doubt we are going to get much relief from the district court.
> 4. Maybe I am missing it, but I do not really see the complaint. A main
> complaint is that COB has not produced any documents on the policy or
> procedure, or reason why trade liens are not updated. I doubt that such a
> policy, procedure or statement exists.

46.    The second time I recommended Sessions consider withdrawing from the

representation was on September 24, 2016 (MDS-0472A-0472B), where I stated:

> From: Michael D. Slodov
> Sent: Saturday, September 24, 2016 4:08 PM
> To: Israel, Dave <disrael@sessions.legal>
> Cc: James K. Schultz <jschultz@sessions.legal>; Shartle, Brya
> <bshartle@sessions.legal>
> Subject: RE: Anderson v Credit One - Hearing on motion to compel and for
> sanctions 9/22/16
>
> Dave –
>
> I am concerned that Judge Drain will issue a scathing written opinion about
> what transpired in this case, and in part, take issue with my role in this
> discovery dispute, which could, in addition to entering a default judgment or
> an adverse inference against Credit One, result in sanctions against me and
> the firm.
>
> As you have already read the prior transcripts, the judge has expressed his
> outrage with me several times, and have no doubt he will do so again when he
> issues his opinion.

There is no question that I issued two litigation holds (an initial and a revised hold, after the class action complaint was filed), and Credit One confirmed in an affidavit that it instituted a litigation hold.

To address where we got the Sherman documents and emails from, I brought a hard-copy of an email to court with me to show that we did specifically inquire of not only Credit One but also of Sherman for responsive emails, and I introduced the email at the hearing (which the Court accepted as Exhibit U, attached), and it did seem to soften the judge up a bit about my role in this failure.

I also told the judge that asking Credit One to search for emails about bankruptcy discharge credit reporting was like asking him to search for cats in the courthouse; since the Court isn't in the business of keeping cats, doing a search would be a pointless exercise.

If there was a shortcoming on my part, it was accepting Credit One and Sherman's word that they had no responsive emails or documents, and failing to inform opposing counsel earlier than I did of the omission, which I learned of in March and disclosed in September.

I have never had to school a client on its obligations to search for and produce responsive documents, and wonder whether issuing a litigation hold is enough.

I have gone back through the emails I exchanged with Narine and if there was any failing on my part, it was I did not inquire what the nature of the search was that they performed.

See email attached from Narine dated 10-1-15.[2]

I did reach out to Plaintiff's counsel to see if we could resolve the motion to compel/sanctions, but they declined, advising only they are willing to consider a class settlement, since the judge already said he is either going to issue an adverse inference or default judgment.

On class settlement, .

I think it would be appropriate for us to consider withdrawing from the representation of Credit One in this case, but defer to you all on that issue.

---

[2] Discussed below.

47.     Sessions did not authorize me to file a motion to withdraw from the case until October 12, 2016.

### E.  Directions I gave to Credit One Bank regarding preservation and production of documents, disclosures and its relationship with the Sherman family of companies

48.     As reflected in the following communications related to document production and preservation, I advised Credit One Bank to preserve its documents, to search for responsive documents and emails, not to withhold any documents, or to lie to the court about what documents it had or had not produced.

49.     In accordance with standard operating procedures at Sessions, I prepared and sent a litigation lockdown memorandum to COB at the outset of the representation. MDS0018-0020. On November 14, 2014, I sent an email and memorandum to Mr. Shutt



50.     On January 30, 2015, I made the point of telling Mr. Shutt and Ms. Yenovkian that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (MDS-0021): "▮▮▮▮▮▮▮

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████ (emphasis original).

51.    On April 22, 2015, I sent a second email and memorandum to Mr. Shutt and Ms. Yenovkian (MDS-0025-0026) directing COB to ████████████████████████

██████████████████████████████████████████

██████████████ The email stated:

    April 22, 2015 – Privileged and Confidential
    Allan –



.

52.    On May 15, 2015, I sent the following to Mr. Shutt and Ms. Yenovkian (MDS-0029-0031) that provided in pertinent part:

18

May 15, 2015 - Privileged and Confidential
Allan/Narine:





53.    Mr. Israel echoed my request in an email the same date. (MDS-0034).

54.    After Mr. Shutt left Credit One Bank, on August 22, 2015, I was asked to ███████████████████████████████████████████████████████████ ██████████████████████████████. MDS-0021.

55.    I prepared a memo and sent it to Mr. Schultz for his review and approval on August 23, 2015. MDS-0053, MDS-0055. The memo appears at MDS-0058-0064.

56.    On August 27, 2015, I drafted a proposed response to Plaintiff's first request for production of documents and sent the same to Ms. Yenovkian, who sent back requested changes to the document production response. MDS-0067.

57.    On September 14, 2015, I notified Ms. Yenovkian that ████████████ ███████████████████████████████████████████████████████████ ████████████████████████████. MDS-0075.

58.    On September 22, 2015, I sent an email to Ms. Yenovkian regarding the coercive effects test and asked her to ████████████████████████████ ██████. MDS-0081. My request stated:



59.    On September 23, 2015, I sent an email to Ms. Yenovkian explaining █████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

██████ (MDS-0083):



a. 







60.    Ms. Yenovkian responded to the foregoing request on October 1, 2015 stating

█████████████████████████████████████████████████████████████

████████████████.” MDS-0095.

61.    As instructed, I prepared a response letter and sent it to Plaintiff's counsel.

62.    Later on October 1, 2015, I was asked by Ms. Yenovkian to participate in a

conference call on October 2, 2015, with Robert DeJong, COB's president, to discuss

█████████████████████████████████. MDS-0101.

26

63.    While I invited Mr. Schultz to attend that call, he did not join the conference call. MDS-0113, 0116.

64.    Based on my recollection of that call, it was attended by Ms. Yenovkian, Mr. DeJong and me. The conversation ███████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████.

65.    On October 7, 2015, in response to Plaintiff's class settlement demand, I conveyed my recommendations to Credit One regarding a class action settlement (MDS-0120-0121), and in response, on October 8, 2015, Ms. Yenovkian stated "███████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████t." (MDS-0120).

