WHITE & CASE LLP
J. Christopher Shore
Colin T. West
1221 Avenue of the Americas
New York, NY 10020
Phone: 212.819.8200
Fax: 212.354.8113

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE ORRIN S. ANDERSON, <br><br> Debtor, | |
| ORRIN S. ANDERSON, A/K/A ORRIN ANDERSON <br><br> Debtor and Plaintiff on behalf of himself and all others similarly situated <br><br> v. <br><br> CREDIT ONE BANK, N.A., <br><br> Defendant | Chapter 7 <br><br> Case No. 14-22147 (SHL) <br><br> Adv. Pro. No. 15-08214 (SHL) |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT'S MOTION TO ALTER OR AMEND**
**THE FINDINGS AND/OR JUDGMENT**
<u>**WITH RESPECT TO ORDER CERTIFYING CLASS**</u>

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES .......................................................................................................... ii

PRELIMINARY STATEMENT .....................................................................................................1

BACKGROUND .............................................................................................................................4

LEGAL STANDARD......................................................................................................................8

ARGUMENT ...................................................................................................................................9

      A.      The Court Should Remove the "By Defendant" Qualifier from the Class Definition Because It Is Inconsistent with the Court's Ruling Regarding Class-wide Harm and It Was Not Briefed By the Parties .........................................9

      B.      The Court Should Remove the Determination that Credit One's Minimum Liability Is $50 per Class Member for Uniform, Non-Compensatory Damages.............................................................................................................13

CONCLUSION..............................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*American Surety Co.* v. *Baldwin*,
  287 U.S. 156 (1932) ................................................................................................................12

*Belton* v. *GE Cap. Retail Bank (In re Belton)*,
  961 F.3d 612 (2d Cir. 2020), *cert. denied* 141 S. Ct. 1513 (2021) ........................................1, 7

*Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors Inc.*,
  699 F.3d 230 (2d Cir. 2012) .....................................................................................................14

*Citigroup, Inc. v. Bruce*,
  Case No. 22-134 (2d Cir. 2022) ............................................................................................2, 7

*Credit One Bank, N.A. v. Anderson*,
  139 S.Ct. 144 (2018) (mem.). .....................................................................................................4

*Davis v. Hutchins*,
  321 F.3d 641 (7th Cir. 2003) ......................................................................................................2

*Fustok v. ContiCommodity Servs., Inc.*,
  873 F.2d 38 (2d Cir. 1989) .......................................................................................................14

*Green v. New Mexico*,
  420 F.3d 1189 (10th Cir. 2005) ................................................................................................12

*Hollis v. City of Buffalo*,
  189 F.R.D. 260 (W.D.N.Y. 1999) ..............................................................................................8

*In re Anderson*,
  553 B.R. 221 (S.D.N.Y. 2016) ...................................................................................................4

*In re Anderson*,
  884 F.3d 382 (2d Cir. 2018) .......................................................................................................4

*In re Bruce*,
  No. 21-CV-7455 (CS), 2021 WL 6111925 (S.D.N.Y. Dec. 27, 2021) ......................................7

*In re Irby*,
  337 B.R. 293 (Bankr. N.D. Ohio 2005) .....................................................................................1

15-08214-jpm   Doc 193   Filed 07/05/22   Entered 07/05/22 20:20:21   Main Document
Pg 4 of 20

*In re Rail Freight Surcharge Antitrust Litig.*,
    725 F.3d 244 (D.C. Cir. 2013) ...................................................................................1

*In re Torres*,
    367 B.R. 478 (Bankr. S.D.N.Y. 2007) .......................................................................1

*Johnson v. Nextel Commc'ns, Inc.*,
    780 F.3d 128 (2d Cir. 2015) .......................................................................................2

*Lindsey v. Normet*,
    405 U.S. 56 (1972) ...................................................................................................12

*Local 28 of Sheet Metal Workers' Int'l Ass'n v. EEOC*,
    478 U.S. 421 (1986) ...................................................................................................1

*Munafo v. Metro. Transp. Auth.*,
    381 F.3d 99 (2d Cir. 2004) .........................................................................................8

*Panton v. United States*,
    No. 98 Civ. 1881 (LAP), 2010 WL 5422293 (S.D.N.Y. Dec. 23, 2010) ...................8

