# Exhibit D

```
                     UNITED STATES BANKRUPTCY COURT
                     SOUTHERN DISTRICT OF NEW YORK


    IN RE:                          .    Case No.  14-22147-rdd
                                    .
    ORRIN S. ANDERSON,              .    Chapter 7
                                    .
                 Debtor.            .
    . . . . . . . . . . . . . . . . .
                                    .
    ORRIN S. ANDERSON, on behalf.        Adv. Proc. 15-08214-rdd
    of himself and all others       .
    similarly situated,             .
    aka ORRIN ANDERSON,             .
    aka ORRIN SCOTT ANDERSON,       .
                                    .
                 Plaintiff,         .
                                    .
         v.                         .
                                    .    300 Quarropas Street
    CREDIT ONE BANK, N.A. and       .    White Plains, NY 10601
    CREDIT ONE FINANCIAL,           .
                                    .    Thursday, October 12, 2017
                 Defendants.        .    10:40 a.m.
    . . . . . . . . . . . . . . . . .


     TRANSCRIPT OF ADVERSARY PROCEEDING: 15-08214-rdd ANDERSON V.
         CREDIT ONE BANK, N.A. ET AL, MOTION TO APPROVE CLASS
              CERTIFICATION AND TO APPOINT CLASS COUNSEL;
      ADVERSARY PROCEEDING: 15-08214-rdd ANDERSON V. CREDIT ONE
      BANK, N.A. ET AL PLAINTIFF'S MOTION TO CERTIFY THE CLASS;
      ADVERSARY PROCEEDING: 15-08214-rdd ANDERSON V. CREDIT ONE
                   BANK, N.A. ET AL MOTION TO STRIKE
                  BEFORE THE HONORABLE ROBERT D. DRAIN
                  UNITED STATES BANKRUPTCY COURT JUDGE


    APPEARANCES CONTINUED.


    Audio Operator:           Shea H., ECRO


    Transcription Company:    Access Transcripts, LLC
                              517 Dell Road
                              Landing, NJ  07850
                              (855) 873-2223
                              www.accesstranscripts.com
```

```
    Proceedings recorded by electronic sound recording,
    transcript produced by transcription service.
```

15-08241-jpm Doc 15023-4 Filed 10/12/15 Entered 10/12/15 13:09:44 Main Document
(Excerpt of October 12, 2017 Hearing Transcript) Pg 3 of 8

73

1  refused to change the credit reports.
2           There are obviously many other creditors that know
3  the law and comply with it.  Credit One chose not to do so.
4  Credit One even to today and argued yesterday in the Second
5  Circuit that a charge-off is an accurate -- an accurate
6  characterization of the status of the debt despite the fact
7  that the debt has been discharged in bankruptcy.
8           We think it's very clear under the Spokeo cases and
9  their progeny that we don't have to prove -- I mean, Strubel
10 clearly says, as Spokeo does, that I don't have to prove what
11 Mr. Tomback said I haven't proved, which is which person lost
12 their house, which person didn't -- couldn't get credit to buy
13 a car.  There may be people who have those allegations, and if
14 they want to collect on those allegations, they can remove --
15          THE COURT:  Opt out.
16          MR. CARPINELLO:  Opt out.  I'm sorry, thank you.
17 They can opt out of the class and they can get those additional
18 damages.  We're not asking for those damages class-wide.  We're
19 asking for some damage remedy for the fact that every single
20 person in the class for whom an injunction was entered, they
21 violated the -- that's default that's been established.  They
22 intentionally violated injunction for their protection.
23 They've suffered harm by virtue of that.  And clearly, under
24 the Strubel standard, this -- even a, quote, "procedural
25 irregularity" establishes harm if there's a substantial risk of

15-08284-jpm Doc 15023 Filed 10/12/15 Entered 10/12/15 13:09:44 Main Document
(Excerpt of October 12, 2017 Hearing Transcript) Pg 4 of 8

74

1 harm. And clearly there's a risk of harm. Ms. Watanabe was
2 asked, you know --
3       THE COURT: Can I move to damages as opposed to harm
4 for a second?
5       MR. CARPINELLO: Yes, absolutely.
6       THE COURT: Except for the people who paid and those
7 who opt out, you're proposing that the damages would be a flat
8 number calculated as against -- or by analogy to statutory
9 damages for incorrect credit reporting under the --
10       MR. CARPINELLO: Yes.
11       THE COURT: -- FCRA. And that clearly could be a
12 basis for a settlement. But when you're forcing -- when you
13 are imposing a damages remedy on a defendant, how does one come
14 up with such a number?
15       MR. CARPINELLO: It's exactly the same way that a
16 jury would come up with a number where there's defamation per
17 se. Someone, for example, says -- you know, defames a lawyer
18 and says, you know, well, he committed malpractice in three
19 cases. That's defamation per se. The lawyer bringing the case
20 doesn't have to show I lost four clients because of the
21 defamation. The lawyer comes in and establishes that there was
22 defamation, and the jury assesses -- makes a determination
23 based upon as -- just experiences in the community, what's an
24 appropriate number for the fact that incorrect information was
25 told about this particular lawyer? It doesn't have to be --

15-08284-jpm Doc 15023 Filed 10/12/15 Entered 10/12/15 03:31:09 Main Document
(Excerpt of October 12, 2015 Hearing Transcript)    Pg 5 of 8

