UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

In re Orinn S. Anderson,                                    Chapter 7

                                        Debtor.             Case No.: 14-22147 (JPM)

------------------------------------------------------------x

Orinn S. Anderson, *on behalf of himself and all
others similarly situated*,

                                                            Adv. Pro. No. 15-8214 (JPM)

                                        Plaintiffs,

        – v –

Credit One Bank, N.A.,

                                        Defendant.

------------------------------------------------------------x

## <u>MEMORANDUM OPINION & ORDER</u>

*A P E A R A N C E S:*

**BOIES SCHILLER FLEXNER LLP**
*Counsel for Orinn S. Anderson*
30 South Pearl Street, 11th Floor
Albany, New York 12207
By:     George F. Carpinello
        Adam R. Shaw
        Jeffrey S. Shelly

**CHARLES JUNTIKKA & ASSOCIATES LLP**
*Counsel for Orinn S. Anderson*
1250 Broadway, 24th Floor
New York, New York 10001
By:     Charles W. Juntikka

**WHITE & CASE LLP**
*Counsel for Credit One, N.A.*
1221 Avenue of the Americas
New York, New York 10020
By:     Robert J. Basil
        David A. Cohen

**JOHN P. MASTANDO III**
**UNITED STATES BANKRUPTCY JUDGE**[1]

This is an adversary proceeding arising in the bankruptcy case *In re: Orinn S. Anderson,* Case No. 14-22147 (January 31, 2014).  Before the Court is *Defendant's Motion to Decertify the Damages Class and Subclass* found at [Doc. 214] and [Doc. 215] (collectively, the "**Decertification Motion**") filed by the Defendant in this case, Credit One Bank, N.A. ("**Defendant**" or "**Credit One**").  The Decertification Motion seeks the decertification of the contempt class certified by this Court on June 3, 2022 (the Court's *Corrected Memorandum of Decision on Motions for Sanctions and Class Certification,* [Doc. 176], the "**Certification Decision**"), following the Second Circuit's decision in *Bruce v. Citigroup Inc.,* 75 F.4th 297 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 565 (2024).

Filed in response to the Decertification Motion is the *Memorandum of Law in Opposition to Defendant's Motion to Decertify the Class* filed by the Plaintiff and Debtor in this case, Orinn S. Anderson (the "**Plaintiff**").  [*See* Doc. 220] (the "**Decertification Opposition**").  Plaintiff argues generally that "[t]he Second Circuit's decision in *Bruce* does not in any way restrict this Court's ability to entertain a class for declaratory judgment relief."  [*Id.* at pp. 13–17] ("[N]othing in *Bruce* limits this Court's ability to issue a declaration on a class-wide basis that [Defendant's] conduct violated §§ 727(b) and 524(a).").

---

[1]    Unless otherwise specified, references to "[Doc. __]" are to filings entered in the adversary proceeding *Orinn S. Anderson, on behalf of himself and all others similarly situated v. Credit One Bank., N.A.*, Case No. 15-8214 (January 30, 2015).  References to "[Ch. 7 Dkt., Doc. __] are to filings entered in the bankruptcy case *In re: Orinn S. Anderson,* Case No. 14-22147 (January 31, 2014).

References to "Bankruptcy Code § __ or Code § __" are to Title 11 of the United States Code.  References to "Bankruptcy Rule __" are to the Federal Rules of Bankruptcy Procedure.  References to "Local Rule __" are to the Local Bankruptcy Rules for the Southern District of New York.

Also before the Court is Plaintiff's *Motion to Amend the Complaint* [Doc. 221] and the supporting *Memorandum of Law* [Doc. 222] (collectively with [Doc. 221], Plaintiff's "**Motion to Amend**"). The Motion to Amend seeks leave to amend the complaint [Doc. 1] (the "**Complaint**") to "modify the scope of the class consistent with *Bruce v. Citigroup, Inc.*, 75 F.4th 297 (2d Cir. 2023)." [Motion to Amend, Doc. 222, p. 5]. Defendant has opposed the Motion to Amend. [*See* Defendant's *Memorandum of Law in Opposition to Plaintiff's Motion for Leave to Amend the Complaint*, Doc. 232] (the "**Amendment Opposition**").

Finally, before the Court is Plaintiff's *Motion to Declare Certain Documents Not Privileged* [Doc. 199] (the "**Privilege Motion**"), filed under seal on August 5, 2022. The Privilege Motion argues, *inter alia*, that certain communications relied upon by Defendant's former counsel, Michael D Slodov, in his *Motion to Intervene for Limited Purpose and Motion for Leave to Submit Evidence for In Camera Inspection Only or in the Alternative, for Leave to File Under Seal* [Doc. 190] (the "**Slodov Motion**") are subject to the crime-fraud exception to attorney-client privilege (the communications at issue shall be hereinafter referred to as the "**Slodov Documents**"). [*See* Privilege Motion, Doc. 199, p. 1]. On August 31, 2022, Defendant filed under seal its *Opposition to Plaintiff's Motion to Declare Certain Documents Not Privileged* [Doc. 205] (hereinafter, the "**Privilege Opposition**"), which asserts that the communications contained in the Slodov Documents do not rise to the level of the crime-fraud exception. [Doc. 205, p. 23]. Plaintiff filed under seal a *Reply Brief in Further Support of Plaintiff's Motion to Declare Certain Documents Not Privileged* [Doc. 207] (the "**Privilege Reply**"), responding to Defendant's arguments and further emphasizing that the Slodov Documents should be deemed non-privileged. [*See generally* Doc. 207].

After careful consideration, and for the reasons set forth below in this Court's opinion (the

"**Opinion**"):

(1) The Motion to Decertify found at Docket. No. 214 and 215 is DENIED.

(2) The Motion to Amend found at Docket No. 221 and 222 is GRANTED IN PART and DENIED IN PART.

(3) The Privilege Motion filed under seal at Docket No. 199 is GRANTED IN PART and DENIED IN PART.


I.  <u>**BACKGROUND**</u>

A.  <u>**PLAINTIFF'S BANKRUPTCY**</u>

Plaintiff is a former Chapter 7 debtor from Mount Vernon, New York.  [*See* Ch. 7 Dkt.,

Doc. 1] (hereinafter the "**Petition**").  Defendant is a "banking association existing under the laws

of the United States with a place of business in Las Vegas, Nevada."  [Defendant's *Answer and*

*Affirmative Defenses*, Doc. 17, p. 2] (the "**Answer**").

Plaintiff filed for Chapter 7 relief on January 31, 2014.  [Petition, p. 2]; [*see also id.* at pp.

16–18] (Plaintiff's petition disclosing a number of unsecured, non-priority debts held by a variety

of creditors, including Defendant).  On May 5, 2014, Plaintiff received a *Discharge of Debtor*

*Order of Final Decree* (the "**Discharge Order**") providing, *inter alia*, that:

1.  The Debtor is released from all dischargeable debts.

2.  Any judgment not obtained in this court is null and void as to the personal liability of the Debtor(s) regarding the following:

(a) debts dischargeable under 11 U.S.C. § 523(a);

(b) debts alleged to be excepted from discharge under 11 U.S.C. § 523(a)(2), (4), (6) or (15) unless determined by this court to be nondischargeable;

(c) debts determined by this court to be discharged.

3.  All creditors whose debts are discharged by this order or whose judgments are declared null and void in 2 above, are *enjoined from instituting or continuing any*

3

*action, employing any process or engaging in any act to collect such debts* as personal liabilities of the Debtor(s).

[Ch. 11 Dkt., Doc. 9, p. 1] (emphasis added).[2]  Plaintiff's bankruptcy case was thereafter closed.

[*Id.*].

The Discharge Order was issued pursuant to a standard practice in Chapter 7 cases in which a debtor obtains a discharge, whereby a discharge order is issued that functions as an injunction against collection of discharged debts under Section 524(a)(2) of the Bankruptcy Code.  [*See* Certification Decision, Doc. 176, p. 50] (hereinafter the "**Section 524(a)(2) Injunction**").  Section 524(a) states in relevant part:

(a) A discharge in a case under this title—

(1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727, 944, 1141, 1192, 1228, or 1328 of this title, whether or not discharge of such debt is waived;

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived . . .

11 U.S.C. § 524(a)(1)–(2).  On October 17, 2014, Plaintiff filed a *Motion to Reopen Chapter 7 Case Due to the Violation of the Discharge Injunction.*  [*See* Ch. 11 Dkt., Doc. 11] (hereinafter "**Motion to Reopen**").  As relevant here, the Motion to Reopen alleged:

On or about 8/23/14, subsequent to the granting and mailing of the Notice of Discharge to [Defendant], [Plaintiff] acting with the assistance of counsel, requested copies of his credit reports from Trans Union Equifax to ensure that the credit reports would be correct after receiving his discharge. In response to [Plaintiff's] request for his credit reports, the Credit Reporting Agencies sent copies of the credit reports to [Plaintiff]. Credit One reported [Plaintiff's] account as

---

[2]      The Court entered an *Amended Discharge of Debtor Order of Final Decree* on September 14, 2017, that "amended [the Discharge Order] *nunc pro tunc* to comply with the Bankruptcy Code in effect at the time the [D]ischarge [O]rder was entered" in accordance with the provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.  [*See* Ch. 11 Dkt., Doc. 81, p. 1] (noting that the Discharge Order "was not in compliance with The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 due to a clerical error").

"charged-off" on the Trans Union and Equifax credit reports. These notations indicate that the debt is still due and owing . . . Upon information and belief, Credit One uses the threat of negative credit reporting as a tool to collect debts prior to the filing of bankruptcy.  Credit card companies generally use the threat of ruining debtors' credit reports to pressure them into paying overdue debts. Credit One has continued its collection efforts by falsely reporting the debt as due and owing on the Debtor's credit reports even after the debt was discharged in the Debtor's bankruptcy proceeding.

[*Id.* at pp. 2–43]; [*see also id.* at p. 5] (alleging further that Defendant "has a deliberate policy of refusing to correct credit reports . . . when asked to do so by debtors and the aforesaid policy constitutes a reckless and willful disregard of the bankruptcy laws, including the discharge injunction issued by this Court").  The Court granted the Motion to Reopen on December 12, 2014. [Ch. 11 Dkt., Doc. 26].

## B.  <u>COMMENCEMENT OF THE ADVERSARY PROCEEDING</u>

Plaintiff initiated the instant adversary proceeding on January 30, 2015.  [*See generally* Complaint, Doc. 1].  Plaintiff's Complaint named Defendant and its affiliate as defendants and made allegations similar to those made in the Motion to Reopen.  *Compare* [Ch. 11 Dkt., Doc. 11, pp. 2–5] *with* [Doc. 1, pp. 3–4] (claiming that Defendant maintains a "policy of refusing to update the bankruptcy status of discharged accounts [that] constitutes willful acts to collect discharged debts").  The Complaint also asserted a single cause of action for contempt[3] for Defendant's failure to abide by the Section 524(a)(2) Injunction and sought certification of the following putative class:

All individuals who, after May 3, 2007, have had a consumer credit report relating to them prepared by any of the credit reporting agencies in which one or more of their tradeline accounts or debts with Defendants was not reported as discharged despite the fact that such debts had been discharged as a result of their bankruptcy under Chapter 7 of the Bankruptcy Code.

---

[3]     The Court acknowledges that Plaintiff now argues that he always asserted a declaratory judgment claim as well.  [*See* Motion to Amend, Doc. 222, pp. 2–3].

[Complaint, Doc. 1, pp. 15, 17][4]; [*see also id.* at p. 17] ("Both pursuant to its inherent authority

and pursuant to § 105 of the Bankruptcy Code, this Court may award appropriate declaratory and

injunctive relief and award compensatory and punitive damages, attorney's fees and costs . . .").

On February 27, 2015, Sessions, Fishman, Nathan & Israel, LLC (the "**Sessions Firm**")

filed a letter regarding discovery and noting that it was counsel to Defendant.  [*See* Doc. 6].

## C.  DEFENDANT'S MOTIONS TO COMPEL ARBITRATION, STRIKE CLASS ALLEGATIONS, OR DISMISS/STAY

On March 3, 2015, Defendant filed the *Motions to Compel Arbitration, to Strike Class*

*Allegations*, *to Dismiss or Stay* [Doc. 7] (the "**March Motion**").  The March Motion made three

principal arguments with respect to Plaintiff's claim for contempt:

(i)      first, Defendant argued that Plaintiff must be compelled to "arbitrate all claims
         asserted [] in the Complaint, as the parties to this action entered into an agreement
         that claims related to collection or credit reporting would be resolved in binding
         arbitration on an individual basis," [*id.* at pp. 10, 18–19] ("The Federal Arbitration
         Act authorizes the Court to compel arbitration" because, *inter alia*, Plaintiff's
         claims "are not based on provisions of the Bankruptcy Code that are remotely in
         conflict with the Arbitration Act, [and] it [therefore] cannot be said that arbitration
         of the Plaintiff's claim would 'necessarily jeopardize' the objectives of the
         Bankruptcy Code.");

(ii)     second, Defendant maintained that "[a]n order striking the class allegations is
         required" because Plaintiff "waived the right to proceed with any claims against
         Defendants on other than an individual basis; and because the claims are time
         barred pursuant to 28 U.S.C. § 1658(a)," [*id.* at p. 1]; and

---

[4]      A tradeline is a description of a debtor's credit status prepared by a creditor and provided by that creditor to
credit reporting agencies.  *See Bruce v. Citigroup Inc.,* 75 F.4th 297, 300 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 565
(2024).

(iii)     third, Defendant argued that dismissal pursuant to Rules 12(b)(1), 12(b)(6), and 21
was appropriate because, *inter alia*, "28 U.S.C. § 1334(c) prohibits any court other
than the district court in which [a bankruptcy] case under Title 11 is commenced or
pending . . . from exercising jurisdiction over property of the estate," and because
"there is no private right of action for an alleged violation of the discharge
injunction," *id.* at pp. 1–2.[5]

The Court largely denied[6] the March Motion for reasons explained at a hearing held on

May 5, 2015. [*See generally* Doc. 16] (the transcript from the May 21, 2015 hearing, hereinafter

the "**Dismissal Tr.**"); [Doc. 15] (the Order resulting from the Court's ruling with respect to the

March Motion, hereinafter the "**Dismissal Order**").   With respect to Defendant's request for

arbitration, the Court held that the Federal Arbitration Act did not mandate the arbitration of

Plaintiff's contempt claim, reasoning:

> [Plaintiff's claim] is [] fundamentally core. There's nothing more fundamental than
> the discharge, as every court that has considered this issue has ruled . . . [and] [a]s
> far as congressional intent is concerned, I have to believe that Congress still thinks
> that debtors who have actually earned the discharge, the honest but unfortunate
> debtor, should not be put to having to come up with the cost to initiate an arbitration
> in front of non-judges, which as I said in an aside in [a prior decision] is completely
> contradictory to the Supreme Court's case law . . . [Defendant is] not going to win
> on this one . . . Section 105 . . . by its own terms, provides for enforcement of
> individual provisions of the Bankruptcy Code, which are --clearly include Section
> 524 and 527 . . .  [I]t's hard for me to believe that Congress, where there was an
> allegation that the discharge is being violated, would so jeopardize the fresh start
> as to require the debtor to shell out the cost of an arbitration and leave it up to the
> arbitrator and/or the good graces of the credit card company . . . .

---

[5]     With respect to its third argument, Defendant also argued that  dismissal pursuant to Rules 12(b)(1), 12(b)(6),
and 21 was appropriate because the Court "lacks subject matter jurisdiction to entertain non-core class action claims
involving the bankrupt estates of other debtors and debtor estates beyond the territorial boundaries of the Southern
District of New York," and because " the relief sought in this action in the form of declaratory and injunctive relief is
not available."  [March Motion, Doc. 7, pp. 1–2].

[6]     In addition to the arguments enumerated above, the March Motion argued that Defendant's affiliate, which
was named as a defendant in Plaintiff's Complaint, should be dismissed from this adversary proceeding because
"Plaintiff's motion to reopen as well as the Court's order granting leave to file an adversary complaint made no
mention of Plaintiff's claim against [that affiliate]."  [March Motion, Doc. 7, p. 34].  The Court agreed with that
argument.  [*See* Dismissal Tr., Doc. 16, p. 67] ("[This bankruptcy] wasn't reopened to permit suit of [the affiliate], so
that aspect of the [March] [M]otion's granted.").

[Dismissal Tr., Doc. 16, pp. 48–50].  Defendant appealed the Dismissal Order decision as to the

arbitration issue to the United States District Court for the Southern District of New York (the

"**District Court**") on May 21, 2015.  [*See generally* Doc. 19] (Defendant's *Notice of Appeal*).[7]

The District Court affirmed the Dismissal Order on appeal.  [*See generally* Doc. 72]

(hereinafter "**District Court Decision**").  Relying primarily on the Second Circuit's decision in

*MBNA America Bank, N.A. v. Hill*, 436 F.3d 104 (2d Cir. 2006), the District Court reasoned:

> [A]rbitrating Plaintiffs-Appellees' § 524 claims would necessarily jeopardize the
> objectives of the Bankruptcy Code. . . [because, *inter alia*,] [t]he Bankruptcy Code
> stems from "Congress's determination, rooted in Article 1, Section 8 of the
> Constitution, that debtors should be able to discharge their debts and creditors
> should have the benefit of uniform bankruptcy laws premised on that ultimate quid
> pro quo."  Accordingly, "Congress made it a central purpose of the [B]ankruptcy
> [C]ode to give debtors a fresh start in life and a clear field for future effort
> unburdened by the existence of old debts."  The effectiveness of a bankruptcy
> proceeding therefore relies exclusively on a functioning discharge.  In order words,
> only through enforcement of the discharge order can the discharge provided by the
> Bankruptcy Court provide the debtor with a "fresh start," a central objective to the
> bankruptcy laws . . .

