UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x

In re Orinn S. Anderson,                            Chapter 7

                                    Debtor.          Case No.: 14-22147 (JPM)

---------------------------------------------------------x

Orinn S. Anderson, *on behalf of himself and all
others similarly situated*,

                                                     Adv. Pro. No. 15-8214 (JPM)
                                    Plaintiffs,

        – v –

Credit One Bank, N.A.,

                                    Defendant.

---------------------------------------------------------x

### <u>Memorandum Opinion & Order Denying Motion to Reconsider and Motion to Compel Arbitration, Dismiss Complaint, Strike Class, and Vacate Judgment</u>

*APPEARANCES:*

**BOIES SCHILLER FLEXNER LLP**
*Counsel for Orinn S. Anderson*
30 South Pearl Street, 11th Floor
Albany, New York 12207
By:    George F. Carpinello
       Adam R. Shaw
       Jeffrey S. Shelly

**CHARLES JUNTIKKA & ASSOCIATES LLP**
*Counsel for Orinn S. Anderson*
1250 Broadway, 24th Floor
New York, New York 10001
By:    Charles W. Juntikka

**WHITE & CASE LLP**
*Counsel for Credit One, N.A.*
1221 Avenue of the Americas
New York, New York 10020
By:    Colin West

**MCLAUGHLIN & STERN, LLP**
*Counsel for Credit One, N.A.*
260 Madison Avenue
New York, NY 10016
By:    Andrew Tomback

**JOHN P. MASTANDO III**
**UNITED STATES BANKRUPTCY JUDGE**[1]

This is an adversary proceeding arising in the bankruptcy case *In re: Orinn S. Anderson,* Case No. 14-22147 (January 31, 2014). Before the Court are *Defendant's Motion for Reconsideration* [Doc. 244] (the "**Reconsideration Motion**") and *Defendant's Motion to Compel Arbitration, Dismiss the Second Amended Complaint, Strike Class Allegations, Decertify Class, and Vacate Default Judgment* [Doc. 245] (the "**Motion to Dismiss or Arbitrate**") filed by Defendant Credit One Bank, N.A. ("**Defendant**" or "**Credit One**"). The Reconsideration Motion seeks, *inter alia*, an order altering, amending, or granting relief from the Memorandum Opinion and Order issued by this Court on March 28, 2025 [Doc. 241] (the "**March 28 Decision**"). [Reconsideration Motion, Doc. 244, p. 1]. Through the Motion to Dismiss or Arbitrate, Defendant seeks, *inter alia*: (1) to compel arbitration of the "newly added" declaratory judgment claim (the "**New Declaratory Judgment Claim**") in count 1 of Plaintiff's amended complaint [Doc. 243, p. 17] (the "**Amended Complaint**"); (2) to alternatively dismiss the New Declaratory Judgment Claim; or (3) alternatively, if the New Declaratory Judgment Claim is not sent to arbitration or dismissed, to vacate the default judgment against Defendant entered by this Court in its June 3, 2022 Corrected Memorandum of Decision on Motions for Sanctions and Class Certification [Doc. 176] (the "**Certification Decision**"). [Motion to Dismiss or Arbitrate, Doc. 245, p. 1].

---

[1]      Unless otherwise specified, references to "[Doc. __]" are to filings entered in the adversary proceeding *Orinn S. Anderson, on behalf of himself and all others similarly situated v. Credit One Bank., N.A.*, Case No. 15-8214 (January 30, 2015). References to "[Ch. 7 Dkt., Doc. __]" are to filings entered in the bankruptcy case *In re: Orinn S. Anderson,* Case No. 14-22147 (January 31, 2014).

References to "Bankruptcy Code § __ or Code § __" are to Title 11 of the United States Code. References to "Bankruptcy Rule __" are to the Federal Rules of Bankruptcy Procedure. References to "Local Rule __" are to the Local Bankruptcy Rules for the Southern District of New York.

Filed by Plaintiff in response to the Reconsideration Motion and Motion to Dismiss or Arbitrate are *Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Reconsideration* [Doc. 247] (the "**Reconsideration Opposition**") and *Plaintiff's Opposition to Defendant's Motion to Compel Arbitration, Dismiss the Second Amended Complaint, Strike Class Allegations, Decertify Class, and Vacate Default Judgement* [Doc. 248] (the "**Arbitration and Dismissal Opposition**").  The Reconsideration Opposition argues that the Reconsideration Motion should be denied because Defendant presents arguments "that it had an opportunity to raise before but failed to do so . . ." [Reconsideration Opposition, Doc. 247, p. 8].  Regarding the Motion to Dismiss or Arbitrate, Plaintiff argues that (1) arbitration should be denied for the same reasons articulated by the Court in the March 28 Decision, among other reasons; (2) the Court should not dismiss the New Declaratory Judgment Claim because it is both appropriate and permissible here; and (3) the default judgment should not be vacated for various reasons, including those already articulated in the March 28 Decision. [Arbitration and Dismissal Opposition, Doc. 248, pp. 1–3].

After careful consideration, and for the reasons set forth below, the Reconsideration Motion and the Motion to Dismiss or Arbitrate are both DENIED.

## I.    BACKGROUND

This adversary proceeding (the "**Adversary Proceeding**") has been pending since January of 2015. The entire procedural history of the case is explained in detail in the March 28 Decision and is incorporated here by reference.  [*See* Doc. 241, pp. 1–27].

### A.    The Certification Decision

Plaintiff filed for Chapter 7 relief on January 31, 2014, disclosing unsecured, non-priority debt held by Defendant.  [*See* Ch. 7 Dkt., Doc. 1, pp. 2, 16–18].  On May 5, 2014, the Court issued a *Discharge of Debtor Order of Final Decree*.  [Ch. 7 Dkt., Doc. 9; Certification Decision, Doc. 176, p. 3].  Plaintiff later filed a *Motion to Reopen Chapter 7 Case Due to the Violation of the*

*Discharge Injunction*, alleging Defendant was violating Debtor's bankruptcy discharge by falsely reporting the discharged debt previously held by Defendant as due and owing on the Plaintiff's credit reports [*See* Ch. 7 Dkt., Doc. 11] (the "**Motion to Reopen**"). The Court granted the Motion to Reopen on December 12, 2014. [*See* Doc. 26]. Plaintiff initiated the Adversary Proceeding on January 30, 2015, alleging a single cause of action for contempt for Defendant's failure to abide by the order discharging the debt and seeking certification of a class of plaintiffs whose debt was similarly not reported by Defendant as discharged [*See* Doc. 1] (the "**Complaint**").

On March 3, 2015, Defendant filed a *Motion to Compel Arbitration, to Strike Class Allegations, to Dismiss or Stay* [Doc. 7] (the "**March Motion**"), which the Court largely denied, including the Defendant's request for arbitration of the Plaintiff's contempt claim. [*see* Doc. 15]. Defendant appealed to the United States District Court for the Southern District of New York (the "**District Court**") [Doc. 19], which affirmed this Court's denial of the March Motion [Doc. 72]. The Second Circuit affirmed on appeal, finding that the dispute would not be subject to arbitration because the discharge (the "**Section 524(a)(2) Discharge Injunction**") and bankruptcy courts' power to enforce it are "central to the statutory scheme" created by the Bankruptcy Code and "arbitration of a claim based on an alleged violation of Section 524(a)(2) would seriously jeopardize a particular core bankruptcy proceeding." *See In re Anderson*, 884 F.3d at 388–92 (2d Cir. 2018), *cert. denied*, 139 S. Ct. 144 (2018) ("***Anderson I***").[2]

Following remand, the parties commenced discovery. [March 28 Decision, Doc. 241, p. 10]. Throughout the discovery process, Defendant failed to comply with the discovery requests of the Plaintiff and the United States Trustee and with the Court's orders directing Defendant to

---

[2] The Second Circuit followed the *Anderson I* analysis in a subsequent case. *See generally In re Belton v. GE Capital Retail Bank*, 961 F.3d 612 (2d Cir. 2020) ("***Belton***").

provide such discovery. [*Id.* at p. 11]. Even after the Court denied Defendant's motion for a protective order and warned that there would be consequences if Defendant continued to object to certain discovery requests [*id.* at pp. 12–13], Defendant did not produce the required documents and submitted a verification under penalty of perjury, stating that it had produced all responsive documents [*id.* at pp. 13–15]. At a hearing held on September 22, 2016, Defendant's counsel admitted that Defendant had not actually produced all responsive documents, and the Court indicated that it would sanction the Defendant accordingly for such misconduct. [*Id.* at pp. 15–17].