66.    The effort to quantify the information required for a class settlement discussions was reported by Ms. Yenovkian ██████████████████████████████,

and a follow up call with Ms. Yenovkian, Mr. DeJong and the undersigned was scheduled for October 27 or 29, 2015. MDS-0129. Those discussions led to a

████████████████████████████████████████████████████████████

████████    MDS-0123.

67.    On October 26, 2015, I sent Ms. Yenovkian the U.S. Trustee's proposed supplemental 2004 application (MDS-0130-0133), and recommended the following:



Ms. Yenovkian responded " 

." (MDS-0137).

68.    On October 27, 2015, Ms. Yenovkian forwarded an email to me with copies of the subpoenas Plaintiff's counsel issued to the Sherman family of companies, which included the following email chain (MDS-0135-0136):

> **From:** Robert DeJong
> **Sent:** Tuesday, October 27, 2015 3:36 PM
> **To:** Narine Yenovkian
> **Subject:** FW: Subpoenas for SFG, SOIII, MHC and FNBM - deadline 11/7/15
>
> **From:** Silver, Scott [mailto:scott@sfg.com]
> **Sent:** Tuesday, October 27, 2015 1:45 PM
> **To:** Robert DeJong
> **Subject:** FW: Subpoenas for SFG, SOIII, MHC and FNBM - deadline 11/7/15
>
> e?
>
> **From:** Bahner, Michael
> **Sent:** Tuesday, October 20, 2015 11:28 AM
> **To:** Silver, Scott <scott@sfg.com>
> **Cc:** Picciano, Dan <dpicciano@resurgent.com>; Grant, Tim

28

<tgrant@resurgent.com>
**Subject:** FW: Subpoenas for SFG, SOIII, MHC and FNBM - deadline 11/7/15

Scott



Mike

**From:** Emmerich, Meghan
**Sent:** Tuesday, October 20, 2015 8:25 AM
**To:** Picciano, Dan
**Cc:** Bahner, Michael; Carter, James
**Subject:** Subpoenas for SFG, SOIII, MHC and FNBM

Good Morning Dan,



Let know if you need any other information.

Thank You,

*Meghan Emmerich*
*Senior Manager- Litigation*
*Corporate Legal*
*Resurgent Capital Services, LP*
*1-864-248-8392- direct*
*1-866-467-9081- e-fax*
*memmerich@resurgent.com*

69.    On October 29, 2015, I asked Ms. Yenovkian to provide me specific information relating to the structure and relationship between COB and Sherman (MDS-0142-0143):







70.    On November 12, 2015, I emailed Ms. Yenovkian with a request that she respond to the following (MDS-0145):





71.    Ms. Yenovkian responded on November 16, 2015 (MDS-0145) stating ███

██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████

███ "

72.    On November 25, 2015, I sent a follow up email to Ms. Yenovkian (MDS-0151):

**From:** Michael D. Slodov [mailto:mslodov@sessions.legal]
**Sent:** Wednesday, November 25, 2015 5:06 AM
**To:** Narine Yenovkian
**Cc:** Erika L. Vap; James K. Schultz
**Subject:** RE: Anderson v Credit One Bank - Supplemental 2004 Exam - motion to seal/unseal
November 25, 2015 – Privileged and Confidential
Narine –





.”

Ms. Yenovkian responded:

> From: Narine Yenovkian
> To: Michael D. Slodov
> Cc: Erika L. Vap; James K. Schultz
> Subject: RE: Anderson v Credit One Bank - Supplemental 2004 Exam -motion to seal/unseal
> Date: Wednesday, November 25, 2015 5:52:48 PM
> CONFIDENTIAL: Attorney-Client Privileged; Attorney Work-Product
> Hi Michael,



> Sincerely,
> Narine Yenovkian

73.    I had subsequent communications with Mr. Robbins of Blank Rome, who was representing the Sherman entities, and conveyed the outcome of the hearing on December, 7, 2015. MDS-0155. I let Mr. Robbins know that "I spoke with Mr. Zipes afterwards. I told him to expect a fight on the supplemental since we don't have Sherman's materials. He wanted to know if you were interested in working on an agreed 2004 exam as it pertains to the Sherman entities, to produce the documents. He doesn't want a fight if he can avoid it."

34

74.    Mr. Robbins sent a connected copy email to me the following day (MDS-0155A) stating "here are the third party responses and objections to Plaintiff's Document Requests. We are diligently working to get all of the documents that we will produce and are hopeful to have them to you by the start of next week. I apologize for the slight delay. As a reminder we will be producing all documents in conjunction with the Protective Order entered on June 17, 2015."

75.    On December 11, 2015 I asked Ms. Yenovkian "



?" (MDS-0156) and Ms. Yenovkian responded, "

)."

76.    I sent Plaintiff's second request for production of documents to Ms. Yenovkian on December 21, 2015, and in response, Ms. Yenovkian stated:

(MDS-0159).

77.    On December 29, 2015, I sent Ms. Yenovkian a draft verification of document production response for COB and Mr. Yenovkian responded, "

." MDS-0161.

78.    Mr. Israel requested that he be joined to the call invite. MDS-0162, MDS-0181.

79.     On December 30, 2015, Ms. Yenovkian sent an email to Mr. Bouc, Mr. Israel and me stating "███████████████████████████████████████████ ███████████████████████████████████████████ ███████." MDS-0162.

80.     In response, Ms. Yenovkian asked me if there were any additional items needing to be discussed, and I responded ███████████████████ ███████████████████████████████████████████ ███████████████████████████████████████████ ███████████████ MDS-0162-0184.

81.     I prepared a memo on the current status of the Anderson litigation and sent the same to Ms. Yenovkian, Mr. Bouc, Mr. Israel and Mr. Schultz. See 2015_12_31_Anderson v Credit One -summary of current status, MDS-0185-0207, 0208.