*Shanfa Li v. Chinatown Take-Out Inc.*,
    No. 16 CIV. 7787 (JCM), 2019 WL 3715086 (S.D.N.Y. Aug. 7, 2019) ...................9

*Shrader v. CSX Tramp., Inc.*,
    70 F.3d 255 (2d Cir. 1995) .........................................................................................8

*Sykes v. Mel S. Harris & Assocs. LLC*,
    780 F.3d 70 (2d Cir. 2015) .........................................................................................1

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*,
    956 F.2d 1245 (2d Cir. 1992) .....................................................................................8

*Wilmington Sav. Fund Soc'y, FSB v. Universitas Educ., LLC*,
    164 F. Supp. 3d 273 (D. Conn. 2016) ......................................................................12

**STATUTES**

11 U.S.C. § 524(a)(2) .........................................................................................................5

**OTHER AUTHORITIES**

Fed. R. Bankr. P. 7023 .......................................................................................................6

Fed. R. Bankr. P. 7052 ....................................................................................................7, 8

Fed. R. Bankr. P. 8002(b)(1) ..............................................................................................7

Fed. R. Bankr. P. 9023 ....................................................................................................7, 8

AMERICAS 114807889 v9

Fed. R. Civ. P. 23(b)(3)............................................................................................................6

Fed. R. Civ. P. 52(b) ....................................................................................................8, 9, 12

Fed. R. Civ. P. 59(e) ...........................................................................................................8, 9

AMERICAS 114807889 v9

# PRELIMINARY STATEMENT

The Court's June 3, 2022 corrected memorandum of decision (the "**Decision**"), Dkt. 176, granting class certification and imposing default as a discovery sanction presents numerous important and novel issues, including:

(1) Whether this Court has the jurisdiction to enforce the orders of every bankruptcy court in the country as part of a nationwide class, including in a manner that would be inconsistent with the way those courts would enforce their own orders; *compare* Decision at 6-10, *with Belton* v. *GE Cap. Retail Bank (In re Belton)*, 961 F.3d 612, 617 (2d Cir. 2020) (in denying motion to compel arbitration based on Second Circuit's prior decision in this action, observing that the court's reasoning in that prior decision—that "contempt proceedings involve considerations that the issuing court is uniquely positioned to assess"—seems "anathema to a nationwide class action."), *cert. denied* 141 S. Ct. 1513 (2021); *see also In re Irby*, 337 B.R. 293, 295 (Bankr. N.D. Ohio 2005) (reaching the opposite conclusion from the one made by this Court and declining to issue a default judgment in an action based on the continued reporting of a debt that had been discharged, finding that "the Court cannot conclude[] that[ ]the sole act of reporting a debt, whose existence was never extinguished by the bankruptcy discharge, violates the discharge injunction. All that is being reported is the truth.").

(2) Whether the Plaintiff adequately demonstrated "class-wide harm" sufficient to certify a class, where the only harm identified by the Court was "inaccurate information" resulting in "pressure to pay," where there was no evidence in the record that any of the class members, let alone all of them, actually felt pressured to pay because of the credit reporting practice at issue; *see Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 82 (2d Cir. 2015) (to certify a class, "common evidence [must] show all class members suffered *some* injury" (quoting *In re Rail Freight Surcharge Antitrust Litig.*, 725 F.3d 244, 252 (D.C. Cir. 2013) (emphasis in original)));

(3) Whether the Court can impose damages that are neither coercive nor compensatory, but instead expressly "non-compensatory" (i.e., punitive) as a sanction for civil contempt, as a substitute for compensatory damages, because Plaintiff could not show actual damages; *compare* Decision, at 62-64, with *In re Torres*, 367 B.R. 478, 490 (Bankr. S.D.N.Y. 2007) ("[S]anctions in civil contempt proceedings may be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant *for losses sustained*." (emphasis added) (alteration in original) (quoting *Local 28 of Sheet Metal Workers' Int'l Ass'n v. EEOC*, 478 U.S. 421, 443 (1986)));

(4) Whether the Court's non-compensatory, or punitive, damages range of $50-$1,000 per class member, which would likely equate to a multi-million dollar award even at the low end, is sufficiently "tethered" to actual damages, where there are no