75

1 you don't have to put in any evidence to show that lawyer lost
2 three clients or how many other clients, or his income was this
3 this year and this next year.
4     The jury simply determines what's an appropriate
5 number based upon the fact that this was a harmful statement
6 made about the lawyer, and they assess a number.  Doesn't have
7 to be geared to particular out-of-pocket loss.  And that's
8 exactly what you can do in a case where everybody in the class
9 has inaccurate, derogatory information told about them to third
10 parties.  What's an appropriate number?
11     And the case was very clear -- none of the cases we
12 cited are rebutted by Mr. Tomback -- that in assessing what's
13 an appropriate damage remedy, you can look at analogous
14 statutory damages established by Congress.  Congress has said
15 what's an appropriate -- what -- we're going to pick a number
16 that we think is appropriate for the fact that these credit
17 reports are inaccurate.  And you can use that analogy because
18 that's the harm that they suffered, an inaccurate -- I mean,
19 they violated an injunction.  It's much more serious than a --
20 this case is much more serious than an FCRA case because in
21 FCRA cases, you know, there's inaccurate information, there's
22 wilfully don't fix inaccurate information.  They did more than
23 that.  They violated a discharge injunction for the purpose of
24 collecting a debt.  That's established by the default.
25     But at least it gives you a yardstick by which you

15-10882-jpm Doc 15023 Filed 10/12/75/23 Entered 10/12/75/03 11:09:44 Main Exhibit Dent
(Excerpt of October 12, 2087 Hearing Transcript) Pg 6 of 8

81

1          MR. CARPINELLO:  It's compensate.
2          THE COURT:  -- I don't know what.  I -- a general
3  penalty for -- I think it is a penalty.  I mean, I don't know
4  how you --
5          MR. CARPINELLO:  Well, it can be compensatory damages
6  for an intangible harm --
7          THE COURT:  Right.
8          MR. CARPINELLO:  -- or punitive damages, which have
9  some -- what the courts call mild punitive damages --
10         THE COURT:  But I understand --
11         MR. CARPINELLO:  -- for a violation of the
12 injunction.
13         THE COURT:  There's some -- I understand.  Some
14 courts refer to mild punitive damages, like the Biery case that
15 you cited.
16         MR. CARPINELLO:  I'm sorry, Your Honor, I was --
17         THE COURT:  That's fine.
18         MR. CARPINELLO:  The Biery case?
19         THE COURT:  I understand that some courts in other
20 circuits refer to mild punitive damages even after the problem
21 has been corrected, like In re Biery 543 B.R. 267.
22         MR. CARPINELLO:  Yes.
23         THE COURT:  It was just referring to Sixth Circuit
24 case law.  But unless I'm missing something, I don't see that
25 remedy available in the Second Circuit.  I don't -- I mean,

15-10820-jpm Doc 15023-4 Filed 10/13/23 Entered 10/13/23 11:09:44 Exhibit Dent
(Excerpt of October 12, 2023 Hearing Transcript) Pg 7 of 8

82

```
 1  it's not -- I think it's an extra category.
 2           MR. CARPINELLO:  Well, I -- as you said before,
 3  that's not the issue for today, I take it.  I mean, I --
 4           THE COURT:  Well, I don't know.  I think it's not the
 5  harm issue, but it may be an issue with respect to where we're
 6  going in the case.  And I think I need to consider that type of
 7  issue when I, you know, consider whether questions of
 8  individual damage compilations will inevitably overwhelm
 9  questions common to the fact.
10           You're trying to get around that by saying, well, no,
11  we're going to have a uniform damages request.  In fact, that's
12  the only damages we're restitution is uniform damages.
13           MR. CARPINELLO:  Other than the disgorgement,
14  correct.
15           THE COURT:  Right.  So -- but if the law doesn't
16  permit that, then it seems to me we're just going to --
17  certifying as to liability and maybe this small subclass, and
18  as to attorneys' fees to be decided, and not anything else, and
19  leave that up to individuals.
20           MR. CARPINELLO:  Well, I'd like to be able to submit
21  additional authority on the damages issue.  I know we focused
22  on harm in the briefing and whether --
23           THE COURT:  Right.
24           MR. CARPINELLO:  -- there was a harm established.
25  But I'd like to be able to establish to Your Honor's
```

15-10882-jpm Doc 15023 Filed 10/12/75/23 Entered 10/12/75/03 11:09:44 Main Exhibit Document
(Excerpt of October 12, 2023 Hearing Transcript) Pg 8 of 8

83

1 satisfaction. There's a lot of case law that supports the
2 notion of damages that we would seek even outside of a
3 settlement context.
4        THE COURT: Mild punitive damages.
5        MR. CARPINELLO: Certainly mild punitive damages, but
6 also civil contempt that are compensatory -- civil contempt
7 damages that are compensatory but don't have to be tethered to
8 so-called --
9        THE COURT: Actual facts.
10       MR. CARPINELLO: -- out-of-pocket damages or --
11       THE COURT: Well, but I'm not talking -- I mean,
12 look, clearly if someone -- if you were able to put someone on
13 the stand to testify that anyone who got this type of response
14 would have experienced, you know, at least $200 of pain and
15 suffering, I guess you could do that. But I don't think that's
16 what you're seeking to do. You're basically just seeking to
17 say I should pick a number, I think. Maybe I'm misreading what
18 the relief you're seeking is.
19       MR. CARPINELLO: Based upon the fact that every
20 single person in the class suffered the harm of having an
21 inaccurate credit report reported to a third party.
22       THE COURT: But how would one go about deciding that
23 number?
24       MR. CARPINELLO: And I -- again, you can apply the
25 FCRA as a yardstick for the -- Congress made a determination