[District Court Decision, Doc. 72, pp. 10–11]. The District Court further explained:

> [Additionally], uniform application of the Bankruptcy Code is furthered by federal,
> class action litigation . . . Here, a number of debtors assert claims under virtually
> identical agreements with one creditor—Credit One.  Given that each individual
> claim would be subject to separate arbitration, this could create wildly inconsistent
> results . . . It is certainly plausible, if not probable, that . . . inconsistent decisions[]
> would manifest in the instant case if the disputes were to be sent to separate
> arbitrations.  Thus, multiple violations of a discharge injunction by one creditor are
> more efficiently and uniformly decided by federal litigation.

---

[7]    Although Defendant's *Notice of Appeal* designated several issues for review, [*see generally* Doc. 19], insofar
as the Dismissal Order was concerned, the only issue raised by Defendant before the District Court was the argument
regarding arbitration.  *See In Re: Orrin S. Anderson*, Case No. 15-cv-04227 (Southern District of New York, June 2,
2015) [Doc. 33, p. 1] (describing the "Statement of Issues" as being "[w]hether the Bankruptcy Court erred by deny
Credit One's Motion to Compel Arbitration").

[District Court Decision, Doc. 72, pp. 16–17]. For these reasons, the District Court concluded that that this Court "had discretion to refuse to compel arbitration . . . and th[ere] [was] no clear error in that aspect of th[is] [] Court's decision." *Id.* at pp. 17–18.

### D. *ANDERSON I*

Defendant appealed the District Court Decision on July 13, 2016. *See In re Anderson*, Case No. 15-cv-4227 (Southern District of New York, 2015) [Doc. 52]. On appeal, the Second Circuit affirmed the District Court Decision. *See generally In re Anderson,* 884 F.3d 382 (2d Cir. 2018), *cert. denied,* 139 S.Ct. 144 (2018) ("***Anderson I***"). The Second Circuit found that this Court "did not abuse its discretion by denying [Defendant's] motion to compel arbitration in this case," reasoning:

> It is well established that the discharge is the foundation upon which all other portions of the Bankruptcy Code are built. We have observed that "[b]ankruptcy allows honest but unfortunate debtors an opportunity to reorder their financial affairs and get a fresh start. This is accomplished through the statutory discharge of preexisting debts" . . . . Th[is] "fresh start" is only possible if the discharge injunction crafted by Congress and issued by the bankruptcy court is fully heeded by creditors and prevents their further collection efforts. Violations of the injunction damage the foundation on which the debtor's fresh start is built.
>
> Following the logic of [prior cases], we find that arbitration of a claim based on an alleged violation of Section 524(a)(2) would "seriously jeopardize a particular core bankruptcy proceeding." We come to this conclusion because 1) the discharge injunction is integral to the bankruptcy court's ability to provide debtors with the fresh start that is the very purpose of the Code; 2) the claim regards an ongoing bankruptcy matter that requires continuing court supervision; and 3) the equitable powers of the bankruptcy court to enforce its own injunctions are central to the structure of the Code. The fact that [Plaintiff's] claim comes in the form of a putative class action does not undermine this conclusion . . . Accordingly . . . [w]e hold that the bankruptcy court did not abuse its discretion by denying [Defendant's] motion to compel arbitration in this case.

*Id.* at 388–392.

## E.  **THE CERTIFICATION DECISION**

### i.  *Discovery Proceedings*

On May 21, 2015 (prior to the Second Circuit's decision in *Anderson I*), Defendant filed the

Answer.  [*See generally* Answer, Doc. 17].  The Answer generally denied the Complaint's factual

allegations and raised, *inter alia*, the following affirmative defenses:

(i)     that "Plaintiff's claims are subject to mandatory arbitration," [*id.* at p. 7];

(ii)    that "[a]ll right, title and interest in Plaintiff's account and the receivable with
        [Defendant] was sold in May, 2012 . . . [and] [f]ollowing [the] charge off of the
        Plaintiff's account on March 27, 2012, [Defendant] retained no economic rights
        associated with Plaintiff's account or the receivable," [*id.*];

(iii)   that this Court "lacks subject matter jurisdiction to entertain this putative
        nationwide class action premised on either the alleged violation of bankruptcy
        discharge orders entered by other courts, the alleged violation of 11 U.S.C. § 524(a)
        occurring outside this district, and over non-core claims of putative class members,"
        [*id.* at p. 8]; and

(iv)    that "[t]he appearance of 'charge off' on a zero balance sold account tradeline on a
        bankrupt debtor's post-discharge credit report does not constitute an 'act, to collect,
        recover or offset any such debt as a personal liability of the debtor'" within the
        meaning of Section 524 of the Bankruptcy Code, [*id.* at p. 10].

The parties thereafter engaged in a contentious discovery process.[8]  As relevant here, both

Plaintiff and the United States Trustee sought discovery regarding Defendant's relationship with

the purported third parties that purchased the discharged debt of the class, including, as this Court

later described:

> the underlying buy/sell documents, whether and how [Defendant] retained any
> remaining agency or economic interest or credit reporting role after its sale of the
> debt, the degree of affiliation between buyer and seller, as well as any policies or
> procedures of [Defendant] or communications between it and its debt buyers,
> including its affiliates, and/or credit reporting agencies pertaining to credit
> reporting of discharged debt -- all of which would illuminate the strength or

---

[8]      Following a meet-and-confer, the parties filed a Rule 26(f) Joint Report on April 30, 2015 that, *inter alia*, set
forth a number of deadlines for fact discovery primarily with respect to the merits of Plaintiff's contempt claim.  [*See*
Doc. 14, pp. 5–6] (providing that "[f]act discovery shall be completed by December 31, 2015").

> weakness of [Defendant's] third through fifth defenses discussed above.  [] [S]uch discovery [was intended to] shed light on the meaningfulness of [Defendant's] "charge off" of the debt: a systematic policy of transferring distressed debt, especially to an affiliate, [which would] at least suggest[] that the owners of [Defendant] and its affiliated transferee(s) may have believed the debt to be collectible notwithstanding [Defendant's] accounting write off, at least opening the door to the temptation to improperly pressure obligors to pay by refusing to correct their credit reports after they received a bankruptcy discharge.

[Certification Decision, Doc. 176, pp. 24–25].  As discussed below, Defendant did not comply with discovery on these issues.  [*See id.* at p. 22] ("[Defendant] consistently thwarted [] discovery on those issues -- including in the face of the Court's orders directing it to provide such discovery . . . .").

> On May 29, 2014, Plaintiff filed a letter with the Court that read:

> [F]ollowing [the Dismissal Order], Plaintiff served a deposition notice on [Defendant] under Federal Rule of Civil Procedure 30(b)(6). The proposed [] deposition is directed at the discovery of information regarding [Defendant's] organizational structure and the identification of the existence, location and format of discoverable documents and information and is intended to assist Plaintiffs in making its future discovery efforts more focused and efficient . . .

> On May 21, 2015, [Defendant] served a 25-page response to the deposition notice that objected to essentially every topic raised by Plaintiffs.  The parties met and conferred on May 26, 2015 with regard to [Defendant's] objections to the deposition notice. While [Defendant] has raised objections to the scope, location and topics of the 30(b)(6) deposition notice, the fundamental disagreement between the parties relates to the timing of the deposition. [Defendant] has taken the position that it will not offer a witness for the deposition until the District Court has ruled on its appeal of this Court's ruling that, *inter alia*, denied [Defendant's] motion for a stay [pending its appeal of the Dismissal Order].

> Plaintiff contends that [Defendant's] position is improper and in direct contravention of the rulings of this Court.

[Doc. 24].  That same day, Defendant filed a *Motion for Protective Order* [Doc. 23] (the "**Protective Motion**") arguing, *inter alia*, that:

> no discovery should proceed . . . [and that Defendant] should not have to provide discovery that was "irrelevant" based on (a) its arbitration arguments, (b) its argument that most, and perhaps all, of Plaintiff's claims were time-barred, (c) its

argument that a report of "charged off, zero balance" allegedly "reflect[s] the fact that the consumer is no longer liable for the discharged debt," and (d) its argument that in any event it sold the debt at issue before the discharge . . . .

[*See* Certification Decision, Doc. 176, p. 27] [9] (noting that "the first three points [were] denied by the [Dismissal Order] and the last [was] clearly a fair subject for discovery").

The Court held a hearing with respect to the Protective Motion on June 15, 2015. [*See generally* Doc. 34] (the transcript from that proceeding). The Court denied nearly every request made in the Protective Motion. [10] Noting that many of the arguments made in the Protective Motion had already been addressed—and denied—in the Dismissal Order, the Court thereafter engaged in the following colloquy with then-counsel for Defendant, Michael Slodov:

> There will be no -- no, let me be absolutely clear on this. This is in capital letters, N-O, withholding of documents on the basis of a position that's contrary to any ruling I have given in this case that permits this case to go forward. You are on notice right now that if you do that, you'll be subject to Rule 11. The arrogance is outrageous . . . [and] you need to be reasonable on this going forward. [] [I]t is crystal clear that [Defendant's] practices and policies dealing with the sale of debt that's subsequently discharged and credit reporting are front and center in this discovery [process] . . . There could be nothing more front and center than that topic.

---

[9]     The Protective Motion also argued that:

   (i)     Plaintiff's 30(b)(6) deposition of Defendant in New York "would result in [an] undue burden" because Defendant's principal place of business was in Las Vegas, Nevada, [Doc. 23, pp. 7–8];

   (ii)    the "scope of [Plaintiff's] inquiry is so broad[] that 'the burden or expense of the proposed discovery outweighs its likely benefit,'" [*id.* at p. 18];

   (iii)   Plaintiff's discovery requests were "not relevant and the scope of inquiry [was] overbroad" because Plaintiff's individual contempt claim was meritless, [*id.* at pp. 11–14]; and, relatedly,

   (iv)    Plaintiff "lack[ed] standing to pursue discovery on behalf of a class" because, *inter alia*, Plaintiff "contractually waived the right to pursue a class against [Defendant]," [*id.* at pp. 15–17].

[10]    The Court granted the Protective Motion to the extent it requested that the 30(b)(6) deposition be held in Las Vegas. [Doc. 34, 40:10–41:2].

[Doc. 34, 45:25–46:6, 46:10–14, 47:1–2].  The Court also advised Mr. Slodov that, if Defendant continued to object to discovery requests on the basis of arguments that were rejected by the Dismissal Order, "it will not be pleasant."  [*Id.* at 47:8–9].

Despite the Court's admonishment, the parties subsequently exchanged a number of letters regarding Defendant's objections to Plaintiff's discovery requests—objections that were largely premised on arguments that the Court had already rejected.[11]  Notably, many of these letters were attached to a letter to the Court filed by Defendant on November 25, 2015, which stated unequivocally that "there are no 'withheld' documents or other documents the Court could order [Defendant] to produce . . . ."  [*See generally* Doc. 41]; [*see also id.* at p. 10] ("In response [to Plaintiff's request for additional documents], [Defendant] advised that it has no additional responsive documents to any of these documents [*sic*] requests . . . [Defendant] cannot be compelled to create documents it does not have, or produce documents it does not possess.").

At the request of Plaintiff's counsel, the Court held a discovery conference on December 9, 2015.  [*See generally* Doc. 45] (transcript from that proceeding).  Plaintiff's counsel represented that Defendant had failed to produce any documents regarding its "refusal to change credit reports or update credit reports when someone's debt has been discharged in bankruptcy."  [Doc. 45, p. 10].  The Court then engaged in the following discussion with Mr. Slodov:

The Court: Is there any other responsive –

---

[11]      *See, e.g.*, [Doc. 41-1, a letter from Plaintiff's counsel dated September 11, 2015] ("In no uncertain terms, [the Court] said there i[s] absolutely no basis to withhold 'documents based on issues you've already lost on' . . . [but] [Defendant] now withholds the very documents the Court ordered be produced . . . [Defendant's] objections fly directly in the face of [the Court's] ruling."); [Doc. 41-2, letter from then-counsel for Defendant dated September 18, 2015] ("[Defendant's] defenses . . . are not foreclosed by any prior ruling by the Court . . . and nothing previously filed or addressed by [the Court] forecloses [Defendant's] objections . . . ."); [Doc. 41-3, letter from Plaintiff's counsel dated September 28, 2015] ("[V]irtually every one of Plaintiffs Document Requests relate to [Defendant's] policies and procedures concerning its treatment of consumer tradelines.  In response, [Defendant] has produced just the contracts for the sale or transfer of such tradelines, and compliance and reporting manuals for [Defendant's] overall business."); [Doc. 41-4, letter from then-counsel to Defendant dated October 1, 2015] ("[Defendant] is not in possession, custody or control over the documents of these entities, [Defendant] has no right, authority, or practical ability to obtain the documents you seek, and therefore declines your [discovery] request.").

Mr. Slodov: There's no other documents.

The Court: There's no other responsive documents?

Mr. Slodov: That's what I've been told, Your Honor.

The Court: No, no. I want that under oath from the person responding to the production. That needs to be -- it's implicit, but I think I need it . . . And, of course, obviously if there is any later introduction of any sort of policy, then there will be hell to pay.  So that just needs to be done. . .  It's implicit in every document production that it's completely responsive.  All right?  But from your answer to me, I got the impression that you thought it wasn't, so I want it under oath that [you] have diligently pursued [discovery] with [your] client and they are prepared and they will state under oath that they have no responsive documents.

Mr. Slodov: You want me to sign the declaration –

The Court: No, no, no. I want you to get that from them.

Mr. Slodov: Okay . . . [but] [Plaintiff's] question[s] [are] the wrong question[s] in this case . . .

The Court: [Y]ou are not allowed to pick and choose what you think the issues are . .  I've had enough . . . [Y]ou've heard it twice now.  If you do this one more time, if you pick and choose what you are free to respond to on discovery based on your sense of what the merits are, I will rule against your company. I will draw an adverse interest right then, right there and then.  This is an absolute disgrace, that position . . . Are we clear?

Mr. Slodov: Yes, Your Honor. . . .

[*Id.* at pp. 13:17–14:14, 16:9–17:11]; [*see also id.* at 17] ("The Court: I know what the issue is in this case, and so do you, and you will respond, and you'll do it through your client under oath, and if they don't have the documents, fine, we'll move on.  If it turns out they did, there will be hell to pay.").

On January 18, 2016, Defendant executed a verification under penalty of perjury through its Senior Vice President of Risk Management and Rule 30(b)(6) witness, Helen Lanham ("**Ms.**

Lanham"). [Doc. 78-12] (the "**Lanham Affidavit**"). The Lanham Affidavit read in pertinent part:

> A. To the best of my information, knowledge, and belief, Credit One Bank N.A.'s responses to Plaintiff Orin Anderson's first request for production of documents are true and correct.
>
> B. The documents included among the 2,203 pages of materials produced are the only documents responsive to the requests that have been located.
>
> C. I am not aware of any other responsive documents in the possession, custody, or control of Credit One Bank N.A., which have not been produced.

[*Id.* at p. 3]. The position taken by the Lanham Affidavit—that Defendant had provided Plaintiff with every responsive document in Defendant's "possession, custody, or control"—was reiterated repeatedly to the Court, both by Mr. Slodov and Ms. Lanham.[12]

However, following the submission of the Lanham Affidavit, Plaintiff's counsel conducted further depositions, "in which Credit One employees stated that their documents had not been searched and identified documents that had not been produced or listed on the privilege log." [Certification Decision, Doc. 176, p. 33]. On August 8, 2016, Plaintiff filed a *Motion to Compel and for Sanctions* (the "**Sanctions Motion**"), asserting that "[d]espite repeated warnings from this Court, Credit One continues to disregard the requirements of the Federal Rules of Civil Procedure and this Court's explicit orders, and refuses to produce responsive documents and a knowledgeable corporate designee for deposition." [*See* Doc. 78, p. 1]. The Court held a hearing on the Sanctions Motion on September 22, 2016. [*See* Doc. 89] (the transcript from that hearing). At the September

---

[12]    [*See, e.g.*, Doc. 81-18, pp. 15–17] (where, at a hearing held February 22, 2016, Mr. Slodov states that "I think it's disingenuous for [P]laintiff's counsel to say that they've gotten next to nothing from [Defendant]. [Defendant] has produced what it has"); [Doc. 76-1] (where, in another declaration filed under penalty of perjury, Ms. Lanham details the "steps [] undertaken to locate responsive documents and records"); [Doc. 76] (where, in a letter to the Court dated July 18, 2016, Mr. Slodov states that Defendant "has produced all documents responsive to Plaintiff's July 2015 document requests"); [Doc. 85, p. 32] (where Mr. Slodov reiterates that "**CREDIT ONE HAS PRODUCED ALL RESPONSIVE DOCUMENTS**") (emphasis in original).