The Court entered a default judgment on liability based on Defendant's discovery failures and issued a partial judgment on sanctions under Fed. R. Civ. P. 37(b)(2)(A)(vi), incorporated by Bankruptcy Rule 7037. [Certification Decision, Doc. 176, p. 4]. In addition, under Fed. R. Civ. P. 23(b)(3), incorporated by Bankruptcy Rule 7023, the following class was certified:

> all individuals who after May 3, 2007, have had a consumer credit report relating to them prepared by any of the credit reporting agencies in which one or more of their tradeline accounts or debts with Credit One was not reported by Credit One as "discharged" or "included in bankruptcy" but, rather, as "charged off" or "-$0-balance" notwithstanding the fact that such debt(s) had been discharged as a result of their bankruptcy under chapter 7 of the Bankruptcy Code; provided, that such debt(s) shall have been (i) unsecured and (ii) not the subject of a valid and enforceable reaffirmation agreement.

[*Id*. at p. 81] (the "**Main Class**"). The Court also certified a sub-class comprised of individuals included in the above definition who had "paid any of such debt(s), with the members of such sub-class to be entitled to repayment of such debt payments in addition to [] sanctions" if proximate causation was established (the "**Sub-Class**"). [*Id*. at pp. 81–82; March 28 Decision, p. 17].

## B. The March 28 Decision

On October 23, 2023, Defendant filed a *Motion to Decertify the Damages Class and Subclass* [Doc. 215] (the "**Decertification Motion**"), which sought the decertification of the Class

following the Second Circuit's decision in *Bruce v. Citigroup Inc.*, 75 F.4th 297 (2d Cir. 2023), *cert. denied*, 144 S.Ct. 565 (2024) ("**Bruce**"). In *Bruce*, the Second Circuit held that the Bankruptcy Code does not authorize a bankruptcy court to hold a party in contempt for violating another bankruptcy court's Section 524(a)(2) Discharge Injunction, thus precluding a contempt claim on a class-wide basis. *Bruce*, 75 F.4th at 302. The court in *Bruce* also held that the plaintiff had not properly alleged a claim for a declaratory judgment declaring that the defendant there had violated the Section 524(a)(2) Discharge Injunction. *Id.* at 299.

In response to the Decertification Motion, the Plaintiff filed a *Memorandum of Law in Opposition to Defendant's Motion to Decertify the Class* [Doc. 220] (the "**Decertification Opposition**") arguing that "nothing in *Bruce* limits this Court's ability to issue a declaration on a class-wide basis that Credit One's conduct violated §§ 727(b) and 524(a)." [Decertification Opposition, Doc. 220, p. 15].

On December 15, 2023, Plaintiff filed a *Motion to Amend the Complaint* [Doc. 222] (the "**Motion to Amend**"). Plaintiff sought leave to amend the complaint, in response to *Bruce*, to adjust the Class to more specifically allege a declaratory judgment claim [Motion to Amend, Doc. 222, p. 5]. In response, Defendant filed a *Memorandum of Law in Opposition to Plaintiff's Motion for Leave to Amend the Complaint* [Doc. 232] (the "**Amendment Opposition**"), arguing, *inter alia*, that a declaratory judgment claim for a violation of the Section 524(a)(2) Discharge Injunction would still be impermissible under the holding in *Bruce*. [Amendment Opposition, Doc. 232, p. 7].

The Court denied the Decertification Motion. [March 28 Decision, Doc. 241, p. 3]. The Court held that *Bruce* does not prohibit a class action based on violations of Sections 524 and 727 of the Bankruptcy Code. [*See id.* at pp. 29–31]. The Court held that the *Bruce* court only denied

class-action relief for a contempt claim, thus leaving open the possibility of relief, such as a declaratory judgment, for a violation of Section 524(a)(2) Discharge Injunction based on a claim other than contempt. [*Id*. at p. 29, 31].

The Motion to Amend was granted in part and denied in part. [*Id*. at p. 3]. First, the Court specified the relevant standard: "[l]eave to amend a complaint should be 'freely given' unless there is (i) bad faith, (ii) undue prejudice to the opposing party, (iii) undue delay, or (iv) futility of the amendment." [*Id*. at p. 32] (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Recognizing that the amendment would not require any further discovery, the Court determined that the Motion to Amend would not unduly prejudice the Defendant because "significant additional resources to conduct discovery and prepare for trial" would not be required. [*Id*. at pp. 32–34] (citing *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)). The Court concluded that Plaintiff had not unduly delayed seeking the amendment, noting that Defendant "has been on notice of Plaintiff's declaratory judgment claim" and that the change in law after *Bruce* constitutes a "valid reason" to seek an amendment. [March 28 Decision, Doc. 241, pp. 34–38]. Finally, the Court found that a declaratory judgment claim under 28 U.S.C. §§2201 & 2202 for a violation of the Section 524(a)(2) Discharge Injunction could be asserted and would not be futile. [March 28 Decision, Doc. 241, pp. 38–43].

The Court specified that granting the Motion to Amend would not affect Judge Drain's ruling in the Certification Decision. [*Id.* at pp. 47–49]. The Court further agreed with Plaintiff that "[a]lthough this Court cannot find [Defendant] in contempt of other courts' discharge orders, all the reasons why this Court should award class-wide relief of a declaratory nature still remain." [March 28 Decision, Doc. 241, p. 49]; [Decertification Opposition, Doc. 220, p. 11]. Following Judge Drain's Rule 23 analysis in the Certification Decision, the Court held that the Class did not

need to be recertified because the analysis involved in determining liability for violation of the Section 524(a)(2) Discharge Injunction would be the same for a declaratory judgment claim as it would be for a contempt claim. [March 28 Decision, Doc. 241, pp. 50–54]; [*see also* Certification Decision, Doc. 176]. Regarding damages, the Court stated that it would use the procedure set forth in the Certification Decision to determine damages and attorney's fees for Plaintiff's original contempt claim. [Certification Decision, Doc. 176 p. 62]; [March 28 Decision, Doc. 241, p. 54]. The Court also accepted Plaintiff's argument that the Main Class may be entitled to nominal damages, which the Court would rule on based on subsequent, additional briefing by the parties. [March 28 Decision, Doc. 241, pp. 55, 69].

In the March 28 Decision, the Court also addressed Plaintiff's *Motion to Declare Certain Documents Not Privileged* [Doc. 199] (the "**Privilege Motion**") and Defendant's *Opposition to Plaintiff's Motion to Declare Certain Documents Not Privileged* [Doc. 205] (the "**Privilege Opposition**"). [Certification Decision, Doc, 241, pp. 56–68]. However, the Court's analysis regarding the Privilege Motion is not relevant to either the Reconsideration Motion or the Motion to Dismiss or Arbitrate and is thus not addressed here.

On April 4, 2025, after the Court issued the March 28 Decision, Plaintiff filed the Amended Complaint. [*See* Amended Complaint, Doc. 243, p. 19]. Shortly thereafter, Defendant filed the Reconsideration Motion on April 11, 2025, and the Motion to Dismiss or Arbitrate on April 18, 2025. [Reconsideration Motion, Doc. 244, p. 28]; [Motion to Dismiss or Arbitrate, Doc. 245, p. 31]. On May 2, 2025, Plaintiff filed both the Reconsideration Opposition and the Arbitration and Dismissal Opposition. [Reconsideration Opposition, Doc. 247, p. 7]; [Arbitration and Dismissal Opposition, Doc. 248, p. 8].

On May 14, 2025, the Court held a hearing to consider the Reconsideration Motion and the Motion to Dismiss or Arbitrate (the "**May 14 Hearing**," and the transcript for said hearing at [Doc. 258] the "**May 14 H'rg Tr.**").  [*See* Notice of Hearing, Doc. 249].