82.      The call with Mr. Bouc was scheduled for January 5, 2016, and attended by Mr. Israel, Ms. Yenovkian and me.

83.     To the best of my recollection, in addition to the topics identified above, I believe I told Mr. Bouc during the January 5 call that ███████████████ ███████████████████████████████████████████ ███████████████████████████████████████████ ███████████.

84.    Mr. Bouc later ██████████████████████████████████████████
███████████████████████████████████████████████████████.MDS-
0241.

85.    On February 11, 2016, I sent Mr. Bouc, Ms. Yenovkian and Mr. Schultz a copy
of Plaintiff's letter (MDS-0246) asserting that:

"██████████████████████████████████████
████████████████████

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
███████████████

████████████████████████████████████████
██████).

86.    On February 22, 2016, I sent Mr. Bouc and Ms. Yenovkian (MDS-0247)) a
summary concerning the February 22, 2016 hearing and advised: "███████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████

87.    On February 24, 2016, a copy of the transcript of the February 22, 2016 hearing
was sent to Ms. Yenovkian.

37

88.    On February 25, 2016, I followed up about the amended verification, and asked

to have a call with Ms. Yenovkian regarding "████████████████████████████████

████████████████████████████████."

89.    To the best of my recollection, I directed Ms. Yenovkian to undertake the effort

to draft the amended verification herself because she undertook or oversaw the effort

undertaken internally at COB to locate responsive documents.

90.    On March 3, 2016, I followed up with Ms. Yenovkian and asked if she had made

"████████████████████████████████████████████?" MDS-

0249.

91.    Ms. Yenovkian responded on March 3, 2016 that she was "███████████████

████████████████████████████████████████████████

████████████████████████████████████████████." MDS-

0250.

92.    On March 4, 2016, Ms. Yenovkian responded "██████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████" MDS-0255.

93.    I responded to her draft on March 4, 2016 (MDS-00252):

March 4, 2016 – Privileged and confidential
Narine –

████████████████████████████████████████████

████████████       ███████████████████████████████

████████████████████████████████████████████████



94.    I again followed up with Ms. Yenovkian on March 7, and she replied ▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

MDS-0265.

95.    On March 7, I also notified Ms. Yenovkian that ▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮d. MDS-0259.

96.    On March 9, 2016, Ms. Yenovkian sent me an email stating (MDS-0288):

Hi Michael,

97.     On March 9, Ms. Yenovkian sent me approximately 15 additional emails with

." (MDS 0273-0290).

98.     On March 10, 2016, in response to my review of the COB documents, I stated

in an email to Ms. Yenovkian and Mr. Schultz (MDS-0310):

March 10, 2016 – Privileged and Confidential
Narine –



99.     My email to Mr. Schultz on March 10 quoted above (MDS-0297),

recommending withdrawing from the representation followed.

100.    On March 10, 2016, I sent the following email to Plaintiff's counsel (MDS-

0293):

Counselors–

40

In the process of preparing the supplemental description of steps Credit One took to respond to the Plaintiff's first request for production of documents, Credit One double checked with its personnel, and I was informed late yesterday that an additional manual was identified that was not previously produced.

**My review of the manual suggested additional documents may also exist that are responsive to some of the document requests, and we are seeking further information concerning the existence and nature of the documents and data referred to in the manual.**

If additional responsive information is identified, those materials will also be produced.

Attached you will find a copy of the manual in unredacted form, which has been designated as confidential.

I also received copies of earlier versions of the other manuals previously produced, and expect to get those materials out to you tomorrow.

101.   As discussed below, some of those materials were requested but not provided by Ms. Yenovkian until October 7, 2016.

102.   On March 10, 2016, Ms. Yenovkian responded (MDS-0294) to my March 10 email as follows:

**CONFIDENTIAL: Attorney-Client Privileged; Attorney Work-Product**

Michael,





103.    On March 11, 2016, I sent the following request to Ms. Yenovkian and Mr. Bouc

(MDS-0312-0313):

**From:** Michael D. Slodov
**Sent:** Friday, March 11, 2016 7:18 AM
**To:** 'Narine Yenovkian' <Narine.Yenovkian@creditone.com>
**Cc:** David Bouc <David.Bouc@creditone.com>; James K. Schultz
<jschultz@sessions.legal>; Erika L. Vap <evap@sessions.legal>
**Subject:** RE: Anderson

March 11, 2016 – Privileged and Confidential







104.    On March 14, 2016 I sent the following to Ms. Yenovkian and Mr. Bouc (MDS-

0312):

March 14, 2016 – Privileged and Confidential
Narine –
Following up on the questions below,



a


105.   I also reviewed and revised the amended verification and sent it back on March 14, 2016.

106.   Paragraph 17 of the 6th draft edited version I sent on March 14, 2016, stated (MDS-0310): "Upon information, *Mr. Shutt* performed a search of the CAS system, the Sharepoint Workspace program, R1 systems, the email server and BOATS system to locate responsive documents." This statement was consistent with what I was told by Ms. Yenovkian on March 10.

107.   On March 21, 2016, I followed up with Ms. Yenovkian and Mr. Bouc on the three issues, including ███████████████████████ (MDS-0362), wherein I stated in pertinent part:

\* \* \*



P.

March 21, 2016 email.

108.   Ms. Yenovkian responded on March 21, ▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮ (MDS-0362).

109.   The revised draft Ms. Yenovkian sent March 18, 2016 (MDS-0335), which I

first reviewed March 21, 2016,  stated:

> **From:** Narine Yenovkian [mailto:Narine.Yenovkian@creditone.com]
> **Sent:** Friday, March 18, 2016 5:50 PM
> **To:** Michael D. Slodov <mslodov@sessions.legal>; David Bouc
> <David.Bouc@creditone.com>
> **Cc:** Erika L. Vap <evap@sessions.legal>; James K. Schultz
> <jschultz@sessions.legal>
> **Subject:** RE: Anderson v Credit One - supplemental declaration
>
> **CONFIDENTIAL: Attorney-Client Privileged; Attorney Work-Product**



110.   On March 21, at approximately 4:35 p.m., I reviewed the revised amended

verification (MDS-0325-0334).