1

  actual damages, other than attorneys' fees, which do not actually compensate the class members for harm suffered; *Johnson v. Nextel Commc'ns, Inc.*, 780 F.3d 128, 148-149 (2d Cir. 2015) (rejecting proposed "one-size-fits-all" punitive damages model because "punitive damages awards must be tethered to compensatory damages in order to comply with due process."); and

(5) Whether, in certifying a class, a court may rely on facts deemed admitted due to a default judgment that is based on litigation conduct occurring before the motion for class certification was filed. *Compare* Decision, at 67 (finding Credit One "bound by the allegations in the complaint to the extent they establish facts relevant to class certification" solely due to litigation conduct that preceded the motion for class certification), with *Davis v. Hutchins*, 321 F.3d 641, 649 (7th Cir. 2003) ("application of th[e] general principle [that factual allegations are deemed admitted upon a default] does not solve the class-certification issue. Rule 23(c) imposes an independent duty on the district court to determine by order that the requirements of Rule 23(a) are met *regardless of the defendant's admissions*." (emphasis added)).

  All of these issues (and others) will, at some point, be decided by the Second Circuit, some earlier than others. The first issue, for example—whether the Court can certify a nationwide civil contempt class and thereby enforce the orders of bankruptcy courts around the country—is the subject of an appeal that is currently before the Second Circuit, with briefing to begin in August. *Citigroup, Inc. v. Bruce*, Case No. 22-134 (2d Cir. 2022). Credit One respectfully disagrees with the Decision and will also soon be appealing it based on the issues identified above, among others. In the interim, however, Credit One files this Motion, respectfully requesting that the Court reconsider two narrow aspects of its Decision where Credit One believes the Court may have overlooked certain law and/or facts.

  <u>First</u>, in certifying the class, the Court *sua sponte* inserted the words "by Defendant" into the class definition: "all individuals who, after May 3, 2007, have had a consumer credit report relating to them prepared by any of the credit reporting agencies in which one or more of their tradeline accounts or debt(s) with Defendant was not reported **by Defendant** as 'discharged' or 'included in bankruptcy'…" This addition was apparently responsive to Credit One's argument

2

that the class, as proposed by Plaintiff, could not include individuals whose Credit One debt was reported by a credit reporting agency ("**CRA**") on the relevant credit report as "discharged" or "included in bankruptcy". Specifically, Credit One argued that Experian, the largest of the CRAs, began reporting the bankruptcy discharge on its own starting in 2009. In other words, Experian reports issued starting in 2009 contained the very reporting that Plaintiff claims is required. By adding the term "by Defendant" in the class definition, however, the Court defined the class so that only Credit One's reporting of the discharge, and not the CRA's, would exclude a Plaintiff from the class. While this may have overcome other shortcomings in Plaintiff's class action, it is inconsistent with the Plaintiff's theory of, and the Court's ruling on, the issue of class-wide injury. Simply, Experian reports issued starting in 2009 reflect that the relevant Credit One debt was discharged and such reports therefore do not contain the complained-of "inaccurate" information that supposedly pressured all of the class members to pay their discharged debt. The same would also be true for any report issued by any other CRA that, in addition Experian, also reported the discharge. Moreover, because the phrase "by Defendant" was inserted *sua sponte* after the class certification hearing, Credit One was never afforded the opportunity to argue against certification of the class that was actually certified, which represented a significant shift from the class definition sought by Plaintiff.

Second, in ordering that Credit One is liable to Plaintiff and each member of the class for damages, the Court determined that Credit One has a minimum liability of $50 per class member for uniform, non-compensatory damages. When the Court first announced that it would issue a default judgment against Credit One in November 2016, it acknowledged that the default could not apply to a damages award, which must be established at a separate evidentiary proceeding at which Credit One is afforded the opportunity to contest the amount claimed. No such evidentiary

3

proceeding has occurred. While the parties did brief *whether* uniform, non-compensatory damages could be awarded for purposes of determining whether a class could be certified, the class certification hearing was not a damages hearing, and even Plaintiff acknowledged that a determination of damages was "premature." Yet by setting a minimum damages figure of $50 per class member, the Court has essentially determined to impose at least a multi-million damages award without a damages hearing.

For the reasons set forth below, Credit One respectfully requests that these two errors be corrected.