22, 2016 hearing, Defendant's counsel admitted that Defendant had not actually conducted a complete search for responsive documents, even though Defendant had previously represented under oath that Defendant had:

> Mr. Slodov: My understanding, Your Honor, after going through the process of securing the amended verification, [is] that Credit One did not do any email searches.
>
> The Court: None.
>
> Mr. Slodov: None.
>
> The Court: No email searches.
>
> Mr. Slodov: 'None.
>
> The Court: Even though the amended verification says -- refers to email, the central email?
>
> Mr. Slodov: It refers to it, but it doesn't say it was searched.
>
> The Court: Well, I'm glad we're hearing that now two hours into this hearing. I'm astonished. What's the reason for that?
>
> Mr. Slodov: It had to do with in-house counsel, who is no longer at Credit One Bank, who dropped the ball on that.
>
> The Court: And when did you learn this?
>
> Mr. Slodov: It would have been in March.
>
> The Court: In March?
>
> Mr. Slodov: Yep.
>
> The Court: And I just learned of it now. . . .

[Certification Decision, Doc. 176, p. 38]. Following that hearing on the Sanctions Motion, on October 12, 2016, Mr. Slodov and the Sessions firm (collectively "**Debtor's Prior Counsel**") moved to withdraw from their representation of Defendant. [*See* Doc. 90] (*Defendant's Motion to Substitute Attorney White & Case LLP for Sessions, Fishman, Nathan & Israel, LLC*, dated

October 12, 2016, the "**Counsel Substitution Motion**"). The Court granted the Counsel Substitution Motion by order entered October 18, 2016. [*See* Doc. 95].

### ii.    *Sanctions and Class Certification*

Plaintiff thereafter filed his *Motion for Class Certification and to Appoint Class Counsel* [Doc. 109] (the "Class Motion") on April 27, 2017. The Class Motion was heard at a hearing held on October 12, 2017. [*See generally* Doc. 150] (the "**October 12, 2017 Hr'g Tr.**," and said hearing hereinafter the "**October 12, 2017 Hearing**"). While the Class Motion was pending, Plaintiff and Defendant attempted to settle the dispute; however such settlement negotiations were unsuccessful. [*See* Doc. 158]. The parties then attempted mediation, which was also unsuccessful. [*See* Doc. 161].

The Court ultimately granted both the Sanctions Motion and the Class Motion in the Certification Decision issued June 3, 2022. [*See generally* Certification Decision, Doc. 176]. With respect to the Class Motion, after engaging in a "rigorous analysis" under Federal Rule of Civil Procedure 23 [*see id.* p. 66], the Court certified a class (the "**Main Class**") *comprised* of:

> all individuals who after May 3, 2007, have had a consumer credit report relating to them prepared by any of the credit reporting agencies in which one or more of their tradeline accounts or debts with [Defendant] was not reported by [Defendant] as "discharged" or "included in bankruptcy" but, rather, as "charged off" or "-$0-balance" notwithstanding the fact that such debt(s) had been discharged as a result of their bankruptcy under chapter 7 of the Bankruptcy Code; provided, that such debt(s) shall have been (i) unsecured and (ii) not the subject of a valid and enforceable reaffirmation agreement . . . .

[*Id.* at p. 81]. The Court also certified a subclass (the "**Sub-Class**") "compris[ed] of the [] people who . . . paid any of such debt(s), with the members of such sub-class to be entitled to repayment of such debt payments in addition to [] sanctions . . . if such repayment is shown to have been proximately caused by [Defendant's] credit reporting policy." [*Id.* at pp. 81–82].

With respect to the Sanctions Motion, the Court found that the imposition of a default judgment was appropriate given Defendant's prolonged, willful misconduct throughout the course of discovery.[13]  As a result, Defendant was deemed to have admitted "all [the] well-pleaded factual allegations in [Plaintiff's] [C]omplaint, except for those relating to damages."[14]  [*Id.* at p. 48].  The Court thereafter found that Defendant was in contempt of both Plaintiff's individual discharge injunction and the injunctions of the class.[15]  [*Id.* at p. 46].  For this reason, the Court awarded the Class two forms of monetary recovery:

(i)    "[attorneys'] fees and expenses," a sanction the Court found "appropriate" given Defendant's "systematic violation of [each plaintiff's] discharge injunction," [*id.* at p. 60, 62]; and

---

[13]    [*See* Certification Order, Doc. 176, p. 4] ("[T]he Court will enter a default judgment on liability and a partial judgment on sanctions against [Defendant] in favor of Plaintiff under Fed. R. Civ. P. 37(b)(2)(A)(vi), incorporated by Fed. R. Bankr. P. 7037"); [*see also id* at p. 41] ("[Defendant's] conduct violated the Court's July 15, 2015, December 9, 2015, and February 22, 2016 bench orders on discovery, which were clear and which [Defendant's] counsel acknowledged he understood.  Those orders were accompanied by warnings of severe consequences to [Defendant] if they were not complied with."); [*id.* at pp. 41–42] ("[Defendant] falsely stated to the Court nine different times . . . that it had provided a complete response to Plaintiff's document requests.  The falsity of these representations was neither minor nor a matter of excusable neglect; indeed, [Defendant] has not offered any excuse for its knowing failures.")

[14]    [*See id.* at p. 48] ("The consequence of that default judgment is the deemed admission of all well-pleaded factual allegations in the complaint, *except for those relating to damages*.") (emphasis added); [*see also id.* at p. 66] ("[W]hile as a general principle the factual allegations in a complaint are deemed admitted upon the defendant's default, Fed. R. Civ. P. 23(c), incorporated by Fed. R. Bankr. P. 7026, imposes an independent duty to satisfy the requirements for class certification after employing the 'rigorous analysis' required by that Rule.").

[15]    Notably, the Court also observed that:

[Defendant's] failure to provide a legitimate reason, notwithstanding repeated opportunities to do so, for its policy not to correct its tradelines to reflect the bankruptcy discharge, coupled with its extraordinary efforts to thwart discovery designed to test its asserted defenses, as well as the dribs and drabs that, despite those efforts, emerged during discovery to show the falsity of those defenses, makes it hard to see how [Defendant] would ever defeat Plaintiff's claim that its policy violated the discharge [injunction].

[Certification Order, Doc. 176, p. 46].

18

(ii)    a "mild uniform non-compensatory civil sanction" given that Defendant—a "sophisticated financial institution"—had engaged in a "systematic, willful [and] egregious" violation of the discharge injunctions of more than 200,000 plaintiffs, [*see id.* at p. 63] ("The failure to recognize such a sanction would leave discharged debtors to endure in derogation of the statute until they experience an added consequence of the violation, and encourage others to engage in similar acts until caught.").

Notably, the Court awarded the attorneys' fees as sanctions in the Certification Decision "jointly and severally between client and counsel"—that is, jointly and severally among the Defendant and Mr. Slodov and his firm.  [Certification Decision, Doc. 176, p. 44] (discussing Defendant's independent misconduct and observing that "[n]ot only is [Defendant] a sophisticated financial institution with experience in conducting discovery, its Rule 30(b)(6) witness signed two false verifications, was unprepared and unresponsive in her Rule 30(b)(6) deposition, and, as represented by both that witness and Mr. Slodov, [its] woefully inadequate response to Plaintiff's discovery requests was *led by its in-house counsel*") (emphasis added).

## F.  THE SLODOV MOTION AND PRIVILEGE MOTION

Less than one month after the issuance of the Certification Decision (but six years following his withdrawal), Mr. Slodov filed the Slodov Motion, which requested intervention for the "limited purpose" of:

(a)    submitting evidence relating to apportionment of monetary sanctions to be awarded in connection with [the Certification Decision]; (b) [] demonstrate[ing] that [Mr. Slodov] did not advise [Defendant] to take any of the actions resulting in sanctions; and (c) [demonstrating that] it would be unjust to award sanctions against [Mr. Slodov] personally and in that regard, and that the [C]ourt take into consideration [his] ability to pay.

[*See* Slodov Motion, Doc. 190, at pp. 1–2] (moving in the alternative for "leave to submit [certain privileged documents] for in camera inspection by the Court only, or alternatively, [potentially] []that the same be filed under seal").  Attached in support of the Slodov Motion were, *inter alia*, potentially privileged communications between Defendant, Mr. Slodov and his firm that—

allegedly—indicate that Mr. Slodov "proceeded in good faith in attempting to conform [his] conduct to the [C]ourt's directives . . . ." [*Id.* at p. 7] ("[A]nd if I did make any statement that the [C]ourt believes was knowingly false, it was not owing to any bad faith or willfulness . . . ."); [*see also id.* at p. 15] (claiming that Defendant "was fully aware of and directed" Mr. Slodov's conduct "throughout the entire duration of this litigation") (the attached communications referred to hereinafter as the "Slodov Documents"). Those communications were redacted to protect attorney-client privilege.

Nevertheless, on August 5, 2022, Plaintiff filed the Privilege Motion [Doc. 199], followed shortly thereafter by Defendant's Privilege Opposition [Doc. 205], both of which are discussed in more detail below. Before any decision was rendered regarding the Privilege Motion or privilege as to the Slodov Documents, the Second Circuit issued a decision in an almost identical case that directly impacts the case here.

## G. *BRUCE V. CITIGROUP INC.*

Before the Privilege Motion was decided, on August 2, 2023, the Second Circuit decided *Bruce v. Citigroup Inc.*, 75 F.4th 297 (2d Cir. 2023), *cert. denied,* 144 S.Ct. 565 (2024) ("*Bruce*").[16] There, the Second Circuit considered a case including the following facts and allegations:

(i)  the named plaintiff was a former Chapter 7 debtor whose credit card debt had been discharged at the close of her bankruptcy, *id.* at 300;

(ii)  the defendant—the plaintiff's former credit card company—had, post-discharge, refused to update her credit report to reflect the fact that her debt had been discharged, [*id.*];

---

[16]  *Bruce* was the second time the Second Circuit considered an appeal from the underlying adversary proceeding. *See generally In re Belton v. GE Capital Retail Bank,* 961 F.3d 612 (2d Cir. 2020) (citing, *inter alia, Anderson I* and finding that "the [Bankruptcy] Code is in 'inherent conflict' with arbitration . . . [and] under [applicable] precedent, that is enough to displace the Arbitration Act").

(iii)    the named plaintiff thereafter reopened her bankruptcy to file an adversary proceeding against the defendant, alleging that the defendant had, *inter alia*, engaged in a "contempt of the statutory injunction set forth in § 524(a)(2)," [*id.*]; and

(iv)    the named plaintiff's complaint sought to "certify a nationwide class of former debtors on the ground that [the defendant] similarly refused numerous post-discharge requests to correct erroneous tradelines," [*id.*].

In the bankruptcy court, the defendant in *Bruce*, prior to answering the plaintiff's complaint, originally moved to dismiss the case or alternatively, to strike the plaintiff's class allegations. *Id.* at 301. Specifically, the defendant argued in its motion to dismiss that the class allegations were not permissible because the court did not have jurisdiction in a putative class action to hold parties in contempt of other courts' discharge injunctions. [Bruce Dkt, Doc. 48, p. 16].[17] The bankruptcy court, however, denied the motion, "ground[ing] [its] authority in § 105 of the Bankruptcy Code, which provides that a bankruptcy court 'may issue any order, process, or judgment that is necessary or appropriate to carry out' the Code." *Id.* The defendant subsequently appealed, and "the district court certified the bankruptcy court's order for direct appeal." *Bruce*, 75 F.4th at 301.

The Second Circuit found in favor of the defendant, ruling that the Bankruptcy Code does not authorize a bankruptcy court to hold a party in contempt for violating another bankruptcy court's Section 524(a)(2) Injunction. *Id.* at 302. *Bruce* reasoned as follows:

> The class-wide relief sought by plaintiff raises a fundamental question: does the Bankruptcy Code authorize one bankruptcy court to employ its contempt power on behalf of other bankruptcy courts in a nationwide class action to enforce those bankruptcy courts' discharge orders? . . . [However,] as has long been the case outside of the bankruptcy context, a particular bankruptcy court's civil contempt authority does not extend beyond the enforcement of its own orders . . . [and]

---

[17] References to "[Bruce Dkt., Doc. __]" are to filings entered in the adversary proceeding *Kimberly Bruce, Debtor and Plaintiff on behalf of herself and all others similarly situated v. Citigroup Inc., Citbank, N.A., and Citibank (South Dakota), N.A*, Case No. 14-8224 (April 30, 2014), which is part of the lead bankruptcy case filed in the United States Bankruptcy Court for the Southern District of New York, *In re: Kimberly Bruce*, Case No. 13-22088 (January 24, 2013).

[p]laintiff fails to offer a single example of one court exercising its civil contempt authority on behalf of another court's injunction.  Nor are we aware of any.  As telling as that gap is, it's of no surprise.  The civil contempt power is, at its core, uniquely personal to each court; by providing a mechanism to mandate compliance when a court is confronted with disobedience, it is a necessary corollary to a court's authority to issue binding orders . . . [and] a court's broad authority to identify, prosecute, adjudicate, and sanction contumacious conduct makes for a "potent weapon" . . . .

At bottom, plaintiff seeks a bankruptcy-specific expansion of the civil contempt power beyond its longstanding limits at equity.  Congress is capable of intervening to guide the exercise of a bankruptcy court's civil contempt power.  But "a major departure from the long tradition of equity practice should not be lightly implied" . . . [C]ourts must take statutes as they find them, and, as written, the Code leaves intact the longstanding equitable principles regarding the enforcement of injunctions.  A bankruptcy court's civil contempt authority does not extend to other bankruptcy courts' discharge orders in a nationwide class action. The class-wide relief sought by plaintiff is therefore unavailable . . . .

*Id.* at 302–306 (citing, *inter alia*, *Taggart v. Lorenzen*, 587 U.S. 554 (2019)) (internal citations omitted).[18]

Importantly, however, the *Bruce* plaintiff had argued that applicable Supreme Court precedent "does not speak at all to whether she (and her proposed fellow class members) are entitled to declaratory relief and damages." *Bruce*, 75 F.4th at 306 n.9.  The Second Circuit—finding that the plaintiff "ha[d] [not] asserted separate and distinct claims for declaratory relief and damages"—declined to answer that question, and instead limited its decision to the contempt claim.  *See id.* at 299, 306 n.9.  Indeed, the Second Circuit stated: "[w]hether and to what extent relief short of contempt sanctions is available in the case of a discharge violation for which a fair ground of doubt remains *is a question for another day*.") *Id.* at 306 n.9 (emphasis added).

---

[18]      Regarding the Second Circuit's observation that "[p]laintiff fails to offer a single example of one court exercising its civil contempt authority on behalf of another court's injunction," *Bruce* also noted that "the cases [plaintiff] cites concern statutory grants of power which in specific, limited cases broaden a court's power to protect or provide relief from orders entered by other courts." *Bruce*, 75 F.4th at 303.

## II.    THE INSTANT MOTIONS

### A.  THE DECERTIFICATION MOTION AND MOTION TO AMEND

Defendant filed its Decertification Motion on October 23, 2023, following the Second

Circuit's ruling in *Bruce*.  [*See generally* Decertification Motion, Doc. 215].  The Decertification

Motion makes two primary arguments:

(i)    first, that *Bruce* "requires decertification of the Main [] Class and the [] Subclass"
because "this Court [] lacks [] the authority to adjudicate claims that [Defendant]
has violated the discharge injunctions of other courts," [*see id.* at pp. 17–18]; and

(ii)   second, that the Main Class "must also be decertified for the second, independent
reason that [*Bruce*] confirms that a bankruptcy court's contempt power is not
greater than the contempt power of a district court and therefore precludes the
punitive damages award that was the foundation for the Main [] Class," [*id.* at p.
19].

Plaintiff filed his Decertification Opposition on December 15, 2023.  [Decertification

Opposition, Doc. 220].  Plaintiff asserts that:

(i)    *Bruce* "only affects the contempt remedies sought in this action . . . [and] does not
give [Defendant] a pass on liability," [*id*. at p. 8];

(ii)   accordingly, *Bruce* permits the certification of a "declaratory judgment class," a
vehicle that would allow the Court to "declare the actions of [Defendant] to be
violative of § 524 without addressing any issue of contempt of the individual
discharge orders rendered in each class member's [] bankruptcy," [*id.*]; and

(iii)  alternatively or additionally, *Bruce* does not preclude the Court from "award[ing]
Rule 37 sanctions on a class-wide basis to the class proximately caused by
[Defendant's] 'repeated, lengthy and willful discovery failures,' and its 'prolonged,
extraordinary, wrongful efforts to prevent the exploration of its defenses to the
complaint's allegations,'" [*id.*] (internal citations omitted); and, finally,

(iv)    *Bruce* does not otherwise preclude the Court from "order[ing] [the] restitution of all funds paid by class members on discharged debts caused by [Defendant's] illegal collection practices without a finding of contempt," [*id.*].[19]

In connection with his Decertification Opposition, Plaintiff filed the Motion to Amend on December 15, 2023. [*See generally* Motion to Amend, Doc. 222]. The Motion to Amend first notes that, in *Bruce*, the Second Circuit "constru[ed] a complaint asserting similar causes of action to the Complaint filed herein . . . [to not] request [] declaratory relief, even though the first paragraph of th[at] complaint sought such relief and declaratory relief was expressly requested in a 'wherefore' clause at the end of the complaint." *See id.* at pp. 5, 7 ("Plaintiff [] only move[s] to amend his Complaint now out of an abundance of caution to conform to the holding of the Second Circuit Court of Appeals in *Bruce* [*II*], [which] constru[ed] a virtually identical complaint as lacking a claim for declaratory judgment.").