## II.    THE PARTIES' ARGUMENTS

### A.  RECONSIDERATION MOTION AND OPPOSITION

Defendant asserts that in issuing the March 28 Decision, the Court "overlooked certain aspects of [the] Second Circuit's [r]ulings" in *Anderson I, Belton* and *Bruce* that prohibit the Court's finding of "a viable, non-contempt-based cause of action for violation of the Section 524(a)(2) Discharge Injunction that could be pursued as a class action." [Reconsideration Motion, Doc. 244, p. 1].  Defendant asserts that pursuant to FRCP Rule 60(a), "a court 'may correct…a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record.'"  [Reconsideration Motion, Doc. 244, p. 7]; Fed. R. Civ. P. 60(a).  Defendant further argues that FRCP "Rule 52(b) permits the Court, on motion of a party, to amend its findings—or make additional findings—and [to] amend the judgment accordingly" and that FRCP "Rule 59(e) permits a court to 'alter or amend a judgment to correct a clear error of law or prevent manifest injustice.'"  [Reconsideration Motion, Doc. 244, p. 8] (quoting *Munafo v. Metro. Transp. Auth.*, 381 F.3d 99, 105 (2d Cir. 2004)).  Defendant asserts that a motion to alter or amend a judgment pursuant to Federal Rule 59(e) should be granted where, as here, "the moving party 'point[s] to controlling decisions or data that the court overlooked . . . that might reasonably be expected to alter the conclusion reached by the court.'"  [Reconsideration Motion, doc. 244, p. 8] (quoting *Shrader v. CSX Tramp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)).

Regarding *Anderson I*, Defendant points to the following language: "'*the discharge injunction is an order issued by the bankruptcy court…*. [V]iolations of this court-ordered*

injunction are enforceable only by the bankruptcy court and *only by a contempt citation*.'" [Reconsideration Motion, Doc. 244, p. 1] (quoting *Anderson I*, 884 F.3d at 391) (emphasis added in the Reconsideration Motion). As for *Bruce*, Defendant argues that "*Bruce* did not distinguish between liability and remedies. Setting aside remedies entirely, *Bruce* holds that one bankruptcy court lacks the authority to rule that another bankruptcy court's order has been violated." [*Id.* at p. 11]. Defendant bases this assertion on the Second Circuit's statement in *Bruce* that "the bankruptcy court has unique expertise in *interpreting its own injunctions and determining when they have been violated*." [*Id.* at p. 2] (quoting *Bruce*, 75 F.4th at 304–05) (emphasis added in the Motion to Dismiss or Arbitrate). Defendant thus "respectfully submits that the Court overlooked the above analysis from *Anderson I* [] and *Bruce* and seeks to alter or amend, or to obtain relief from, the March 28 Decision on that basis." [Reconsideration Motion, Doc. 244, p. 11].

In the Reconsideration Opposition, Plaintiff asserts that a motion for reconsideration is "not an opportunity to reassert the same arguments made in the underlying motion, nor is it an opportunity to raise issues that could have been raised—but were not—in the original motion papers." [Reconsideration Opposition, Doc. 247, p. 1]. Plaintiff argues that here, Defendant "spends a considerable part of its brief *once again* arguing that the Second Circuit did not mean what it said when it indicated that it would not make a determination as to whether a class asserting a declaratory judgment claim could be certified." [*Id.* at pp. 2–3] (emphasis added).

Defendant also argues in the Reconsideration Motion that "it is well-accepted that a declaratory judgment is a form of relief, not an independent cause of action." [Reconsideration Motion, Doc. 244, p. 10]. In this vein, Defendant asserts that "the 'declaratory' label applied to the New Declaratory Judgment Claim cannot add any new substantive theory of liability to the original claim that would allow it to evade *Bruce*." [*Id.*]. Rather, Defendant argues, the New

Declaratory Judgment Claim "fails to state a claim upon which relief can be granted because Section 524 of the Bankruptcy Code does not give rise to a private right of action separate from an action for contempt to enforce the bankruptcy-court-ordered discharge injunction." [*Id.* at pp. 11–12].

Defendant further asserts that "[e]ven before *Anderson I*, the Second Circuit had twice observed that Section 524 itself does not expressly provide for a private right of action."[3] [Reconsideration Motion, Doc. 244, p. 12]. Defendant argues that in *Anderson I*, the Second Circuit "concluded that the discharge injunction was fundamentally a court order that could only be enforced through contempt." [*Id.* at p. 13]. Regarding *Belton*, Defendant focuses on the following language: "[b]ecause our Court has never identified a private right of action under section 524, the Debtors have pursued this remedy through a contempt proceeding." *Belton*, 961 F.3d at 616; [Reconsideration Motion, Doc. 244, p. 14]. As for *Bruce*, Defendant argues that "the Second Circuit's *Bruce* decision left no room for doubt that, even though the discharge injunction emanates from statute—Section 524 of the Bankruptcy Court—the power to adjudicate a claim for a violation of that injunction arises from the Bankruptcy Court's contempt power." [*Id.* at p. 16].

Plaintiff argues in response that "[r]ecognizing the futility of its interpretation of *Bruce*, Credit One raises a new argument that it failed to raise in its earlier briefing, *i.e.*, that a declaratory judgment action cannot be sustained because there is no 'private right of action' under Section 524." [Reconsideration Opposition, Doc. 247, p. 3]. Plaintiff asserts that "there are numerous cases in which courts have found a declaratory judgment to be an appropriate remedy for violation of a federal statute in the class action context." [*Id.*]. Plaintiff also cites multiple cases from the

---

[3] *See Garfield v. Ocwen Loan Servicing, LLC*, 811 F.3d 86, 91–92, 92 n.7 (2d Cir. 2016); *Yaghobi v. Robinson*, 145 F. App'x 697, 699 (2d Cir. 2005).

United States Bankruptcy Court for the Eastern District of New York in which the court "unequivocally found that plaintiffs suing student loan servicers who refuse to recognize the discharge of their student loans in bankruptcy stated a viable claim for declaratory relief on a class-wide basis, in addition to a claim for contempt."[4]  [Reconsideration Opposition, Doc. 247, pp. 3–4].

Finally, Defendant argues in the Reconsideration Motion that the words "by Defendant" (which were added *sua sponte* by the Court to the original order certifying the class [Doc. 189] (the "**Class Certification Order**")) should be removed from the class definition.[5] [Reconsideration Motion, Doc. 244, p. 24].   Specifically, Defendant asserts that Plaintiff's originally-requested class definition contained the language "one or more of their Tradeline accounts or debts with Credit One was not reported as discharged," whereas the definition in the Class Certification Order was modified to "one or more of their Tradeline accounts or debt(s) with

---

[4] *See Golden v. JPMorgan Chase* (*In re Golden*), 596 B.R. 239, 259-60 (Bankr. E.D.N.Y. 2019); *Homaidan v. SLM Corp.* (*In re Homaidan*), 596 B.R. 86, 100-101; 106-107 (Bankr. E.D.N.Y. 2019).   *See also Golden v. National Collegiate Student Loan Trust*, Adv. Pro. 17-01005-ess, 2025 WL 1349354 at *71 (Bankr. E.D.N.Y. May 7, 2025) ("Ms. Golden seeks, for herself and for all of the putative class members, neither more nor less than a declaration regarding the dischargeability of these debts, and ancillary injunctive relief related to such a determination.").

[5] This argument is consistent with Defendant's July 5, 2022 *Motion to Alter or Amend The Findings and/or Judgment and Order Certifying Class and Granting Related Relief* [Doc. 192] (the "**Class Amendment Motion**"), which was "held in abeyance while the more recent motions to decertify and amend were pending."  [Reconsideration Motion, Doc. 144, p. 24].

Credit One was not reported *by Defendant* as discharged."[6]  [*Id.*].   Defendant argues this change

has a material effect on the class definition because it ignores the fact that in 2009, at least one of

the credit reporting agencies "began to independently identify bankruptcy discharges and add them

to their credit reports."  [Reconsideration Motion, Doc. 244, p. 25].   Defendant therefore argues

that any failure by Defendant to denote a debt as discharged in bankruptcy would have been

remedied by that credit reporting agency, and there would thus be no harm to any debtor whose

report was prepared by said agency.   [*Id.* at pp. 25–26].   Defendant asserts that "because the

broadened class definition is materially different from the class Plaintiff sought to certify, Credit

One was never afforded the opportunity to argue against certification of the class that was

ultimately certified."  [*Id.* at pp. 26–27].   Accordingly, Defendant "respectfully requests that the

added term 'by Defendant' be removed from the class definition."  [*Id.* at p. 27].