111.   When I reviewed the document, the comment to paragraph 17 appeared as

follows:

46



112.    When I reviewed this comment, I believed the words "the email server" were

being proposed for removal, because her comment showed that she knew this

statement was false.

113.    After reviewing it, I responded as follows on March 21 (MDS-0378):

> From: Michael D. Slodov
> Sent: Monday, March 21, 2016 4:50 PM
> To: 'Narine Yenovkian' <Narine.Yenovkian@creditone.com>
> Cc: David Bouc <David.Bouc@creditone.com>; James K. Schultz <jschultz@sessions.legal>; Erika L. Vap <evap@sessions.legal>
> Subject: RE: Anderson
>
> March 21, 2016 – Privileged and confidential
>
> Narine –



114.   My expectation in making this statement was to prompt Ms. Yenovkian to think carefully about the statement and for her to understand that the complete failure to search for emails was inexcusable.

115.   I also believed that upon receiving my comment on March 21, Ms. Yenovkian would remove any mention of searching emails because that is what her comment said, and my comment to her was based on getting the declaration to accurately describe what Credit One had done to locate responsive documents, not to catalog all the ways it failed to locate, secure and provide responsive documents.

116.   Neither Mr. Schultz nor Mr. Bouc responded to my email.

117.   Ms. Yenovkian returned the signed declaration to me on March 22, 2016, at 12:16 p.m. (MDS-0378)

118.   I sent the supplemental declaration to Plaintiff's counsel on March 22, 2016 at 1:17 p.m. by email. (MDS-0377).

119.   As I explain below, I failed to confirm that Ms. Yenovkian heeded my directions, and did not re-read the final signed version before sending it to Plaintiff's counsel or before later filing it with the court.

120.   I notified Ms. Yenovkian on July 12, 2016, that ████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ██████████████████████  MDS-0440.

121.    On July 17, 2016, I notified Mr. Bouc and Ms. Yenovkian that ████████
████████████████████████████████████████████████
████████████████████████████████████████████████

MDS-0442.

122.    On July 20, 2016 I notified Mr. Bouc and Ms. Yenovkian (MDS-0445):

> **From:** Michael D. Slodov
> **Sent:** Wednesday, July 20, 2016 4:19 PM
> **To:** 'Narine Yenovkian' <Narine.Yenovkian@creditone.com>; David Bouc <David.Bouc@creditone.com>
> **Cc:** Erika L. Vap <evap@sessions.legal>
> **Subject:** RE: Anderson v Credit One
>
> July 20, 2016 – Privileged and Confidential



123.    On July 21, 2016, I sent an email to Ms. Yenovkian and Mr. Bouc (MDS-0451 TO 0453) stating:

> From: Michael D. Slodov
> Sent: Thursday, July 21, 2016 2:01 PM
> To: 'Narine Yenovkian' <Narine.Yenovkian@creditone.com>; David Bouc <David.Bouc@creditone.com>
> Cc: Erika L. Vap <evap@sessions.legal>
> Subject: Anderson v Credit One
>
> July 21, 2016 – Privileged and Confidential
>
> Narine –







124.    My statement in the email on July 21, 2016, that "The verification we provided Plaintiff is silent on whether the email server was searched," and the statement I made in court to the same effect on September 22, 2016, was based on the mistaken belief that Ms. Yenovkian had removed the "email server" reference in paragraph 17.

### F.  When I became aware of the falsity of Credit One's amended verification

125.    At the time I sent the signed amended verification on March 21 to Plaintiff's counsel and filed it with the court in July, through the hearing on September 22, 2016, I was unaware that Ms. Yenovkian had left the words "and the email server" in the final draft of the supplemental verification of paragraph 17.

126.    As noted above, the immediately prior draft ¶ 17 of the Declaration stated, "Upon information, Mr. Shutt performed a search of the CAS system, the Sharepoint Workspace program, R1 systems, the email server and BOATS system to locate responsive documents."

127.    Upon review of the Credit One edited March 18 draft, as reflected in the comments above, this was the first time I was informed that no search was performed of the email server by Credit One, other than Mr. Shutt of his own emails.

128.    Ms. Yenovkian's comments verified that Mr. Shutt had searched for emails in his own account. The comment above stated: "Michael, no official search of emails were done – no keywords to use for such a search. I believe Allan searched his own emails to find the OCC response and the goodbye letter emails, but that was about it."

129.    After the hearing on September 22, 2016, I explained to Mr. Bouc and Ms.

Yenovkian ████████████████████████████████████████████████

████████████████████ (mds-0471-0472).

**From:** Michael D. Slodov [mailto:mslodov@sessions.legal]
**Sent:** Thursday, September 22, 2016 5:32 PM
**To:** Narine Yenovkian; David Bouc
**Cc:** Erika L. Vap; James K. Schultz; Israel, Dave; Shartle, Bryan
**Subject:** Anderson v Credit One - Hearing on motion to compel and for sanctions 9/22/16
**Importance:** High

September 22, 2016 – Privileged and Confidential

Narine/David:







130.    Ms. Yenovkian responded to my email and ██████████████████████

████████████████████████████████████████████████████████████████

████████████████████ MDS-0475-0478 (email search results example).

131.    On September 30, 2016, I sent a summary of those efforts (MDS-0479) to Ms.

Yenovkian (MDS-0484) and pointed out ████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████:

**From:** Michael D. Slodov
**Sent:** Friday, September 30, 2016 7:16 AM
**To:** 'Narine Yenovkian' <Narine.Yenovkian@creditone.com>; Israel, Dave
<disrael@sessions.legal>
**Cc:** Shartle, Bryan <bshartle@sessions.legal>; James K. Schultz
<jschultz@sessions.legal>; Erika L. Vap <evap@sessions.legal>
**Subject:** RE: Anderson v Credit One - emails

September 30, 2016 – Privileged and Confidential

Narine –

1. 