## BACKGROUND

1.	In 2015, the Plaintiff filed this putative class action against Credit One Bank, N.A. ("**Credit One**"), seeking injunctive relief and monetary damages.[1] Dkt. 1.[2] Around the same time, similar putative class actions were commenced in this Court against Capital One, Chase, Citibank, Bank of America, and GE Consumer Lending (n/k/a Synchrony) alleging the "same illegal conduct." *See* Dkt. 109-1, at 2. Credit One filed a pre-answer motion seeking, *inter alia*, to compel arbitration. Dkt. 7. The motion was fully briefed and argued, Dkts. 9, 11, 16, and then denied by the Court. Dkt. 15. Credit One timely filed its answer. Dkt. 17.

2.	While the adversary proceeding continued in this Court, Credit One sought appellate review of the Court's denial of the motion to compel arbitration. This Court's order was affirmed, first by the District Court, *In re Anderson*, 553 B.R. 221 (S.D.N.Y. 2016), and then by the Second Circuit, *In re Anderson*, 884 F.3d 382 (2d Cir. 2018). The Supreme Court denied

---

[1]	The Complaint also sought relief against a second defendant, who was later dismissed from the case.

[2]	Unless otherwise specified, citations of the format Dkt. # are to the filings made on the adversary proceeding docket in the above captioned case.

Credit One's petition for certiorari. *Credit One Bank, N.A. v. Anderson*, 139 S.Ct. 144 (2018) (mem.).

3. Over the year following Credit One's answer, the parties engaged in a contentious discovery process, frequently bringing disputes to the Court's attention. *E.g.*, Dkts. 5-6, 23, 31, 37-44, 45, 46-52, 57-58, 61, 62, 70-71. Eventually, in August 2016, Plaintiff moved to compel discovery and for sanctions (the "**Sanctions Motion**") against Credit One, Dkt. 78, which was fully briefed, Dkts. 85, 86, and argued, Dkt. 89. Thereafter, Credit One replaced its then-counsel in the case with the undersigned firm. *E.g.*, Dkt. 90. Following the hearing on the Sanctions Motion, at the request of the Court, the parties submitted supplemental memoranda of law. Dkts. 91, 93. At a second hearing held in November 2016, the Court announced that "the appropriate sanction here is a default judgment on the merits, but not with respect to class certification or damages." Dkt. 101 (Nov. 10, 2016 Hr'g Tr.), at 4:14-15. The default, however, was not entered until June 2022, with the entry of the Decision and Order (both defined below).[3]

4. Approximately six months after the hearing, Plaintiff moved to certify the putative damages class in its complaint (the "**Class Certification Motion**"). Dkt. 109.[4] Credit One opposed the Class Certification Motion, Dkts. 118-123, Plaintiff replied and made other filings in support, Dkts. 113, 127, 141, Credit One sur-replied, Dkts. 143-149, a hearing was held, Dkt. 150, and post-hearing supplemental briefs at the Court's request were filed, Dkts. 151-52.

---

[3] To be clear, Plaintiff's cause of action against Credit One is for violating the discharge injunction under section 524(a)(2) of the Bankruptcy Code. The relief granted for violating a discharge injunction is sometimes referred to as a sanction. Additionally, due to Credit One's discovery conduct in the instant adversary proceeding, the Court issued a sanction against Credit One in the form of a default.

[4] The putative injunctive class in the complaint had been previously resolved by stipulation, *see, e.g.*, Dkts. 104-106, and therefore became moot, Dkt. 176, at 4 ("denying to certify an injunctive class… on the basis that such request is now, albeit belatedly, moot in light of a Stipulation and Order agreed by Credit One on March 29, 2017").

5

5. On June 3, 2022, the Court issued its corrected memorandum of decision (the "**Decision**"), Dkt. 176, granting the Sanctions Motion and Class Certification Motion and making findings of facts and conclusions of law in support. Dkt. 176, at 4. The judgment and order (the "**Order**") reflecting the Decision was entered June 21, 2022. Dkt. 179. Resolving the disputed question of whether Plaintiff had shown common injury to the putative class, the Court ruled in the Plaintiff's favor: "The injury here was Credit One's violation of the discharge injunction by Credit One's systematic policy of refusing to correct its tradelines to pressure Anderson and the putative class members to pay their discharged debts." Dkt. 176, at 68. In support of that ruling, the Court cited the allegations of the Complaint and the credit reporting practices at issue but did not cite any record evidence that any member of the class felt pressured to pay. Dkt. 176, at 60-61, 64.