Accordingly, Plaintiff seeks leave to amend the current Complaint to, *inter alia*, expressly request relief under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq*. [*See* Doc. 223-1, p. 18] Plaintiff's *Proposed Amended Complaint*, hereinafter "**Proposed Amended Complaint**," p.

---

[19]    Plaintiff also argues that, in any event, "Plaintiff's counsel are entitled to full payment of their attorneys' fees." [Decertification Opposition, Doc. 220, p. 9]. Defendant does not contest this position, [*see* Doc. 229, Defendant's *Reply Memorandum of Law in Support of Defendant's Motin to Decertify the Damages Class and Subclass*, hereinafter "Def. Reply"], but maintains that "attorneys' fees alone cannot serve as the sole basis for certifying a damages class," *id.* at p. 18.

18].[20]  Although the proposed class definition remains the same,[21]  Plaintiff also seeks to divide that class based upon the relief that is allegedly available to each member under *Bruce*.  [*See id.* at p. 16] ("Plaintiff seeks certification of a national class for declaratory, injunctive, monetary, and restitutionary relief ('*National Class*') and a class *limited to the Southern District of New York for relief for contempt* for violation of § 524 and th[ose] class members' individual discharge orders ('*Southern District Class*').") (emphasis added).

Defendant filed its Amendment Opposition on February 7, 2024.   [*See generally* Amendment Opposition, Doc. 232].   The Amendment Opposition contains five primary arguments:

> (i)    first, Defendant argues that *Bruce* precludes the assertion of a class-wide declaratory judgment claim because "there is no meaningful difference between a finding of contempt and a binding 'declaration' that a party has violated a [discharge injunction]," [*id.* at p. 7];

---

[20]    Plaintiff's Proposed Amended Complaint also includes several other amendments, including:

(i)    the removal of references to Defendant's affiliate, [*see generally* Doc. 223-1, Proposed Amended Complaint];

(ii)    a paragraph referencing Defendant's "persistent, willful and contumacious disregard for the rules of discovery in this action and by its willful misrepresentations to this Court and its willful violations of Court orders," *id.* at p. 17; and

(iii)    the removal of Plaintiff's original request for "declaratory and injunctive relief and [] compensatory and punitive damages, attorney's [sic] fees and costs for Defendant['s] violation of § 524(a)(2)," *id.* at p. 19.

[21]    Plaintiff's Proposed class definition includes:

All individuals who, after May 3, 2007, have had a consumer credit report relating to them prepared by any of the credit reporting agencies in which one or more of their Tradeline accounts or debts with Defendant was not reported as discharged despite the fact that such debts had been discharged as a result of their bankruptcy under Chapter 7 of the Bankruptcy Code.

[Proposed Amended Complaint, Doc. 223-2, p. 16].  This definition is virtually identical to the Main Class provided in the Certification Order, although the Court's definition excluded former debtors with secured debts and those whose debts were subject to a valid reaffirmation agreement.  [*See* Certification Order, Doc. 176, p. 81] (conditioning class membership upon "such debt(s) [] hav[ing] been (i) unsecured and (ii) not the subject of a valid and enforceable reaffirmation agreement . . . .").

(ii)     second, even if *Bruce* permitted class-wide declaratory relief, the Court should not allow the Complaint to be amended as this would severely prejudice Credit One, [*id.* at p. 12];

(iii)    third, Plaintiff should not be allowed to amend the contempt class definition to assert a class limited to the Southern District of New York [*id.* at p. 17];

(iv)    fourth, Plaintiff should not be permitted to amend the Complaint to "add additional allegations related to discovery," [*id.* at p. 19]; and

(v)     finally, "if Plaintiff is permitted to amend the Complaint, the default judgment must be vacated." [*id.* at p. 20].

## B.  THE PRIVILEGE MOTION

Also pending is the Plaintiff's Privilege Motion, which spans the procedural history of this case pre-*Bruce* and post-*Bruce*, having been filed in August of 2022 and argued at the hearing on July 24, 2024.  Plaintiff asserts in the Privilege Motion that, based on the Slodov Motion and Slodov Documents, "Credit One and its counsel engaged in a fraud on the Court that eliminates its claim of privilege over the documents at issue."  [Privilege Motion, Doc. 199, p. 9].  Plaintiff further argues that these documents are relevant to a subsequent damages determination for Plaintiff and the classes as "the 'egregiousness' of the misconduct is a factor in determining the amount of damages to assess."  [*Id.* at p. 6] (citing *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 582 (1996)).  In addition to the Slodov Documents, Plaintiff asserts that Defendant's new counsel, White & Case (hereinafter, "**Defendant's New Counsel**"), have "continued the fraud on the Court," by "falsely placing all the blame on Mr. Slodov" and "failing to disclose facts that Mr. Slodov believed the attorneys had an ethical duty to disclose."  [*Id.* at pp. 12–13].

In the Privilege Opposition, Defendant argues that neither the communications between Defendant and Defendant's Prior Counsel nor the communications between Defendant and Defendant's New Counsel should be subject to the crime-fraud exception.  [Privilege Opposition, Doc. 205, p. 20].  Defendant further argues that anything contained in the Slodov Documents is

not relevant to any of the outstanding issues in the case because the Certification Decision "was

clear that the sanction for the discovery violations was the *default judgment*."    [*Id.* at p.31]

(emphasis in the original).

## C. **THE JULY 24, 2024 HEARING**

On July 24, 2024, the Court held a hearing (the "**July 24 Hearing**") on the Decertification

Motion, the Motion to Amend, the Privilege Motion, and all related filings. *See generally* [*Notice

of Hearing*, filed at Doc. 235]; [Doc. 237] (*Transcript regarding Hearing Held on 07/24/24*,

hereinafter the "**July 24 Hr'g Tr.**").

## DISCUSSION

## III.    JURISDICTION

Judge Drain established in the Certification Decision that the Court has jurisdiction over

this core proceeding as it relates to the enforcement of the Chapter 7 discharge, which is "the

foundation upon which all other portions of the Bankruptcy Code are built."    [Certification

Decision, Doc. 176, p. 5] (quoting *Anderson v. Credit One*, 884 F.3d at 889).  Judge Drain further

stated:

> Jurisdiction flowing from those sections of the Bankruptcy Code and 28 U.S.C. §§
> 157(a)-(b) and 1334(b) therefore can be exercised to determine whether, in
> recognition of the power conferred by Bankruptcy Rule 7023, the Court should
> certify a nationwide class of debtors whose identical discharge orders were
> allegedly breached by implementation of the same, uniformly applied policy, the
> issue presently before this Court.

[Certification Decision, Doc. 176, p. 9].  Accordingly, the Court continues to have jurisdiction

over this adversary proceeding under 28 U.S.C. §§ 157(a)-(b) and 1334(b) and the Amended

General Order of Reference, dated January 31, 2012 (Preska, C.J.).

IV.   <u>ANALYSIS</u>

This case raises a significant and developing issue of bankruptcy law—namely, what relief is available to former Chapter 7 debtors who have suffered a violation of their bankruptcy discharge. The Second Circuit's *Bruce* decision (and the Supreme Court's subsequent denial of certiorari) does not establish with finality that a plaintiff's only remedy for a violation of the Section 524(a)(2) Injunction is an individual contempt claim in the original court that issued the injunction.  Rather, the *Bruce* decision left open whether certain relief could be granted to such plaintiffs, and clearly ruled out one possibility, *i.e.*, a class-wide contempt claim.

The Court finds that certain of the issues are—as the parties conceded at the July 24 Hearing—too "wrapped up and intertwined" for the Court to simply break its analysis down motion by motion.  [*See* July 24 Hr'g Tr., Doc. 237, p. 4].  The Court believes thus that resolution of this matter is best achieved by addressing a series of related legal questions presented.

The Court will accordingly address five overarching issues (some with additional sub-issues):

(A) Does *Bruce* prohibit any class actions based on violations of the Section 524(a)(2) Injunction?

(B)  Has Plaintiff satisfied the applicable standard to amend the Complaint?

(C)  How would the Proposed Amended Complaint affect the ruling in the Certification Decision?

(D)  Are the Slodov Documents relevant to a subsequent damages award?

(E)  Does the crime-fraud exception to the attorney-client privilege apply to the Slodov Documents?

The Court begins with the basic question that has brought this decade-old dispute back here in the first place.

### A. *BRUCE* DOES NOT PROHIBIT CLASS ACTIONS BASED ON VIOLATIONS OF SECTIONS 524 AND 727 OF THE BANKRUPTCY CODE.

First, the Court finds that the Second Circuit's decision in *Bruce* does not necessarily prohibit a class action claim for a violation of the Section 524(a)(2) Injunction based on a claim other than contempt.

In the Decertification Motion, Defendant essentially asks the Court to undo every ruling Judge Drain made in the Certification Decision with respect to class certification. [*See generally* Decertification Motion, Doc. 215]. Defendant specifically quotes the Second Circuit's statement in *Bruce* that "[w]e disagree that a bankruptcy court has the authority to hear and adjudicate a class-wide contempt proceeding. That leaves only plaintiff's individual claim against Citi." [*Id.* at p. 1] (quoting *Bruce*, 75 F.4th at 299). In its explanation of the relevant legal standard, Defendant argues that (i) courts must continue to reassess class rulings throughout a case [Decertification Motion, Doc. 215, p. 12]; (ii) courts should decertify a class if it appears that Rule 23 is no longer met [*id.*]; and (iii) an "intervening change of controlling law" is a reason to decertify a class [*id.* at p. 13] (citing *Gulino v. Bd. of Educ. of the City Sch. Dist. of N.Y.*, 907 F. Supp. 2d 492, 504 (S.D.N.Y. 2012)). Accordingly, Defendant asserts that *Bruce* constitutes one such intervening change of controlling law: namely that "under the Second Circuit's clear holding in *Bruce*, in this virtually identical case, this Court also lacks [] the authority to hear and adjudicate a class-wide contempt proceeding against Credit One or otherwise to adjudicate claims that Credit One has violated the discharge injunctions of other bankruptcy courts." [Decertification Motion, Doc. 15, p. 14].

However, as Plaintiff argues, "[t]he Court in *Bruce* made it very clear that its holding was limited to contempt, and it specifically held that it was not precluding other remedies short of

contempt that a plaintiff or a class may have to redress violations of § 524(a)." [Decertification

Opposition, Doc. 220, p. 9]. Indeed, in *Bruce*, the Second Circuit stated:

> as has long been the case outside of the bankruptcy context, a particular bankruptcy
> court's *civil contempt authority does not extend* beyond the enforcement of its own
> orders . . . At bottom, plaintiff seeks a bankruptcy-specific *expansion of the civil
> contempt power* beyond its longstanding limits at equity . . . A bankruptcy court's
> *civil contempt authority does not extend to other bankruptcy courts' discharge
> orders in a nationwide class action*. The class-wide relief sought by plaintiff is
> therefore unavailable . . .

*Bruce*, 75 F.4th at 302–06 (emphasis added). The Second Circuit further explained that "whether

and to what extent relief short of contempt sanctions is available in the case of a discharge violation

for which a fair ground of doubt remains is a question for another day." *Id.* at 306 n.9.

Plaintiff further asserts in the Decertification Opposition that "[t]he *Bruce* panel carefully

avoided rendering any decision with regard to the viability of a declaratory judgment class, in

which the Court could declare the actions of a creditor to be violative of § 524 without addressing

any issue of contempt of the individual discharge orders rendered in each class member's

individual bankruptcy." [Decertification Opposition, Doc. 220, p. 2]. Plaintiff further asserts that

a declaratory judgment "does not seek a determination of contempt, but merely seeks a legal ruling

that Credit One's uniform conduct that it applied to the class constituted an attempt to collect on

discharged debts . . . [S]eeking a declaratory judgment does not require the Court to fashion a

contempt sanction." [*Id.* at p. 9].

Indeed, the Second Circuit in *Bruce* discussed whether a declaratory judgment claim had

been asserted and whether such a claim could be maintained on a class-wide basis. *See Bruce*, 75

F.4th at 299; *see also id.* at 306 n.9. At the outset of the opinion, the court stated that "as an initial

matter, we reject plaintiff's suggestion that she has asserted separate and distinct claims for

declaratory relief and damages." *Id.* at 299.  Subsequently, in the same footnote discussed above,

the Second Circuit went on to say:

> Seeking to chart a path to relief in the event that her contempt claim fails, plaintiff
> argues that *Taggart*'s "fair ground of doubt" standard "does not speak at all" to
> whether she (and her proposed fellow class members) are entitled to declaratory
> relief and damages. That is an issue we need not decide given that plaintiff has
> cleared *Taggart*'s high bar.

*Bruce,* 75 F. 4th at 306 n.9.

The Court thus finds that in *Bruce*: (i) the class-action relief sought was denied solely with

respect to a contempt claim; and (ii) the *Bruce* court did not foreclose the possibility of relief

(including a declaratory judgment) for violation of the Section 524(a)(2) Injunction outside of a

claim for contempt.  The Second Circuit stated the viability of "relief short of contempt sanctions

. . . in the case of a discharge violation for which a fair ground of doubt remains is a question for

another day."  *Bruce*, 75 F. 4th at 306 n.9.  The Court will now address whether a class-wide

declaratory judgment claim is a viable claim for violation of the Section 524(a)(2) Injunction.

**B.  <u>PLAINTIFF HAS SATISFIED THE STANDARD FOR AMENDING THE COMPLAINT.</u>**

Given the Court's finding that *Bruce* leaves open the possibility of a class action for

violation of the Section 524(a)(2) Injunction on a theory other than contempt, the Court will now

consider Plaintiff's Complaint in this case.  Plaintiff has admitted that the Complaint, as it stands,

is "functionally identical" to the complaint in *Bruce* [*see* July 24 Hr'g Tr., Doc. 237, p. 33:23–24],

which the Second Circuit determined did not properly allege a claim for declaratory relief [Motion

to Amend, Doc. 222, p. 1].  For this reason, Plaintiff seeks to amend the Complaint to "expressly

allege such a cause of action" for declaratory judgment.  [*Id.*].

As Plaintiff states in the Motion to Amend, pursuant to Federal Rule of Civil Procedure 15(a)(2), incorporated into the Bankruptcy Rules by Rule 7015, "a party may move to amend its pleading outside the time period provided by Fed. R. Civ. P. 15(a)(1) by obtaining the opposing party's written consent *or by leave of the court*." [Motion to Amend, Doc. 222, p. 1] (emphasis added).

The parties generally agree on the standard in this Circuit for allowing a plaintiff to amend a complaint by leave of the Court. [*See* Motion to Amend, Doc. 222, pp. 1–2]; [Amendment Opposition, Doc. 232, p. 7]. Leave to amend a complaint should be "freely given" unless there is (i) bad faith, (ii) undue prejudice to the opposing party, (iii) undue delay, or (iv) futility of the amendment. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) ("In the absence of . . . undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party ..., etc.—the leave sought should, as the rules require, be 'freely given.'"); *State Teachers Retirement Board v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981) ("Reasons for a proper denial of leave to amend include undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party.").

Defendant does not assert "bad faith" as a reason to deny Plaintiff leave to amend the Complaint. [*See generally* Def. Reply, Doc. 229; Amendment Opposition, Doc. 232]. Thus, the Court will consider undue prejudice, undue delay, and futility.

### i.    *Granting the Motion to Amend will not unduly prejudice Defendant.*

As Plaintiff correctly asserts, the "general rule" in the Second Circuit is that the non-moving party must demonstrate that prejudice occurred. [Motion to Amend, Doc. 222, p. 2] (citing *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993) ("The rule in this Circuit has been

to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice
. . .")).

In *Block*, to determine whether there would be prejudice to the non-moving party, the
Second Circuit considered whether the amended pleading would:

    (i)     require the opponent to expend significant additional resources to conduct
           discovery and prepare for trial;

    (ii)    significantly delay the resolution of the dispute; or

    (iii)   prevent the non-moving party from bringing a timely action in another jurisdiction.

*Block*, 988 F.2d at 350.  The Court notes that while Plaintiff lists these factors in the Motion to
Amend, Plaintiff does not provide an application of those factors to his case. [Doc. 222, p. 2].
Nevertheless, the Court finds an analysis of the first factor useful here in the context of Defendant's
arguments.