Plaintiff argues that Defendant's attempt to change the class definition should be rejected.

[Reconsideration Opposition, Doc. 247, p. 6].   Plaintiff claims that "Credit One also had an

opportunity to challenge the class definition in 2022, when the draft order was circulated, but failed

to do so."  [*Id.*].  Plaintiff further argues that "it is the act of Credit One in reporting the information

to the credit reporting agencies that violated Section 524. . . . It was Credit One's acts to collect

the discharged debts that caused the injury to Plaintiff and the class."  [*Id.*].   Plaintiff thus asserts

---

[6] A "tradeline" (or "credit tradeline") is any loan account that would appear on a person's credit report, including any installment accounts, a mortgage account, or a revolving line of credit (such as a credit card). Information regarding a natural person's tradeline is used to determine a credit score and may be used by prospective lenders to evaluate a person's "creditworthiness." Certain information about each tradeline a person holds is included on the credit report, such as lender or creditor name, account type, account status, account opening and closure dates, credit limit, current balance, original balance, monthly payment amount, and other payment history. *See What is a tradeline on your credit report?*, JPMorgan Chase Bank, N.A. (2025), https://www.chase.com/personal/credit-cards/education/build-credit/credit-tradelines; *What Are Tradelines and How Do They Impact Credit*, Citigroup Inc. ((June 18, 2025), https://www.citi.com/credit-cards/understanding-credit-cards/what-are-credit-tradelines.

that one of the credit report agencies correcting customers' reports to reflect a discharge is "irrelevant." [*Id.*].

Plaintiff further asserts that, were the Court to accept Defendant's argument, additional discovery would be needed to determine "which class members' credit reports were sent to third parties." [*Id.* at p. 7]. Plaintiff argues that the Certification Decision clearly shows the Court did not intend such further discovery to take place, as the Court ordered Plaintiff to "file and serve the proposed notice to the class/sub-class and schedule a hearing on Plaintiff's request for approval of such notice and notice procedures for the class. Such notice shall clearly set forth the consequences of opting out of the class/subclass…." [*Id.*] (quoting [Certification Decision, Doc. 176, p. 82]). Plaintiff thus asserts that "Credit One's belated attempt to redefine and dramatically reduce the size of the class after it acknowledged the class contained 287,980 accounts should be rejected." [Reconsideration Opposition, Doc. 247, p. 7].

**B.  THE MOTION TO DISMISS OR ARBITRATE AND OPPOSITION**

In the Motion to Dismiss or Arbitrate, Defendant makes a variety of arguments, some in the alternative, and thus the Court will address them in turn and the related responses by Plaintiff.

*i. Arbitration*

Defendant begins the Motion to Dismiss or Arbitrate by acknowledging that in the March 28 Decision "this Court expressed disagreement with several of the principal arguments raised in this Motion." [Motion to Dismiss or Arbitrate, Doc. 245, p. 1]. Nevertheless, because the Amended Complaint had not yet been filed at the time the March 28 Decision was issued, and thus the New Declaratory Judgment Claim had not yet been asserted, Defendant's arguments had not yet been before the Court nor fully briefed. [*Id.*].

Specifically, on the issue of arbitration, Defendant asserts that "[i]f, as the Court appears to have determined, there is a separate, purely statutory, non-contempt-based claim that is viable under Section 524(a)(2), then, by definition, it must be separate and distinct from the type of Section 524(a)(2) claim that the Second Circuit held was not arbitrable in *Anderson I*." [*Id.* at p. 5]. Defendant argues that when "the Second Circuit held that 'a claim based on an alleged violation of Section 524(a)(2)' is not arbitrable, it was expressly referring to a contempt claim." [*Id.*] (quoting *Anderson I*, 884 F.3d at 389). Defendant thus asserts that because (i) the New Declaratory Judgment Claim is separate and distinct from the contempt claim that can only be adjudicated by the bankruptcy court under *Anderson I*; (ii) the Federal Arbitration Act (the "**FAA**") requires federal courts to "enforce arbitration agreements and to stay litigation that contravenes them;" and (iii) Plaintiff's cardholder agreement signed with Defendant in 2002 requires all disputes to be resolve by mandatory, binding arbitration, the New Declaratory Judgment Claim must be submitted to arbitration. [*Id.* at pp. 13–14]. Defendant claims that "Plaintiff cannot show that Congress intended to foreclose arbitration of purely statutory claims for a violation of Section 524." [*Id.* at p. 15].

Plaintiff argues in response that "Credit One fails to explain what arbitration would accomplish after ten (10) years of litigation and a default judgment on the merits." [Arbitration and Dismissal Opposition, Doc. 248, p. 1]. Plaintiff further asserts that "[e]ven if Credit One were correct that the [New Declaratory Judgment Claim], unlike the contempt claim, is appropriate for arbitration, it makes no sense for the Court to send one claim to arbitration and for the Court to adjudicate the other, where both claims rest on exactly the same set of facts." [*Id.* at p. 4].

### ii. Failure to State a Claim

Defendant asserts in both the Reconsideration Motion (as described above) and the Motion to Dismiss or Arbitrate that "[a]s to the 'declaratory' nature of the New Declaratory Judgment Claim, a declaratory judgment claim is not an independent cause of action but rather can only serve as remedy for an underlying, viable cause of action." [Motion to Dismiss or Arbitrate, Doc. 245, p. 4]. In the Motion to Dismiss or Arbitrate—as in the Reconsideration Motion—Defendant relies on the following language from the Second Circuit in *Belton*: "[b]ecause our Court has never identified a private right of action under section 524, the Debtors have pursued this remedy through a contempt proceeding." *Belton*, 961 F.3d at 616; [*see also* Motion to Dismiss or Arbitrate, Doc. 245, p. 24].

Plaintiff argues in response that "whether or not there is a private right of action, this Court has broad power under Section 105 to provide any relief necessary to effectuate the purposes of the Bankruptcy Code, and that includes the right to declare that Credit One's uniform conduct with regard to the entire class violates Section 524(a)." [Arbitration and Dismissal Opposition, Doc. 248, p. 2]. Plaintiff adds that Defendant "takes the opportunity to interject into the record a new argument that it did not make in its numerous previous briefings to the effect that there is no private right of action under Section 524. That argument . . . is, nonetheless, completely without merit." [*Id.* at pp. 4–5].

Defendant further argues that the New Declaratory Judgment Claim must be dismissed because it "seeks a declaration concerning the legality of past, and not prospective, conduct." [Motion to Dismiss or Arbitrate, Doc. 245, p. 26]. Defendant cites case law purportedly standing for the proposition that declaratory judgment is intended to "operate prospectively" and cannot be used to grant relief for a defendant's past conduct. [*Id.* at pp. 26–27]. Defendant asserts that because it already corrected its reporting practices that were the subject of Plaintiff's original

complaint, the New Declaratory Judgment Claim is backwards looking and must be dismissed. [*Id.* at pp. 27–28].

Plaintiff, in response, argues that "declaratory relief is entirely appropriate here because at the time the complaint was filed, Plaintiff alleged—and this Court found—that Credit One was engaging in an ongoing violation of class member's rights." [Arbitration and Dismissal Opposition, Doc. 248, p. 2]. Plaintiff claims that "Credit One asks the Court to ignore the years of contumacious conduct underlying the Court's decision to enter the default judgment in the first place." [*Id.* at p. 5]. Plaintiff asserts that the cases relied upon by Defendant involve either a default arising from a failure to answer the complaint or a plaintiff seeking new relief that is entirely different from that sought in the complaint. [Arbitration and Dismissal Opposition, Doc. 248, p. 5]. Plaintiff claims that neither is "the case here, where Credit One has had ample notice that Plaintiff was seeking declaratory relief since the outset of this case." [*Id.* at p. 6].

### iii. Default Judgment

Finally, Defendant argues that if the Court does not dismiss the Amended Complaint, then the Court should vacate the default judgment entered pursuant to the Certification Decision. [Motion to Dismiss or Arbitrate, Doc. 245, p. 28]. Defendant asserts that the "default judgment cannot be applied to claims that were not pled in the Original Complaint, and thus the default judgment must now therefore be vacated as applied to New Count I [the New Declaratory Judgment Claim] by this Court's March 28 Decision, at a minimum." Defendant bases its argument on FRCP Rule 54, which states in relevant part that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c); [*see also* Motion to Dismiss or Arbitrate, Doc. 245, pp. 28–29].