132.    On October 4, 2016, Ms. Yenovkian advised (MDS-0487-0488) that:





133.    Mr. Israel responded on October 4 (MDS-0489):

**Narine & David-**

[black redaction bar]

134. Mr. Israel then sent an email to me, Mr. Schultz and Mr. Shartle ON October

7 (MDS-0523) stating:

> I had a constructive conversation with David B and read him the below
> email before sending it to him (except for the last line).
>
> David lamented about the corporate culture he inherited at Credit One
> caused by A. Shutt and how that Narine may still not fully understand
> the Bank's discovery obligations.
>
> He will leave up to White & Case our future role, but expects Mike's
> active assistance for at least the transition period.
>
> We agreed that the IT issue in this exchange was critical and that the
> plaintiff's attorneys would have to be notified immediately if there is no
> retrieval abilities.
> There seemed to be no suggestion that we were at fault with our case
> handling.

135. During a phone conversation I had on October 4, 2016 with David Bouc, Narine

Yenovkian and Chris Shore, addressing outstanding discovery issues, I [black redaction bar]

[black redaction bars]



136.    On October 7, 2016, I received a federal express package from Ms. Yenovkian

containing ████████████████████████████████████████████████████████

████████████████████. (MDS-0497, MDS0497A) The disc included a file

████████████████████████████████████████████████████████" The

file properties on that file suggest the file was created on April 14, 2016



137.    In response, I immediately sent an email to Mr. Shore, Mr. West, Mr. Tombeck, Mr. Bouc, Mr. Israel, and Mr. Schultz, with copies of the files attached, requesting ████████████████████████████████████████████████████████████. MDS-0497.

138.    Following my review of the files, on October 7, as my email to Mr. Schultz the same date reflects, the data files show ███████████████████████████████████████ ████████████████████████████████████████████████████. MDS-0499-0509.

139.    I also sent an email on October 7 in response to a question about the data from Mr. Schultz asking ███████████████████████████████████████ ████████. MDS-0499.

140.    I responded, "█████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████" MDS-0499

141.    I sent a follow up email to Mr. Israel, Mr. Shartle and Mr. Schulz on October 7 (MDS-0504):



142.    Mr. Schultz responded "████████████████████████
████████████████████████████████████████████
████████████████████████████████████████." MDS-0504. Mr. Schultz

later responded that ███████████████████████████████████████████

███████████████████████. MDS-0512.

143.   I responded that "████████████████████████████████████████

████████████████████████████████████████████." MDS-0504.

144.   I responded by sending a follow up message to Mr. Shore,

"Chris –

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████ " MDS 0507.

145.    I prepared a proposed message to be sent to White and Case on October 12, with a summary of outstanding issues for review and approval to Mr. Israel, Mr. Shartle and Mr. Schultz. MDS-0510.

146.   Because I learned of Credit One's false statements contained in the amended verification as to █████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████,

I asked the Sessions firm to retain ethics counsel to advise how we should proceed as to disclosures of these facts to the court and to Plaintiff's counsel.

147.   The firm agreed to retain Mr. Minkoff, of Frankfurt Kurnit Klein & Selz PC, on or about October 20, 2016, and he spoke with the attorneys from White and Case regarding the emails, the verification and the collections data on sold bankrupt

63

accounts in November, 2016. On November 15, 2016, Mr. Minkoff advised (MDS-0517):

> Everyone:
>
> Caren and I spoke to Andy Tomback and Jennifer Paradise, the W&C General Counsel.





Best,
Ron

## G. Personal Statement and inability to pay

148.    I wish to apologize to the court about my handling of the defense of the Anderson case. I did receive every warning the court gave me loud and clear. I took those warnings to heart, I timely conveyed every one of the warnings to my client's representatives and my supervising attorneys at my former employer.

149.    I have lived with the tacit understanding that the court might at any time issue a scathing opinion tarnishing my reputation and ruining what is left of my legal career every day since September 22, 2016.

150.    I came home the day after the hearing in 2016 and told my wife I might not be able to practice law anymore in the event the court did what it has now done. I have held my breath since and it brought me no joy to see that Credit One refused to settle this litigation these past five years, nor that no one ever spoke up on my behalf.

151.    The hearing in September of 2016 was one of the most personally upsetting days of my now 31 years as an attorney. The outcome of the Anderson case has been something I have attended to despite withdrawing from the case in 2016.

152.    Before this matter, I had never worked with in house counsel for a national bank financial institution who failed to recognize the importance of discovery and the inevitable consequences of making false statements to me or under oath, who withheld information from me, and other than in this case, I never had to "take

65

reasonable remedial measures, including, if necessary, disclosure to the tribunal" to correct those false statements. RPC Rule 3.3(a).

153.    After withdrawing and ceasing to work on behalf of Credit One in early October, 2016, I was unable to respond – due to privilege - to the court's repeated lament about the course of events that occurred on September 22, 2016 and my role in and preceding those events, and deferred to successor counsel, on the advice of ethics counsel, to remedy COB's other false statements.

154.    I was assured in March, 2016 that the firm was "not going to have [me] pay for the sins of Credit One."  Intervenor-MDS 0297.

155.    Now it appears Sessions want me to pay for their sins and their client's sins and I believe that just isn't right or just or fair.

156.    Although I was not told the precise reason, I was informed that I was being let go by the Sessions firm on or about October 24, 2017, which coincidentally followed oral argument in the U.S. Court of Appeals for the Second Circuit in the Anderson case, 16-2496, on October 11, 2017, and a day following the filing of Appellee's post-argument brief on mootness on October 23, 2017, where Appellee's counsel informed the Court of Appeals that the bankruptcy "court indicated that it was going to hold Credit One in default on the merits because of gross and repetitive discovery violations and the submission of perjured affidavits."

157.    After my employment with the Sessions firm ended in November 2017, I was unemployed for a time, was required to move out of my Chagrin Falls home in 2018 and rent it until it could be sold in 2021, and was eventually able to find full time

employment in the fall of 2018 with people who actually know me and know that I am not a liar.

158.   I am currently employed by Javitch Block LLC in Cleveland Ohio, work remotely for them from my home in Florida and have a limited role with them that does not typically involve trial work.  I currently earn approximately ████. I am currently 60 (61 in July) and have been practicing law for 31 years now.