6. Among many issues decided, the Decision and Order addressed two issues pertinent to this Motion. <u>First</u>, the Court ordered the certification of an opt-out class under Fed. R. Bankr. P. 7023, incorporating Fed. R. Civ. P. 23(b)(3), comprising:

> all individuals who, after May 3, 2007, have had a consumer credit report relating to them prepared by any of the credit reporting agencies in which one or more of their tradeline accounts or debt(s) with Defendant was not reported **by Defendant** as "discharged" or "included in bankruptcy" but, rather, as "charged off," "-$0-balance" or "due" notwithstanding the fact that such debt(s) had been discharged as a result of such person's bankruptcy under Chapter 7 of the Bankruptcy Code; provided, that such debt(s) shall have been (i) unsecured and (ii) not the subject of a valid and enforceable reaffirmation agreement; provided, further, that the class shall not include those people whose debt(s), being $99 or less, were not sold by Defendant and whose tradelines were deleted by Defendant promptly after they filed for bankruptcy.

Dkt. 179, at 3 (emphasis added); *see also* Dkt. 176, at 81 (substantially similar). The phrase "by Defendant" was not part of the class definition proposed by the Plaintiff. *See* Dkt. 109-1, at 4-5

6

(proposed class definition). The Court's inclusion of that phrase in the class definition is material for the reasons explained below in the Argument section.

7. Second, the Court ordered that:

> Defendant shall be liable as set forth in the Corrected Decision to Plaintiff and each member of the Class for damages for the foregoing violation of the discharge and the discharge injunction, comprising the reasonable costs and expenses of enforcing the discharge, including . . . uniform non-compensatory damages of between $50.00 and $1,000 per Class member . . . .

Dkt. 179, at 2; see also Dkt. 176, at 66 ("Today, therefore, one can posit that only a non-compensatory sanction should be imposed in a range between $50.00 and $1,000 for Anderson and for each non-opting-out class member."); id. at 81 ("a mild non-compensatory sum between $50 and $1000").

8. Several of the similar cases filed against other banks have settled. The cases against Citibank, however, remains pending. Citibank, like Credit One, also moved to compel arbitration and also appealed the denial of that motion to the Second Circuit. *Belton v. GE Cap. Retail Bank (In re Belton)*, 961 F.3d 612, 614 (2d Cir. 2020). Citibank's appeal of that decision was heard after Credit One's appeal, and the Second Circuit relied on its earlier reasoning in this case in affirming the denial of Citibank's motion to compel arbitration. *Id.* at 615-17. However, in dicta, addressing the class action allegations of the Plaintiff's complaint, the Second Circuit observed that:

> [P]ermitting a bankruptcy court to adjudicate compliance with another court's order appears to be in severe tension with *Anderson*'s reasoning. In particular, *Anderson* found that the Code displaced the Arbitration Act, in part, because contempt proceedings involve considerations that the issuing court is uniquely positioned to assess. *See* 884 F.3d at 390–91 ("[T]he bankruptcy court retains a unique expertise in interpreting its own injunctions and determining when they have been violated."). It seems to us that this rationale is anathema to a nationwide class action.

7

15-08214-jpm    Doc 193    Filed 07/05/22    Entered 07/05/22 20:20:21    Main Document
Pg 13 of 20

*Id.* at 617.

9. After losing its appeal, Citibank then moved to strike the class allegations of the complaint. The Court denied the motion. *In re Bruce*, No. 21-CV-7455 (CS), 2021 WL 6111925, at *2 (S.D.N.Y. Dec. 27, 2021). Citibank then sought an interlocutory appeal of that denial, as well as direct certification to the Second Circuit of the related question whether this Court has the power to enforce the discharge orders of bankruptcy courts nationwide. *Id.* The district court certified the question to the Second Circuit, and the Second Circuit accepted the appeal. *Id.* at *5; *Citigroup, Inc. v. Bruce*, Case No. 22-134 (2d Cir. 2022), ECF No. 33. Citibank's appellate brief is due to be filed in August.

10. This Motion is timely filed within 14 days of entry of the Order. *See* Fed. R. Bankr. P. 7052, 9023; *see also* Fed. R. Bankr. P. 8002(b)(1).