Regarding the need for "significant additional resources to conduct discovery and prepare
for trial," *Block*, 988 F.2d at 350, Defendant argues that "Plaintiff's amended complaint would
prejudice Credit One because it would substantially change the theory of the case nine years after
the filing of the Complaint and require the parties to relitigate a multitude of issues," [Amendment
Opposition, Doc. 232, p. 13].  The Court finds that this argument misconstrues the procedural
history of this case and misunderstands the proposed amended complaint.  First, the parties never
had the opportunity to fully litigate the underlying issues due to Defendant's failure to comply
with discovery.  *See generally* [Certification Decision, Doc. 176].  As discussed in detail in Section
(I) above, Defendant simply delayed all response to discovery requests, until counsel ultimately
acknowledged its misconduct.  *See supra*, Section (I)(E)(i).  Subsequently, Judge Drain granted a
default judgment.  *See supra*, Section (I)(E)(ii).  It is clear from the record that Plaintiff was

prevented from litigating and arguing the merits of its claim as Defendant's discovery violations resulted in the default judgment. [Certification Decision, Doc. 176, p. 13].

Furthermore, in *State Teachers Retirement Board v. Fluor Corporation*, cited by Plaintiff in the Motion to Amend, the Second Circuit stated that, where "the amendment will not involve a great deal of additional discovery," such delay "will not unduly prejudice the defendant." *State Teachers Retirement Board*, 654 F.2d at 856. [*See also* Motion to Amend, Doc. 222, p. 2]. Here, Plaintiff argues that amending the Complaint "will not prejudice Credit One, nor is it the result of undue delay, because . . . the Court has already found that such conduct occurred and that Credit One should be sanctioned for it. The Complaint is being amended simply to conform to what the evidence has already established." [Motion to Amend, Doc. 222, p. 3]. Thus, given the default judgment in the Certification Decision, and the elements of the declaratory judgment claim, there will be no further discovery necessary. Moreover, the amendment will not involve a "great deal of additional discovery" because the elements of the declaratory judgment claim have already been established. *See infra* Section (IV)(B)(iii)(a). Thus, factor (i) from *Block* weighs in favor of allowing the amendment.

The Court therefore finds that Defendant has failed to meet its burden to demonstrate that an amendment would be unduly prejudicial. Indeed, the Court finds that not allowing an amendment to the Complaint would be prejudicial to Plaintiff, as it would reward Defendant for its misconduct throughout discovery.

### ii. *Plaintiff has not unduly delayed seeking the amendment.*

In arguing that Plaintiff unduly delayed seeking to amend the Complaint, Defendant cites cases that hold that where "a considerable period of time has passed between the filing of the complaint and the motion to amend, the burden is upon the movant to show some valid reason for

the movant's neglect and delay." [*See* Amendment Opposition, Doc. 232, pp. 12–13] (quoting *Bymoen v. Herzog, Heine, Geduld, Inc.*, No. 88 CIV. 1796 (KMW), 1991 U.S. Dist. LEXIS 7169, at *2–3 (S.D.N.Y. May 24, 1991)). *See also Beare v. Millington*, No. 07-CV-3391 (TLM), 2014 WL 12833989, at *2 (E.D.N.Y. Feb. 24, 2014) ("When a delay in bringing the motion to amend poses a risk of prejudice, [t]he burden is on the party who wishes to amend to provide a satisfactory explanation for the delay.") (citations omitted).

Defendant argues that "Plaintiff provides *no meaningful justification* for his delay in seeking to amend his Complaint, stating only that 'Credit One has been on notice that Plaintiff seeks declaratory relief since the inception of this adversary proceeding.'" [Amendment Opposition, Doc. 232, p. 13] (quoting Motion to Amend, Doc. 222, at p. 2) (emphasis added).

First, the Court agrees with Plaintiff that Credit One has been on notice of Plaintiff's declaratory judgment claim (or a potential claim), as the very first page of the original Complaint explicitly states that "Plaintiff . . . brings this Complaint . . . for declaratory judgment." [Complaint, Doc. 1, p. 1]. Furthermore, Plaintiff cites case law that supports allowing an amendment "simply to conform to what the evidence has already established." [Motion to Amend, Doc. 222, p. 3] (citing *Stillman v. InService Am., Inc.*, 455 F. App'x 48, 51 (2d Cir. 2012) (holding district court did not abuse its discretion in allowing amendment to the complaint because defendants "were on notice that [Plaintiff] intended to pursue" the claim in question and defendants were also in possession of all evidence "relevant to rebutting" the additional claim); *Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 813 F. Supp. 2d 489, 529 (S.D.N.Y. 2011) (allowing plaintiff to amend complaint *nunc pro tunc* to "conform to the evidence at trial . . . because the same set of facts involved in deciding [the additional] claim also ar[o]se" in the original claims).

Plaintiff asserts that he "has only moved to amend [the] Complaint now out of an abundance of caution to conform to the holding of the Second Circuit Court of Appeals in *Bruce*." [Motion to Amend, Doc. 222, p. 3]. In this Circuit, courts regularly allow parties to amend their pleadings when there has been an intervening change in governing law during the pendency of the litigation. *See e.g.*, *McGuire v. Warren*, 207 F.App'x. 34, 36–37 (2d Cir. 2006) (remanding case to district court to allow plaintiff to amend pleadings to include "specific allegations" that were newly available following United States Supreme Court decision issued after the district court had rendered its decision); *Elsevier Inc. v. Grossman*, 12cv5121 (KPF), 2017 WL 1843298, at *9 (S.D.N.Y. May 8, 2017) (allowing plaintiffs leave to amend their complaint five years into the case and after a decision had been issued by the court due to an intervening "change in RICO law" under a United States Supreme Court decision).

Here, Plaintiff likewise seeks to amend the Complaint to include relief that conforms with the change in law (*i.e.*, the prohibition of a class-wide contempt action for a violation of the Section 524(a)(2) Injunction). After the *Bruce* decision was issued, Plaintiff promptly filed the Motion to Amend four months later.[22] The Court finds that the intervening change in law constitutes a "valid reason" to seek an amendment per the *Bymoen* standard. *See Bymoen*, 1991 U.S. Dist. LEXIS 7169 at *2–3.

Defendant also asserts that Plaintiff should not be allowed to amend the Complaint because "where a claim could have been raised earlier, a plaintiff's attempt to prevent an adverse ruling by seeking to amend is a basis to deny the motion." [Amendment Opposition, Doc. 232, p. 16]. However, the circumstances in each of the cases on which Defendant relies arose from a lack of

---

[22]    [*See* Motion to Amend, Doc. 222, p. 5] (motion dated December 15, 2023).

due diligence on the part of the plaintiffs and are thus clearly distinguishable.[23] Here, Plaintiff is amending the Complaint due to an external intervening change of law.

Finally, Defendant asserts that Plaintiff's delay "circumvent[ed] Credit One's procedural defenses, including Credit One's motion to compel arbitration and Credit One's statute of limitations defense, issues which were heavily briefed and argued before the Bankruptcy Court, the District Court, and the Court of Appeals for the Second Circuit." [Amendment Opposition, Doc. 232, p. 14]. At the July 24 Hearing, Defendant stated that "we would, of course, seek to revisit all of those defenses that the plaintiff circumvented by arguing that this was a pure contempt claim, including the statute of limitations defense, and, most critically, arbitration, where the plaintiff repeatedly said this is a contempt-only class that an arbitrator cannot hear." [July 24 Hr'g Tr., Doc. 237, 14:12–17].

With regard to the statute of limitations, Plaintiff's counsel asserted:

There's no statute of limitations defense here because the conduct continued after the complaint was filed. The conduct continued until March of 2017, when Credit One, after Judge Drain said he was going to hold them in contempt and default them, entered into a consent order ending the conduct. The conduct did not end until March of 2017. This complaint was brought in 2014. There's not a viable statute of limitations defense.

---

[23] The string of cases Defendant cites point to situations in which the plaintiffs sought to amend their complaints based on circumstances that arose within their own litigation. *See, e.g. Berman v. Parco*, 986 F. Supp. 195, 218 (S.D.N.Y. Feb. 6, 1997) (denying plaintiffs leave to add a negligence claim to their complaint due to new information discovered during a deposition as plaintiffs could have alleged such claim in the alternative at the outset); *Bymoen*, 1991 U.S. Dist. LEXIS 7169, at *1 (holding that the retention of new counsel who did not draft previous complaint was not a sufficient basis to amend the complaint in response to an anticipated adverse ruling on summary judgment); *Wansdown Props. Corp. N.V. v. 29 Beekman Corp. (In re Wansdown Props. Corp. N.V.)*, No. 22-19-13223 (DSJ), 2023 Bankr. LEXIS 877, at *82–83 (Bankr. S.D.N.Y. Mar. 31, 2023) (finding that motion to amend complaint was merely an attempt to reargue matters that were already decided in a prior suit, and thus denying the motion due to plaintiff's bad faith and dilatory conduct).

In contrast to these cases cited by Defendant, Plaintiff does not seek to amend the Complaint based on new information obtained through discovery, a likelihood of losing on the merits of the claim already asserted, or bad faith. Rather, Plaintiff asks to modify his previously *successful* cause of action as the change in law has rendered that cause of action (which will still proceed on an individual basis) impermissible on a class basis.

[*Id.* at 67:20–68:2].  As for arbitration, Plaintiff's counsel argued that "Mr. Anderson had a claim

for contempt, and he still has a claim for contempt.  That's why the Second Circuit held it should

not go to arbitration."  [*Id.* at 68:4–6].  Furthermore, the Second Circuit in *Anderson I* explained:

> We find that arbitration of a claim based on an alleged violation of Section
> 524(a)(2) would "seriously jeopardize a particular core bankruptcy proceeding."
> We come to this conclusion because 1) the discharge injunction is integral to the
> bankruptcy court's ability to provide debtors with the fresh start that is the very
> purpose of the Code; 2) the claim regards an ongoing bankruptcy matter that
> requires continuing court supervision; and 3) the equitable powers of the
> bankruptcy court to enforce its own injunctions are central to the structure of the
> Code.

*Anderson I*, 884 F.3d at 389–390.  The *Anderson I* court referred to "a *claim* based on an alleged

violation of Section 524(a)(2)," not only to a contempt claim specifically.  *Id.* (emphasis added).

Thus, this Court interprets *Anderson I* as finding that any claim for violation of the discharge

injunction would not be arbitrable and instead must be heard by the bankruptcy court, and that

would include a declaratory judgment claim such as the one asserted here.  Accordingly, because

the alleged defenses are not viable or have already been decided, the Court finds that Defendant's

asserted need to reargue defenses it already raised would not prejudice Defendant, and such

potential defenses are not a reason to disallow the Complaint amendment at this stage.

      Accordingly, the Court finds that Plaintiff has not unduly delayed seeking the amendment.

### iii.    *Amending the Complaint would not be futile.*

      Finally, in the Amendment Opposition, Defendant further objects to the amendment on the

grounds of "futility," another of the four factors that courts consider in the amendment analysis

under Rule 15.  [Amendment Opposition, Doc. 232, p. 7] (citing *Health-Chem Corp. v. Baker*, 915

F.2d 805, 810 (2d Cir. 1990) (finding that if there is "no merit to the proposed amendments, leave

to amend should be denied")).  In the original Complaint, Plaintiff asserted a single count for

"Failure to Abide By the Injunction Contained In § 524(a)(2)," asking the Court to grant

"appropriate declaratory and injunctive relief and award compensatory and punitive damages, attorney's fees and costs for Defendants' violation of § 524(a)(2)." [Complaint, Doc. 1, p. 17].

Plaintiff's Proposed Amended Complaint essentially seeks three new forms of relief:

(iv)    "a declaration pursuant to 28 U.S.C. §§ [2201] and [2202] that Defendant is in violation of § 524 by attempting to collect on a discharged debt" with respect to Plaintiff and a national class [First Cause of Action, Proposed Amended Complaint, Doc. 223-1, p. 19];

(v)    "certification of . . . a class limited to the Southern District of New York for relief for contempt for violation of § 524 and the class members' individual discharge orders" [Second Cause of Action, Proposed Amended Complaint, Doc. 223-1 at p. 16];

(vi)    a ruling that "Defendant be ordered to pay to all National Class Members sanctions pursuant to Rule 37 of the Federal Rules of Civil Procedure for their contumacious conduct before the Court." [*Id.*].

### a. Declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

Plaintiff asserts that he filed the Motion to Amend in response to *Bruce*, in which the Second Circuit held that the plaintiff's essentially identical complaint had not properly alleged a declaratory judgment claim. [Motion to Amend, Doc. 222, p. 1]. Plaintiff asserts in the Proposed Amended Complaint that the claims are brought "pursuant to 28 U.S.C §§ 2201 and 2202" [Proposed Amended Complaint, Doc. 223-1, p. 19].[24] References to 28 U.S.C §§ 2201 and 2202 were not included in the original Complaint in this case, nor in the complaint in *Bruce* [see generally Doc. 1 and Bruce Dkt, Doc. 39, hereinafter the "*Bruce* Complaint"].

---

[24]    28 U.S.C § 2201(a) states in relevant part: "(a) In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

§ 2202 provides: "Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment."

In response to Plaintiff's assertion of a declaratory judgment claim alleging that Defendant's conduct violated the Section 524(a)(2) Injunction of Plaintiff and the class, Defendant asserts that such claim would be futile because it would be "fundamentally the same as the existing claim." [Amendment Opposition, Doc. 232, p. 13]. Specifically, Defendant states that "[i]n so arguing, Plaintiff asks this Court to ignore the substance of the Second Circuit's clear, careful articulation of the limits of a bankruptcy court's power in a case of first impression, and instead to treat the *Bruce* decision as identifying a mere technical pleading deficiency that can be cured with a superficial amendment to the [C]omplaint." [Amendment Opposition, Doc. 232, p. 1].

Plaintiff argues that "if the [C]ourt determined there was class-wide harm (which it did in its June 3, 2022 decision), it would be appropriate for the Court to bifurcate liability and damages, to notify class members, and to allow class members of a nationwide class to bring individual claims to their home districts if they wish to claim actual damages." [Decertification Opposition, Doc. 220, p. 10].

The Court agrees with Plaintiff's argument. The finding of liability for the contempt claim and the proposed declaratory judgment is essentially the same. The claims differ in the *redressability* of the violation (*i.e.*, damages). Indeed, the District Court in *Gulino* explained that a declaratory judgment for a class allows the court to bifurcate the issues of liability and redress in a class action in a way that a contempt claim does not:

> certifying a [declaratory judgment] class claiming that Defendant is liable for [misconduct] comports with the reasoning of *Wal–Mart* in that resolution of that claim will not involve individual determinations, but rather involves a claim common to the class, the resolution of which will streamline later proceedings for damages and other individual relief.

*Gulino*, 907 F. Supp. 2d at 506.  Plaintiff also provides case law that supports bifurcation of liability and damages specifically in the class action context.  [Decertification Opposition, Doc. 220, p. 10].[25]

Here, the finding of liability for either the contempt claim or the proposed declaratory judgment is the same: namely, a finding that Credit One's actions violated Section 524 of the Bankruptcy Code.  Where the contempt and declaratory judgment claims differ is in the redressability of the violation.  The factual findings regarding liability are the same for the proposed class members, and the violation of the Bankruptcy Code for which the Plaintiff and class members seek relief remains the same; it is the form of such relief that is modified by the proposed amendment—a modification which the Court finds to be more than just  "superficial" (as Defendant Claims).  [Amendment Opposition, Doc. 232, p. 1].

The *Bruce* court itself made just such a distinction: "whether and to what extent relief short of contempt sanctions is available in the case of a discharge violation for which a fair ground of doubt remains is a question for another day." *Bruce*, 75 F.4th at 306 n.9.  The *Bruce* court refers to a singular liability (*i.e.*, the "case of a discharge violation") while it alludes to relief therefor that may vary from the redress for a contempt sanction.

Defendant previously agreed that bifurcation of liability and redress was permissible.  [*See Defendant's Supplemental Brief in Further Opposition to Plaintiff's Motion for Class Certification*, Doc. 152, p. 1] (the "**Supplemental Certification Opposition**") ("it is legally permissible under Rule 7023 for a court to certify a class as to liability, but not damages.").  At the

---

[25] Plaintiff cites two cases in which the court allowed certification of a class for liability, while requiring an individualized damages determination where plaintiffs are "aggrieved by a single policy of defendants." *See In re Nassau Cnty. Strip Search Cases*, 461 F.3d 219 (2d Cir. 2006) ("[t]here are a number of management tools available to a district court to address any individualized damages issues, such as bifurcation"); *Nnebe v. Daus*, 2022 WL615039, at *5 (S.D.N.Y. Mar. 1, 2022) ("Common issues – such as liability – may be certified, consistent with Rule 23, even where other issues – such as damages – do not lend themselves to classwide proof.").

October 12, 2017 Hearing, Judge Drain asked the parties to "address the following possibility – or issue, which is certifying the class under (b)(3) as to liability and attorneys' fees, and as to those who made payments, but leaving the individual damage determinations as to anyone else, that they can just bring that on their own." [October 12, 2017 Hr'g Tr., Doc. 150, 100:9–13]. In the Supplemental Certification Opposition, filed following the October 12, 2017 Hearing, Defendant specifically stated that "while Credit One opposes certification of any class, certification as to liability only is the proper procedural mechanism where the existence and quantity of damages varies from person to person and cannot be measured on a class-wide basis, through the use of subclasses or otherwise." [Decertification Opposition, 220, pp. 10–11] (quoting Supplemental Certification Opposition, Doc. 152, p. 4).