Plaintiff argues that "there is no basis to vacate the default judgment simply because the remedy provided is different than one of contempt." [Arbitration and Dismissal Opposition, Doc. 248, p. 2]. Plaintiff claims that "[a]s this Court explained in its March 28, 2025 decision, the wrongful conduct at issue is exactly the same—the only difference is the remedy." [*Id.*].

## III.    JURISDICTION

As established in the March 28 Decision, the Court has jurisdiction over this core proceeding as it relates to the enforcement of the Chapter 7 discharge, which is "'the foundation upon which all other portions of the Bankruptcy Code are built.'" [March 28 Decision, Doc. 241, p. 27]; [Certification Decision, Doc. 176, p. 5] (quoting *Anderson v. Credit One*, 884 F.3d at 889). Accordingly, the Court continues to have jurisdiction over this adversary proceeding under 28 U.S.C. §§ 157(a)-(b) and 1334(b) and the Amended General Order of Reference, dated January 31, 2012 (Preska, C.J.).

## IV.    ANALYSIS

### A. *RECONSIDERATION MOTION*

#### i. *Altering the March 28 Decision*

The Federal Rules of Civil Procedure are incorporated into the Bankruptcy Rules and made applicable to adversary proceedings by Bankruptcy Rule 7002: "[w]hen a Federal Rule of Civil Procedure applicable to an adversary proceeding refers to another civil rule, that reference is to the civil rule as modified by this Part VII." Fed R. Bankr. P. 7002. Furthermore, "[t]he Federal Rules of Civil Procedure do not specifically provide for a motion for reconsideration. However, such a motion may be considered as a motion to alter or amend judgment under Rule 59(e) or for relief from judgment or order under Rule 60(b)." *In re Richardson Foods, Inc.*, 667 B.R. 500, 511 (Bankr. S.D.N.Y. 2025) (citations omitted).

"Bankruptcy Rule 9023-1(a) provides that a motion for reargument of a court order determining a motion 'must set forth concisely the matters or controlling decisions which counsel believes the Court has not considered.'" *Richardson Foods, Inc.*, 667 B.R. at 511 (citing *In re Celsius Network LLC*, 2024 Bankr. LEXIS 2552, at *5 (Bankr. S.D.N.Y. October 17, 2024)). "While Bankruptcy Rule 9023 does not provide specific grounds for reconsidering a judgment, under FRCP Rule 59(e), courts consider the following: 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Richardson Foods*, 667 B.R. at 512 (quoting *In re Flatbush Square, Inc.*, 508 B.R. 563 (Bankr. E.D.N.Y. 2014)).

Here, Defendant has filed its motion pursuant to FRCP Rule 59(e), as well as FRCP Rule 60(a). Defendant asserts that "[u]nder Rule 60(a) a court 'may correct…a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record.'" [Reconsideration Motion, Doc. 244, p. 7] (quoting Fed. R. Civ P. 60(a)). Defendant further argues that pursuant to Rules 52(b) and 59(e), a court may "'revisit a prior decision when there has been an intervening change in the law, new evidence becomes available, or there is a need to correct a clear error or prevent manifest injustice.'" [*Id.*] (quoting *Hollis v. City of Buffalo*, 189 F.R.D. 260, 263 (W.D.N.Y. 1999). Defendant's primary argument is that, regardless of whether the "distinguishing feature" of the New Declaratory Judgment Claim its "declaratory" or "statutory" nature, "this Circuit has made clear in *Anderson I* and *Bruce* that it simply does not recognize a viable claim for violation of the discharge injunction that can be adjudicated as [a] class action." [Reconsideration Motion, Doc. 244, p. 19].

Although Defendant cites FRCP 60(a), the Second Circuit has explained that the rule applies only to clerical or similar errors:

> Rule 60(a) provides that a court "may correct a *clerical* mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." Fed. R. Civ. P. 60(a). Rule 60(a) applies only to "changes that implement the result intended by the court at the time the order was entered"; it does not permit "changes that alter the original meaning to correct a legal or factual error."

*Lowy v. VSUS Techs., Inc.*, 776 F. App'x 742, 743 (2d Cir. 2019) (quoting *Rezzonico v. H & R Block, Inc.*, 182 F.3d 144, 150-51 (2d Cir. 1999)) (emphasis added).  Here, Defendant seeks a substantive change to the Court's ruling based on precedent that Defendant argues the Court overlooked or misinterpreted in reaching its decision, and thus FRCP Rule 60(a) is inapplicable.

As to Rule 59(e), the Court did not "overlook" the language from the decisions raised by Defendant, but rather interpreted them to have legal implications different from those Defendant now asserts.  As this Court recently explained:

> In general, any motion for reconsideration is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple.  As noted by the Second Circuit Court of Appeals, "[t]he standard for granting a [motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."

*Richardson Foods*, 667 B.R. at 512 (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

The "controlling decisions" Defendant asserts the Court overlooked are *Anderson I* and *Bruce*.  [*See* Reconsideration Motion, Doc. 244, p. 1].  The Court devoted several pages in the March 28 decision to describing the procedural history related to *Anderson I* and summarizing the Second Circuit's decision in that case.  [*See* March 28 Decision, Doc. 241, pp. 6–9].  Other than the sections of the opinion addressing the Privilege Motion, the vast majority of the analysis in the March 28 Decision was devoted to the effect of *Bruce* on this case.  [*Id.* at pp. 28–55].  The Court reviewed each motion and responsive paper filed by the parties in detail before reaching its

decision and further considered the parties' arguments at the July 24 Hearing, as is evident from the March 28 Decision. [*See e.g.* March 28 Decision, Doc. 241, pp. 56–57].

This thus seems to indicate one of two things with respect to the arguments Defendant makes about the portions of *Anderson I* and *Bruce* that Defendant asks the Court to reconsider: (1) Defendant either included these arguments in its briefs filed prior to the March 28 Decision, and the Court did not find such arguments persuasive at that time; or (2) Defendant did not make such arguments prior to the March 28 Decision and cannot now assert them as a "vehicle for relitigating old issues" or a presentation of "the case under new theories." *Richardson Foods*, 667 B.R. at 512. In other words, Defendant's Reconsideration Motion is procedurally improper and could be denied on those grounds alone.

Nevertheless, the Court will also address the merits of Defendant's arguments. Defendant argues that certain language precludes the New Declaratory Judgment Claim from going forward, specifically the Second Circuit finding that "the discharge injunction is an order issued by the bankruptcy court…. [V]iolations of this court-ordered injunction are enforceable only by the bankruptcy court and only by a contempt citation." *Anderson I*, 884 F.3d at 391; *see also* [Reconsideration Motion, Doc. 244, p. 1].

First, the Court notes that the above-quoted language from *Anderson I* states: "*enforceable only by the bankruptcy court and by a contempt citation.*" *Id.* (emphasis added). Here, Debtor's Amended Complaint does not seek to *enforce* the injunction, or in other words, coerce compliance through monetary contempt sanctions. Rather, Debtor seeks only a declaration that the acts already committed by Defendant are themselves "in violation of § 524 by attempting to collect on a discharged debt." [Amended Complaint, Doc. 243, p. 17]. Indeed, as this Court explained in the March 28 Decision:

> Plaintiff argues, '[e]ach class member could then proceed in the court that issued
> [the] discharge order for contempt and damages or any other contempt relief. Such
> a declaration would greatly assist the class members in pursuing remedies for their
> own individual contempt claims.' [Decertification Opposition. Doc. 220, pp. 9–
> 10]. Plaintiff's proposal would place the ability to grant damages for contempt
> back in the hands of each individual judge who entered each discharge order (as
> required by *Bruce*). Those judges would be able to craft individualized damage
> determinations if and when an individual plaintiff uses the declaratory judgment as
> grounds to bring a contempt claim in his or her 'home court.'

[March 28 Decision, Doc. 241, p. 53]. Here, the Court made a finding of liability with respect to violation of the Section 524(a)(2) Discharge Injunction and did not implement any "enforcement" thereof.