159.   My only material assets (████████████████████) are collectively worth not more than approximately ████. I am looking forward to hopefully retiring when I turn 67 in about six years.

160.   While I have not yet seen a fee application from Plaintiff's counsel, I know that I cannot afford to pay half of whatever their fee will be once approved by the court.

161.   I declare and state under penalty of perjury that the foregoing is true and correct.

Executed on June 21, 2022

/s/ Michael D. Slodov

## DECLARATION EXHIBITS SUBMITTED FOR IN CAMERA INSPECTION OR TO BE FILED UNDER SEAL

| Email or File name and date |
| --- |
| 2012_4_9_slodov offer ltr.pdf |
| 2014_10_28_Credit One Bank BK Research matter - Anderson v Credit One(2).pdf |
| 2014_10_28_Credit One Bank BK Research matter - Anderson v Credit One.pdf |
| 2014_10_28_New Credit One Bank_ BK Research Matter -  Orrin S. Anderson v. Credit One --- USBC SD NY.pdf |
| 2014_10_29_Torres.pdf |
| 2014_10_31_RE_ Anderson v. Credit One.pdf |
| 2014_11_13_In re Anderson -LLM.pdf |
| 2014_11_2_Re_ Credit One Bank - Anderson- tradelines on bankrupt accounts.pdf |
| 2015-09-09 Ltr from AMN to M Slodov.pdf |
| 2015_10_19_RE_ Anderson v. Credit One Bank, N.A., et al., Adv. Proc. No. 15-08214 (RDD).pdf |
| 2015_10_1_RE_ Anderson v. Credit One - Credit One discovery responses (due by 9_30).pdf |
| 2015_10_1_Re_ Anderson.pdf |
| 2015_10_1_RE_ Prior Encore Drafts (In re Anderson).pdf |
| 2015_10_20_FW_ Class Action Discussion with Outside Counsel.pdf |
| 2015_10_26_RE_ In re Anderson - supplemental 2004 examinat....pdf |
| 2015_10_27_FW_ Subpoenas for SFG, SOIII, MHC and FNBM - deadline 11_7_15.pdf |
| 2015_10_27_RE_ In re Anderson - supplemental 2004 examination (unredacted).pdf |
| 2015_10_2_Anderson v. Credit One - conference call re discovery responses.pdf |
| 2015_10_2_RE_ Anderson(2).pdf |
| 2015_10_2_RE_ Anderson.pdf |
| 2015_10_30_RE_ Anderson v. Credit One Bank.pdf |
| 2015_10_5_RE_ Anderson v Credit One.pdf |
| 2015_10_5_RE_ Anderson.pdf |
| 2015_10_6_RE_ Anderson v. Credit One Bank, N.A., et al., ....pdf |
| 2015_10_8_RE_ Anderson v. Credit One Bank, N.A., et al., Adv. Proc. No. 15-08214 (RDD).pdf |
| 2015_11_16_RE_ Anderson v Credit One Bank - Supplemental 2004 Exam -motion to seal_unseal.pdf |
| 2015_11_19_RE_ Re_ Anderson v. Credit One Bank, N.A., et al..pdf |
| 2015_11_23_RE_ DALCO Confirmation - (12_08_2015 @ 09_00 AM....pdf |
| 2015_11_25_RE_ Anderson v Credit One Bank - Supplemental 2004 Exam -motion to seal_unseal.pdf |
| 2015_12_15_RE_ Plaintiff's Notice of Deposition of Credit One Bank, N.A..pdf |
| 2015_12_21_RE_ Anderson v Credit One Bank.pdf |
| 2015_12_29_Anderson - conference call with David Bouc.pdf |

| |
|---|
| 2015_12_29_RE_ Anderson v Credit One - verification of document production response.pdf |
| 2015_12_30_Anderson (New York) Class Action Call(NY).pdf |
| 2015_12_30_Anderson (New York) Class Action Call.pdf |
| 2015_12_30_FW_ Anderson v Credit One- recent credit application(Lanham 30-b-6-deposition).pdf |
| 2015_12_30_Re_ Anderson (New York) Class Action Call.pdf |
| 2015_12_30_RE_ Anderson v Credit One- recent credit application(3).pdf |
| 2015_12_30_RE_ Anderson v Credit One- recent credit application(4).pdf |
| 2015_12_30_RE_ Anderson v Credit One- recent credit application.pdf |
| 2015_12_30_Re_ Anderson v. Credit One - Conference call with David Bouc (1_5_16, 12 noon EST) (2).pdf |
| 2015_12_30_Re_ Anderson v. Credit One - Conference call with David Bouc (1_5_16, 12 noon EST).pdf |
| 2015_12_31_Anderson v Credit One -summary of current status.pdf |
| 2015_12_31_RE_ Anderson (New York) Class Action Call.pdf |
| 2015_12_7_RE_ Trustee Hearing.pdf |
| 2015_12_8_Anderson v. Credit One Bank, N.A., et al., Adv. Proc. No. 15-08214 (RDD)-Third Party Responses and Objections.pdf |
| 2015_12_9_RE_ Anderson v. Credit One.pdf |
| 2015_1_30_RE_ New BK Research Matter (David Leibowitz) (Evaluation as to Specific Facts, Fees Estimate).pdf |
| 2015_4_21_Re_ In re Anderson (5_5 hearing).pdf |
| 2015_4_22_Anderson-LLM(2).pdf |
| 2015_4_22_RE_ In re Anderson - litigation lockdown #2 - retrieval of documents and recordings.pdf |
| 2015_5_15_In re Anderson (2004 examination-duces tecum supplement request); Anderson v. Credit One (appeal).pdf |
| 2015_5_15_Re_ 15-08214-rdd Order Re_ Motion to Dismiss Ad....pdf |
| 2015_5_15_Re_ In re Anderson (2004 examination-duces tecum supplement request); Anderson v. Credit One (appeal).pdf |
| 2015_5_19_RE_ 15-08214-rdd Order Re_ Motion to Dismiss Ad....pdf |
| 2015_5_20_FW_ Orrin Anderson.pdf |
| 2015_5_20_RE_ Anderson Class Action.pdf |
| 2015_5_20_RE_ Anderson v. Credit One.pdf |
| 2015_6_15_Anderson v. Credit One.pdf |
| 2015_6_22_RE_ Anderson v. Credit One, 14-22147_15-08214, 6_15_15.pdf |
| 2015_8_22_RE_ Anderson v. Credit One.pdf |
| 2015_8_23_FW_ Anderson v. Credit One (due tomorrow).pdf |
| 2015_8_23_RE_ Anderson v. Credit One (due tomorrow).pdf |
| 2015_8_24_Anderson v Credit One -summary of current status.pdf |
| 2015_8_24_RE_ Anderson v. Credit One.pdf |
| 2015_8_28_RE_ Anderson v. Credit One Bank - Adv. No.  15-08214 (due 8_31).pdf |
| 2015_9_10_Re Anderson v Credit One -discovery issues.pdf |