## LEGAL STANDARD

11. This Motion to amend findings and to alter or amend a judgment is brought under Federal Rules of Civil Procedure 52(b) and 59(e), made applicable to this proceeding by Federal Rules of Bankruptcy 7052 and 9023, respectively.

12. Under both Rules 52(b) and 59(e) a court may "revisit a prior decision when there has been an intervening change in the law, new evidence becomes available, or there is a need to correct a clear error or prevent manifest injustice." *Hollis v. City of Buffalo*, 189 F.R.D. 260 (W.D.N.Y. 1999).

13. Rule 52(b) permits the Court, on motion of a party, to "amend its findings—or make additional findings—and [to] amend the judgment accordingly" Fed. R. Civ. P. 52(b); *see also Panton v. United States*, No. 98 Civ. 1881 (LAP), 2010 WL 5422293, at *2 (S.D.N.Y. Dec. 23, 2010) ("Rule 52(b) provides a means to dispute underlying facts that resulted in faulty factual

8

findings or conclusions of law based on those facts."). Rule 59(e) permits a court to "alter or amend [a] judgment to correct a clear error of law or prevent manifest injustice." *Munafo v. Metro. Transp. Auth.*, 381 F.3d 99, 105 (2d Cir. 2004) (internal quotation marks and citations omitted).

14. A motion to alter or amend a judgment pursuant to Federal Rule 59(e) should be granted if the moving party "point[s] to controlling decisions or data that the court overlooked . . . that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Tramp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). Motions to alter or amend pursuant to Federal Rule 59(e) are generally granted on three grounds: "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992).

15. "[T]he standards governing motions for amendment of findings under Rule 52(b), [and] motions to alter or amend a judgment pursuant to Rule 59(e) . . . are the same." *Shanfa Li v. Chinatown Take-Out Inc.*, No. 16 CIV. 7787 (JCM), 2019 WL 3715086, at *2 (S.D.N.Y. Aug. 7, 2019) (internal quotation marks omitted) (alterations in original).

## ARGUMENT

### A. The Court Should Remove the "By Defendant" Qualifier from the Class Definition Because It Is Inconsistent with the Court's Ruling Regarding Class-wide Harm and It Was Not Briefed By the Parties

16. In certifying the class, the Court modified the class definition:

9

| Plaintiff's Requested Class Definition | Class Definition in the Order |
|---|---|
| "all individuals who: After May 3, 2007, have had a consumer credit report relating to them prepared by any of the credit reporting agencies in which one or more of their Tradeline accounts or debts with Credit One was not reported as discharged despite the fact that such debts had been discharged as a result of their bankruptcy under Chapter 7 of the Bankruptcy Code." | "all individuals who, after May 3, 2007, have had a consumer credit report relating to them prepared by any of the credit reporting agencies in which one or more of their tradeline accounts or debt(s) with Defendant was not reported **by Defendant** as "discharged" or "included in bankruptcy" but, rather, as "charged off," "-$0- balance" or "due" notwithstanding the fact that such debt(s) had been discharged as a result of such person's bankruptcy under Chapter 7 of the Bankruptcy Code;"[5] |
| Dkt. 109-1, at 4-5; *see also* Dkt. 1 ¶ 71 (substantially similar). | Dkt. 179, at 3. |

17. The inclusion of the words "by Defendant" creates a class that is materially different from the one sought by the Plaintiff and briefed by the parties. Further, it is inconsistent with the Plaintiff's theory of the case and the Court's ruling regarding class-wide harm.

18. In briefing on the Class Certification Motion, a core dispute between Plaintiff and Credit One was whether the proposed class had suffered class-wide harm. *See, e.g.*, Dkt. 118, at 1-3, 15-20; Dkt. 143, at 2-6. Plaintiff claimed that Credit One harmed the proposed class members by causing "inaccurate information" to appear on proposed class members' credit reports issued by credit reporting agencies ("**CRAs**") because, like other major credit card issuers at the time, with respect to sold accounts, Credit One did not update its earlier reporting to the CRAs to reflect a bankruptcy discharge that occurred after the account was sold. *See, e.g.*, Dkt. 109-1, at 1, 10-11, 16-17. Plaintiff alleged in his January 2015 complaint that this practice by Credit One "damage[s] the Class Members' credit ratings, including that of Plaintiff, and their ability to obtain new credit, a lease, a mortgage or employment, all of which may be essential to reestablishing their life after going through bankruptcy." Dkt. 1 ¶ 58; *see also* Dkt. 109-1, at 10-11. Credit One vigorously

---

[5] The class definition in the Order contains two further provisos not quoted here.