Having reached the conclusion that bifurcation of liability and the resulting remedy is permissible, the Court turns to the merits of the proposed declaratory judgment claim. The leading authority on redress for violations of the Section 524(a)(2) Injunction is *Taggart*. In that case, the Supreme Court explained the underpinning of the contempt framework it set out for violations of Section 524:

> Our conclusion rests on a longstanding interpretive principle: when a statutory term is "'obviously transplanted from another legal source,'" it "'brings the old soil with it.'" . . . Here, the statutes specifying that a discharge order "operates as an injunction," § 524(a)(2), and that a court may issue any "order" or "judgment" that is "necessary or appropriate" to "carry out" other bankruptcy provisions, § 105(a), bring with them the "old soil" that has long governed how courts enforce injunctions. That "old soil" includes the "potent weapon" of civil contempt.

*Taggart*, 587 U.S. at 560 (citations omitted). Applying the "old soil" analysis from *Taggart*, federal courts have often used a declaratory judgment as a remedy for violation of a federal statute in the class-action context. *See, e.g., Gulino*, 907 F. Supp. 2d at 506–07 (S.D.N.Y. 2012) (denying in part defendant's motion to decertify class based on intervening change in law, thereby allowing

class seeking a declaratory judgment that defendant violated Title VII to be maintained); *Clark v. Astrue*, 274 F.R.D. 462, 472–73 (S.D.N.Y. 2011) (certifying class of claimants seeking declaratory relief related to benefits under the Social Security Act); *Charron v. Pinnacle Grp. N.Y. LLC*, 269 F.R.D. 221, 236, 244 (S.D.N.Y. 2010) (certifying class of plaintiffs who sought "a declaratory judgment that Defendants' alleged practices of, *inter alia*, fraudulently inflating regulated rents, baselessly challenging tenants' succession rights and commencing unfounded eviction proceedings" violated RICO).

Based on such cases, the "old soil" also brings with it (in addition to civil contempt) a claim for declaratory judgment for violation of a statute on a class-wide basis.  The Court thus finds that a claim seeking a declaratory judgment for a violation of the Bankruptcy Code, and specifically in this case Section 524, would not be futile, and the Court will grant Plaintiff leave to modify the Complaint to assert this claim.

### b.  The Southern District of New York Contempt Class.

Plaintiff also proposes to assert a class consisting of all debtors who received their Chapter 7 discharge in the United States Bankruptcy Court for the Southern District of New York, regardless of which judge in this District issued the order.  [Motion to Amend, Doc. 222, p. 4]. Plaintiff argues that this would be allowed under existing law and cites to two cases to support this argument.  [*See id.*].  The first is a criminal proceeding in which the Fifth Circuit held that "each judge of a multi-district court" has the "power and authority" to enforce another judge's injunction. *United States v. Corn*, 836 F.2d 889, 892 (5th Cir. 1988).  In the other case, a bankruptcy court in the Southern District of Ohio held that the Court had "jurisdiction over [a] [d]istrict-wide [c]lass because [the class] only include[d] discharge orders entered by judges in the same district as [that] Court.  *In re Beiter*, 554 B.R. 433, 439 (Bankr. S.D. Ohio 2016).

Defendant responds to this argument by asserting that in *Bruce*, "the Second Circuit explicitly prohibited certification of any class (district-wide or otherwise)." [Amendment Opposition, Doc. 232, p. 17].  Defendant refers specifically to the following language from the *Bruce d*ecision: "We disagree that a bankruptcy court has the authority to hear and adjudicate a *classwide contempt proceeding.  That leaves only plaintiff's individual claim . . .*" [*Id.*] (quoting *Bruce*, 75 F.4th at 299); [*See also* Amendment Opposition, Doc. 232, p. 18 n.7] ("civil contempt proceedings leave the offended *judge* solely responsible for identifying, prosecuting, adjudicating, and sanctioning the contumacious conduct") (quoting *Bruce*, 75 F.4th at 303) (emphasis in the original).

On this issue, the Court agrees with Defendant. The Second Circuit in *Bruce* referred to a "class-wide contempt proceeding" without regard to the scope or size of the class.  *See Bruce*, 75 F.4th at 299.  The court in *Beiter* denied a motion to strike district-wide class allegations on a claim for contempt for violating the Section 524(a)(2) Injunction.  *See In re Beiter*, 554 B.R. 433, 439–40 (Bankr. S.D. Ohio 2016).  However, that case was decided in 2016, and in this Circuit *Bruce* is controlling.  Furthermore, the motion to certify the class in *Beiter* was never decided as the parties reached a settlement, and thus *Beiter* does not address whether the Court should actually certify a class on a district-wide basis.[26]

*Corn* involved one judge finding criminal contempt for violation of an injunction issued by a different judge within the same district.  *See Corn*, 836 F.2d at 892.  That case does not involve civil class actions, and therefore does not speak to whether a district-wide class should be certified

---

[26]  In *Beiter*, the plaintiff filed a "Motion to Certify Class" on July 12, 2018.  *See* Motion to Certify Class, *Beiter v. Chace Home Finance LLC, et al.*, No. 15-2195 (Bankr. S.D. Ohio 2018), ECF No. 167. However, before the court decided whether to certify the district-wide class, the parties stipulated to dismissal of the case with prejudice. *Id.* at ECF No. 204.

here. Accordingly, this Court finds that a district-specific class action for a contempt claim against

Defendant for violation of the Section 524(a)(2) Injunction is not permissible under *Bruce*, and

therefore that claim would be futile and cannot be included in the amended complaint.

### c. *Rule 37 Sanctions.*

It also appears that Plaintiff seeks to incorporate the Rule 37 sanctions granted by Judge

Drain in the original Certification Decision into the Proposed Amended Complaint by seeking to

certify a Rule 37 sanctions class:

> Because the class as a whole was harmed by Credit One's attempt to cover up its
> violations by its contumacious conduct during this case, this Court should certify a
> national class composed of all 288,000 members whose tradelines continued to be
> adversely affected and award an appropriate non-compensatory monetary sanction
> to each class member.

[Decertification Opposition, Doc. 220, pp. 16–17]. Plaintiff incorporates such relief into the

Proposed Amended Complaint in two places:

> (1) In the last paragraph under "FIRST CAUSE OF ACTION," Plaintiff asserts: that
> "Pursuant to its statutory and inherent authority, this Court may award appropriate
> injunctive, monetary and restitutionary relief and attorney's fees and costs for
> Defendant's violation of § 524(a)(2), their collection on discharged debts and their
> contumacious conduct before this Court." [Proposed Amended Complaint, Doc. 223-
> 1, p. 19]; and

> (2) In the list of relief that Plaintiff seeks, Plaintiff asks that "Defendant be ordered to pay
> to all National Class Members sanctions pursuant to Rule 37 of the Federal Rules of
> Civil Procedure for their contumacious conduct before the Court." [*Id.* at pp. 19–20].

Plaintiff further asserts:

> Section 105(a) would redress the harm caused to the class by Credit One's conduct
> *in this Court*, and not Credit One's initial violation of other courts' discharge orders
> . . . While each class member has the right to return to the court that issued their
> initial discharge order, this Court clearly has the power to award nominal damages
> to each class member for Credit One's contumacious conduct before [this] Court.

[Decertification Opposition, Doc. 220, pp. 16–17] (emphasis in original). In response, Defendant

asserts that:

As a threshold matter, Plaintiff's request is procedurally improper. Plaintiff has never proposed, and [] Judge Drain never certified, a "discovery violations" class. . . . Indeed, a class based on Rule 37 would fail to satisfy Rule 23(a) on its face, which requires that the 'claims or defenses' of the class representative is typical of those of the class. *See* Fed. R. Civ. P. 23(a)(3). Rule 37 is a procedural rule governing discovery and does not provide an independent cause of action and cannot form the basis of the class's "claims or defenses."

[Def. Reply, Doc. 229, p. 14] (citing *George & Co. LLC v. Spin Master Corp.*, No. 19 Civ. 4391, 2020 U.S. Dist. LEXIS 120715, at *25 (E.D.N.Y. July 7, 2020) ("[Plaintiff]'s spoilation claim is futile. The proposed claim is brought pursuant to Rule 37(e). Rule 37(e) is a procedural rule governing discovery and preservation of electronic evidence and permits the entry of sanction[s]; it does not provide George & Co. with a cause of action.").

The court in *George & Co* relied on cases that held that the Federal Rules of Civil Procedure (the "**FRCP**") do not create a private cause of action based on the Rules Enabling Act, which provides in relevant part that the FRCP "shall not abridge, *enlarge* or modify any substantive right." The Rules Enabling Act, 28 U.S.C. § 2072(b) (emphasis added); *see also George & Co.*, 2020 U.S. Dist. LEXIS 120715, at *25 (citing *Digene Corp. v. Ventana Med. Sys., Inc.*, 476 F. Supp. 2d 444 (D. Del. 2007) (granting motion to dismiss conspiracy claim that alleged "conspiracy to evade [] discovery obligations" because "evasion of discovery obligations under the Federal Rules of Civil Procedure cannot create a private cause of action and, therefore, [plaintiff] fails to state a viable claim"); *Carmax Auto Superstores, Inc. v. Sibley*, 194 F. Supp. 3d 392, 402 (D. Md. 2016), aff'd, 730 F. App'x 174 (4th Cir. 2018) (dismissing counterclaim based on FRCP 5.2 because "courts have uniformly interpreted [28 U.S.C. § 2072(b)] to mean that a failure to comply with the Federal Rules cannot create a private right of action.") (citations omitted)).

Thus, Rule 37(e) does not create a cause of action, which, as Defendant argues, would be necessary to satisfy Rule 23(a). [Def. Reply, Doc. 229, p. 14]. *See also* Federal Rule of Civil

Procedure 23(a)(3) ("One or more members of a class may sue or be sued as representative parties

on behalf of all members only if . . . (3) the *claims or defenses* of the representative parties are

typical of the claims or defenses of the class) (emphasis added).

Moreover, Judge Drain made it clear in the Certification Decision that the Rule 37 sanction

was the default judgment itself: "a default judgment should be issued under Fed. R. Civ. P. 37

against Credit One based on, as discussed above, Credit One's prolonged, willful, bad faith

discovery misconduct. The consequence of that default judgment is the deemed admission of all

well-pleaded factual allegations in the complaint, *except for those relating to damages*."

[Certification Decision, Doc. 176, pp. 47–48] (emphasis added).  The monetary, punitive sanctions

Judge Drain imposed on Defendant were purely based on a finding of contempt for violating the

Section 524(a)(2) Injunction: "[s]uch civil non-compensatory sanctions are warranted in the light

of Credit One's *repeated, serial, systematic violation of discharges around the nation* and the

continuing violation of them, after notice, in Anderson's case."  [*Id.* at p. 63].  Judge Drain did not

mention the discovery violations as a reason for imposing such sanctions, and the Court does not

find the Plaintiff has provided any viable legal arguments for why such additional monetary

sanctions should be imposed now.

Based on all of the above, Plaintiff is permitted to amend the Complaint only to clarify the

inclusion of a Declaratory Judgment claim on a nationwide class basis pursuant to 28 U.S.C. §§

2201 & 2202.

### C.  **GRANTING THE MOTION TO AMEND DOES NOT AFFECT JUDGE DRAIN'S RULING IN THE CERTIFICATION DECISION BEYOND DAMAGES FOR THE MAIN CLASS.**

At this juncture, the Court has now found that (A) a class claim for a declaratory judgment

for violation of the Section 524(a)(2) Injunction may be asserted post-*Bruce*, and (B) Plaintiff can

amend the Complaint in good faith to assert such a claim without undue prejudice to Defendant and without causing undue delay. The next question the Court faces is how the proposed amendment would affect the existing relief granted in the Certification Decision.

### i.    *A Declaratory Judgment class has not already been certified nor granted relief.*

Plaintiff argues that Judge Drain did in fact already certify a declaratory judgment class. [July 2024 Hr'g Tr., Doc. 237, 19:1–19]. In support of this assertion, Plaintiff refers to language in the order accompanying the Certification Decision [*see* Doc. 179, hereinafter the "Certification Order"], specifically:

> ORDERED, ADJUDGED AND DECREED that without limiting the foregoing, the Defendant is *declared* to have violated the discharge and the discharge injunction under sections 727(b) and 524(a)(2) of the Bankruptcy Code of the Plaintiff and each member of the class certified hereby who does not timely opt out of such class.

[Certification Order, Doc. 179, p. 2] (emphasis added). At the July 2024 Hearing, Plaintiff's counsel urged that "[w]e have always alleged a declaratory judgment class. We have always alleged a declaratory judgment claim. That's because the beginning of our complaint, the very first paragraph of our complaint asks for a declaratory judgment." [July 24 Hr'g Tr., Doc. 237, 19:22–20:1; Doc. 1, p. 1]. The Court does not find, however, that a declaratory judgment class was previously certified.

As with the original Complaint here, the *Bruce* Complaint also had the words "declaratory judgment" in the first paragraph. [*Bruce* Complaint, Bruce Dkt, Doc. 39, p. 1]. Plaintiff has conceded that the two complaints are almost exactly the same [*supra*, Section (IV)(B)]. As noted *supra* Section (IV)(B)(iii)(a), the Second Circuit in *Bruce* said that such nearly identical language in *Bruce* did not rise to the level of alleging "separate and distinct claims for declaratory relief and damages." *Bruce*, 75 F.4th at 299. Thus, the Court finds that the original Complaint here did not

properly allege a claim for a declaratory judgment, and Judge Drain's use of the word "declared" in the Certification Decision is not sufficient to constitute a declaratory judgment. Accordingly, the Court finds that the Certification Decision did not already certify a declaratory judgment class.

### ii.  *A Declaratory Judgment Claim can be substituted for the contempt ruling as part of the Default Judgment.*

Nevertheless, as already established, Plaintiff's briefs and oral arguments also seek leave for Plaintiff to amend the Complaint to more clearly include a declaratory judgment class claim. The Court has already granted leave to amend (*see supra*, Section (IV)(B)(iii)(c)), and so the Court will analyze how such amendment affects the Certification Decision.

Plaintiff argues that "[a]lthough this Court cannot find Credit One in contempt of other courts' discharge orders, all the reasons why this Court should award class-wide relief of a declaratory nature still remain." [Decertification Opposition, Doc. 220, p. 11]. The Court agrees. As described in Section (I), Judge Drain found Defendant liable for two distinct types of misconduct, and granted Plaintiff two distinct forms of relief*:*

(1) first, Judge Drain found Defendant *liable* for discovery violations pursuant to Rule 7037, and the *relief* he granted for such liability was the default judgment on Plaintiff's claim [Certification Decision, Doc. 176, p. 47–48];

(2) second, Judge Drain found Defendant *liable* for violating the Section 524(a)(2) Injunction of the class members pursuant to the default judgment, and the *relief* for that liability was to be $50-1,000 for each Plaintiff in the class, which amount was left to be decided at a later date.

*See generally supra*, Section (I)(E)(ii); [*see also* Certification Decision, Doc. 176, pp. 65–66]. As the Court explained in Section (IV)(B)(iii)(a) *supra*, regarding both a contempt claim and a declaratory judgment claim, the finding of liability for a violation of the Section 524(a)(2) Injunction will be exactly the same. *See supra*, Section (IV)(B)(iii)(a). The claims only differ in the specific relief granted as a result of the finding of liability. Here, that means the only portion

of the Certification Decision that would be altered by the Proposed Amended Complaint would be the damages available to Plaintiff. In any event, Judge Drain did not decide that issue on a final basis (stating only that there would be an award of $50-$1,000 to each class member, to be decided later based on factors such as the size of the class and opt-outs). [Certification Decision, Doc. 176, pp. 65–66]. The Court finds that a modification of the Complaint to substitute Declaratory Judgment relief in lieu of contempt sanctions for the national class will actually have no material effect on Judge Drain's decision, other than to vacate the determination that each plaintiff in the national class would receive $50–$1,000.

### iii.    *The Class does not need to be recertified.*

The Court must also analyze whether the class must be recertified. Defendant states in the Decertification Motion that Judge Drain certified "a nationwide class of individuals who had credit reports issued in which Credit One reported their discharged debt as 'charged off' or '$0 balance'" [Decertification Motion, Doc. 215, p. 7]. Defendant argues specifically that decertification is proper as "[u]nder the Second Circuit's clear holding in *Bruce*, in this virtually identical case, this Court also lacks [] the authority to hear and adjudicate a class-wide contempt proceeding against Credit One or otherwise to adjudicate claims that Credit One has violated the discharge injunctions of other bankruptcy courts." [*Id.* at 14].

Plaintiff in response argues that "the Bruce decision only affects the contempt remedies sought in this action. It does not give Credit One a pass on liability." [Decertification Opposition, Doc. 220, p.2]. As set forth *supra* Section (IV)(B)(iii)(a), the Court agrees with Plaintiff. Indeed, as Plaintiff further states:

> Although this Court cannot find Credit One in contempt of other courts' discharge orders, all the reasons why this Court should award class-wide relief of a declaratory nature still remain. Credit One's conduct was common to the class;

indeed, Credit One had a uniform policy that it applied to all class members and all class members were deprived of their "fresh start" as a result of such conduct.