Defendant further argues that the language in *Bruce*—"the bankruptcy court has unique expertise in *interpreting its own injunctions and determining when they have been violated*"— means specifically that a singular bankruptcy court cannot declare a violation of an order issued in another, singular bankruptcy court. [*Id.* at p. 2] (quoting *Bruce*, 75 F.4th at 304–05) (emphasis added).

The Court disagrees with this interpretation. Defendant does not provide context for this excerpt from *Bruce*, but this phrase from the *Bruce* opinion is a direct quote from *Anderson I*:

> Though the discharge injunction itself is statutory and thus a standard part of every
> bankruptcy proceeding, *the bankruptcy court retains a unique expertise in
> interpreting its own injunctions and determining when they have been violated.*
> Congress afforded the bankruptcy courts wide latitude to enforce their own orders,
> specifically granting these specialty courts the power to "issue any order, process,
> or judgment that is necessary or appropriate to carry out the provisions of" the
> Bankruptcy Code . . . Neither the statutory basis of the order nor its similarity—
> even uniformity—across bankruptcy cases alters the simple fact that the discharge
> injunction is an order issued by the bankruptcy court and that the bankruptcy court
> alone possesses the power and unique expertise to enforce it . . . violations of this
> court-ordered injunction are enforceable only by the bankruptcy court . . .

*Anderson I*, 884 F.3d at 390–91 (emphasis added). This language does not specify that only a singular bankruptcy court has the exclusive authority to declare that there has been a violation of

its own Section 524(a)(2) Discharge Injunction.  Rather, given the Second Circuit's reference to a "statutory basis" and "uniformity," the Court finds "only by the bankruptcy court" to mean that only *a bankruptcy court* can determine such a violation of the Bankruptcy Code, and such determination therefore cannot be made by an arbitrator (as was the issue in *Anderson I*) or other tribunal that otherwise may have authority to determine statutory violations.

For this reason, Defendant's request that the Court alter the holding of the March 28 Decision so that it denies the Motion to Amend and decertifies the Main Class and Sub Class is denied.

### ii. Private Right of Action

As stated *supra* Section I(B)(ii), Defendant raises, in both the Reconsideration Motion and the Motion to Dismiss or Arbitrate, the argument against a private right of action in the form of a declaratory judgment claim for a violation of the Section 524(a)(2) Discharge Injunction. [Reconsideration Motion, Doc. 244, pp. 10–12; Motion to Dismiss or Arbitrate, Doc. 245, p. 4]. As far as the reconsideration argument, the Court agrees with Plaintiff that Defendant "raises a new argument that it failed to raise in its earlier briefing." [Reconsideration Opposition, Doc. 247, p. 3].  As the Court articulated in the preceding section, a motion to reconsider is not "a vehicle for . . . presenting the case under new theories."  *Supra* Section IV(A)(i).  Accordingly, the Court finds this new theory on which Defendant asks the Court to reconsider the Motion to Amend granted by the March 28 Decision procedurally improper pursuant to FRCP rule 59(e).

Defendant raises the same argument in the Motion to Dismiss or Arbitrate, seeking dismissal based on a failure to state a claim.  [Motion to Dismiss or Arbitrate, Doc. 245, p. 22]. The Court will thus address the merits of Defendant's argument in the section of the Court's analysis regarding the Motion to Dismiss or Arbitrate. *See infra* Section IV(B)(ii).

### iii. Class Certification Order

The Court finds that the Class Certification Order should *not* be modified.  The Court agrees with Plaintiff that "it is the act of Credit One in reporting the information to the credit reporting agencies that violated Section 524." [Reconsideration Opposition, Doc. 247, p. 6].  The fact that one of the credit reporting agencies might have taken the step to correct certain discharged debts does not absolve Defendant of its misconduct in failing to mark the debt discharged itself.

Furthermore, Defendant stated on the record at the May 14 Hearing:

> when Judge Drain instructed the parties to reduce the opinion to an order, we had a series of disputes about how best to accurately reduce the opinion to the order . . . We did as we were instructed, we reduced the opinion to the order, and then we contested the class definition appropriately on reconsideration on a motion to alter and amend under Rule 59.

[May 14 Hr'g Tr., Doc. 28, 36:1–36:11].  Defendant thus concedes that it understood the addition of "by Defendant" to be a deliberate modification by the Court to the class definition in the Certification Decision, rather than an oversight by the Court when entering the Class Certification Order.  Indeed, the Certification Decision includes the following class definition: "all individuals who after May 3, 2007, have had a consumer credit report relating to them prepared by any of the credit reporting agencies in which one or more of their tradeline accounts or debts with Credit One was not reported *by Credit One* as 'discharged' or 'included in bankruptcy.'" [Certification Decision, Doc. 176, p. 81] (emphasis added).  For the foregoing reasons, the Court sees no reason to disturb Judge Drain's reasonable and sensible modification of the class definition, and Defendant's request for the Court to modify such definition is denied.

**B.**  ***MOTION TO DISMISS OR ARBITRATE***

  ***i. Arbitration***

  As Defendant acknowledges, the Court addressed whether the New Declaratory Judgment

Claim should be arbitrated in the March 28 Decision.  [March 28 Decision, Doc. 241, pp. 37–38];

[Motion to Dismiss or Arbitrate, Doc. 245, p. 4].  Specifically, the Court held the new claim is not

arbitrable:

> The *Anderson I* court referred to "a *claim* based on an alleged violation of Section
> 524(a)(2)," not only to a contempt claim specifically.  *Id.* (emphasis added).  Thus,
> this Court interprets *Anderson I* as finding that any claim for violation of the
> discharge injunction would not be arbitrable and instead must be heard by the
> bankruptcy court, and that would include a declaratory judgment claim such as the
> one asserted here.

[March 28 Decision, Doc. 241, p. 38].  The Court grounded this portion of the March 28 Decision

in the following excerpt from *Anderson I*:

> [W]e find that arbitration of a claim based on an alleged violation of Section
> 524(a)(2) would "seriously jeopardize a particular core bankruptcy proceeding."
> We come to this conclusion because 1) the discharge injunction is integral to the
> bankruptcy court's ability to provide debtors with the fresh start that is the very
> purpose of the Code; 2) the claim regards an ongoing bankruptcy matter that
> requires continuing court supervision; and 3) the equitable powers of the
> bankruptcy court to enforce its own injunctions are central to the structure of the
> Code. The fact that Anderson's claim comes in the form of a putative class action
> does not undermine this conclusion.

*Anderson I*, 884 F.3d at 389–390 (citations omitted); [*see also* March 28 Decision, Doc. 241, p.

38].  *The Anderson I court focused on the issue of a "violation of Section 524(a)(2)," and how the*

bankruptcy court has the unique expertise to address such violations.

  Defendant's specific assertion that the New Declaratory Judgment Claim is subject to the

binding arbitration clause in Debtor's cardholder agreement, and thus must be arbitrated under the

FAA, was not before the Court when it issued the March 28 Decision.  [*See* Motion to Dismiss or

Arbitrate, Doc. 45, pp. 13–14].  Nevertheless, the Second Circuit in *Anderson I* held:

> [W]e need only inquire whether arbitration of Anderson's claim presents the sort of
> inherent conflict with the Bankruptcy Code that would overcome the strong
> congressional preference for arbitration. We agree with both lower courts that
> Anderson's complaint is non-arbitrable. The successful discharge of debt is not
> merely important to the Bankruptcy Code, it is its principal goal.

*Anderson I*, 884 F.3d at 386.  Thus, this Court does not need to revisit the question of whether the

FAA preempts the Bankruptcy Code in the case of a binding arbitration clause and a discharge

violation claim; the Second Circuit clearly held that it does not.

Accordingly, the Court denies Defendant's request to compel arbitration.

### ii. Failure to State a Claim

Defendant's argument that Plaintiff's amended complaint fails to state a claim is twofold:

first, Defendant asserts that the New Declaratory Judgment Claim must be dismissed because the

Second Circuit has never recognized a private right of action[7] under Section 524 of the Bankruptcy

Code, [Motion to Dismiss or Arbitrate, Doc. 245, p. 24]; second, Defendant asserts that the New

Declaratory Judgment Claim should be dismissed because it "seeks a declaration concerning the

legality of past, and not prospective, conduct." [Motion to Dismiss or Arbitrate, Doc. 245, p. 26].