| |
|---|
| 2015_9_10_RE_ Anderson v. Credit One - Due 9_11.pdf |
| 2015_9_11_RE_ Anderson v. Credit One -- Supplemental Responses to RFPs.pdf |
| 2015_9_14_Anderson v. Credit One FW_ 15-08214-rdd Letter.pdf |
| 2015_9_14_RE_ Anderson v. Credit One(2).pdf |
| 2015_9_14_RE_ Anderson v. Credit One.pdf |
| 2015_9_18_RE_ Anderson (due by 9_18).pdf |
| 2015_9_22_RE_ Anderson v. Credit One - Coercive Effects test.pdf |
| 2015_9_23_Anderson v. Credit One - Credit One discovery responses (due by 9_30).pdf |
| 2015_9_29_RE_ Anderson v. Credit One - Credit One discovery responses (due by 9_30).pdf |
| 2016-10_4_RE_ Anderson v Credit One - -IT investigation- confidential.pdf |
| 2016-3-4 JKS re workload.pdf |
| 2016_10_07_14_13_34-fedex.pdf |
| 2016_10_12_Anderson v Credit One.pdf |
| 2016_10_12_RE_ Anderson v Credit One.pdf |
| 2016_10_17_Anderson v Credit One.pdf |
| 2016_10_4_FW_ Anderson v Credit One - emails.pdf |
| 2016_10_4_RE_ Anderson v Credit One - emails- time sensitive.pdf |
| 2016_10_6_Re_ Anderson v Credit One - -IT investigation(cease work).pdf |
| 2016_10_6_RE_ Anderson v Credit One - -IT investigation- are we out_.pdf |
| 2016_10_7_RE_ Anderson v Credit One(2).pdf |
| 2016_10_7_RE_ Anderson v Credit One(3).pdf |
| 2016_10_7_RE_ Anderson v Credit One(4).pdf |
| 2016_10_7_RE_ Anderson v Credit One(5).pdf |
| 2016_10_7_RE_ Anderson v Credit One(6).pdf |
| 2016_10_7_RE_ Anderson v Credit One.pdf |
| 2016_11_15_T_C with W&C -- 11_15_16.pdf |
| 2016_1_10_RE_ Anderson v. Credit One - next steps- permission to no longer use tradelines.pdf |
| 2016_1_13_RE_ Anderson v. Credit One .pdf |
| 2016_1_18_RE_ Anderson v Credit One .pdf |
| 2016_1_19_RE_ Anderson v Credit One-appearance_pro hac.pdf |
| 2016_1_21_RE_ Anderson v. Credit One (verification).pdf |
| 2016_1_21_RE_ SDNY Credit Reporting Cases (Anderson v. Credit One - 2004 examination).pdf |
| 2016_1_28_Re_ today's depo, Anderson vs. Credit One Bank.pdf |
| 2016_1_6_RE_ Anderson v Credit One- recent credit application(2).pdf |
| 2016_1_6_RE_ Anderson v Credit One- recent credit application.pdf |
| 2016_1_6_RE_ Anderson v. Credit One - Credit One deposit....pdf |
| 2016_1_6_RE_ Anderson v. Credit One - Credit One deposition on 1-27 & premotion letter for summary judgment.pdf |
| 2016_1_8_RE_ Anderson v Credit One - opposition to supplemental 2004 examination.pdf |

| |
|---|
| 2016_2_10_RE_ Information You Requested (Anderson v Credit One).pdf |
| 2016_2_11_Anderson v Credit One.pdf |
| 2016_2_22_Anderson v Credit One.pdf |
| 2016_2_25_Anderson v Credit One.pdf |
| 2016_2_4_RE_ RE_ Anderson v. Credit One.pdf |
| 2016_3_10_Anderson v Credit One.pdf |
| 2016_3_10_FW_ Anderson.pdf |
| 2016_3_10_RE_ Anderson v Credit One(2).pdf |
| 2016_3_10_RE_ Anderson v Credit One(3).pdf |
| 2016_3_10_RE_ Anderson v Credit One.pdf |
| 2016_3_10_RE_ Anderson.pdf |
| 2016_3_11_RE_ Anderson v Credit One - supplemental declaration.pdf |
| 2016_3_11_Re_ Anderson v Credit One.pdf |
| 2016_3_14 (002)_Amended Verification.pdf |
| 2016_3_14_RE_ Anderson.pdf |
| 2016_3_16_RE_ Anderson(2).pdf |
| 2016_3_16_RE_ Anderson.pdf |
| 2016_3_18 version 7_Amended Verification_2016_3_14 (003).pdf |
| 2016_3_18_Draft 7_Amended Verification.pdf |
| 2016_3_18_RE_ Anderson v Credit One - supplemental declaration(2).pdf |
| 2016_3_18_RE_ Anderson v Credit One - supplemental declaration.pdf |
| 2016_3_18_RE_ Anderson(2).pdf |
| 2016_3_18_RE_ Anderson.pdf |
| 2016_3_21_FW_ Anderson.pdf |
| 2016_3_21_RE_ Anderson(2).pdf |
| 2016_3_21_RE_ Anderson(3).pdf |
| 2016_3_21_RE_ Anderson.pdf |
| 2016_3_22_Anderson v Credit One.pdf |
| 2016_3_22_RE_ Anderson(2).pdf |
| 2016_3_22_RE_ Anderson.pdf |
| 2016_3_26_Re_ REMINDER_ Anderson, Orrin S. a_k_a Anderson, Orinn a_k_a Anderson, Orinn Scott (9800-35190).pdf |
| 2016_3_3_FW_ Anderson v. Credit One.pdf |
| 2016_3_3_RE_ Anderson v. Credit One.pdf |
| 2016_3_4_RE_ Anderson v. Credit One(2).pdf |
| 2016_3_4_RE_ Anderson v. Credit One.pdf |
| 2016_3_4_RE_ In re Anderson.pdf |
| 2016_3_5_RE_ In re Anderson.pdf |
| 2016_3_7_Anderson v Credit One - additional documents requested.pdf |
| 2016_3_7_RE_ Anderson v. Credit One(2).pdf |
| 2016_3_7_RE_ Anderson v. Credit One.pdf |
| 2016_3_8_RE_ Anderson v. Credit One.pdf |