Further, the class definition in the Decision is substantially similar, except that the Decision uses "Credit One" instead of "Defendant." In addition to altering the Order as requested herein, a conforming edit to the Decision should also be made.

10

disputed that the reporting at issue was inaccurate and, in any event, also disputed that a mere "inaccuracy," without more, could constitute class-wide injury for purposes of class certification. Dkt. 118, at 2, 7, 17-19, 33-34; Dkt. 143, at 3-6, 16-17 n.11.

19.     Plaintiff's proposed class definition sought to certify a class respecting credit reports issued by all of the three major CRAs, presumably on the theory that if Credit One was transmitting such information to the CRAs, then such information would appear on the credit reports by each CRA.  However, in addition to its other arguments regarding class-wide harm, Credit One established in its Opposition that, starting in 2009, Experian (the largest of the three major CRAs) began to independently identify bankruptcy discharges and add them to the credit reports. Dkt. 118, at 18, 38-39.  Such action by Experian meant that even if Credit One's reporting could theoretically lead to the alleged harm of the reporting of "inaccurate information," no such harm would have actually suffered by a putative class member based on the issuance of an Experian credit report starting in 2009.

20.     Thus, while Credit One vigorously argued against the certification of any class, Credit One also argued that, if a class was certified, individuals could not be included in any such class by virtue of a credit report issued by Experian after Experian began reporting the discharge in 2009.  Dkt. 118, at 39; *see also* Dkt. 118, at 18 (arguing that Experian's practices meant that Plaintiff could not show actual loss on a class-wide basis through common evidence); *id.* at 38-39 (arguing that Experian's practices affect the ascertainability of the class); Dkt. 143, at 20-21 & n.17 (same).

21.     Presumably to address this issue, in certifying the class, the Court added the phrase "by Defendant" to the class definition, such that only Credit One's reporting of the discharge, and not the CRA's, would exclude a Plaintiff from the class.  While this may have made the class easier

11

to ascertain, it is inconsistent with the Plaintiff's theory of, and the Court's ruling on, the issue of class-wide injury. As a critical element of its decision to certify a class, the Court ruled that all class members had suffered the same injury: inaccurate credit reporting that had the effect of pressuring the class members to pay their discharged debt. Dkt. 176, at 68 ("The injury here was Credit One's violation of the discharge injunction by Credit One's systematic policy of refusing to correct its tradelines to pressure Anderson and the putative class members to pay their discharged debts."). To be clear, Credit One disputes that there was any actual injury in the form of "pressure to pay" (or otherwise), because there is no evidence in the record that any of the class members, let alone all of them, actually felt pressured to pay because of the credit reporting practice at issue. However, even under the Court's articulation of class-wide injury, individuals who would be class members by virtue of a credit report that reported the Credit One debt as "discharged" or "included in bankruptcy" (e.g., a post-2009 Experian report) could not have suffered this injury because such credit report would have included what the Court views as accurate credit reporting as to their Credit One tradeline. In other words, under the Court's standard of "injury," it should only matter *that* the discharge was reported, not who reported it.

22. Further, because the broadened class definition is materially different from the class Plaintiff sought to certify, Credit One was never afforded the opportunity to argue against certification of the class that was ultimately certified. Had Plaintiff requested the certification of the class that was certified, Credit One's arguments against certification would have been materially different and would have included an argument that Plaintiff's proposed class was inconsistent with their theory of class-wide harm. "Due process requires that there be an opportunity to present every available defense." *Lindsey v. Normet*, 405 U.S. 56, 66 (1972) (quoting *American Surety Co.* v. *Baldwin*, 287 U.S. 156, 168 (1932)); *accord Green v. New*

12

*Mexico*, 420 F.3d 1189 (10th Cir. 2005) ("Generally, the nonmoving party should be given an opportunity to respond to new material raised for the first time in the movant's reply," which "includes both new evidence and new legal arguments."); *cf. Wilmington Sav. Fund Soc'y, FSB v. Universitas Educ., LLC*, 164 F. Supp. 3d 273, 292 (D. Conn. 2016) ("the Court may consider new arguments as long as the opposing party has a fair opportunity to respond").