[Decertification Opposition, Doc. 220, p. 11].

The Court will review the analysis in the Certification Decision regarding class certification to demonstrate that the reasoning for certification of a declaratory judgment class is the same. As to standing, Judge Drain found injury in fact in the pressure to pay discharged debts, which is meant to be relieved by the discharge [Doc. 176, pp. 68–69]; an obvious nexus with Credit One's "refusal to correct" the tradelines [Doc. 176, p. 69]; and finally, the redressability factor was damages, wherein Judge Drain found "[i]ndeed, even nominal damages would satisfy the 'redress' factor" [Doc. 176, p. 70] (citing *Uzuegbunam v. Preczewski*, 141 S.Ct. 792, 798-802 (2021)). As for injunctive relief, Judge Drain noted this issue had been mooted by the time his decision was rendered based on the "Stipulation and Order" pursuant to which Defendant had agreed to delete the tradelines, and "Plaintiff [did] not raise any questions as to any loose ends that the Stipulation and Order leaves open." [Certification Decision, Doc. 176, p. 71]; [*see also* Doc. 104] (*Stipulation and Order*).

As to the analysis under Rule 23, Judge Drain considered the four elements necessary to certify a national contempt class as follows:

(1) Numerosity: this was satisfied by the "287,980 Accounts that Credit One reported as 'charged off' that were subsequently discharged under Chapter 7 of the Bankruptcy Code between May 1, 2007 and April 2017, excluding any accounts that were reported as charged off after December 2016." [*Id.* at p. 72];

(2) Commonality: Judge Drain explained that this factor was met because "all the claims arise from Credit One's systematic policy not to correct its tradelines to reflect the discharge; in addition, as discussed above, since 2007, the inception of the class period, the law on the class's underlying claims, discussed above, has been substantially the same throughout the country." [*Id.* at p. 73];

(3) Typicality: after explaining the distinction between commonality—which focuses on the definition of who fits the class—and typicality, which analyzes the similarity of the claims among class members, Judge Drain stated that "[o]nce again in the light of Credit One's systematic practice serving as the basis for Anderson's claims as well as those of the other class members, the 'typicality' requirement is satisfied here." [*Id.* at p. 74];

(4) Adequacy: finally, when considering whether Mr. Anderson would fairly and adequately protect the interests of the class, Judge Drain found that "Anderson has vigorously pursued the underlying claims for himself and the class, having been deposed twice; serious concerns regarding his credibility do not exist; and his counsel clearly are qualified and experienced and to date have conducted this litigation ably, including in the face of Credit One's extraordinary misconduct." [*Id.* at p. 75].

Thus, with regard to the four Rule 23(a) factors, the analysis would not differ in any way for the previous contempt claim and the now-sought declaratory judgment claim.

The Court also notes the two other aspects of class certification that Judge Drain addressed in the Certification Decision. The first is the additional requirement of "ascertainability," which requires that the class definition be finite enough that it is "administratively feasible for the court to determine whether a particular individual is a member." [Certification Decision, Doc. 176, p. 77] (quoting *de Lacour v. Colgate- Palmolive Co.*, 338 F.R.D. 324, 339 (N.D.N.Y. 2021). Here, just as Judge Drain said, "the proposed class can be definitionally ascertained from Credit One's own tradeline records, the three main credit reporting agencies' credit reports on the people that appear on Credit One's tradeline records, and electronic case filing discharge records kept by the bankruptcy courts." [Certification Decision, Doc. 176, p. 77]. The shift from a contempt claim to a declaratory judgment does not affect this.

Finally, regarding the Rule 23(b)(3) finding of "predominance," Judge Drain explained (in the context of the contempt claim):

Given the Plaintiff's limitation on the damages that he seeks for the class, as discussed above, to exclude individualized damages, as well as the Court's determinations regarding Credit One's systematic conduct, the proposed class is sufficiently cohesive, as the legal and factual questions that qualify each class member's case can be determined through generalized proof, and these issues are

> more substantial than the potential damages issues that may be subject to individualized proof.

[Certification Decision, Doc. 176, p. 79]. The declaratory judgment claim would, as described *supra* Section (IV)(B)(iii)(a), reduce "the potential damages issues that may be subject to individualized proof." [*Id.*]. Specifically, as Plaintiff argues, "[e]ach class member could then proceed in the court that issued [the] discharge order for contempt and damages or any other contempt relief. Such a declaration would greatly assist the class members in pursuing remedies for their own individual contempt claims." [Decertification Opposition. Doc. 220, pp. 9–10]. Plaintiff's proposal would place the ability to grant damages for contempt back in the hands of each individual judge who entered each discharge order (as required by *Bruce*). Those judges would be able to craft individualized damage determinations if and when an individual plaintiff uses the declaratory judgment as grounds to bring a contempt claim in his or her "home court."

Thus, certification of a class on a declaratory judgment claim does not require new or different analysis, nor does anything about the class or facts relevant thereto change from the prior determination. This is because, as this Court has already explained, the analysis applied in finding liability for a Section 524 violation is the same for a contempt claim and a declaratory judgment claim. Accordingly, the Main Class will remain certified with respect to liability on a declaratory judgment claim.

As for whether the Sub-Class for restitution damages should be decertified, Plaintiff asserts that the Court "has the power to order restitution of all funds paid by class members on discharged debts" and that "Judge Drain has already certified this restitution sub-class." [Decertification Opposition, Doc. 220, p. 2]. Defendant makes the same argument for decertification of the Sub-Class as it made for decertification of the main class, namely that such class falls within the contempt claim and is thus prohibited by *Bruce*. [*See* Decertification Motion, Doc. 215, pp. 13–

14].  As Plaintiff argues, such compensatory damages can be granted as "appropriate monetary relief" pursuant to Plaintiff' proposed declaratory judgment claim.  [Decertification Opposition, Doc. 220, p. 11].  The Court agrees with Plaintiff, and thus "Judge Drain's order of restitution and designation of [the Sub-Class] [is] re-affirmed."  *Id.* at p. 14].

The Court will now turn to the issue of damages.

### iv.    Damages

Plaintiff argues that he still maintains his individual claim for contempt.  [July 24 Hr'g Tr., Doc. 237, 68:4–6].  Plaintiff further assets that "Judge Drain has already determined that Plaintiff's counsel are entitled to attorneys' fees for their efforts, on Plaintiff's behalf, to enforce his personal discharge order." [Decertification Opposition, Doc. 220, p. 18].  [*See also* Certification Decision, Doc. 176, p. 62] ("Accordingly, Anderson shall have judgment for the reasonable attorneys' fees and expenses of his counsel, as well as his own reasonable costs, in enforcing his discharge.").  The Court agrees and will thus determine damages and attorneys' fees for Plaintiff's individual contempt claim using the procedure laid out in the Certification Decision.  [Certification Decision, Doc. 176, p. 62] ("[C]ounsel shall file a fee application with supporting time and expense records within 60 days of this Memorandum of Decision, and serve it on Credit One, which shall have 30 days to file and serve an objection to the reasonableness of such fees and expenses.")

Plaintiff also urges the Court to grant the members of the Main Class nominal damages ancillary to the declaratory judgment.  At the July 24 Hearing, Plaintiff's counsel stated: "I'll refer to . . . *Preczewski*, 592 U.S. 279, it's well settled, said the court, that a plaintiff can always recover nominal damages."  [July 24 Hr'g Tr., Doc. 237, p. 29].  In *Preszewski*, the United States Supreme Court stated: "[w]e hold only that, for the purpose of Article III standing, nominal damages provide

the necessary redress for a completed violation of a legal right." *Preczewski*, 592 U.S. 279, 293 (2021).

Furthermore, Plaintiff cites other Second Circuit precedent in which the Court granted "monetary relief" in declaratory judgment actions. [Decertification Opposition, Doc. 220, pp. 11–12]. (citing *Starter Corp. v. Converse, Inc.*, 170 F.3d 286, 289 (2d Cir. 1999); *Fred Ahlert Music Grp. v. Warner/Chappell Music, Inc.*, 155 F.3d 17, 25 (2d Cir. 1998); *Beacon Constr. Co., Inc. v. Matco Elec. Co., Inc.*, 521 F.2d 392, 399–400 (2d Cir. 1975); *Edward B. Marks Music Corp. v. Charles K. Harris Music Publ'g Co.*, 255 F.2d 518, 522 (2d Cir. 1958)). In *Beacon Constr. Co. Inc.* in particular, the Second Circuit stated:

> Under the Declaratory Judgment Act, 'Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment.' It is well settled that "further relief" may include an award for damages. . . In deciding whether to award damages or require the parties to engage in further litigation the determinative factor is which solution will result in the most expeditious and just conclusion of the controversy.

*Beacon Const. Co.*, 521 F.2d at 399–400. Here, the Court agrees with Plaintiff that the Main Class might be entitled to nominal damages. Just as Judge Drain did not make a final determination on damages in the Certification Decision, the Court also finds that "further litigation" on the amount that should be awarded in nominal damages would be the most "just conclusion of the controversy." *Id.*; [*see also* Certification Decision, Doc. 176, p. 66]. As Plaintiff believes the Slodov Documents will be relevant to such future damages analysis, the Court will now consider the issues related to the Privilege Motion.

### D.  THE SLODOV DOCUMENTS ARE RELEVANT TO A DAMAGES DETERMINATION.

The Court first notes that both the Privilege Motion and the Privilege Opposition were filed under seal, and therefore the Court will attempt to avoid disclosing any potentially privileged information in the context of this ruling.  [*See* Doc. 199; Doc. 205].

The Privilege Motion, unlike the Decertification Motion and Motion to Amend, was filed *prior* to the issuance of the *Bruce* decision and was based on the understanding that this Court could award class-wide contempt sanctions:

> These documents are relevant to the issues before the Court because they relate to the sanction that is yet to be determined by this Court. In its [Certification Decision], the court stated that its award of between $50 and $1000 to each class member is dependent, not only on Credit One's intentional refusal to correct the class members' credit reports, but also on the fact that Credit One "engaged in prolonged extraordinary wrongful efforts to prevent the exploration of its defenses to the complaint's allegations" and "lied not only about its discovery efforts but also misrepresented to the Court and obfuscated in discovery" . . . It is clear from the redacted papers alone that the [u]nredacted [i]ntervention [p]apers will provide new, key details concerning the extent of Credit One's fraud, and therefore assist the Court in determining the appropriate amount for a sanction.

[Privilege Motion, Doc. 199, p. 16].  As Plaintiff can still proceed on a contempt theory for himself an individual basis, any arguments in the original Motion related to a finding of contempt still stand with regard to Plaintiff.  Moreover, as for the proposed declaratory judgment class, Plaintiff's counsel argued at the July 24 Hearing that Plaintiff still seeks a determination that the documents are no longer privileged for the purpose of determining relief pursuant to the declaratory judgment claim:

> Obviously, Judge Drain, when he awarded sanctions both for the contempt in violating the discharge orders and the contempt in front of him, said, I'm going to impose a range of $50 to $1,000. We acknowledge that Your Honor has no authority to impose contempt sanctions for what happened with regard to other discharge orders, although we do argue that you can still impose nominal damages. But in determining what sanction you should impose that harmed the class, that

> [Judge Drain] said harmed the class, their conduct during the case harmed the class,
> you should allow us to brief the issue and you should review those documents and
> allow us to review the documents and file a brief after those documents are unsealed
> that could go to the merits of what the appropriate sanction is here.

[July 24 Hr'g Tr., 74:8–21.]. The Court agrees with Plaintiff. As described above, in considering

a declaratory judgment claim the Court can bifurcate the finding of liability and the relief granted

as a result. *See supra*, Section (IV)(B)(iii)(a). Case law in this Circuit allows Plaintiff's request

to present new evidence related to the determination of damages. For instance, in *Edward B.*

*Marks Music Corp. v. Charles K. Harris Music Publ'g Co.*, upon which Plaintiff relies [*see*

Decertification Opposition, Doc. 220, p. 12], the Second Circuit stated:

> the further relief sought—here monetary recompense—need not have been
> demanded, or even proved, in the original action for declaratory relief. [28 U.S.C.
> § 2202] authorizes further or new relief based on the declaratory judgment, and any
> additional facts which might be necessary to support such relief can be proved on
> the hearing provided in the section or in an ancillary proceeding if that is necessary.

*Edward B. Marks Music Corp.*, 255 F.2d at 522. Plaintiff also states that "Judge Drain made it

very clear that Credit One's extraordinarily wrongful conduct is directly relevant to the monetary

sanction that should be imposed on Credit One," and further adds that, "as Judge Drain noted, the

egregiousness of conduct is a central component in determining the appropriate monetary award."

[Privilege Reply, Doc. 207, pp. 2–3]. Indeed, Judge Drain granted a default judgment as to liability

but not with respect to a damages/relief determination: "I don't believe that -- I think the law is

clear on this, that that default should extend to the class certification point -- *and certainly not the*

*damages. I haven't established damages*." [Doc. 101, 5:13–16] (the "**November 10, 2016 Hr'g**

**Tr.**")

At the July 24 Hearing, Defendant argued that the Slodov Documents are not relevant to

determining damages because Judge Drain did not consider them in reaching the default judgment,

referring to statements made by Judge Drain at the October 12, 2017 Hearing:

> Judge Drain expressly confirmed that White & Case should suspend its backward-looking inquiry into the discovery issues leading up to that hearing because whatever happened, happened. They had their default judgment . . . three times during that colloquy, Judge Drain made very clear that he was indifferent to the underlying state of mind of the client because it was no longer relevant to any issue before the Court.

[July 24 Hr'g Tr., Doc. 237, 79:25–80:4, 82:5–8].  In the Privilege Opposition, Defendant further states that "[h]aving determined to issue the most severe sanction he was considering (a default judgment against Credit One on the merits), the Court expressed its disinterest in any backward-looking examination of those failings and denied Plaintiff's counsel's request for all attorney-client communications." [Privilege Opposition, Doc. 205, p. 6].

Defendant seems to interpret these statements by Judge Drain to mean that Plaintiff is precluded from seeking production of the documents that Defendant had originally refused to produce.  However, while it was clear that Judge Drain did not consider the communications in question pertinent when issuing his Rule 37 default judgment, nowhere in the Certification Decision nor at the November 10, 2016 Hearing did Judge Drain say that any such documents should be precluded from subsequent discovery on the issue of damages: "[s]o I think the parties should be focusing on discovery related to the class, and if you want to bifurcate it still, you can, *or discovery can also at that point deal with damages*." [November 10, 2016 Hr'g Tr., Doc. 101, p. 5:19–22] (emphasis added); [*see generally* Certification Decision, Doc. 176].

As explained in Section (IV)(C)(ii) *supra*, the portion of the Certification Decision awarding $50-$1,000 to the Main Class is no longer applicable (except as to Plaintiff individually), and the parties will be permitted to explore what specific remedy, such as nominal damages, should be awarded to the Main Class pursuant to the declaratory judgment claim.  Such proceedings would, as Judge Drain had directed at the November 10, 2016 Hearing, merit their own discovery. As Plaintiff stated at the July 24 Hearing, "[the Court] should allow us to brief the issue, and [the

Court] should review those documents and allow us to review the documents and file a brief after those documents are unsealed that could go to the merits of what the appropriate sanction is here." [July 24 Hr'g Tr., Doc. 237, 74:17–21].

The Court thus finds that the Slodov Documents are relevant for damages discovery and to determine what nominal damages, if any, should be awarded. Now that the Court has determined the Slodov Documents to be relevant, it must determine whether they are privileged.

### E.  THE CRIME FRAUD EXCEPTION.

The parties disagree as to whether the communications contained in the Slodov Documents satisfy the crime-fraud exception. [Privilege Motion, Doc. 199, p. 9; Privilege Opposition, Doc. 205, p. 2]. Plaintiff specifically seeks:

> a ruling that all of the documents Mr. Slodov previously filed with the Court, those that have been retained by the clerk's office, and any additional documents in Mr. Slodov's possession relating to his representation of Credit One, as well as his communications with his former firm and with Credit One, and all documents relating to this action in the possession of Credit One are not privileged because they furthered a fraud on the Court.

[Privilege Motion, Doc. 199, p. 5]. Plaintiff urges that "[no] privilege applies to the documents at issue because they furthered a fraud on the Court and therefore the privilege is eliminated under the crime-fraud exception." [*Id.*].

Defendant, on the other hand, argues that "even the facts as alleged by Plaintiff would not support Plaintiff's incredibly expansive view of what amounts to fraud on the court." [Privilege Opposition, Doc. 205, p. 2]. With regard to communications between Defendant and Defendant's New Counsel[27] specifically, Defendant asserts that "at bottom, Plaintiff seeks to uncover

---

[27]    Defendant's New Counsel, White & Case, moved to be substituted in as counsel for Defendant concurrently with the Sessions Firm's withdrawal. [*See* Counsel Substitution Motion, Doc. 90, pp. 1–2].

privileged material because of his assertion that such material could provide evidence that Plaintiff

'continued' a 'fraud on the court' after the September 2016 sanctions hearing." [*Id.* at p. 3].