### a. Private Right of Action

Defendant argues that "there is no claim for violation of the discharge injunction that does

not seek to enforce a court order, and the Second Circuit has elsewhere confirmed that it has never

recognized a private right of action for violations of Section 524." [Motion to Dismiss or Arbitrate,

Doc. 245, p. 4].  Defendant asserts that this is significant with respect to the New Declaratory

Judgment Claim because "a declaratory judgment claim is not an independent cause of action but

rather can only serve as [a] remedy for an underlying, viable cause of action."  [*Id.*].

---

[7] Black's Law Dictionary defines a private right of action as "[a]n individual's right to sue in a personal capacity to
enforce a legal claim."  RIGHT OF ACTION, Black's Law Dictionary (12th ed. 2024).

Defendant claims that the Second Circuit has "observed that Section 524 itself does not expressly provide for private rights of action." [Motion to Dismiss or Arbitrate, Doc. 45, p. 22] (citations omitted). However, in footnote 7 of *Garfield v. Ocwen Loan Servicing, LLC*, which Defendant cites [Reconsideration Motion, Doc. 244, p. 12], the Second Circuit states: "*we do not decide* whether the discharge injunction provision should be construed implicitly to create a cause of action for its violation, in addition to a contempt remedy." *Garfield v. Ocwen Loan Servicing, LLC*, 811 F.3d 86, 91–92 n.7 (2d Cir. 2016) (emphasis added). Likewise, Defendant also relies on *Yaghobi v. Robinson* [Reconsideration Motion, Doc. 244, p. 12], in which the Second Circuit affirmed dismissal of a discharge violation claim based on improper forum, holding:

> Thus, because we conclude that plaintiff's § 105(a) claim should have been presented to the bankruptcy court, we affirm the district court's dismissal of that claim without prejudice to its pursuit in the bankruptcy court. Having concluded that the district court properly dismissed Yaghobi's bankruptcy claims, we need not reach the question of whether he may assert a private right of action under § 524.

*Yaghobi v. Robinson*, 145 F. App'x 697, 699 (2d Cir. 2005). In both cases, the Second Circuit refrained from deciding the issue of whether a private right of action exists for a violation of the Section 524(a)(2) Discharge Injunction.

In *Cort v. Ash*, the United States Supreme Court established a four-factor test for courts to consider in determining "whether a private remedy is implicit in a statute not expressly providing one":

(1) First, is the plaintiff one of the class for whose especial benefit the statute was enacted, that is, does the statute create a federal right in favor of the plaintiff?
(2) Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one?
(3) Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?
(4) [F]inally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

*Cort v. Ash*, 422 U.S. 66, 78 (1975) (internal citations omitted).  In *Alexander v. Sandoval*, the

Supreme Court again applied this test, holding that the central inquiry is determining whether the

statute itself manifests the intent to create a private right of action:

> Like substantive federal law itself, private rights of action to enforce federal law
> must be created by Congress. The judicial task is to interpret the statute Congress
> has passed to determine whether it displays an intent to create not just a private
> right but also a private remedy. Statutory intent on this latter point is determinative.
> Without it, a cause of action does not exist and courts may not create one, no matter
> how desirable that might be as a policy matter, or how compatible with the statute.
> . . .

*Alexander v. Sandoval*, 532 U.S. 275, 286-87 (2001).

District courts in the Ninth Circuit have applied the *Cort v. Ash* test to find that Section 524

implies a private right of action.  *See Malone v. Norwest Fin. Cal., Inc.*, 245 B.R. 389, 397–98

(E.D. Cal. 2000) ("It is the circumstances of the statute's enactment and the evil it was designed to

remedy which help resolve the issue of implication . . . . The history surrounding the adoption of

11 U.S.C. § 524 reveals a Congressional intent to create a private right of action under § 524.");

*Molloy v. Primus Auto. Fin. Servs.*, 247 B.R. 804, 819 (C.D. Cal. 2000) ("This Court agrees with

and adopts the reasoning of the *Malone* court's holding that § 524 carries with it an implied private

right of action."); *Rogers v. NationsCredit Fin. Servs. Corp.*, 233 B.R. 98, 109 (N.D. Cal. 1999)

("[P]ermitting a private right of action under § 524 is consistent with the legislative goals of

Congress in enacting that provision, and this Court will not dismiss Plaintiff's claim for violation

of the discharge injunction on that basis.").  The Court agrees that, applying the *Cort v. Ash* factors,

Section 524 indeed provides an implied private right of action for violation of the Section 524(a)(2)

Discharge Injunction.

Regarding factor (1) from *Cort v. Ash*, it is evident that debtors are the intended

beneficiaries of Section 524.  The statute creates a federal right for debtors by protecting them

from attempts to collect pre-petition debts: 524(a)(2) "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of *the debtor* . . . ." 11 U.S.C. 524(a)(2) (emphasis added). *See also Malone*, 245 B.R. at 396 ("[P]laintiffs are especial, and not mere incidental beneficiaries of § 524. The statute creates a federal right in favor of those in plaintiffs' position by protecting them from attempts to collect pre-petition debt.").

As to factor 2, Congress' "intent may appear implicitly in the language or structure of the statute, or in the circumstances of its enactment." *Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 18 (U.S.Cal., 1979). In the case of Section 524 of the Bankruptcy Code, although the legislative history does not specifically address a private cause of action, it illuminates the circumstances of the statute's enactment and supports the conclusion that Congress intended to provide a private right of action: the courts that have found the private right of action to exist have done so based on the House Report issued by Congress concurrently with the enactment of Section 524:

> [C]reditors have developed techniques that enable them to avoid the effects of a debtor's bankruptcy, and bankrupts have suffered accordingly. Frequently they come through bankruptcy little better off than they were before. Overbroad security interests on all of a consumer's household and personal goods, reaffirmations, limited state exemption laws, and litigation over dischargeability of certain debts have all contributed to the consumer debtor's post-bankruptcy plight . . . . Perhaps the most important element of the fresh start for a consumer debtor after bankruptcy is discharge. The discharge releases the debtor from his debts. However, there are several impediments under current law to the full effectiveness of the discharge, and debtors frequently come out of bankruptcy little better off than when they went in. H.R. 8200 proposes to remedy the deficiencies in the current discharge provisions, and to make the discharge effective relief for consumer debtors.

H.R. Rep. No. 95-598, at 117, 128 (1978), reprinted in 1978 U.S.C.C.A.N. 5963, 6077 & 6089.

*See also Malone*, 245 B.R. at 396 ("According to the House Report, § 524 was enacted to 'prevent[] creditor experience in handling bankrupt debtors from overwhelming inexperienced

debtors that are in a severely disadvantaged bargaining position after bankruptcy.'") (quoting H.R. Rep. No. 95-595, at 164 (1978)); *Rogers*, 233 B.R. at 109 ("[T]he legislative history of § 524 indicates that Congress' goal in enacting that section was to provide powerful legislation to protect debtors in bankruptcy from the very same harassing practices alleged by Plaintiff in this action.").

Furthermore, in *Transamerica*, cited above, the United States Supreme Court held: "In the case of § 215 [of the Investment Advisers Act of 1940], we conclude that the statutory language itself fairly implies a right to specific and limited relief in a federal court. By declaring certain contracts *void*, § 215 by its terms necessarily contemplates that the issue of *voidness* under its criteria may be litigated somewhere." *Transamerica*, 444 U.S. at 18 (emphasis added). Likewise, here, Section 524(a)(2) states that a discharge "operates as an injunction against . . . an act, to collect or recover from, or offset against, property of the debtor." Thus, Congress necessarily must have contemplated that the issue of whether creditor conduct constitutes "an act" to collect or recover also may be "litigated somewhere." Finding that such an act occurred would likely lead to a finding that the creditor violated the Section 524(a)(2) Discharge Injunction.

The legislative history of Section 524, combined with then-existing jurisprudence on implied private rights of action, makes it clear that Congress intended to provide—through a private right of action—broad protection to debtors whose rights under Section 524 are violated. The fact that, until now, aggrieved debtors have largely sought contempt sanctions as a remedy for violations of a Section 524(a)(2) Discharge Injunction does not mean that a private cause of action for such a violation does not exist. As the court in *Malone* reasoned: "Although the court may punish a violation of the injunction by way of contempt, such an order vindicates the power of the bankruptcy court, not plaintiffs' rights." *Malone*, 245 B.R. at 396.