| |
|---|
| 2016_3_9_Anderson(10).pdf |
| 2016_3_9_Anderson(11).pdf |
| 2016_3_9_Anderson(12).pdf |
| 2016_3_9_Anderson(13).pdf |
| 2016_3_9_Anderson(14).pdf |
| 2016_3_9_Anderson(15).pdf |
| 2016_3_9_Anderson(16).pdf |
| 2016_3_9_Anderson(2).pdf |
| 2016_3_9_Anderson(3).pdf |
| 2016_3_9_Anderson(4).pdf |
| 2016_3_9_Anderson(5).pdf |
| 2016_3_9_Anderson(6).pdf |
| 2016_3_9_Anderson(7).pdf |
| 2016_3_9_Anderson(8).pdf |
| 2016_3_9_Anderson(9).pdf |
| 2016_3_9_Anderson.pdf |
| 2016_3_9_email with manual and amended verification.pdf |
| 2016_3_9_RE_ Anderson v Credit One - additional documents requested.pdf |
| 2016_4_10_RE_ Anderson v Credit One.pdf |
| 2016_4_20_RE_ 15-08214-rdd Scheduling Order.pdf |
| 2016_4_27_RE_ Anderson v Credit One - notices of deposition (May 18, 2016, at 9_30 a.m.; May 17, 2016, at 9_30 a.m).pdf |
| 2016_4_29_RE_ Anderson v Credit One - notices of deposition (May 18, 2016, at 9_30 a.m.; May 17, 2016, at 9_30 a.m).pdf |
| 2016_4_5_RE_ Anderson v Credit One.pdf |
| 2016_5_12_RE_ Anderson v Credit One - notices of deposition (May 26, 2016, at 9_30 a.m.; May 27, 2016, at 9_30 a.m).pdf |
| 2016_5_12_RE_ Anderson v. Credit One.pdf |
| 2016_5_12_RE_ RE_ Anderson v Credit One - notices of deposition (May 26, 2016, at 9_30 a.m.; May 27, 2016, at 9_30 a.m).pdf |
| 2016_5_18_RE_ Anderson v. Credit One.pdf |
| 2016_5_24_FW_ Anderson v Credit One - Credit One Financial Deposition.pdf |
| 2016_5_2_RE_ In re Anderson - Credit One Reply Brief.pdf |
| 2016_6_15_Re_ Activity in Case 7_15-cv-04227-NSR In Re_ Orrin S. Anderson Clerk's Judgment.pdf |
| 2016_6_15_Re_ Activity in Case 7_15-cv-04227-NSR In Re_ Orrin S. Anderson Memorandum & Opinion(2).pdf |
| 2016_6_15_RE_ Activity in Case 7_15-cv-04227-NSR In Re_ Orrin S. Anderson Memorandum & Opinion.pdf |
| 2016_6_16_Re_ Activity in Case 7_15-cv-04227-NSR In Re_ Orrin S. Anderson Clerk's Judgment(2).pdf |
| 2016_7_12_FW_ 15-08214-rdd Letter (Anderson v Credit One).pdf |
| 2016_7_17_RE_ 15-08214-rdd Letter (Anderson v Credit One).pdf |

| |
|---|
| 2016_7_20_Re_ Anderson v Credit One(2).pdf |
| 2016_7_20_RE_ Anderson v Credit One.pdf |
| 2016_7_21_Anderson v Credit One.pdf |
| 2016_8_21_RE_ Anderson v Credit One (due 8_22).pdf |
| 2016_8_9_Re_ 15-08214-rdd Motion to Compel.pdf |
| 2016_9_20_RE_ 14-22147-rdd Reply to Motion.pdf |
| 2016_9_22_Re_ Anderson v Credit One - Hearing on motion to compel and for sanctions 9_22_16.pdf |
| 2016_9_22_RE_ Anderson v Credit One hearing(2).pdf |
| 2016_9_22_RE_ Anderson v Credit One hearing.pdf |
| 2016_9_23_RE_ Anderson v Credit One - Hearing on motion to compel and for sanctions 9_22_16.pdf |
| 2016_9_24_RE_ Anderson v Credit One - Hearing on motion to compel and for sanctions 9_22_16.pdf |
| 2016_9_27_RE_ Anderson v Credit One.pdf |
| 2016_9_29_CCI09302016(COB email search doc results).pdf |
| 2016_9_30_ anderson v credit one(COB email search results).pdf |
| 2016_9_30_RE_ Anderson v Credit One - emails.pdf |
| 2022_6_17_Redacted net pay.pdf |
| 2022_6_19_FW_ [External] Slodov.pdf |
| 2022_6_3_Law360_Credit One Sanctioned For Lengthy, Willful Discovery Failures - Law360.pdf |
| 2022_6_7_email to White and Case and Sessions.pdf |