23. For the foregoing reasons, Credit One respectfully requests that the added term "by Defendant" be removed from the class definition pursuant to Rules 52(b) and/or 59(e) to correct a clear error and prevent manifest injustice.

### B. The Court Should Remove the Determination that Credit One's Minimum Liability Is $50 per Class Member for Uniform, Non-Compensatory Damages.

24. In the Order, the Court ordered that Credit One "shall be liable as set forth in the Corrected Decision to Plaintiff and each member of the Class for damages," including (*inter alia*) "uniform non-compensatory damages of between $50.00 and $1,000 per Class member." Dkt. 179, at 2; *see also* Dkt. 176, at 66, 81. While Credit One disagrees with the determination that uniform, non-compensatory damages can be awarded at all, that issue was fully briefed and argued by the parties. *See, e.g.*, Dkt. 118, at 2, 20-23, 27-28; Dkt. 143, at 16-19 & n.14; Dkt. 152, at 15-17. But the *amount* of any such damages was not briefed or heard by the Court.

25. By deciding that the minimum damages was $50 per class member, however, the Court has effectively awarded damages against Credit One without Credit One having had an opportunity to be heard on that issue. To illustrate, under Plaintiff's contention that the Class consists of approximately 288,000 individuals, the Court's ruling would effectively put a lower bound or floor on the damages award against Credit One of $14.4 million. Though Credit One believes the class is much smaller, in any event, Credit One should have an opportunity to be heard

13

on the amount of damages before any damages could be awarded, let alone a multi-million dollar damages award.

26. While in Plaintiff's briefing, and at the hearing on the class certification motion, there was argument and discussion on the range or quantum of damages, that argument was directed to the theory of damages and how it would be calculated, not towards the actual calculation of damages. Dkt. 109-1, at 19 (arguing, in the broader context that an award need not be exact, but rather only be a reasonable estimate of the damages suffered, that "the Court may look to the statutory damages available under the Fair Credit Reporting Act … to determine a reasonable approximation of the damages suffered"); Dkt. 150, at 33:20-34:15 (arguing that the Fair Credit Reporting Act is an appropriate yardstick); *id.* at 79:7-20 (the Court, commenting on whether a uniform per capita award, without an "actual showing of damages," stating "it's hard for me to see how that's fair to the defendant"). Moreover, Plaintiff conceded in its reply that the determination of damages was premature: "while such an argument is premature at the class certification stage, Plaintiff's proposed [uniform] damages model is in fact 'tethered to compensatory damages,' and thus consistent with the Second Circuit's directive in *Johnson v. Nextel Communications*, 780 F. 3d 128, 148 (2d Cir. 2015)." Dkt. 113, at 11.

27. Nor could the Court determine minimum damages based on the default judgment, as the Court acknowledged when it first announced that it would enter a default "on the merits, but not with respect to class certification or damages." *See supra* ¶ 3. "Upon entry of a default, a plaintiff's claims for damages generally must be established in an evidentiary proceeding at which the defendant is afforded the opportunity to contest the amount claimed." *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012) (citing *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989)). No such

14

evidentiary proceeding has yet occurred. Indeed, both the Decision and Order contemplate that such evidentiary proceeding will occur in the future. Dkt. 176, at 82; Dkt. 179, at 2. Because such evidentiary proceeding has not yet occurred, it was premature for the Court to determine a minimum amount of damages.

## CONCLUSION

For the reasons stated herein, Credit One respectfully requests that the Court alter or amend the Decision and Judgment as follows:

(i) Deletion of "by Credit One" from the class definition in the Decision;

(ii) Deletion of "by Defendant" from the class definition in the Order;

(iii) Deletion of "of between $50.00 and $1,000" from page 2 of the Order;

(iv) Removal from the Decision of the findings and/or conclusions relating to Credit One's liability for a mild non-compensatory sum between $50 and $1,000 for each class member, including but not limited to, language on pages 66 and 81 of the Decision;

And grant such other and further relief as is just and proper.

Dated: July 5, 2022

Respectfully submitted,

*/s/ Colin T. West*

J. Christopher Shore
Colin T. West
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10020
Phone: 212.819.8200
Fax: 212.354.8113
Email: cshore@whitecase.com
Email: cwest@whitecase.com

*Counsel to Credit One Bank, N.A.*

15