### i.        The Crime-Fraud Exception Standard

Plaintiff argues that the attorney-client privilege does not "protect communications made

in furtherance of a crime or fraud," and that the "crime-fraud exception is not limited to technical

crimes." [Privilege Motion, Doc. 199, pp. 6–7] (citing *Amusement Industry Inc. v. Stern*, 293

F.R.D. 420, 425 (S.D.N.Y. 2013); *In re Grand Jury Subpoena Duces Tecum,* 731 F.2d 1032, 1038

(2d Cir. 1984)). Plaintiff further states that "the crime-fraud exception applies where there is a

fraud upon the court" and "probable cause to believe that the particular communication with

counsel or attorney work product was intended in some way to facilitate or conceal the fraudulent

activity." [Privilege Motion, Doc. 199, p. 7]. (citing *In re Richard Roe, Inc.*, 68 F.3d 38, 39 (2d

Cir. 1995); *In re St. Johnsbury Trucking Co., Inc.*, 184 B.R. 446, 456 (Bankr. D. Vt. 1995)). Such

probable cause, as Plaintiff argues, is present where "a 'prudent person' [would] have a 'reasonable

basis' for believing that the objective of the client's communication with the attorney was to further

a fraudulent scheme." [*Id.*] (citing *Amusement Industry, Inc.*, 293 F.R.D. at 426–27).

Plaintiff further asserts that fraud on the court occurs "'when a party lies to the court and

his adversary intentionally, repeatedly, and about issues that are central to the truth-finding

process.'" [Privilege Motion, Doc. 199, p. 8] (quoting *Passlogix, Inc. v. 2FA Tech, LLC et al.* 708

F. Supp. 2d 378, 393 (S.D.N.Y. 2010)). In the context of discovery, plaintiff claims that fraud on

the court occurs when "attorneys, as officers of the court, deliberately and intentionally fail to

disclose evidence in an attempt to deceive" the court. [*Id.*].

Defendant argues that "[a] fraud on this court occurs when it is established by clear and

convincing evidence that a party committed 'the most egregious conduct involving a corruption of

the judicial process itself.'" [Privilege Opposition, Doc. 205, p. 18] (quoting *Esposito v. New York*, *2012 U.S. Dist. LEXIS 162308, at *10 (S.D.N.Y. 2012). Defendant further asserts that "discovery misconduct" in civil cases can only be deemed fraud on the court when there was "calculated and purposeful litigation misconduct." [Privilege Opposition, Doc. 205, p. 19] (quoting In re Gen. Motors LLC Ignition Switch Litig., 2015 U.S. Dist. LEXIS 159721, at *140–142). Defendant presents the two-part test that "the Second Circuit has articulated" and which requires that the party asserting the crime-fraud exception demonstrate that:

(i)    the client communication or attorney work product in question was *itself* a furtherance of the crime or fraud; and

(ii)   probable cause to believe that the particular communication with counsel or attorney work product was *intended* in some way to facilitate or to conceal the criminal activity.

[Privilege Opposition, Doc. 205, p. 16] (quoting *United States v. Richard Roe, Inc.*, 168 F.3d 69, 71 (2d Cir. 1999) (hereinafter "*Richard Roe*") (emphasis in the original)). Further, Defendant adds that "the crime-fraud exception is 'limited to fraud which seriously affects the integrity of the normal process of adjudication.'" [Privilege Opposition, Doc. 205, p. 18] (quoting *King v. First Am. Investigations, Inc.*, 287 F.3d 91, 95 (2d Cir. 2002)).

### ii.    *Standard for In Camera Review*

As Plaintiff notes, "a lesser evidentiary showing is needed to trigger *in camera* review than is required ultimately to overcome the privilege." [Privilege Motion, Doc. 199, p. 17] (quoting *U.S. v. Zolin*, 491 U.S. 554, 572 (1989)). Specifically, *in camera* review only requires a "showing of factual basis adequate to support a good faith belief by a reasonable person that *in camera* review of materials may reveal evidence to establish the claim that the crime-fraud exception applies . . . Once that showing is made, the decision whether to engage in *in camera* review rests in the sound discretion of the district court." [*Id.*].

### iii. Analysis of Privilege for the Slodov Documents

The Court agrees with Plaintiff to the extent that the communications between Defendant and Defendant's Prior Counsel have met the standard for an *in camera* review to determine if they potentially implicate a fraud on the Court. As for communications with Defendant's New Counsel, the Court agrees with Defendant that there has not been a sufficient showing that these materials will reveal any intended furtherance of a fraud on this Court.

### a. Communications with Defendant's Prior Counsel

The Court applies the two-prong test laid out in *Richard Roe*, cited in Defendant's Privilege Opposition and discussed above (*supra*, Section (IV)(E)(i)), to determine the applicability of the crime-fraud exception to the Slodov Documents. *See Richard Roe*, 168 F.3d at 71. *See also* [Privilege Opposition, Doc. 205, p. 16]. The first prong of the test requires the movant to show that "the client communication or attorney work product in question was *itself* in furtherance of the crime or fraud." *Richard Roe*, 168 F.3d at 71 (emphasis in the original). Defendant argues that "Plaintiff has made no showing whatsoever that the privileged communications he seeks themselves *furthered* an alleged fraud on the Court, and the Motion instead appears to be premised on the idea that the requested privileged communications may provide *evidence* of the alleged fraud on the court." [Privilege Opposition, Doc. 205, p. 27]. The Court disagrees.

In the Privilege Motion, Plaintiff asserts that the Slodov Documents will prove: "that Credit One may have destroyed documents—despite a litigation hold" [p. 10]; that Credit One and its Prior Counsel were both aware that the declaration submitted to the Court in March 2016 (the "**March Declaration**") was blatantly false [p. 11]; that Credit One "was fully aware of, and directed, Slodov's actions throughout the entire duration of [the] litigation" [p. 11]; that Mr. Slodov's superiors at his firm "were fully aware they would lose a sanctions motion because of

this conduct" [p. 12]; and that Defendant's New Counsel made "false representations to the Court" at the October 12, 2017 Hearing, by stating that "the client did not intend to mislead this Court" [p. 13]. [Privilege Motion, Doc. 199, pp. 10–13].

Plaintiff argues that such facts would indicate that Defendant and its Prior Counsel committed fraud on the Court because they "signed false declarations and made numerous false representations to Plaintiff and the Court asserting that discovery was complete and that [Defendant] had produced all relevant documents, when, in fact, [Defendant] possessed many more relevant documents that it knowingly attempted to conceal." [Privilege Motion, Doc. 199, p. 9].

Here, the Court agrees with Plaintiff. If, for instance, Defendant and Defendant's Prior Counsel knew the March Declaration was false, and Defendant and Defendant's Prior Counsel worked together to prepare the March Declaration, then it may well be determined that the communications between Defendant and Prior Counsel regarding the March Declaration *furthered* their submission of a false declaration, *i.e.* committed fraud on the Court.

Defendant further argues that Plaintiff has not met second prong, the requirement that there be "probable cause to believe that the particular communication with counsel or attorney work product was *intended* in some way to facilitate or to conceal the criminal activity. *Richard Roe*, 168 F.3d at 71 (emphasis in the original); [Privilege Opposition, Doc. 205, p. 30]. The only argument Defendant presents with respect to this second prong however, is that Plaintiff "cannot satisfy the second requirement that there is 'probable cause to believe that the particular communication with counsel or attorney work product was intended in some way to facilitate or to conceal the criminal activity.'" [Privilege Opposition, Doc. 205, p. 30]. This is merely a

conclusory statement without any supporting facts or reasoning. Accordingly, the Court must reject such an argument.

In any event, Plaintiff has presented an argument satisfying the intent requirement. As Plaintiff states, "Judge Drain found that Credit One *intentionally* deceived the Court by submitting false affidavits and intentionally obstructing discovery." [Privilege Reply, Doc. 207, p. 1] (emphasis added). Signing false declarations and making false representations regarding production of relevant documents certainly constitutes, as Defendant puts it, "calculated and purposeful litigation misconduct," which, based on Judge Drain's ruling, was so egregious it ultimately resulted in Rule 37 sanctions and a default judgment. [quoting Privilege Opposition, Doc. 205, p. 19]; [*see also* Certification Decision, Doc. 176, pp. 4–48]. As Plaintiff argues in the Privilege Reply, "lying to the Court, submitting false declarations, intentionally withholding documents, and destroying documents clearly constitute fraud on the Court and there are many cases that so hold." [Privilege Reply, Doc. 207, p. 5]. [28]

Defendant also argues that even if "Defendant improperly withheld documents after Judge Drain announced that he would be issuing a default judgment (and it did not), those alleged actions would not rise to the level of a fraud on the court." [Privilege Opposition, Doc. 205, p. 23]. Defendant asserts rather that its actions "at most . . . are discovery violations, the remedy for which is provided in Rule 37." [Privilege Opposition, Doc, 205, p. 23]. Defendant contends that "the

---

[28]    At a hearing on June 27, 2022 following the filing of the Slodov Motion, Judge Drain stated on the record:

   [Plaintiff] can make a motion and say that there was a fraud on the court and that's an exception to the attorney-client privilege . . . all you need to do is file a motion that says that . . . it's not privileged anymore and gives the Court authority for it to Credit One, and follow, you know a procedure for doing it in a way that doesn't blow the issue before the Court decides it.

[Privilege Reply, Doc. 207, pp. 4–5] (quoting transcript of the June 27, 2022 hearing at 24:4–7, 24:15–18). Judge Drain clearly referenced the possibility of the Slodov Documents being subject to the crime-fraud exception.

parties and the Court have addressed and argued, and the Court has resolved, the issue of Credit One's discovery failings through September 22, 2016." [Privilege Opposition, Doc. 205, p. 20]. Further, Defendant claims that Plaintiff has "not cited a single case in which a discovery violation, without more, amounted to fraud upon the court." [*Id.* at p. 24].

Plaintiff, however, has provided persuasive case law from the District Court where the crime-fraud exception was applied specifically based on discovery violations. [Privilege Reply, Doc. 207 pp. 5–6] (citing *McMunn v. Mem'l Sloan-Kettering Cancer Ctr.*, 191 F. Supp. 2d 440, 446–48 (S.D.N.Y. 2002) (finding plaintiff had committed fraud on the court where it was revealed that plaintiff had lied in response to discovery requests about possession of additional credit cards even after the court had ordered her to "disclose any and all credit cards she held and used"); *Skywark v. Isaacson*, No. 96 CIV. 2815 JFK, 1999 WL 1489038 (S.D.N.Y. Oct. 14, 1999), aff'd, No. 96 CIV. 2815 (JFK), 2000 WL 145465 (S.D.N.Y. Feb. 9, 2000) ("[D]efendants have established by clear and convincing evidence that plaintiff's conduct amounts to an extremely serious fraud upon the court . . . Through lies under oath, delays, and through the concealment by deliberate extraction of requested medical records, plaintiff attempted to hide [evidence] from the [c]ourt. . . .")). Thus, the Court finds that the crime-fraud exception can apply to discovery violations.

As for the contention that the Court has already resolved Defendant's discovery failures, and as already addressed in Section IV(D) *supra*, nowhere in the record did Judge Drain find that these discovery failures could never be revisited. As Plaintiff points out, Judge Drain did not have the Slodov Motion or Slodov Documents when he made the referenced statement that there was no need for a "backward-looking inquiry" as to the issues raised at that time. [July 24 Hr'g Tr., Doc. 237, 79:25–80:4].

Regarding the argument that the Court should first conduct an *in camera* review based on the standard set out in *Zolin*, Plaintiff asserts that the "good faith standard has been satisfied" because of the instances of "misrepresentations and fraudulent concealment" by Defendant and Defendant's Prior and New Counsel. [Privilege Motion, Doc. 199, p. 17]. Plaintiff urges that the Court's review of the 538 pages of e-mails contained in the Slodov Documents "will demonstrate Credit One's use of counsel to perpetrate the fraud." [*Id.* at p. 18]. Defendant offers but one brief statement in opposition: "Plaintiff has not articulated a legitimate purpose for Plaintiff to ask this Court to review *in camera* the [Slodov Documents]. Accordingly, the Court should decline to grant Plaintiff's request for *in camera* review." [Privilege Opposition, Doc. 205, p. 33].

Ultimately, the Court cannot ignore the fact that Defendant's Prior Counsel admitted to intentional non-compliance with discovery, followed by misrepresentations to the Court concealing said non-compliance. [Certification Decision, Doc. 176, pp. 38–41]. Defendant must have had a motive for wanting to keep certain evidence concealed from the Court, and it seems that a review of the 538 pages of communications in the Slodov Documents may assist in determining, *inter alia*, what such motive was. While the Court believes Plaintiff has met its burden under the *Richard Roe* test for the crime-fraud exception to apply, the Court also finds that Plaintiff has made a proper showing pursuant to *Zolin* that there is "a factual basis adequate to support a good faith belief by a reasonable person that *in camera* review" may reveal evidence that Defendant and Defendant's Prior Counsel committed fraud on the Court. Accordingly, the Court will first conduct an *in camera* review of the Slodov Documents to determine whether the crime-fraud exception should apply.

### b. *Communications with Defendant's New Counsel*

Plaintiff argues that Defendant's communications with its New Counsel are not privileged because "Credit One and its new counsel, White & Case, furthered the fraud by falsely attempting to lay all the blame for the deceit on Mr. Slodov." [Privilege Motion, Doc. 199, p. 2]. Specifically, Plaintiff asserts that White & Case also committed fraud on the Court because it (1) "falsely plac[ed] all the blame on Mr. Slodov, and (2) "fail[ed] to disclose facts that Mr. Slodov believed the attorneys had an ethical duty to disclose." [*Id.* at p. 13].

Defendant's argument against disclosure of communications with its New Counsel is two-fold:

(i)     "First, the [Privilege Motion] omits the fact that, just four weeks after [Defendant's New Counsel] entered its appearance, Judge Drain determined that Credit One should stand down on its backward-looking inquiry into the discovery that occurred or didn't occur up to today." [Privilege Opposition, Doc. 205, p. 22].

(ii)    "Second, Plaintiff's Motion does not contain a single allegation (nor could it) that Credit One and its new counsel failed to comply with their obligations to provide discovery sufficient to address Plaintiff's requests since January 2017 when discovery resumed." [*Id.* at p. 23].

Defendant summarizes its argument succinctly in one sentence later in the Privilege Opposition:

[S]ince [Defendant's New Counsel] has represented [Defendant], and after Judge Drain made clear that any outstanding discovery was moot in light of the default judgment, Plaintiff has received all the discovery it has sought from [Defendant] in connection with class certification issues, and the Motion does not raise a single allegation to the contrary.

[*Id.* at p. 26].

Here, the Court finds that Plaintiff has neither met its burden regarding the crime-fraud exception nor made the required good faith showing for an *in camera* review of any communications between Defendant and Defendant's New Counsel. As is clear from the numerous colloquies with Judge Drain, Defendant's New Counsel was under the impression it

should not explore any discovery misconduct by Defendant prior to New Counsel's retention as the legal consequences of those failures appeared at the time to have already been determined. Plaintiff therefore cannot satisfy the *intent* prong required by the *Richard Roe* test.

The Court also notes that Plaintiff has not presented any evidence indicating that Defendant's New Counsel was aware of what is contained in the Slodov Documents, and as Judge Drain directed at the November 10, 2016 Hearing, all discovery going forward was focused solely on class certification and damages. [November 10, 2016 Hr'g Tr., Doc. 101, p. 5:19–22]. This would mean that Defendant's New Counsel did not appear to have an active duty at that time to explore what Defendant may have previously and proactively withheld from the Court.

Accordingly, the portion of the Privilege Motion that seeks to declare any communication between Defendant and Defendant's New Counsel nonprivileged is denied. The Court will proceed with an *in camera* review of the Slodov Documents containing communications between Defendant and Defendant's Prior Counsel.

## <u>CONCLUSION</u>

For the reasons discussed above the Court finds that:

(i)     A declaratory judgment claim pursuant to 28 U.S.C. §§ 2201 & 2202 may be asserted for a violation of the Section 524(a)(2) Injunction.

(ii)    Plaintiff is permitted to amend the Complaint to include a declaratory judgment claim under 28 U.S.C. §§ 2201 & 2202.

(iii)   The default judgment in the Certification Decision as to Defendant's *liability* for violation of the Main Class and Sub Class's Section 524(a)(2) Injunction remains in place on the declaratory judgment claim.

(iv)    Judge Drain's finding of contempt with regard to Plaintiff Anderson's discharge is maintained, as well as the accompanying sanction of attorneys' fees.  Plaintiff's Counsel is directed to file a fee application within 60 days of this Opinion.

(v)     The Court will conduct an *in camera* inspection of the Slodov Documents containing communications between Defendant and Defendant's Prior Counsel to determine if they fall within the crime-fraud exception.

(vi)    The Court will allow for additional briefing by the parties on the issue of nominal damages after the Court reviews the Slodov Documents.

(vii)   Plaintiff shall file an Amended Complaint consistent with this ruling no later than April 4, 2025.


**IT IS SO ORDERED.**


Dated: March 28, 2025
New York, New York

/s/John P. Mastando III
HONORABLE JOHN P. MASTANDO III
UNITED STATES BANKRUPTCY JUDGE