As to factor 3 in *Cort v. Ash*, the Supreme Court has explained that "under *Cort*, a private remedy should not be implied if it would frustrate the underlying purpose of the legislative scheme. On the other hand, when that remedy is necessary or at least helpful to the accomplishment of the statutory purpose, the Court is decidedly receptive to its implication under the statute." *Cannon v. University of Chicago*, 441 U.S. 677, 703 (U.S.Ill., 1979). The legislative scheme here—as described in the excerpt from House Report 95-598, *supra*—is intended, *inter alia*, to achieve the successful discharge of consumer debtors. A private right of action for a violation of such discharge is indeed "necessary or at least helpful to the accomplishment of [that] statutory purpose." *Cannon*, 441 U.S. at 703.

Finally, regarding factor 4, the bankruptcy process is governed by federal law. U.S. CONST. art. I, § 8, cl. 4 ("To establish . . . uniform Laws on the subject of Bankruptcies throughout the United States."). Therefore, a private cause of action under Section 524 would be a valid exercise of federal rather than state power. *Kibler v. WFS Fin.*, 2000 U.S. Dist. LEXIS 19131, at *16 (C.D. Cal. 2000) ("The cause of action is not 'one traditionally relegated to state law,' since Bankruptcy has traditionally been the province of the federal courts.").

Given that all four of the *Cort v. Ash* factors have been satisfied, the Court finds that a private right of action does exist for a violation of the Section 524(a)(2) Discharge Injunction, and a claim seeking a declaratory judgment that such violation occurred would be appropriate.

The Court also notes that, alternatively, as Plaintiff raises in the Reconsideration Opposition, even if a private right of action did not exist for a violation of the Section 524 Discharge Injunction, the Second Circuit has held that:

> Section 105(a) empowers the bankruptcy court to exercise its equitable powers—
> where necessary or appropriate—to facilitate the implementation of other
> Bankruptcy Code provisions. Thus, § 105 does not itself create a private right of
> action, but a court may invoke § 105(a) if the equitable remedy utilized is

> demonstrably necessary to preserve a right elsewhere provided in the Code. *These powers are in addition to whatever inherent contempt powers* the court may have and must include the award of monetary and other forms of relief to the extent such awards are necessary and appropriate to carry out the provisions of the Bankruptcy Code and provide full remedial relief.

*Solow v. Kalikow (In re Kalikow)*, 602 F.3d 82, 97 (2d Cir. 2010) (quoting *Bessette v. Avco Fin. Servs., Inc.*, 230 F.3d 439, 444–45 (1st Cir. 2000), *amended on denial of reh'g* (Dec. 15, 2000) (internal quotations omitted) (emphasis added). [*See also* Reconsideration Opposition, Doc. 247, p. 4]. The Second Circuit in *Kalikow* based its analysis on *Bessette v. Avco Financial*, where the First Circuit found that "§ 524 is enforceable through § 105." *Bessette*, 230 F.3d at 445. The plaintiff in *Bessette*, a former Chapter 7 Debtor, had appealed the dismissal by the district court of a class action complaint for a violation of the Section 524 Discharge Injunction. *Id.* at 442–43. Plaintiff and the putative class of former debtors alleged defendant had coerced the debtors, without the court's knowledge, into entering reaffirmation agreements that were never approved by the bankruptcy court and that did not satisfy the other requirements of Section 524. *Id.* at 443. The district court dismissed the complaint, finding, *inter alia¸* that "§ 524 did not provide the appellant with a private right of action. The court then narrowly construed its powers under § 105 and determined that it could not provide any form of relief." *Id.* The First Circuit reversed, holding:

> Whether there exists a private right of action for damages or sanctions under § 524 is a question of first impression in the First Circuit. Courts that have considered this question are divided . . . We see no reason to jump into the fray with the complex analysis required by *Cort v. Ash* when a remedy is readily and expressly available through another section of the Bankruptcy Code, namely, §105(a) . . . . Against this background it is clear, as the appellee conceded at oral argument, that a bankruptcy court is authorized to invoke § 105 to enforce the discharge injunction imposed by § 524 and order damages for the appellant in this case if the merits so require.

*Bessette*, 230 F.3d at 444. Thus, based on *Kalikow* (and its reliance on *Bessette*), the Court finds that Section 105 of the Code can be invoked to enforce the Section 524 Discharge Injunction. This

conclusion is not in conflict with *Bruce*, in which the Second Circuit held that Section 105 cannot be invoked to overcome the "longstanding equitable principles" that prevent one court from holding a party in contempt of another court's order. *Bruce*, 75 F.4th at 303; *see also* ("The Code leaves intact the longstanding equitable principles regarding the enforcement of injunctions. A bankruptcy court's civil contempt authority does not extend to other bankruptcy courts' discharge orders in a nationwide class action.") (emphasis added).

Accordingly, whether through a private right of action that exists as implied in §524 itself, or through the Court's authority under § 105 to enforce other provisions of the Bankruptcy Code, the Court finds that the Section 524(a)(2) Discharge Injunction can be enforced through a declaratory judgment claim.

### b.  Past Conduct

Defendant further argues that the New Declaratory Judgment Claim should be dismissed because it asks the Court to improperly make a finding regarding past action. [Motion to Dismiss or Arbitrate, Doc. 45, p. 26]. Here, the Court agrees with Plaintiff that the time for determining whether misconduct is past or present is at the time the complaint is filed. [Arbitration and Dismissal Opposition, Doc. 248, p. 2]. The case law cited by Plaintiff also supports such proposition. [*Id.* at p. 6][8]

---

[8] *See, e.g., Friends of the Earth, Inc. v. Laidlaw Environmental Servs. (TOC), Inc.*, 528 U.S. 167 (2000) ("It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice . . . The 'heavy burden of persua[ding]' the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness.") (internal citations omitted); *Comer v. Cisneros*, 37 F.3d 775, 800 (2d Cir. 1994) ("Even assuming the defendants had ceased the allegedly illegal conduct, we will not dismiss the claims as moot if the harm is capable of repetition, yet evading review."); *Charron v. Pinnacle Grp. LLC*, 269 F.R.D. 221, 235 (S.D.N.Y. 2010) ("Standing is assessed as of the time the lawsuit is brought. As Plaintiffs point out, it is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.") (internal citations omitted).

Plaintiff is not asking for a declaration regarding conduct that was on-going at the time the Amended Complaint was filed, but rather at the time this Adversary Proceeding was commenced on January 30, 2015. As Plaintiff argued and as the Court held in the March 28 Decision, the purpose of the Amended Complaint is simply to clarify the New Declaratory Judgment Claim that Plaintiff argues it intended to assert since the outset of this action. [March 28 Decision, Doc. 241, p. 47].

### iii. Default Judgment

Finally, Defendant asserts, as it did in its briefs that were considered prior to the March 28 Decision, that the filing of the Amended Complaint means that the default judgment awarded against Defendant should be vacated. [Motion to Dismiss or Arbitrate, Doc. 245, pp. 28–29]; [Certification Decision, Doc. 241, p. 26]. The Court's reasoning on this issue remains the same:

> The claims only differ in the specific relief granted as a result of the finding of liability. Here, that means the only portion of the Certification Decision that would be altered by the Proposed Amended Complaint would be the damages available to Plaintiff . . . The Court finds that a modification of the Complaint to substitute Declaratory Judgment relief in lieu of contempt sanctions for the national class will actually have no material effect on Judge Drain's decision, other than to vacate the determination that each plaintiff in the national class would receive $50–$1,000.

[March 28 Decision, Doc. 241, pp. 49–50]. Accordingly, the default judgment will not be vacated for the same reasons the Court articulated in the March 28 Decision. [*Id.*].

<u>**CONCLUSION**</u>

For the foregoing reasons:

(1)  Defendant's Reconsideration Motion (Docket No. 244) is DENIED.

(2)  Defendant's Motion to Dismiss or Arbitrate (Docket No, 245) is DENIED

(3)  Any arguments not addressed above are deemed OVERRULED.

**IT IS SO ORDERED.**

Dated:  September 29, 2025
New York, New York

<u>/s/John P. Mastando III</u>
HONORABLE JOHN P. MASTANDO III
UNITED STATES BANKRUPTCY JUDGE